ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2014 JUL 11  AM 8: 35

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.                                            No. 4:14-CR-023-A

CHRISTOPHER ROBERT WEAST (01)

GOVERNMENT'S RESPONSE TO MOTION
FOR RECONSIDERATION OF APPOINTMENT OF COUNSEL

TO THE HONORABLE JOHN MCBRYDE, UNITED STATES DISTRICT JUDGE:

The United States, acting by and through the undersigned Assistant United States Attorney for the Northern District of Texas, hereby submits this response to Motion for Reconsideration of Appointment of Counsel:

The government initially opposed the Federal Public Defender's request to withdraw representation because, as the Court correctly pointed out following arraignment on the Third Superseding Indictment, Weast chooses to deliberately be disruptive in Court--to such a degree that this Court cannot conduct any proceedings with Weast physically present in the courtroom.   However, after reviewing defense counsel's motion that requests Weast continue self-representation through video conferencing, the government withdraws its opposition and defers to the Court's judgment regarding the pending motion. The government does provide the Court with the following information:

The Court has already appointed counsel to represent Weast in court, but the Court has not foreclosed Weast's ability to exercise his right to self-representation at trial.  As

**Response to Motion to Withdraw - Page 1**

the Court told Weast, defense counsel, and the government, as soon as the Court received assurance that the defendant would cease his disruptive behavior, the Court would re-consider the question of self-representation. The government anticipates that the Court will have at least one opportunity to revisit this issue on the day of trial, because the government assumes Weast will be present, at least prior to jury impanelment. FED R. CRIM P. 43(a)(2). Thereafter, a defendant can waive that right to continue to be present if he persists in conduct that justifies removal after he has been warned that such conduct would result in removal from the courtroom. FED. R. CRIM. P. 43(c). In this instance, Weast has been repeatedly warned about his conduct and about removal.

## A.   Defendant's right to self-representation

The Sixth Amendment allows the defendant a right to make his own defense. That right of representation is conditioned on the "knowing and intelligent" relinquishment of the right to counsel. *Chapman v. United States*, 553 F.2d 886, 892(5th Cir. 1977)(citing *Faretta v. California*, 422 U.S. 806, 835 (1975)). Because the right rises to the level of constitutional protection, the Supreme Court has instructed trial courts not to force "unwanted counsel" upon defendants who knowingly and voluntarily assert the right to self-representation. *Faretta*, 422 U.S. at 834 n.46.

If a pro se defendant voluntarily refuses to participate in trial and refuses to allow standby counsel to represent him in his absence, he may forfeit his right to *any* representation at trial. In *United States v. Wallace*, the defendant knowingly and voluntarily waived his Sixth Amendment right to counsel. 527 Fed.Appx. 784, 85-86

(10th Cir. June 13, 2013) (unpublished opinion, copy attached). The district court appointed standby counsel to assist the defendant with pre-trial preparation and at trial. *Id.* At the start of the defendant's trial, however, the defendant informed the court that he was waiving his appearance at the "mock trial" and also waived his right to be represented by standby counsel. 527 Fed.Appx. at 786. The district judge admonished the defendant about the negative impact of not appearing at trial, concluded that the defendant knowingly and voluntarily waived his right to be present at trial and waived his right to have standby counsel to represent him. *Id.* The defendant did not participate in the first day of trial but did return to cross examine a government witness and testified in his defense. *Id.*

After he was convicted, Wallace appealed, arguing that the district judge should have revoked his right to self-representation because he engaged in obstructive conduct; the Tenth Circuit disagreed. *Id.* While the trial judge *may* terminate self-representation or appoint counsel for defendants who engage in obstructionist misconduct, the Sixth Amendment does not *mandate* a trial court to do so. 527 Fed.Appx. at 787; *see also, United States v. Boigegrain*, 155 F.3d 1181, 1185 (10th Cir. 1998) ("[A] lawyer cannot be forced upon a defendant who wishes to act as his own representative, even if self-representation would be detrimental to the defendant.")

The absence of any counsel and the defendant is not necessarily a position that the government advocates, because there are also competing interests, such as the public's interest in the accuracy of the truth-determining process, to consider. *See, Thomas v.*

*Carroll*, 581 F.3d 118, 126 (3d Cir. 2009).  And, of significance to the Tenth Circuit in

finding no Sixth Amendment violation in *Wallace* was the fact that the defendant there

not only waived his right to counsel, but he also knowingly refused to allow standby

counsel to represent him when Wallace was absent from trial.  527 Fed.Appx. at 787.

## B.    Appointment of counsel

This Court has already recognized and admonished the defendant that the right to

self-representation is not absolute.  "[A] defendant can lose his right to be present at trial

if, after he has been warned by the judge that he will be removed if he continues his

disruptive behavior, he nevertheless insists on conducting himself in a manner so

disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on

with him in the courtroom."  *Illinois v. Allen*, 397 U.S. 337, 343 (1970).  The defendant

can reclaim his right to self-representation "as soon as the defendant is willing to conduct

himself consistently with the decorum and respect inherent in the concept of courts and

judicial proceedings."  *Id.*

Cases suggest that where a defendant chooses to represent himself for purposes of

delay or to secure a tactical advantage, courts may deny the defendant the right of self-

representation.  *See, Chapman v. United States*, 553 F.2d 886 (5th Cir. 1977); *United

States v. Vernier*, 381 Fed. Appx. 325, 358 (5th Cir. 2010) (unpublished opinion

attached); *see also, Martinez v. Court of Appeal of California, Fourth Appellate District*,

528 U.S. 152, 162 (2000) ("Even at the trial level, therefore, the government's interest in

ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.")

## C.     Remote representation by the defendant

The Federal Public Defender's office suggests that the Court permit Weast to represent himself through video conferencing. The government defers to the Court as to the wisdom of this suggestion. The Court certainly has discretion to conduct the trial that way, if it chooses. The Court has already recognized that it has the discretion to gag the defendant in the courtroom if the defendant engaged in disruptive behavior; muting the defendant's outbursts while others are talking in the courtroom may be another option the Court wants to entertain. If the defendant engages in disruptive behavior, the Court could also allow standby counsel to represent Weast--assuming that he does not refuse counsel's assistance-- and permit Weast to hear what occurs in the courtroom. In the *Wallace* case, for example, the defendant was removed from the courtroom but able to hear the events occurring at trial through an audio feed. *Wallace*, 527 Fed.Appx at 786. As a result, Wallace was able to return to trial the second day and represent himself.

## Conclusion

The Court has discretion to allow Weast to proceed via videoconferencing if Weast continues to be disruptive in the courtroom. The Court also has discretion to appoint counsel to represent Weast when he engages in disruptive behavior and can reconsider his right to self-representation any time prior to the impanelment of the jury. If the Court were to permit Weast to represent himself, the government submits that the

**Response to Motion to Withdraw - Page 5**

Court consider appointing standby counsel.   Then, if Weast engages in disruptive

behavior, counsel can proceed without Weast's presence, and, if he waives his right to

representation by standby counsel, his Sixth Amendment rights are not violated.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

AISHA SALEEM
Assistant United States Attorney
State Bar of Texas No. 00786218
801 Cherry Street
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile: 817-252-5455
E-mail: Aisha.Saleem@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2014, the foregoing Government's Response was
served via hand delivery to Angela Saad, Federal Public Defender's Office, 819 Taylor
Street, room 9A10, Fort Worth, Texas 76102.  The government also mailed via overnight
mail a copy of this motion and proposed order to Defendant Christopher Robert Weast,
No. 47797-177, Federal Correction Institute, 3150 Horton Road, Fort Worth, Texas
76119.

AISHA SALEEM
Assistant United States Attorney



527 Fed.Appx. 784
This case was not selected for publication in
the Federal Reporter.
Not for Publication in West's Federal
Reporter. See Fed. Rule of Appellate
Procedure 32.1 generally governing citation of
judicial decisions issued on or after Jan. 1,
2007. See also Tenth Circuit Rule 32.1. (Find
CTA10 Rule 32.1)
United States Court of Appeals,
Tenth Circuit.

UNITED STATES of America,
Plaintiff–Appellee,
v.
Antoine J. WALLACE,
Defendant–Appellant.

No. 12–1413. | June 13, 2013.

## Synopsis
**Background:** Following jury trial, defendant was
convicted in the United States District Court for the
District of Colorado of charges stemming from
assault on prison employees. Defendant appealed.

**Holdings:** The Court of Appeals, Scott M.
Matheson, Jr., Circuit Judge, held that:

[1] district court was not obligated under Sixth
Amendment to revoke defendant's waiver of right
to counsel and order stand-by counsel to act on
defendant's behalf after defendant informed court
that he would not attend trial, and

[2] defendant was not deprived of fair trial.

Affirmed.

West Headnotes (2)

[1]     **Criminal Law**
        ⚖Validity and sufficiency, particular
        cases
        **Criminal Law**

⚖Requiring advisory counsel

District court was not obligated under
Sixth Amendment to revoke defendant's
waiver of right to counsel and order
stand-by counsel to act on defendant's
behalf after defendant informed court that
he would not attend trial; defendant's
waiver of right to counsel was knowing,
voluntary, and intelligent, he was
appointed stand-by counsel prior to trial,
he knowingly and voluntarily waived his
right to be present, and he refused to
allow stand-by counsel to present
defense. U.S.C.A. Const.Amend. 6.

Cases that cite this headnote

[2]     **Criminal Law**
        ⚖Voluntary or temporary absence
        **Criminal Law**
        ⚖Extent of participation by counsel

Defendant was not deprived of fair trial
on charges stemming from assault after
he waived right to counsel and right to
appear at trial, and refused to allow
stand-by counsel to present defense; trial
was adversarial despite defendant's initial
absence, in that defendant participated in
parts of trial by cross-examining of
Government witness, by giving closing
argument, and by filing motion for
mistrial. U.S.C.A. Const.Amend. 6.

Cases that cite this headnote

**Attorneys and Law Firms**

**\*785** Linda McMahan, Gregory Matthew Morison,
Hayley Elizabeth Reynolds, Judith Smith, Office of
the United States Attorney, Denver, CO, for
Plaintiff–Appellee.

Donald A. Herring, Donald A. Herring, P.C.,

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works

Oklahoma City, OK, for Defendant–Appellant.

Before KELLY, HOLMES, and MATHESON, Circuit Judges.

**Opinion**

### ORDER AND JUDGMENT*

SCOTT M. MATHESON, JR., Circuit Judge.

In June 2012, a jury convicted Appellant Antoine Wallace of charges stemming from the assault of employees at the United States Penitentiary in Florence, Colorado. Mr. Wallace represented himself at trial. He now challenges his conviction, arguing that the trial court violated his Sixth Amendment rights because it did not end his self-representation and instruct standby counsel to represent him. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

In February 2011, Mr. Wallace was charged with three counts of assaulting, resisting, opposing, impeding, intimidating, and interfering with employees of the Federal Bureau of Prisons in violation of 18 U.S.C. §§ 111(a)(1) and (b). He was initially appointed counsel but then requested to represent himself.

The trial court held a hearing to ensure that Mr. Wallace was capable of representing himself and understood the consequences of that decision. After advising Mr. Wallace at length of the dangers and limitations of self-representation, the court found that he knowingly, voluntarily, and intentionally waived his Sixth Amendment right to counsel. The court also ordered the appointment of standby counsel to assist *786 Mr. Wallace at trial and in pretrial preparation.

On June 11, 2012, at the start of his two-day trial, Mr. Wallace informed the court that he was "waiving [his] appearance to be present during this mock trial." ROA, Vol. 3 at 80. Mr. Wallace repeatedly refused to allow standby counsel to represent him in his absence. The court advised Mr. Wallace that there would be "a serious detrimental impact if [he] refuse[d] to participate in

the trial," but Mr. Wallace insisted on being absent. *Id.* at 81.

After questioning Mr. Wallace and informing him of the dangers of his decision, the court concluded that he knowingly, voluntarily, and intentionally waived his right to be present at trial and to have standby counsel represent him. Mr. Wallace was placed in a nearby holding cell with an audio feed of the trial proceedings. The court instructed standby counsel to be seated in the back of the courtroom and to be "up to speed on what has been presented [at] trial" in the event that Mr. Wallace "change[d] his mind and ... wishe[d] to proceed." *Id.* at 92.

Mr. Wallace did not participate and had no representation during the first day of trial. On the second day, he returned to the courtroom to cross-examine one of the Government's witnesses. He also testified in his own defense, made closing arguments, and moved for a mistrial.

The jury found Mr. Wallace guilty of all three counts. He was sentenced to 720 months in prison.

## II. DISCUSSION

[1] Mr. Wallace argues that he engaged in "obstructive conduct" and that the trial court should have "revoked [his] right to self-representation" and ordered standby counsel to "step in on [his] behalf." Aplt. Br. at 5. The court's failure to do so, he argues, violated his rights under the Sixth Amendment. We disagree.

The Sixth Amendment provides a criminal defendant with the right to assistance of counsel. U.S. Const. amend. VI. It also includes the corresponding right to self-representation, "provided only that [the defendant] knowingly and intelligently forgoes his right to counsel and that he is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins,* 465 U.S. 168, 173, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). Courts cannot "thrust counsel upon the accused," *Faretta v. California,* 422 U.S. 806, 820, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), because the defendant "must be free personally to decide whether in his particular case counsel is to his advantage," *id.* at 834, 95 S.Ct. 2525.

WestlawNext © 2014 Thomson Reuters. No claim to original U.S. Government Works.

Nevertheless, "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct," and "a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* at 834 n. 46, 95 S.Ct. 2525. Standby counsel may assist, over a defendant's objections, in "explain [ing] and enforc[ing] basic rules of courtroom protocol or ... overcoming routine obstacles that stand in the way of the defendant's achievement of his own clearly indicated goals." *McKaskle,* 465 U.S. at 184, 104 S.Ct. 944. But the right to self-representation is eroded if standby counsel is allowed, over the defendant's objection, "to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* *787 of the defendant on any matter of importance." *Id.* at 178, 104 S.Ct. 944.

Mr. Wallace does not dispute that he knowingly and voluntarily waived his right to the assistance of counsel and elected to proceed pro se. Similarly, Mr. Wallace acknowledges that, when he announced his intention to be absent from trial, "[t]he trial judge ... explained in detail the dangers Mr. Wallace faced having no one to represent him." Aplt. Br. at 4. It also is undisputed that Mr. Wallace repeatedly refused to allow standby counsel to represent him in his absence.

Nonetheless, he contends that the trial court had an affirmative duty to terminate his self-representation because of his obstructive conduct and that its failure to do so violated his rights under the Sixth Amendment. He notes that at times he disobeyed the trial court's orders to stop talking and engaged in occasional outbursts.[1]

Although the Supreme Court has said that a "trial judge *may* terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct," *Faretta,* 422 U.S. at 834 n. 46, 95 S.Ct. 2525 (emphasis added), it has not held that the Sixth Amendment *mandates* this outcome. Rather, the Court has instructed that trial courts should not force unwanted counsel upon defendants who knowingly and voluntarily assert the right to self-representation. *See id.* at 834, 95 S.Ct. 2525; *see also McKaskle,* 465 U.S. at 178, 104 S.Ct. 944; *see also United States v.*

*Boigegrain,* 155 F.3d 1181, 1185 (10th Cir.1998) ("[A] lawyer cannot be forced upon a defendant who wishes to act as his own representative, even if self-representation would be detrimental to the defendant.").

Other courts have addressed similar Sixth Amendment claims. In *Clark v. Perez,* 510 F.3d 382 (2d Cir.2008), the Second Circuit rejected a claim that a criminal defendant's Sixth Amendment rights were violated because the trial court did not revoke her pro se status or appoint standby counsel when she refused to participate in or attend trial. *Id.* at 396. That court held that no Sixth Amendment violation occurred because the defendant "knowingly and intelligently waived her right to counsel, unequivocally asserted her right to self-representation, made a conscious strategic choice to waive her right to be present in the courtroom as part of a *de facto* political protest defense, and was afforded the opportunity to return whenever she chose." *Id.*[2]

On habeas review, the Third Circuit suggested in dicta that when a pro se criminal defendant voluntarily refuses to participate at trial, the court should appoint counsel to represent the defendant. *See Thomas v. Carroll,* 581 F.3d 118, 126 (3d Cir.2009). The pro se defendant in *Thomas* knowingly and voluntarily waived his right to counsel, was never given standby counsel, and later voluntarily waived his right to be present at trial. *Id.* at 119–122. Ultimately, the *Thomas* court denied habeas relief on the Sixth Amendment claim, but it stated, "If this appeal had come before *788 us on a direct appeal from a federal court presented with a defendant who waived his right to counsel and then absented himself from the courtroom, we might hold differently." *Id.* at 127.

We conclude that Mr. Wallace's Sixth Amendment claim is weaker than the claims in *Clark* and *Thomas* and is thus unsuccessful. Mr. Wallace knowingly and voluntarily waived his right to counsel and elected to proceed pro se. Unlike the defendants in *Clark* and *Thomas,* he was appointed standby counsel in advance of trial. At trial, Mr. Wallace knowingly and voluntarily waived his right to be present. When asked if standby counsel could represent him in his absence, Mr. Wallace repeatedly refused. Neither the *Clark* nor the *Thomas* court was confronted with a defendant who explicitly refused to allow standby counsel to present a defense. This request placed the trial

court in a difficult position, and its decision to allow Mr. Wallace to be absent but to participate at trial if he so pleased respected his Sixth Amendment right to self-representation.

[2] Moreover, we do not agree with Mr. Wallace's assertion that he did not receive a fair trial as a result of the court's failure to revoke his pro se status and instruct standby counsel to represent him. *See* Aplt. Br. at 7 (arguing that, had the trial court ordered standby counsel to represent him, "Mr. Wallace's right to a fair trial would have been preserved"). In *Thomas,* the Third Circuit suggested that the defendant's trial might have been unfair because his absence resulted in a "complete breakdown of the adversarial process." 581 F.3d at 126. The Third Circuit contrasted the defendant's trial from the trial in *Clark,* where the defendant "participated in parts of the trial, including a lengthy closing statement to the jury," resulting in an " 'intensely adversarial' " process. *Id.* (quoting *Clark,* 510 F.3d at 397).

Like the trial in *Clark,* Mr. Wallace's trial was adversarial despite his absence. He participated in parts of the trial, cross-examined a Government witness, gave a closing argument, and moved for a mistrial. We cannot say that the trial court's decision resulted in a "complete breakdown in the adversarial process." *Thomas,* 581 F.3d at 126.

The trial court honored Mr. Wallace's choices with regard to self-representation and standby counsel after determining those choices were made voluntarily and knowingly. We see no Sixth Amendment violation.

### III. CONCLUSION

For the foregoing reasons, we affirm.

Footnotes

\*    After examining Appellant's brief and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1.

1    The record shows that Mr. Wallace did engage in occasional outbursts. The trial court dealt with these outbursts patiently by ordering recesses, excusing the jury, and ordering Mr. Wallace out of the courtroom temporarily to calm himself.

2    The Second Circuit has signaled that if a misbehaving pro se defendant is involuntarily removed from trial, standby counsel should be ordered to step in. *Davis v. Grant,* 532 F.3d 132, 141–45 (2d Cir.2008) (denying habeas relief on Sixth Amendment claim, but indicating the result might have been different on direct appeal). Mr. Wallace was not involuntarily removed from trial.

End of Document        © 2014 Thomson Reuters. No claim to original U.S. Government Works.



Westlaw.

381 Fed.Appx. 325, 2010 WL 2340822 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 381 Fed.Appx. 325, 2010 WL 2340822 (C.A.5 (La.)))**

**H**
This case was not selected for publication in the
Federal Reporter.

Not for Publication in West's Federal Reporter See
Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or
after Jan. 1, 2007. See also Fifth Circuit Rules
28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find
CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.
UNITED STATES of America, Plaintiff-Appellee
v.
Jonathan Lee VERNIER, Defendant-Appellant.

No. 08-31047.
June 9, 2010.

**Background:** Defendant was convicted in the
United States District Court for the Western Dis-
trict of Louisiana, of carjacking and sentenced to
life in prison. He appealed.

**Holding:** The Court of Appeals held that defendant
was not unconstitutionally denied his right to self-
representation at trial.
Affirmed.

West Headnotes

**Criminal Law 110 ⟷1754**

110 Criminal Law
    110XXXI Counsel
        110XXXI(B) Right of Defendant to Counsel
            110XXXI(B)3 Waiver of Right to Coun- sel
                110k1754 k. Delay or misuse of
waiver or right of self-representation. Most Cited
Cases
    Defendant was not unconstitutionally denied
his right to self-representation in his prosecution for
carjacking, where he posed a risk of violence and

escape, he was defiant and troublesome, he had
boasted that he wanted to "go out in a bloody con-
frontation, disrupt the trial, and make the news,"
and he had attempted a violent escape from jail in
the 48 hours preceding trial. U.S.C.A.
Const.Amend. 6; 18 U.S.C.A. § 2119.

**\*325** Joseph Thomas Mickel, Assistant U.S. Attor-
ney, U.S. Attorney's Office Western District of
Louisiana, Lafayette, LA, for Plaintiff-Appellee.

**\*326** Jonathan Lee Vernier, Lake Charles, LA, pro
se.

Appeal from the United States District Court for the
Western District of Louisiana, USDC No.
2:04-CR-20144.

Before GARWOOD, STEWART, and CLEMENT,
Circuit Judges.

PER CURIAM: FN*

    FN* Pursuant to 5TH CIR. R. 47.5, the
    court has determined that this opinion
    should not be published and is not preced-
    ent except under the limited circumstances
    set forth in 5TH CIR. R. 47.5.4.

    **\*\*1** Defendant-Appellant Jonathan Lee Vernier
appeals his conviction for a federal carjacking in vi-
olation of 18 U.S.C. § 2119. The district court
denied Vernier's request to represent himself at tri-
al. After a review of the record, we AFFIRM.

I.
A.
    In April 2003, Vernier escaped from a Color-
ado state prison where he was serving a 12-year
sentence for car theft. While hitch-hiking in Texas
following his escape, he hitched a ride with Ran
Mesika, an Israeli citizen who was traveling across
the country selling jewelry from a van. After travel-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 Fed.Appx. 325, 2010 WL 2340822 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 381 Fed.Appx. 325, 2010 WL 2340822 (C.A.5 (La.)))**

ing with Mesika for about four days, Vernier struck Mesika with a tire iron, then kept him tied up in the van until he killed him and dumped his body at an unknown location. Vernier continued toward Florida in the van he stole from Mesika, using Mesika's stolen debit card and identification.

Israeli law enforcement agents notified the FBI of the likely kidnapping of Mesika. The FBI tracked Vernier to Key West and apprehended him after a dramatic chase and resistance in May 2003. Mesika's body was found in Louisiana.

**B.**

Vernier was indicted for carjacking resulting in death in violation of 18 U.S.C. § 2119. He pleaded not guilty. Before trial, the Government requested that Vernier be shackled during trial. The Government's motion included assertions that Vernier had escaped from prison twice, that he was able to get out of handcuffs, that he regularly possessed contraband and weapons in jail, that he severely damaged a jail cell, that he resisted corrections officers' attempts to search his cell, and that he inflicted injuries on himself and told corrections officials that he wanted to kill himself and had tried to do so. The Government also asserted that it intercepted a telephone call in which Vernier told a third party that he intended to disrupt his trial and generate sound bites for the news media.

The district court held a hearing on the motion. Vernier waived his right to be present at the hearing. At the hearing, the court heard testimony from a Deputy U.S. Marshal and an FBI agent that Vernier had taunted Mesika's family in court and had attempted to negotiate with them or to extort money from them in exchange for telling them where to find Mesika's body. The FBI agent also testified that the factual recitations in the Government's motion were accurate. The court concluded that, based on Vernier's "fairly constant contentious and defiant behavior" and the court's concerns about the safety of persons in the courtroom, he would be shackled at trial but that the restraints would be hidden from the jury as much as possible.[FN1]

FN1. The court ordered skirting for the prosecution and defense counsel's tables at trial, and ordered that Vernier be seated at defense counsel's table before the jury entered to hide the ankle shackles from view.

**\*327 C.**

On the first morning of trial, Vernier advised the court that he wanted to represent himself at trial. The court told Vernier that it was concerned about his history of disruptive behavior and that disruptions of the trial could result in his removal from the courtroom. Vernier responded that reports of his bad behavior were "rumors" and "a systematic plot" by jailers to discredit him.

**\*\*2** The court denied Vernier's request to proceed *pro se* at trial. The court cited "several factors" in denying the request. First, the court noted that Vernier was asserting his right to self-representation on the morning of trial and had never raised the issue before the court. Second, the court noted that Vernier had not expressed any dissatisfaction with his appointed lawyer. Third, the court noted that Vernier had waived his own appearance at the restraint hearing. Finally, the court said its decision was "based on all the information" that was entered into the record at the restraint hearing.[FN2]

FN2. Vernier also addressed the court, stating that because of his limited legal knowledge he did not know he needed to file a formal motion to assert his right to self-representation. The district court replied, "Just one more reason not to let you represent yourself because of your limited legal knowledge." As Vernier attempted to continue, the district court stated that it had made its ruling "on other issues."

Vernier's appointed lawyer objected on his behalf, arguing that Vernier's assertion of the right to represent himself was timely and was not inter-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 Fed.Appx. 325, 2010 WL 2340822 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 381 Fed.Appx. 325, 2010 WL 2340822 (C.A.5 (La.)))**

posed for the purpose of delay because Vernier was ready to proceed with trial that day. The Government declined to join the objection and referred the court to the evidence presented in the motion to shackle Vernier.

The Government also presented evidence regarding Vernier's attack on a prison guard and attempt to escape from jail just days prior to trial. The Government's witness testified that Vernier was armed with a shank during the escape attempt and that Vernier said he had been planning the attempt for three years. According to the witness, Vernier boasted that he was not going to go to prison quietly but would "go out in a bloody confrontation" without regard to whom he would have to kill. The Government argued that Vernier's real intention in requesting to represent himself was to disrupt his trial and to try to escape. The court said that the evidence about Vernier's recent escape attempt added support to its decision not to allow self-representation and "that there are other things besides timeliness" supporting the decision. The court noted its "discretion to run an orderly courtroom."

The case proceeded to trial. The jury convicted Vernier as charged. The court allowed Vernier to represent himself at the sentencing hearing, although appointed counsel was present. The court denied a request for a downward departure and sentenced Vernier to life in prison, with the term to run consecutively to each of two other sentences and concurrently to a third sentence. Vernier filed a timely *pro se* notice of appeal and is represented by appointed appellate counsel.

**II.**

Vernier's only contention on appeal is that he should have been allowed to represent himself at trial. He argues that the court denied his motion on the basis of untimeliness and that his request was timely under *Chapman v. United States,* 553 F. 2d 886, 895 ( 5th Cir. 1977). He asserts that there were no other valid grounds for denying his request. The Government contends that the court's

denial of self-representation was not based on untimeliness but rather was justified by *328 ample evidence indicating that Vernier's request was intended to give him the chance to disrupt his trial and to attempt another escape.

**3 This court reviews claims concerning the right of self-representation de novo. *United States v. Jones,* 421 F.3d 359, 363 (5th Cir.2005). The district court's factual findings to support its ruling are reviewed for clear error. *Id.* at 361. An improper denial of the right of self-representation, if established, requires reversal without further analysis for harmless error. *United States v. Majors,* 328 F.3d 791, 794 (5th Cir.2003).

A competent criminal defendant has a Sixth Amendment right to represent himself at trial if he knowingly chooses to do so and waives his right to counsel. *Jones,* 421 F.3d at 363; *see also* 28 U.S.C. § 1654. The right to self-representation, however, is not absolute. *Indiana v. Edwards,* 554 U.S. 164, 128 S.Ct. 2379, 2384, 171 L.Ed.2d 345 (2008). The right is forfeited by obstruction, disruptive conduct, or by abusing the dignity of the courtroom. *Id.; see also Faretta v. California,* 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). "Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." *Martinez v. Court of Appeal of Cal., Fourth Appellate Dist.,* 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).

Under the general principle announced by the Supreme Court in *Faretta, Edwards,* and *Martinez,* the right of self-representation is limited by the trial court's responsibility to maintain order and safety and to prevent disruption and delay. *See United States v. Long,* 597 F.3d 720, 726 (5th Cir.2010) (upholding denial of the right to self-representation where the defendant had been disruptive in pretrial proceedings). We have noted in passing that a defendant's request to represent himself at trial may be rejected if it is intended to cause delay or some tactical advantage. *Chapman,* 553 F. 2d at 895.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

381 Fed.Appx. 325, 2010 WL 2340822 (C.A.5 (La.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 381 Fed.Appx. 325, 2010 WL 2340822 (C.A.5 (La.)))**

Other circuits hold that a trial court may deny the right of self-representation when evidence indicates that the defendant intends to use the right to delay or disrupt the trial. *See, e.g., United States v. Smith,* 413 F.3d 1253, 1280-81 (10th Cir.2005) (holding that the defendant's insolent behavior showed that he was playing "cat and mouse" with the court by requesting to represent himself); *Buhl v. Cooksey,* 233 F.3d 783, 797 (3d Cir.2000) (noting that determining whether a *pro se* defendant intends only disruption and delay is the kind of determination district courts must make routinely, but holding that the court did not make a sufficient inquiry); *see also United States v. George,* 56 F.3d 1078, 1084 (9th Cir.1995) (holding that the defendant's pre-trial conduct, including two escapes, showed that his request to represent himself was made for purposes of delay); *see also United States v. Akers,* 215 F.3d 1089, 1097-99 (10th Cir.2000) (approving the denial of self-representation where evidence, including the defendant's pre-trial flight, supported the district court's conclusion that the motion for self-representation was intended to delay the proceedings).

**\*\*4** In this case, if the district court had based its denial of self-representation solely on the timing of Vernier's request, the court likely would have erred under *Chapman,* where we held that a request for self-representation is timely if made before the jury is selected. *See Chapman,* **553 F. 2d at 887.** The court arguably also would have erred had it based its ruling only on Vernier's limited legal knowledge. *See Faretta,* 422 U.S. at 836, 95 S.Ct. 2525 (indicating that a defendant's technical knowledge is not relevant to his right to control his defense).

**\*329** But neither reason was the sole basis for the district court's refusal to allow Vernier to represent himself. Instead, the district court based its ruling primarily on the same evidence that convinced the court to shackle Vernier for trial. That uncontested evidence indicated that Vernier posed a risk of violence and escape, that he was defiant and

troublesome, and that he boasted that he wanted to go out in a bloody confrontation, to disrupt his trial, and to make news.

Moreover, the Government presented additional testimony on the day of trial that Vernier had attempted a violent escape from jail in the 48 hours preceding the trial. The Government points out that Vernier's escape attempts or other disruptions could have delayed the trial and hindered the prosecution, which relied on the testimony of witnesses from across the country and overseas. The court considered this evidence as an additional reason to deny Vernier's request to represent himself. Thus, there was no clear error in the district court's findings.

### III.

Based on our review of the evidence and the district court's reasoning, we conclude that the district court did not err when it found that Vernier's escape attempts and risk of violence posed a threat to the courtroom protocol of the trial. Therefore, Vernier was not unconstitutionally denied his right to self-representation.

Accordingly, his conviction is AFFIRMED.

C.A.5 (La.),2010.
U.S. v. Vernier
381 Fed.Appx. 325, 2010 WL 2340822 (C.A.5 (La.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.