IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 4:14-CR-023-A |
| | § | |
| CHRISTOPHER ROBERT WEAST | § | |

ERN DISTRICT OF TEXAS
FILED

JUL 15 2014

CLERK, U.S. DISTRICT COURT
By
Deputy

## ORDER

On July 8, 2014, the court conducted a hearing to determine the mental competency of defendant, **CHRISTOPHER ROBERT WEAST**, as requested by a motion filed by the government on June 4, 2014. After having ruled that the court could not find from a preponderance of the evidence that defendant was presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense, the court attempted to develop a record as to whether defendant had sufficient knowledge to make an informed decision as to the continuation of his self-representation. Because of the disruptive behavior of defendant, the court was unsuccessful in doing so.

Defendant was so disruptive during the proceedings conducted on July 8, 2014, and has such a history of disruptive behavior, displays of disrespect for the court, and challenges to the court's power and authority to proceed with this case, that the

court concluded that this case could not proceed in a meaningful way unless counsel were appointed to represent defendant. Defendant has deliberately engaged in serious and obstructionist conduct of such a nature as to justify termination of his self-representation.  The court ordered at the July 8 hearing that the Office of the Federal Public Defender for the Northern District of Texas, acting through Assistant Federal Public Defenders Peter Fleury ("Fleury") and Angela Saad ("Saad"), assume representation of defendant in this case.

On July 10, 2014, Saad filed a motion requesting the court to reconsider the appointment of the Federal Public Defender's Office to represent defendant and to allow defendant to resume his self-representation, suggesting that the video conferencing technique to which the court was forced to resort for completion of the July 8, 2014 proceedings would be suitable for future court proceedings in this case if defendant were to be permitted to represent himself.  Doc. 111.  Immediately after the filing of the motion for reconsideration the morning of July 10, 2014, the public defender's office, acting through Saad, filed a supplemental motion for reconsideration, in which she added that:

> The Federal Public Defender's Office has attempted to speak with Mr. Weast on multiple occasions and he has refused to speak with us.  In anticipation of the trial in this case, defense counsel is stymied in its representation without having the opportunity to

consult with Mr. Weast regarding his defense, his right
to testify, and his confrontation rights.

Doc. 112 at 1.

On July 11, 2014, the government responded to the motion for
reconsideration, stating that it agreed that the court had
discretion to appoint counsel to represent defendant when he
engages in disruptive behavior and can reconsider his right to
self-representation at any time prior to impanelment of the jury,
and adding that if the court were to permit defendant to
represent himself, the court should consider appointing standby
counsel so that if defendant engages in disruptive behavior,
standby counsel can proceed without defendant present. Doc. 113
at 5-6.

The court has concluded that the motion for reconsideration
should be denied, but thinks appropriate to include in this order
a more complete explanation of the court's justification for
ruling as it did on the self-representation issue, including a
chronology of pertinent events.

I.

Pertinent History

A thorough review of the history of this case is revealing.
It discloses that during the first two and one-half months,
approximately, of the pendency of this case defendant conducted

3

himself in a perfectly appropriate manner.  He had two appearances before the magistrate judge during which he showed respect for the judge, did nothing to disrupt or impede the proceedings, and displayed proper courtroom decorum.  Not until March 26, 2014, did defendant commence to engage in what now appears to be a deliberate and calculated defense strategy to so disrupt the proceedings that they cannot go forward in a meaningful way.  Included in the implementation of his defense strategy, defendant has barraged the court with bizarre filings that, inter alia, demeaned the magistrate judge and questioned his authority to preside over proceedings affecting defendant, demeaned and harassed the prosecutor, including the filing of a counterclaim against the prosecutor, and included derogatory remarks about the court in general, such as questioning whether the court has the jurisdiction to proceed in this case against defendant.

Defendant's conduct became so disruptive, and his court filings were so bizarre, on and before May 28, 2014, that the court had a concern whether he had the mental competency to proceed to trial.  Upon the government's motion, the court scheduled the mental competency hearing that was conducted on July 8, 2014.  Defendant's conduct was such on that occasion that the hearing had to be held in three different sessions, and in

4

two separate courtrooms, as the court and the court's staff sought a procedure that would permit the hearing to go forward.

For there to be an appreciation of the factors that led to the court's July 8, 2014 decision to deny further self-representation to defendant, an understanding of the background, as set forth below, is important.  It suggests that defendant's disruptive conduct, both in the form of written filings and courtroom antics, are the result of deliberate decisions by defendant to engage in serious and obstructionist behavior in the hopes that by doing so he might gain the benefit of a favorable outcome of this case.

A.   The Transition of Defendant's Attitude from a Spirit of Cooperation to Complete Disruptiveness

1.   This case was initiated on February 12, 2014, by the filing of a one-count indictment charging defendant with Possession of a Visual Depiction of a Minor Engaged in Sexually Explicit Conduct.  Doc. 1.  Defendant had his initial appearance and arraignment before the magistrate judge on February 21, 2014. Docs. 5 and 10. The government was represented by Assistant United States Attorney Aisha Saleem ("Saleem"), who is the prosecutor assigned to this case.  The magistrate judge appointed the Federal Public Defender for the Northern District of Texas to be defendant's attorney.  Defendant conducted himself in a

perfectly rational manner throughout the proceeding,
appropriately responding to the judge's questions and showing
proper respect for and not interrupting the judge.  Doc. 114 at
7-13.

    2.    The magistrate judge conducted a preliminary and
detention hearing on March 3, 2014.  Doc. 17.  Defendant was
represented by Saad.  Three witnesses were called to testify at
the hearing, which lasted approximately forty minutes.  Doc. 115
at 2, 3, 36.  Defendant was present, but said nothing on the
record during the hearing.  At the conclusion of the hearing,
following argument of counsel, the magistrate judge ordered
defendant remanded to the custody of the United States Marshal.
Id. at 36.

    3.    Until early April 2014, the case proceeded in a normal
manner, with the Federal Public Defender's Office providing
representation to defendant.  The case was assigned to the docket
of District Judge Terry Means, who issued on February 21, 2014, a
pretrial and scheduling order with a trial date of April 14,
2014.  Doc. 11.  Defense counsel filed defendant's designation of
expert witnesses, a motion for trial continuance, a motion for
enlargement of time to file pretrial motions, and a motion for
reconsideration of detention order.  Docs. 20, 23, 27.  The

motion to continue trial was granted by order signed March 19, 2014, with a new trial date of June 16, 2014.  Doc. 25.

4.   On March 26, 2014, defendant filed a handwritten document titled "Written Objections" in which he expressed objections to matters pertaining to his detention hearing and Judge Cureton's ruling that he be detained.  Doc. 26.  As were many of the items defendant filed while represented by counsel, the March 26, 2014 item was stricken because of not having been filed by defendant's attorney.  Doc. 28.

5.   On April 7, 2014, defendant commenced his disruptive conduct by a letter to Judge Means, which Judge Means construed as a motion to substitute counsel.  Doc. 34 at 2d page.  The letter again complained of the magistrate judge's conduct of the detention hearing and detention ruling, but concluded with the following statements:

> With all due respect, I now make this my notice to proceed Sui Juris with Angela Saad as my co-counsel. Furthermore, I wish to change my plea from "not guilty" to Innocent.  It is my understanding that I am innocent of the alleged charge.  Furthermore, I make this my notice to set a new arraignment hearing at the earliest time your court can accommodate sir, on or before the 18th day of April, 2014.  I also wish to make this my notice that there shall be no administrative decision making or administrative rulings made in this alleged case.  I respectfully order that only the official

judicial officer of this court be allowed to sit in on these issues.

Id.[1]  By order signed April 17, 2014, Judge Means referred the letter-motion to the magistrate judge for determination.  Doc. 36.

6.   On April 22, 2014, the magistrate judge had a hearing on defendant's motion, which the judge considered to be a Faretta[2] hearing.  Docs. 43 and 116 at 4.  The judge found that defendant knowingly and voluntarily waived his right to counsel, and concluded that defendant should be allowed to proceed pro se and represent himself, leaving for future decision whether standby counsel could be appointed.  Doc. 116 at 8.  Even though defendant cooperated for the most part with the judge at the hearing, the hearing ended with an indication of things to come when the following exchange occurred:

> THE COURT:  Mr. Weast, do you have any other issues to consider at this time?
>
> THE DEFENDANT:  My only question would be what jurisdiction is this court being held under?
>
> THE COURT:  Excuse me?

---

[1]In this order there are several quotations taken from documents filed by defendant.  The language is quoted exactly as presented by defendant in his filings without any correction or indication of grammatical spelling, punctuation, or other errors, in any of the quoted language.

[2]Faretta v. California, 422 U.S. 806 (1975).

THE DEFENDANT: What jurisdiction is this court being held under?

THE COURT: Under the Constitution of the United States.

THE DEFENDANT: The jurisdiction of the court, sir.

THE COURT: Yes, sir. This is a federal court. You're charged with a federal crime, and you're going to stand trial before a federal judge, and you are being held under federal law.

So, maybe you need to do a little more research, and if you have a motion attacking the subject-matter jurisdiction of this court, please file it.

All right. The defendant's remanded to the custody of the United States Marshal.

Please don't waste the Court's time with useless motions and ridiculous statements. The district judge will not look with favor on that, I guarantee it.

Id. at 9-10. Later in the day on April 22, the magistrate judge issued an order confirming his findings authorizing self-representation by defendant and adding the finding that standby counsel was not necessary or appropriate at that time. Doc. 43. The Federal Public Defender was ordered withdrawn from the representation of defendant. Id.

7. From mid-April through mid-May 2014, defendant engaged in a campaign of filing nonsensical, handwritten (for the most

9

part) documents.  Those that were filed starting on April 16, 2014, going through May 14, 2014, are listed below:

a.   On April 16, 2014, he filed a document titled "Order Removing Counsel and Notice Sui Juris."  Doc. 33. This item was filed while the Office of the Federal Public Defender was serving as defendant's attorney.  Nothing contained in the document could be viewed to be a valid objection to any conduct on the part of court-appointed defense counsel.  Rather, the "objections" in the document dealt primarily with rulings the magistrate judge had made and the fact that the magistrate judge (to whom defendant referred as "an administrative hearing officer") is the one who made the rulings.  Id. at 2d page, ¶ 3.  The document contained what purported to be an "order" by defendant that a new arraignment hearing be held "so that [he] may be afforded the opportunity to have the cause and nature of the charge explained to [him] so that [he] understands the cause and nature of the alleged 'charge'."  Id. at 3d page, ¶ 6.

b.   Also on April 16, 2014, he filed a document that purported to be a counterclaim by defendant against Saleem. Doc. 38.  The final paragraph of this document stated:

I do, hereby order the release of Christopher Robert Weast on or before Thursday, the seventeenth day of April, Two-Thousand Fourteen AD

10

in the year of our Lord, and our Lord as my
witness, make it so.

Id. at 8th page.  It was signed "Chris Weast" on a line over

the words "Sovereign Child of God."

c.   On April 18, 2014, he filed a document titled

"Decree Absolvitor."  Doc. 39.  The document purported to be

an order signed by defendant.  It starts with a heading

"Notice of Understanding and Decree Absolvitor Granted by

and through the Authority of God, the Lord Almighty."  Id.

at 2d page.  The eighth and ninth paragraphs of the document

and the concluding "order" were worded as follows:

> 8.   It is my understanding that for this court to
>      assume Jurisdiction beyond this point, would
>      be an act of complete lawlessness by the
>      members of this court.
>
> 9.   It is my understanding that this, my Decree
>      Absolvitor, upon being entered on and for the
>      record, without objections which also state
>      their authority over my understanding as well
>      as factual evidence to accompany that alleged
>      authority, will render my understandings the
>      law in this alleged code violation, and will
>      conclude all matters of this alleged code
>      violation per this, my Decree Absolvitor.
>
> It is hereby ordered and adjudged that this
> Decree Absolvitor be granted Dei Gratia.
> Furthermore, it is ordered that Christopher Robert
> Weast be released from the custody of Rodney W.
> Chandler and the Federal Correctional Institution,
> located in Fort Worth.  It is also ordered and
> adjudged that Aisha Saleem and the alleged
> "Plaintiff", "United States of America" also known
> as the "United States", return all property taken

11

> from 833 Hallvale Drive, Fort Worth, Texas [76108]
> on July 10, 2012.  All items are to be returned in
> the same condition as they were in when said items
> were stolen.  It is furthered ordered and adjudged
> that any and all charges associated with this
> matter, be dismissed with prejudice.

Doc. 39 at 3-4, ¶¶ 8-9.  Below his signature he wrote

"[t]his is my Sovereign decree as God as my witness."  Id.

at 5.

d.   On April 21, 2014, he filed a document titled

"Motion for Revocation of Detention Order."  Doc. 40.

Included in this document was the statement "I also order

and command this court to reveal the Jurisdiction this code

violation is ruled by, on and for the record."  Id. at 4.

e.   Also on April 21, 2014, he filed a document titled

"Affidavit of Fact," doc. 41, which stated, inter alia,

above defendant's signature (on a line over the word

"Sovereign") the following:

> My name is Chris Weast not CHRISTOPHER ROBERT
> WEAST.  I have a good faith belief that the name
> "CHRISTOPHER ROBERT WEAST" is in fact a legal
> entity which belongs to the corporation known as
> the "United States".  I, Chris Weast, on the other
> hand, am a living, breathing soul belonging only
> to God as one of his children.  I am Sovereign and
> therefore neither subject to, nor slave to any
> person and/or corporation.

* * * * *

12

This court has failed to reveal, on and for the record, which jurisdiction the court is operating in, in order to hear this alleged code violation.  This court is operating in complete secrecy and complete lawlessness.  This court is assisting Aisha Saleem in her lawlessness by secreting all documents I file, from the record.

* * * * *

This court does not have my consent to hold me subject to this alleged code violation nor does Aisha Saleem or her alleged client, "United States of America".  I am not a subject of Aisha Saleem. I am not a subject of "United States of America". I am not a subject of this court.  I am not a subject of Terry Means.  I am not a subject of Jeffery Cureton's.  I should be released immediately and this alleged code violation dismissed until such time that Aisha Saleem can provide, on and for the record, factual evidence and a witness with firsthand knowledge the constitution and codes applicable to me.

Aisha Saleem is guilty of kidnapping, conspiracy to commit kidnapping as well as trespassing on my Sovereign being and soul.

I declare, as God as my witness that the foregoing facts are true and correct.

Id. at 1st through 3d pages.

f.   On April 23, 2014, he filed a document titled "Written Objections (Relates to Motion Referred to Magistrate Judge Cureton)" in which he objected, inter alia, to "any non-judicial decision making and all administrative hearings and/or administrative rulings." Doc. 46 at 2d page.

g. Also on April 23, 2014, he filed a document titled "Letter to Clerk of the Court" in which defendant stated above his signature that:

> If the court has decided to dismiss this code violation based on its lack of Jurisdiction due to no factual evidence and a witness with firsthand knowledge the constitution and codes are applicable to me ever being entered, on and for the record, by Aisha Saleem then send me a copy of the dismissal along with the release papers to be freed from Rodney W. Chandler's custody at FCI Fort Worth. Be sure the copies are signed by the judge and stamped by the court.

Doc. 47 at 3d page.

h. On April 24, 2014, he filed a document addressed "To the clerk of the Court" by which he requested a copy of all documents filed "in the alleged code violation numbered 4:14-CR-023-Y" and "a copy of any document which was filed and subsequently removed from the record . . . ." Doc. 48.

i. On April 29, 2014, defendant filed another purported counterclaim against Saleem. Among the nonsensical statements in this document was a repeat of defendant's assertion that "[he is] not a subject of, nor slave to, 'United States of America,' Aisha Saleem's alleged client." Doc. 49 at 2d page, ¶ 8.

j. On May 1, 2014, he filed a document titled "On and For The Record Objections" in which he objected to about

everything that had occurred in this case up to that point in time, even those things to which he had assented at earlier stages in the proceedings.  Doc. 50.  Included in this document was an objection that "I further object to the alleged arraignment hearing held on 2/21/2014 on grounds that I did not, nor do I now, understand the cause and nature of the alleged code violation."  Id. at 2d page, ¶ 5. Defendant signed this document "Chris Weast."

     k.   On May 6, 2014, defendant filed what appears to be a typewritten version of the handwritten "On and For The Record Objections" he had filed on May 1, 2014.  This time he used the name "Chris Robert" in signing the document. Doc. 54 at 6th page.

     l.   On May 12, 2014, again using the name "Chris Robert" (this time on a signature line over the words "Chris Robert - Sui Juris, Sovereign Aboriginal Natural Person Domiciled Abroad Without Prejudice 1-207"), defendant filed a document titled "Notice of Exception to Plea Entered and Change of Plea."  Doc. 55.  This document had the following text:

> I, Chris Robert, do hereby make this my
> notice of exception and objection to the "plea" I
> was coerced into making on February 21, 2014 due
> to the fact that I was under severe threat and
> duress as well as the fact that I was not afforded

the opportunity to enter a knowing and willful plea with an honest Understanding of the Cause and Nature of the alleged "cause" and/or "case".

2.    I, Chris Robert, was mislead to either through either Mistake of Fact, Mistake of Law, misrepresentation, fraud, constructive fraud, and/or coercion.  This revocation of the "NOT GUILTY PLEA" for CHRISTOPHER ROBERT WEAST is effective from the date of the Clerk of the Courts file stamp shown at the top of this document.

3.    As of the date of the Clerk of the Courts file stamp shown at the top of this document, CHRISTOPHER ROBERT WEAST amends his plea to a plea of INNOCENT.

4.    CHRISTOPHER ROBERT WEAST strenuously maintains his innocence.

Id. at 1st page.

m.    Again using the name "Chris Robert," defendant filed another document on May 12, 2014, titled "Verified Decree Absolvitor."  Doc. 56.  Included were the following statements:

12.    It is my understanding that as an Aboriginal Sovereign Man Domiciled Abroad and currently an inhabitant of the Republic of Texas, I am a Sovereign and therefore, no DIVERSITY exist in order for this court to have jurisdiction.

13.    It is my understanding that this court lacks both In Personam and Diversity jurisdiction over me.

14.    It is my understanding that either through mistake of fact, mistake of law, misrepresentation, fraud, constructive fraud, and/or coercion, I was led to believe I was

"CHRISTOPHER ROBERT WEAST" when in fact, I am
Chris Robert.

\* \* \* \* \*

19. It is my understanding that by
reason of the above stated understandings and
good faith belief, I am a Sovereign
Aboriginal Natural Person of the Earth
Domiciled Abroad and therefore, have not ever
been DOMICILED in the "UNITED STATES", the
"UNITED STATES OF AMERICA", "WASHINGTON
D.C.", its "TERRITORIES", the "DISTRICT OF
COLUMBIA", any "STATE", and/or any other
derrivative of the "UNITED STATES"
government.

Id. at 2d page, ¶¶ 12-14, 19.

n. Similar nonsensical documents were filed by

defendant (i) on May 15, 2014 (titled "Oral Hearing

DEMANDED, Motion to Dismiss 'Case in Error', Mandatory

Lawful Judicial Notice", doc. 59), (ii) on May 16, 2014

(titled "Motion to Quash Indictment for Improper Grand Jury

Procedures", doc. 61), (iii) another on May 16, 2014 (titled

"Motion to Compel Law Enforcement Officials to Turn Over and

Advise the Prosecuting Attorney of All Information Acquired

During the Course of the Investigation," doc. 62), (iv) a

third on May 16, 2014 (titled "Verified Motion to Quash

Indictment/Verified Motion to Dismiss Indictment," doc. 63),

and (v) on May 20, 2014 (titled "Motion to Quash the

Indictment," doc. 66).

17

8.   On May 14, 2014, a two-count superseding indictment was filed, charging defendant in Count One with Possession of Child Pornography and in Count Two with Receipt of Child Pornography. Doc. 57.   Judge Means referred the case to the magistrate judge for arraignment on the superseding indictment, and ordered that the parties appear before Judge Cureton on May 21, 2014, for the arraignment hearing.   Doc. 60.

9.   On May 21, 2014, Judge Cureton attempted to hold an arraignment hearing.   Doc. 64.   Because of defendant's unresponsiveness, and disruptiveness, the magistrate judge entered a plea of not guilty for defendant.   Doc. 117 at 5.   The court is setting forth below the exchanges between the court and defendant at the hearing:

> THE COURT:   . . . .   Would you please state your full name for the record, beginning with Mr. Weast?
>
> DEFENDANT WEAST:   I'm sorry?
>
> THE COURT:   Would you state your full name?
>
> DEFENDANT WEAST:   Are we on the record?
>
> THE COURT:   We are on the record.   Would you please state your full name for this record?
>
> DEFENDANT WEAST:   Would I --
>
> THE COURT:   No.  State your name for the record, Mr. Weast.
>
> DEFENDANT WEAST:   Would I be able to have my hearings in front of the sitting judge?

18

THE COURT:  This is a preliminary hearing for a not guilty plea or arraignment.  You don't have a right to have the consent or not consent to this preliminary proceeding.  You will have your --

DEFENDANT WEAST:  Does --

THE COURT:  Just a moment when I was talking, Mr. Weast.  This is what I warned you about at the last hearing.

DEFENDANT WEAST:  I take exception --

THE COURT:  I hereby enter a not guilty plea on behalf of Mr. Weast to all charges against him in the superseding indictment.  He is remanded to the custody of the United States Marshal.

Mr. Weast, I can't warn you enough not to do this behavior --

DEFENDANT WEAST:  I take exception to the tone you're taking with me --

THE COURT:  You will be before the district judge from here on.

DEFENDANT WEAST:  Thank you.

THE COURT:  The judge will enter an order setting your trial, and it will set forth all the instructions leading up to trial.

If you would just follow the procedures and represent yourself like you told me you were able to, you would be able to participate in these proceedings.

DEFENDANT WEAST:  I take exception --

THE COURT:  I enter a not guilty on your behalf, which I assume is what you want to do.  You don't want to plead guilty, right?  Are you wanting to plead guilty today?

> DEFENDANT WEAST: I take exception to the tone
> you're taking with me and the --
>
> THE COURT: That's fine. You're remanded to the
> custody of the United States Marshal.
>
> DEFENDANT WEAST: I take exception to the
> officers, too --
>
> THE COURT: Your exception is noted for the
> record.

Id. at 3-4.

10. On May 21, 2014, Judge Means issued a new pretrial and scheduling order, resetting the case for a jury trial on July 28, 2014. Doc. 65. The following day, on May 22, 2014, Judge Means issued an order directing the clerk to reassign this case to another judge because of his desire, having taken senior status, to have the case reassigned to an active-status judge. Doc. 67. The case was reassigned to the undersigned.

11. Because a superseding indictment adding a count had been filed since the Faretta hearing conducted on April 22, 2014, the court, acting through the undersigned, issued an order May 23, 2014, scheduling a hearing for May 28, 2014, so that the issue of defendant's self-representation could be considered further. Doc. 69.

12. On May 27, 2014, the court set aside the scheduling order issued by Judge Means on May 21, 2014, and replaced it with

20

a new scheduling order that kept the July 28, 2014 trial date. Doc. 71.

13.  On May 28, 2014, the court attempted to conduct the hearing set by the May 23 order, but was unsuccessful because of defendant's disruptiveness, declinations to respond to the court's questions, and general lack of cooperation.  Doc. 108. Thus, the court was unable to develop a record that would enable the court to determine whether defendant's pro se representation was knowing and voluntary as to the offenses charged by the superseding indictment, which by the addition of Count Two significantly increased defendant's punishment exposure.

Because of what the undersigned had observed by way of defendant's court filings and courtroom conduct up to that point in time, the court expressed a concern to the Assistant United States Attorney attending the hearing as to whether there should be an evaluation of the defendant's mental competency to stand trial.  Id. at 12.

14.  In early June 2014, defendant resumed his filings of unusual documents:

a.  On June 2, 2014, he filed a document titled "Demand for a Copy of the Transcript The May 28th Hearing," again using the name "Chris Robert," in which he advised the court that he was a "Sovereign National of the Republic of

21

Texas and this court must recognize [him] as such." Doc.
73.

b.    Another was filed on June 3, 2014, titled
"Mandatory Judicial Notice Superseding Information Court Has
No Jurisdiction Making an Offer of Proof on and for the
Record," which again was nonsensical gibberish.  It included
the statement that "[t]his alleged crime allegedly took
place within the Republic of Texas and therefore this court
has no Jurisdiction over a State case." Doc. 75 at 1st
page.

c.    A third was filed June 3, 2014, bearing the title
"Demand for Production of Documents." It included the
statement that "[p]arties specifically named are in ALL CAPS
and are all being individually served, as well as those
named in the body FOIA demand and addendum." Doc. 74 at 1st
page.

15.   On June 4, 2014, the government filed a motion for
mental competency examination and hearing for a determination as
to whether defendant had the competency to proceed to trial.
Doc. 77.  As requested by the motion, the court, by an order
signed June 5, 2014, ordered a hearing to be held on July 9,
2014, appointed the Federal Public Defender for the Northern
District of Texas to represent defendant with respect to the

hearing, and directed the government to cause a psychiatric or psychological examination of defendant so that a report of the examination could be considered in connection with the hearing. Doc. 78.  On July 3, 2014, the hearing date was ordered changed to July 8, 2014.

16.  In mid-June 2014, defendant resumed his practice of harassment of the court and defense counsel by bizarre written filings:

a.  On June 18, 2014, he filed a document titled "Affidavit of Fact Commercial Rebuttal Affidavit."  Doc. 96. It was three pages of handwritten gibberish signed by "Chris Weast, sui juris, ex rel."

b.  Also on June 18, 2014, he filed a document titled "Questions to the Court," doc. 95, which was not signed.  It included a paragraph stating "[i]s it true as an heir elect, I am also an heir to the Sovereign Powers granted to me by my Creator and therefore, this court has no jurisdiction?" Id. at 1.  The document concluded with a recitation stating that defendant "verif[ies] that I am expressly not a 'citizen of the United States' aka Federal citizen," Id. at 5.

c.   On June 20, 2014, he filed a lengthy handwritten document that had the following caption:

```
Christopher Robert Weast, sui    )
juris                            )
Non-Corporate Sovereign Entity   )
                                 )in re:  4:14-CR-00023-A
V.                               )
                                 )ADMINISTRATIVE LAW JUDGE
UNITED STATES OF AMERICA         )JOHN MCBRYDE
FICTITIOUS CORPORATION           )PRINCIPLE TRUSTEE OF TRUST
CO-TRUSTEE OF TRUST              )FIDUCIARY RELATIONSHIP
```

and was titled "Special Appearance Only Coram Non Judice Objection for Lack of Ratification of Commencement FRCP Rule & Civil 17(a) interest party and Rule of Evidence 602 Lack of Personal Knowledge."  Doc. 98.

d.   On June 23, 2014, he filed a lengthy handwritten nonsensical document titled "Copyright Truth Affidavit." Doc. 100.

e.   On June 27, 2014, defendant made what might have been his most curious filing.  It consisted of a copy of the May 14, 2014 superseding indictment, a copy of the cover page of that superseding indictment signed by the undersigned, and a copy of the cover page of the original February 12, 2014 indictment signed by the magistrate judge, with the signature "Christopher Robert Weast" written at the end of the superseding indictment, again at the end of the cover page for the superseding indictment, and again at the

24

end of the cover page of the original indictment, with the
words "Indorsement/Indorsee" printed below the line for
defendant's signature at each place.  Doc. 101.

B.    Defendant's Conduct at the July 8, 2014 Hearing that
      Combined with His Earlier Conduct Led the Court to Reappoint
      Counsel for Defendant

The mental competency hearing commenced as scheduled on
July 8, 2014, in the undersigned's regular courtroom on the
fourth floor of the courthouse.  As the record of the hearing
reflects, the court was unable even to put of record the style of
the case or the purpose for the hearing because of defendant's
disruptiveness and shows of disrespect for the court.  Doc. 110
at 6-7.  The following exchange then occurred:

        THE COURT:  Is it your plan to continue to
    interrupt so we cannot proceed?

        THE DEFENDANT:  Sir, like I said, I'd like to
    present this document to the Court.  You can have your
    document.  This is the document that the Court is
    actually proceeding against is this bond.

        THE COURT:  Okay.  Mr. Weast, I would appreciate
    it if you would --

        THE DEFENDANT:  I am not consenting to anything
    that this Court does, sir.  You do not have
    jurisdiction to be doing anything until this Court
    proves it has jurisdiction to do anything.  This court
    is a court of limited jurisdiction, if any jurisdiction
    at all, which is operating in admiralty jurisdiction.
    This court is operating under an Article IV at best,

and I am part of, we, the people, and I do not consent
to anything this court is trying to do today.

Id. at 7.

The court then took a recess so that alternatives for
proceeding further could be considered.  About one-half hour
later the hearing resumed, with the defendant in an area outside
the courtroom with his attorney but in communication with the
courtroom through a telephone.  Id. at 10-11.  Because of the
inadequacy of that method of conducting the hearing, the court
recessed again until 2:00 p.m. so that additional equipment might
be installed to assist in going forward with the hearing.  Id.
Defendant was informed by the court through the telephone
communication that the court's plan was to have a better
telephone set up at 2:00 p.m. and that if he would assure the
court that he would not disrupt the proceedings, he would be
allowed to come back into the courtroom at 2:00 p.m. but that,
otherwise, the hearing would proceed at 2:00 p.m. with him out of
the courtroom but with better equipment.  Id. at 12-13.  Then,
the following exchange occurred:

    THE COURT:  . . . .

    Do you wish to commit that you will conduct
yourself properly, if you come back into the courtroom?
You can respond to that.

    THE DEFENDANT:  As one of the people of the United
States, I want this court to recuse the judge because

26

> this judge has no jurisdiction, and this attorney
> standing on the other side of this fence has no
> authority to be speaking on my behalf.
>
> DEPUTY U.S. MARSHAL:  Will you do better at 2:00
> or not was the question.  I just want an --
>
> THE DEFENDANT:  I'm not answering no questions --
>
> DEPUTY U.S. MARSHAL:  Okay
>
> THE DEFENDANT:  -- because this Court has no
> authority to be --

Id.

Shortly after 2:00 p.m. the hearing resumed in a
chambers/courtroom area on the second floor of the courthouse,
which was under renovation in anticipation of use by an incoming
district judge.  The defendant along with a Deputy United States
Marshal were in a conference room in close proximity to the
courtroom with a video conferencing setup, giving the defendant
an opportunity to see from his location the interior of the
courtroom and giving those in the courtroom the ability to
observe the defendant.  The audio was controlled in such a way
that the defendant could not disrupt the proceedings but could
communicate with the courtroom when authorized by the court to do
so.  Id. at 14-15.  Saad and Fleury were present in the courtroom
representing defendant in connection with the mental competency
hearing.

27

The court informed defendant that the court's preference would be for him to be in attendance at the courtroom, and that his presence in the courtroom would be allowed if the court thought it could rely on him to conduct himself appropriately. The following exchange occurred:

> THE COURT: Okay. This is directed to the defendant.
>
> Mr. Weast, I would much prefer that you be in the courtroom attending the hearing. And if I had some assurance from you that I felt that I could rely on that you would conduct yourself appropriately, I would have you come into the courtroom.
>
> Do you wish to give me any kind of assurance that you would conduct yourself appropriately if I were to allow you to come into the courtroom?
>
> THE DEFENDANT: Yeah, I have a question for you, sir. Why are you practicing law from the bench, telling the USA about the competency hearing, and why is there an attorney in there who I did not hire, who I do not have a contract with, and is in there supposedly representing some piece of property that is not me?
>
> THE COURT: If I were to allow you to come into the courtroom, Mr. Weast, would you be cooperative and not interrupt the proceedings and respond as appropriately when the Court makes an inquiry of you?
>
> THE DEFENDANT: Would you please answer my question, sir?
>
> THE COURT: Okay. I take it that you're not willing to do that. If there's any change in your attitude --
>
> THE DEFENDANT: I'm assuming that you're not going to answer my question.

THE COURT:  Okay.  Okay.  We can proceed then.
Id. at 15-17.

The government called as a witness Randall Rattan ("Rattan"), the forensic psychologist at the Federal Correctional Institution in Fort Worth who had prepared a report of his attempts to evaluate whether defendant was able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.  Id. at 17-20.  While, because of defendant's refusal to cooperate, Rattan could not make a definitive diagnosis of defendant's mental condition, he did have enough information to suggest to him that defendant had the competency to proceed to trial.  Id. at 20.  Rattan's report was received as an exhibit.  Id. at 20-21.

Rattan was present in the courtroom earlier the day of the hearing, and observed defendant's conduct when the court was attempting to conduct proceedings in the fourth floor courtroom. He said that what he observed did not affect his opinion relative to defendant's competency to proceed to trial, giving the following explanation:

> Q.   (BY MS. SALEEM) And can you explain why that
> -- why it did not change?
>
> A.   Mr. Weast's focus on the illegitimacy, the
> insufficiency of the Federal Government as to
> jurisdiction, and to identification, and just the
> tactic of not playing by the rules, are kind of

standard tactics, if you will, of the loosely rubricked
group called sovereign citizens.  It's not uncommon at
all.  As a matter of fact, it tended to support the
position that he -- his anti-government leanings and
views.

          Q.  So, in other words --

          THE COURT:  Let me ask a question.  Is that a
cult, or what is that you're calling sovereign
citizens?  What -- what is that?

          THE WITNESS:  That is a complex question, Your
Honor.  Probably not a cult in the sense that it's not
a set of religious views that are the core features of
it.  The core features being the insufficiency of
governments to sanction individuals.  It's a group of
individuals who we would say have overvalued ideas that
are just, almost by definition, deviant, that most
don't hold, and in this case, regarding the
insufficiency of the federal government to govern.

          And there's a -- good literature on these folks
and their tactics, and he appears to be a member of
that very loosely-banded community.  These are not
bizarre or unusual beliefs or practices for that subset
of individuals.

Id. at 21-22.

     Rattan added that the conduct of defendant he had observed

earlier in the day was "certainly not characteristic of

[defendant's] day-to-day behavior at our institution."  Id. at

22-23.  The witness expressed his opinion that the courtroom

conduct of defendant he observed had as its goal the avoidance of

a negative outcome for defendant.  He explained:

          THE COURT:  Do you have any indication that he's
able to control his conduct in the courtroom?

THE WITNESS:  He has certainly controlled his conduct reasonably well throughout the three to four months that we've had him.

THE COURT:  No, I'm talking about in the courtroom.

THE WITNESS:  Based on this morning's behavior, I don't believe so.  I think he's -- it's both a tactic, and it's also, I think a function of the passion with which he wishes to avoid a negative outcome here today.

THE COURT:  In other words, you think he's doing it on purpose to obstruct the trial?

THE WITNESS:  I do.

Id. at 24.

The defendant, through the video conferencing setup, was permitted to cross-examine Rattan, and his questions were directed to developing the limited opportunity Rattan had to observe him.  Id. at 25.  After defendant moved to strike Rattan's testimony, the court inquired of defendant as to whether he had anything else to ask the witness, to which question the defendant responded:

THE DEFENDANT:  Like I said, I'm -- I don't even understand why we're here.

Why are we here, sir?  Because I'm sitting here in a room away from the courtroom, and you're up there having this mock thing that you've got going here.  I move to -- for you to recuse yourself, Judge, because you are clearly biased in these matters, and you've proven that by practicing law from the bench, and you're the one that said to the -- I'm not sure who it was because Aisha Saleem did not show up for the government that day, but you're the one that put the

31

thought in his head to file this motion for a
competency hearing.

And I move that you -- you, sir, need to take
yourself off this case because you're clearly biased
and emphatic because you have done nothing but --
whenever Aisha Saleem filed for the government, you
ruled on this motion way before I had a chance to even
put in a response to it as we, the people, as we the
sovereign people sitting right here, I'm sorry if it
doesn't bode well with all the people that are sitting
here from the British government, but that is the way
it goes here in the United States.  We are sovereign as
-- as of the Treaty of Paris 1783, so I'm not sure what
we're doing here.

THE COURT:  Okay.

THE DEFENDANT:  I'm not your property.

Id. at 26-27.

After the court ruled that the court could not find from a

preponderance of the evidence the facts necessary to cause

defendant to be determined to be mentally incompetent for trial

purposes, the court sought to have an arraignment on the third

superseding indictment.  Id. at 28-30.  Because defendant would

not acknowledge having received the third superseding indictment,

the court had it read aloud, following which the court inquired

of defendant as to whether he pleaded guilty or not guilty.  Id.

at 31-35.  Instead of responding to that question, defendant

said, "[s]ir, what jurisdiction is this court operating under?"

Id. at 35.   The following exchange then occurred:

THE COURT:  Mr. Weast, do you wish to respond to
my question asking whether you plead guilty or not
guilty?

THE DEFENDANT:  I'm -- sir, I'll get to your
question in a minute.  I'm only trying to ask you:
What jurisdiction is the court operating under?

Isn't it true that the court is operating under
admiralty jurisdiction?

THE COURT:  Okay.  I'll enter a plea of not
guilty.

THE DEFENDANT:  That is not -- you are not allowed
to enter a plea of not guilty when I have not refused
to plead.

THE COURT:  Okay.  I'll ask you again then and
give you an opportunity to plead.

What do you plead to the offense charged by the
Third Superseding --

THE DEFENDANT:  And again, I'm going to ask you --
I'm not refusing to plead.  I'm asking you:  What
jurisdiction is the Court trying to proceed under, sir?

THE COURT:  Okay.  I'll enter a plea of not --

THE DEFENDANT:  I --

THE COURT:  I'll enter a plea of not guilty on
behalf of the defendant as to both counts of the
indictment, and that's the Third Superseding
Indictment.

Id. at 35-36  Again, the court was, in effect, foreclosed from

meaningful inquiry into the subject of whether defendant's pro se

representation was knowing and voluntary as to the charges against him in the superseding indictment.

The court then explained to defendant the alternatives the Supreme Court said a district court had in dealing with a disruptive defendant, as expressed in Illinois v. Allen, 397 U.S. 337, 343-44 (1970); and, the court informed defendant that based on what the court had observed the court was of the belief that the court could and should order that defendant be represented by counsel, particularly bearing in mind that the defendant could and should be prevented from being in the courtroom.  Id.  The court then solicited the defendant's comments on the court's remarks, and the following exchange then occurred:

> THE COURT:  . . . .
>
> Do you have any comments you wish to make on that subject?
>
> THE DEFENDANT:  Actually, I didn't hear what you said because everybody in here -- they are jerks.  Can you move me out?  They are trying to keep me from this, and this is one sham of a hearing.  This is nothing but a kangaroo court.  This is worse than any state court I've ever had to deal with.  This is the -- absolutely a corrupt court.  This kangaroo court is -- you want your piece of property, come get it.  It's right here. It's called a birth certificate bond and it's a license.
>
> You tell me what part of this I'm not understanding, sir.  You tell me what your definition of the word "understanding" is.
>
> THE COURT:  Mr. Weast --

THE DEFENDANT:  What definition are you using?

THE COURT:  Mr. Weast, I would love to give you an opportunity to join us in the courtroom and conduct yourself properly and continue to represent yourself, but you've indicated to me that you simply cannot do that without being disruptive.

Is there any possibility that you would change your mind?

THE DEFENDANT:  How am I being disruptive, sir? Because I'm asking questions?

THE COURT:  Say whatever you want to say at this time.  I'm asking you a question:  Do you want to try to join us in the courtroom?

THE DEFENDANT:  I know what you want.  You want me to answer your question, so that you have some kind of power over me, sir, and you want to hand this power to those attorneys out there, who I'm just going to add to the lawsuit that I'm going to sue them, too.

So how am I supposed to answer your question, if you won't answer my question as to how I'm being disruptive?

Id. at 37-39.

That exchange immediately preceded the ruling Saad has asked the court to reconsider.  Supra at 2.  The court informed Saad and Fleury that the court would reconsider the ruling if Saad and Fleury were to report to the court that defendant can conduct himself properly and not be disruptive in the courtroom, adding the explanation that:

I don't think we can have a trial with the defendant in the courtroom without him being disruptive and preventing the proceedings from going forward, and I

> don't feel comfortable with him being outside the
> courtroom during a trial or other proceedings without
> an attorney being in the courtroom representing him, so
> that's where we are.

Id. at 39-40.

The hearing concluded with the court having Saleem state on
the record for the benefit of the defendant the penalties the
defendant is subject to if he is found guilty of the offenses
charged by the third superseding indictment, consisting of a term
of imprisonment of ten years as to Count One and a term of
imprisonment of at least five years and as much as twenty years
as to Count Two, for a potential total of thirty years of
imprisonment, plus payment of a $250,000 fine as to each count,
plus service of a term of supervised release of five years up to
life as to each count.   The court suggested to defendant that he
take into account the seriousness of the charges against him in
making whatever decisions he makes, and advised the defendant
that the court hoped that his decision finally is that he will
cooperate and not be disruptive in the courtroom.   Id. at 40-41.

II.

### Reasons for Denial of the Motion for Reconsideration

While the July 10, 2014 motion for reconsideration seems to
recognize the propriety of the determination by the court that
defendant has been so disruptive that he should not be permitted

36

to be in the courtroom during his trial proceedings, it fails to provide any suggestion that defendant has indicated in any way that he will not continue his disruptive courtroom antics.  The supplemental motion makes clear that the defendant is refusing to cooperate on the most basic level.  Supra at 2-3.  In other words, the defendant has declined to accept the court's offer to change the court's rulings upon genuine commitments by defendant that in the future he will conduct himself properly in courtroom proceedings.

For the reasons that are obvious from the foregoing historical account, supra at 3-36, unless defendant's attitude were significantly to transition back to where it started in February 2014, and was maintained during the first two months of the pendency of this case, there is no way that meaningful courtroom proceedings, including a jury trial, can be conducted if defendant is in the courtroom.  The appearance is that defendant has the level of self-discipline that he can conduct himself properly in the courtroom, but he has made the conscious decision that his best defense strategy is to insist upon representing himself and, in doing so, to engage in whatever tactics he thinks will cause the conduct of pretrial proceedings or a jury trial to be meaningless exercises.  The record made thus far in this case indicates that witness Rattan correctly

37

diagnosed defendant's courtroom tactics as "a function of the passion with which he wishes to avoid a negative outcome" or, in other words, "to obstruct the trial."  Id. at 24.

In Faretta, the Supreme Court noted that "the trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist conduct."  422 U.S. at 834 n.46.  In Illinois v. Allen, the Supreme Court directly held that a disruptive defendant can lose rights guaranteed to him by the Sixth Amendment.  397 U.S. at 346.  The Fifth Circuit recognized in United States v. Long that a defendant can waive his right to self-representation, holding that "[e]ven if [the defendant] had clearly and unequivocally asserted his right to self-representation, that right may be waived by his actions."  597 F.3d 720, 726 (5th Cir. 2010).  Here, defendant has waived any right he otherwise might have to self-representation by deliberately engaging in serious and obstructionist conduct.

The court repeats that if the court were to be provided a genuine and sincere assurance by defendant that he will conduct himself properly in future court proceedings if he is allowed to be in the courtroom, the court would reconsider the self-representation ruling.  For the time being,

The court ORDERS that the July 10, 2014 motion for reconsideration be, and is hereby, denied, and that the Federal

38

Public Defender for the Northern District of Texas continue to be counsel for defendant in this case.

The clerk of court is to provide a copy of this order directly to defendant as well as providing copies to counsel.

SIGNED July 15, 2014.

                                    _____
                                    JOHN McBRYDE
                                    United States District Judge