# ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2014 JUL 16 PM 12: 23

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

UNITED STATES OF AMERICA

v.                                                    No. 4:14-CR-023-A

CHRISTOPHER ROBERT WEAST (01)

## GOVERNMENT'S RESPONSE TO WEAST'S MOTIONS IN LIMINE AND NOTICE OF INTENT TO INTRODUCE EVIDENCE UNDER 404(b), AND OTHER EVIDENCE

The United States Attorney for the Northern District of Texas, by and through the undersigned Assistant United States Attorney, files this response to Weast's motions in limine and provides this notice of the government's intent to introduce evidence under Federal Rules of Evidence Rule 404(b) and other evidence:

To the extent that Weast's motion requests the government preview its legal theory regarding the admissibility of evidence in its case or requests a hearing outside the jury's presence to consider uncharged conduct that is inextricably intertwined with his charged offenses, the government objects.   Also, Weast filed a separate motion regarding prior convictions.   Because it is related to the government's notice, the government will also address the convictions in this response.

Having received Weast's request for notice of evidence of misconduct or other uncharged acts, the government hereby provides this notice.

**Notice of 404(b) Evidence - Page 1**

## Introduction

The government charged Christopher Robert Weast by superseding indictment with one count of Possession of Child Pornography, a violation of 18 U.S.C. § 2252A(a)(5)(B) and one count of Receipt of Child Pornography, a violation of 18 U.S.C. § 2252A(a)(2)(A).   In trial, the government anticipates the possibility that it may introduce (1) evidence of an undercover officer's downloads of child pornography from defendant Weast's computer; (2) evidence of file names suggestive of child pornography found on Weast's computer and external hard drive; (3) evidence of defendant's interest in minors; and (4) evidence of non-pornographic videos taken by Weast.

As will be explained below, this evidence will not be offered to show Weast's bad character or to show propensity evidence but rather to prove identity, knowledge, intent, absence of mistake or accident and proof of motive.

## Notice is timely

The government must provide reasonable notice prior to trial or, for good cause, during trial.   FED. R. EVID. 404(b)(2).   The evidence the government intends to introduce has been provided or made available to defense counsel either at her initial appointment or following re-appointment for trial.[1]   Having received defendant's motion for notice regarding acts of misconduct or extraneous offenses filed on July 14, 2014, the government now provides this notice, prior to trial, of its intent to offer evidence pursuant to Rule 404(b).

---

[1]The government has not provided copies of the contraband in this case but has made, and continues to make, the computer/forensic evidence available for review at the Fort Worth Police Department.

**Notice of 404(b) Evidence – Page 2**

**Notice**

Specifically, the government anticipates introduction of the following evidence:

1. The government has charged by indictment six images of child pornography in Count One and one video of child pornography in Count Two.  The government intends to offer the indicted still images and charged video (and/or still images captured from the charged video);

2. Exhibits containing file names indicative of child pornography and testimony about other uncharged files and videos found on the defendant's computer and external hard drive;

3. Testimony about the undercover officer's downloads of child pornography files from Weast's computer, which occurred over several days.  The government may also introduce those downloaded images of child pornography as evidence in trial;

4. Video files (and/or still images taken from those files) titled "Upshorts" and "Laying Out" that were taken by Weast, depict his face, and which also focus on the clothed, lower torso or genital area of a minor; other still images taken by Weast that focus on the same minor's clothed, genital area, all of which were found on the external hard drive;

5. A video of the nude upper torso of a minor, which was found on the eternal hard drive;

6. Testimony that Weast attempted to "date" and showed unnatural interest in a minor;

7. Evidence that Weast was investigated for improper contact with a minor; and

8. Evidence of Weast's prior misdemeanor conviction for Theft of Services in 2004 and a deferred adjudication for the felony offense of Delivery of Marijuana in 1994.

The United States reserves the right to make further disclosures at a later date, but prior to trial, in the event that additional misconduct on the part of the defendant is discovered.

**Relevant Facts**

Fort Worth Police Officer Randy Watkins was working in the Crimes against Children Unit in June 2012.   As part of his duties, he engaged in undercover online investigations of individuals who were sharing child pornography using file-sharing programs.   On multiple dates beginning on June 4 and continuing through June 19, 2012, Officer Watkins downloaded images of child pornography from a computer displaying a nickname of "Chris."

Through legal process, Officer Watkins learned that the IP address connected to the computer sharing child pornography returned to a home in White Settlement, and the internet account holder was Larry Weast, the defendant's father.   Officer Watkins obtained a search warrant for the Weast residence.   When he executed the search warrant, Weast's mother told Officer Watkins that her son, Chris, had computers in his room that no one else used.   The house had multiple occupants:   Weast, his parents, and his 17-year-old niece.   There were computers located in each occupant's bedroom and in the living room.   Officer Watkins attempted to interview Weast; Weast was nonresponsive and uncooperative.   Because no one claimed responsibility for the child pornography, Officer Watkins seized all the computers in the house to determine who was sharing child pornography.

A forensic examination of the seized computers revealed that the only computer containing child pornography came from Weast's bedroom.   It also contained file-sharing software.

Additionally, a Western Digital external hard drive that was seized from Weast's bedroom contained child pornography. The charged images in Count One were located in a directory on the external drive labeled, "Practice." Within the "Practice" directory was a sub-directory called "Destiny" containing videos and still images of a clothed minor who has been identified as a friend of the defendant. The videos, which also depict the defendant's voice and face, involve close up shots of the minor's lower torso. The minor is clothed and wearing shorts; these videos and still images taken by Weast do not constitute child pornography.

Another sub-directory called "K" that was found on the external hard drive contained several videos of Weast's niece, nude from the waist up. All of the videos and images from the "K" and "Destiny" directories that the government intends to introduce in trial appear to have been taken with a cell phone.

When Weast was arrested pursuant to a federal indictment for possession of child pornography, agents interviewed his family. They advised that Weast had said that he was framed by the Fort Worth Police Department and that police had put the child pornography on his computer.

## Argument and Authorities

As part of its case in chief, the government must prove for counts One and Two that Christopher Robert Weast knowingly possessed and received child pornography-- that is, visual depictions of minors engaged in sexually explicit conduct. The government submits that all the evidence described below is relevant to show that Weast was the

individual who committed the crimes with which he has been charged and that he acted knowingly.

### 1.   Undercover investigation, images, file directory and file names of child pornography

#### a.  Inextricably intertwined evidence

The government intends to introduce testimony by the undercover officer about the files he downloaded from Weast's computer and the fact that the downloaded files came from a computer named "Chris." The government may also introduce the child pornography (a total of 66 images) downloaded from Weast's computer. Here, Officer Watkins's testimony regarding his initial investigation and how he got to Weast's home is highly probative because the evidence connecting Weast to the charged crimes is circumstantial; he has made no admissions of guilt. Officer Watkins's testimony about his initial investigation that revealed that a computer nicknamed "Chris" was sharing child pornography before he knew the defendant's identity is important to explain and complete the story of the crime at trial and necessary evidence of identification of the defendant, whose first name is "Chris."

The images Officer Watkins downloaded are needed to show that Weast "knowingly" possessed child pornography, as reflected by Officer Watkins's ability to download child pornography on multiple dates, and they establish that the computer that was sharing the child pornography with Officer Watkins was the same one seized from Weast's bedroom.

**Notice of 404(b) Evidence - Page 6**

However, before introducing the images that Officer Watkins downloaded from Weast, the government agrees to first seek permission from the Court to confirm the admissibility of such evidence.

In addition to offering the charged images and video, the government also intends to show through exhibits and testimony where the relevant evidence was found on Weast's computer and external hard drive.   For example, one exhibit depicts the file-sharing program and file names that were in the defendant's "downloads" folder at the time that his computer was seized by Fort Worth police.   Another exhibit depicts the directory and file names where the charged child pornography was found on the external drive.   Other exhibits show the locations of the "Destiny" and "K" sub-directories on the external drive and their proximity to other child pornography directories, including the sub-directory containing the charged child pornography.   The government also has exhibits that identify what files were opened on Weast's computer and what search terms were used to acquire child pornography.   These exhibits can provide highly probative evidence of knowledge and negate any claims of accident or mistake.

These exhibits all identify evidence that was contained on the defendant's computer and external drive at the time that he possessed and received child pornography and provide evidence of knowledge.   Accordingly, they are inextricably intertwined with Weast's charged conduct.   Because the contents of Weast's computer and external hard drive are inextricably intertwined with his criminal conduct, the government submits that

*all* the images of child pornography found on Weast's hard drives could be admissible as part of the same conduct or same transactions as the charged offenses.

But instead of introducing a number of other images and videos of child pornography to show Weast "knowingly" possessed illegal images, the government does intend to introduce *testimony* that Weast possessed more images of child pornography than those charged.   Uncharged images, testimony regarding the existence of any or all uncharged child pornography files, including relevant file names and directory folders, are admissible under FED. R. EVID. 402.   *See*, *United States v. Maceo*, 947 F.2d 1191, 1199 (5th Cir. 1991) ("Evidence of an uncharged offense arising out of the same transactions as the offenses charged in the indictment is not extrinsic evidence within the meaning of Rule 404(b).") ; *United States v. Morgan*, 117 F.3d 849, 861 (5th Cir. 1997) ("Evidence of criminal activity other than the charged offense is not considered extrinsic within the proscription of Rule 404(b) of the Federal Rules of Evidence if it is an uncharged offense which arose out of the same transaction or series of transactions as the charged offense,. . . if it was inextricably intertwined with the evidence regarding the charged offense, . . . or if it is necessary to complete the story of the crime of the trial . . . .")(internal citations omitted).

Here, evidence regarding the location of child pornography and the existence of numerous other file names suggestive of child pornography all provide an accurate account of the events that occurred when Weast downloaded and possessed child pornography.

### b.   Evidence of knowledge, intent, absence of mistake or accident

While this evidence is inextricably intertwined with the charged offenses, it should also be admitted pursuant to FED. R. EVID. 404(b).   For extrinsic evidence to be admissible, it must first be relevant to an issue other than the defendant's character and, second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice as well as meet the other requirements of rule 403.   *United States v. Caldwell*, 586 F.3d 338, 345 (5th Cir. 2009)(internal citations omitted); *United States v. Beechum*, 582 F2d.898, 911 (5th Cir. 1978).   Relevant evidence may be inherently prejudicial, but "it is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter under Rule 403."   *United States v. Naranjo*, 710 F.2d 1465, 1469 (10th Cir. 1983).

By pleading not guilty in this case, Weast has placed in issue his intent to "knowingly" possess and receive child pornography.   *United States v. Doggett*, 230 F.3d 160, 167 (5th Cir. 2000) (recognizing that by pleading not guilty to a conspiracy charge, the defendant placed motive, intent, knowledge, and absence of mistake at issue). Moreover, Weast has never acknowledged that he possessed child pornography, and in fact has accused the undercover officer of misconduct.

The only way, then, that the government can prove knowledge is through the introduction of circumstantial evidence such as the numbers and names of other images present on Weast's computer and external hard drive as well as other evidence that identifies the person using those devices.

The evidence the government seeks to admit is relevant to establish knowledge, to establish the identity of the perpetrator, and to prove that the video Weast received was not an accident or mistake.   Under a 403 balancing test, the evidence the government seeks to offer is highly probative and not unfairly prejudicial.

### 2. Videos and still images of the clothed minor, video of partially nude minor, efforts to date another minor

The videos and still images that the government intends to introduce of Destiny were found in a directory aptly titled, "Destiny."   These videos, entitled "Upshorts" and "Laying out," and other still images do not depict child pornography or other criminal conduct, but they do include instances where Weast's face is seen in the video or in the still images.   These videos and still images provide highly probative evidence of the identity of the individual who used the external hard drive—Weast.   Nor, as the government anticipates the defense will argue, is it sufficient for the government to merely introduce a single image of Weast's face instead of the video itself or the series of still shots taken from the videos.   Without providing the jury the context in which his face appears in the videos, the jury could misunderstand the purpose of this evidence as identifying Weast as the user of the external hard drive and computer.

Additionally, the fact that one video depicting Weast is titled, "Upshorts," provides evidence not only of his knowledge of the contents of the file but also provides some evidence of his knowledge of the contents of other files in the hard drive—as they also appear to depict what the file names suggest, child pornography.   These facts, as well as Weast's possession of numerous images of minors provide evidence that he knew the contents of the charged image files, – *i.e.*, that they depicted minors engaged in sexually explicit conduct.   *See, United States v. Layne*, 43 F.3d 127, 131 (5th Cir. 1995) (admission of additional images provides a "reasonable basis" for the jury to determine that the defendant knew the images he sent were visual depictions of minors and that he had an interest in child pornography).   The same evidence also connects Weast to the charged crimes, since the files were overt and not hidden, which signifies that the images were not on his external hard drive by accident or mistake and that he was a knowing possessor of child   pornography.

Weast also had surreptitious videos of his niece, dressing or undressing, stored in the "K" directory of his external hard drive; "K" is the first letter of his niece's name.   The government seeks to introduce one of those recordings.   Weast does not appear in this video; however, the presence of this recording on Weast's external hard drive as well as the other surreptitious recordings of Destiny confirm that the defendant is the person in the Weast household who has an interest in minor females.   This evidence is also strongly probative of Weast's guilt because both the Destiny and the K sub-directories were located

in the same "Practice" directory that contained the charged child pornography files in Count One.

Finally, these videos also establish that the charged images Weast sought—and received-- were in fact of minors engaged in sexually explicit conduct rather than, for example, adult pornography.   "Prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children....*It also may serve to identify the defendant to the crime*."   *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) (internal citation omitted) (emphasis added); *see also, United States v. Nanda*,[2] 1999 WL 294548, *6 (4th Cir. May 11, 1999) (additional photographs and chat-room dialogues were relevant to show defendant's intent, knowledge, and absence of mistake in receipt of child pornography case).

Since the government has no admissions that directly link Weast to the child pornography and he lived in a home with multiple occupants, evidence of his interest in minors provides some proof of (1) his identity as the perpetrator; (2) his knowledge that the charged images involved minors engaged in sexually explicit conduct; and (3) his possession and receipt of child pornography were not a result of mistake or accident.

---

[2]Unpublished opinion attached as Government's Exhibit A.

The government has evidence that Weast attempted to date a minor female, Q.P. At the time of the contact, the minor was approximately 16 years old; Weast was approximately 37 or 38 years old.   This female advised that Weast would text her, comment about other minor females that he would be willing to have sex with, and made other inappropriate comments to her.   Q.P. also described an incident where, though she asked him to stay out, Weast forced his way into a bathroom to look at a bathing suit he had given her to try on.   Weast made other family members think that this minor was actually trying to date Weast; however Q.P. was able to show that that was not the case.   Although this is additional evidence of Weast's interest in minors, the government agrees to approach the Court before eliciting information about this subject.

### 5.    Prior uncharged misconduct

Weast was accused of sexual impropriety with a minor male who attended daycare at Weast's home.   Weast was issued a citation that he contested; the case was eventually dismissed.   The government does not intend to introduce evidence regarding allegations of Weast's prior misconduct unless Weast opens the door to such information.   Rather, the government submits that this information may become admissible under FED. R. EVID. 608.

### 6.    Prior convictions

Weast was convicted of a Class B misdemeanor for theft of services on June 30, 2004.   He also received a two-year deferred probation for delivery of marijuana in 1994.

The government does not intend to introduce evidence regarding Weast's previous criminal conduct unless Weast opens the door to such information.   Should Weast open the door to either offense, the government will approach the Court before attempting to elicit any testimony.

## Conclusion

Most of the evidence the government seeks to offer at trial is inextricably intertwined with the crimes charged against the defendant.   Because the government's case is circumstantial, all the evidence that the government intends to introduce also goes to prove identification of the defendant and his knowledge as to the contents and the nature of the images that he possessed and received.   Accordingly, the government submits that this evidence is highly probative and is not substantially outweighed by prejudice to the defendant.   For all the above reasons, the government seeks to introduce the above-described evidence.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

AISHA SALEEM
Assistant United States Attorney
Texas State Bar No. 00786218
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile:   817-252-5455
Email: aisha.saleem@usdoj.gov

**Notice of 404(b) Evidence - Page 14**

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2014, the foregoing Government's Response to Weast's Motion in Limine and Notice of 404(b) Evidence was served by hand delivery to Angela Saad at 819 Taylor Street, Room 9A10, Fort Worth, Texas 76102.

AISHA SALEEM
Assistant United States Attorney

A

Westlaw.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

**C**
NOTICE: THIS IS AN UNPUBLISHED OPIN-
ION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. See CTA4 Rule 32.1.

United States Court of Appeals, Fourth Circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Sirish Kumar NANDA, Defendant-Appellant.

No. 97-5001.
Argued March 1, 1999.
Decided May 11, 1999.

Appeal from the United States District Court for the
Eastern District of Virginia, at Newport News, No.
CR-97-28; Raymond A. Jackson, District Judge.
Andrew Michael Sacks, Sacks & Sacks, Norfolk,
Virginia, for Appellant.

Arenda L. Wright Allen, Assistant United States
Attorney, Norfolk, Virginia, for Appellee.

ON BRIEF: Helen F. Fahey, United States Attor-
ney, Norfolk, Virginia, for Appellee.

Before WILKINSON, Chief Judge, and
HAMILTON and WILLIAMS, Circuit Judges.

OPINION
PER CURIAM.
    *1 Sirish Kumar Nanda appeals his conviction
and 33-month sentence for knowing receipt of ma-
terials depicting minors engaged in sexually expli-
cit conduct in violation of 18 U.S.C.A. §§
2252(a)(2) (West Supp.1999), 2256 (West
Supp.1999), and 2 (West 1969). Nanda contends
that the district court erred in denying his motion to
suppress statements he made to federal agents and
his motion to suppress evidence seized from his

computer, in admitting into evidence under Fed. R.
404(b) additional photographs of child pornography
and records of computer chat-room dialogues with
purported minors found on his computer, and in
denying his motion for a mistrial based upon im-
proper comments by the prosecutor during closing
argument. With regard to his sentence, Nanda ar-
gues that the district court erred in enhancing his
offense level for receipt of materials involving pre-
pubescent minors or minors under the age of
twelve, in denying him a minimal role adjustment,
in enhancing his offense level for obstruction of
justice based upon perjury at the suppression hear-
ing, in denying him a downward adjustment for ac-
ceptance of responsibility, and in denying him a
downward departure for diminished capacity and
for voluntary disclosure. Finding no error, we af-
firm.

I.
    On the morning of August 27, 1996, FBI Spe-
cial Agents Stacey Perkins, James Talley, and John
Harley went to the home of Defendant-Appellant
Sirish Kumar Nanda to serve him a subpoena for
the trial of Craig Zucker and to interview him as a
possible witness for that trial. Zucker had just been
indicted on eleven counts of distribution of child
pornography in Chicago, and Nanda was identified
as one of the individuals who had received an e-
mail message containing an electronic file with
child pornography pictures entitled "hot_ yung.zip"
from Zucker. Nanda agreed to speak with the
agents. Special Agent Perkins served the subpoena
on Nanda and subsequently interviewed him. At a
pretrial suppression hearing, Perkins testified that
she first explained to Nanda the substance of the
subpoena, then handed him the group of pictures
contained in the hot_yung.zip file and asked him if
he recognized any of them. According to Perkins,
Nanda replied that he did, and upon Perkins's re-
quest, marked the pictures he recognized with an
"X." Out of the 33 pictures in the file, Nanda
marked 10 of them.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
(Table, Text in WESTLAW, Unpublished Disposition
(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))

According to Perkins's testimony, during the course of their conversation Nanda stated that he had an America Online (AOL) account, he paid for it with his Visa card, he learned how to download the child pornography pictures from an ex-girlfriend named Leena, and he had downloaded child pornography a dozen times. Perkins stated that during their conversation, she never indicated that Nanda would not be prosecuted for downloading and receiving child pornography. Following her interview with Nanda, Perkins asked Nanda whether he would consent to allow the FBI agents to take his computer towers (hard drives) back to the office to see if the pictures he had marked with an "X" could be found. Perkins presented Nanda with a search form for the two computer towers and read the form over with him. Nanda signed the form, as well as Special Agent Harley, who witnessed Nanda's signature, and Special Agent Talley. Once Nanda signed the form, the FBI seized the computers. A subsequent analysis of the files on the computer by FBI Computer Specialist Terry Swindell revealed that five of the photos that Nanda had identified were on the computer towers. Perkins also testified at the suppression hearing that Swindell found 700 other child pornography images and records of four sexually oriented chat-room dialogues with individuals who represented themselves as minors on Nanda's hard drive.

*2 On cross-examination, Perkins stated that at the time she served the trial subpoena on Nanda he was not a subject of investigation, she told him that it was against the law to download child pornography, and she never promised him immunity from prosecution. Perkins also stated that she concluded that Nanda should be a subject of criminal investigation and prosecution after learning of the hundreds of child pornography pictures on his computer a few weeks after her interview with Nanda. According to Perkins, at no time was Nanda restrained or told he could not leave his house.

Nanda presented a markedly different account of the agents' visit at the suppression hearing.

Nanda testified that Perkins assured him from the beginning that he was not in trouble and reassured him to that effect throughout their conversation. Nanda stated that he told Perkins that he would be very happy to help her in any way that he could. When the conversation turned toward his computer, Nanda asked whether the agents had a search warrant; in response, one of the male agents told him in a threatening manner that if they had to get a search warrant, they would return with twenty officers in uniform and cars with flashing lights and would search his entire house. At one point, Nanda received a call from his secretary telling him that he was late for a meeting. According to Nanda's testimony, he asked the agents whether they could complete the search in the afternoon, and Agent Perkins replied that they had to do the search right now. Nanda agreed to let the agents look at his computer. Following a brief look at his computer by the agents, Agent Perkins told Nanda that they were taking his computer for further analysis and gave him a consent form to sign. According to Nanda, one of the male agents told him that they would take his computer whether or not he signed the consent form. Nanda acknowledged signing the consent form, but said that he felt he had no choice but to give up his computer.

On cross-examination, Nanda disputed Perkins's account of their conversation regarding child pornography. Nanda denied that his ex-girlfriend had shown him how to download child pornography and denied telling Perkins that he had downloaded child pornography approximately twelve times. Nanda also stated that he did not mark any of the photographs Perkins had shown him. Nanda again acknowledged signing the consent form, which indicated that he had a right to refuse to consent, but claimed that he did not read it prior to signing it.

After being indicted for knowing receipt of the hot_yung.zip file, which contained five photographs of minors involved in sexually explicit conduct, Nanda moved to suppress, as coerced, statements he made to the FBI agents and all evidence

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
(Table, Text in WESTLAW), Unpublished Disposition
(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))

seized from his computer. Nanda also moved to exclude noncharged material found on the computer from being presented at trial. At the suppression hearing, the district court received testimony from Perkins and Nanda, as recited above, before continuing the matter until later. The Government then filed a notice of intent to introduce as Rule 404(b) evidence, in addition to the hundreds of images of children engaged in sexually explicit conduct found on Nanda's computer, records of four sexually oriented chat-room dialogues with purported minors found on the computer.

*3 When the district court resumed consideration of Nanda's motions, it received testimony from Special Agents Talley and Harley that corroborated Special Agent Perkins's account of events and testimony from Nanda's ex-fiancee that corroborated Nanda's account of events. Based upon the testimony of these five witnesses, the district court concluded that Nanda voluntarily consented to his conversations with the FBI agents, voluntarily agreed to have the agents look at his computer, and voluntarily consented to the execution of the search form. The district court therefore denied Nanda's motion to suppress his statements to the FBI agents and his motion to suppress the evidence gathered from his computer based upon improper force or involuntariness. The district court also permitted the Government to introduce the records of four sexually oriented chat-room dialogues with purported minors and twelve additional child pornography photographs, all found on Nanda's computer, pursuant to Rule 404(b) of the Federal Rules of Evidence. Based upon the totality of the evidence introduced by the Government, the jury convicted Nanda of Count One of the indictment: knowing receipt of materials depicting minors involved in sexually explicit conduct in violation of 18 U.S.C.A. §§ 2252(a)(2) (West Supp.1999), 2256 (West Supp.1999), and 2 (West 1969).[FN1]

FN1. Count Two of the indictment charged that upon conviction for violating 18 U.S.C.A. § 2252 (West Supp.1999), Nanda

shall forfeit to the United States, *inter alia,* any and all property used or intended to be used in the commission of the violation, including but not limited to his computer. Because Nanda voluntarily consented to the forfeiture of the computer following the jury's guilty verdict, the jury did not deliberate on this count.

At sentencing, Nanda's base offense level was set at fifteen pursuant to the child pornography guideline. *See U.S. Sentencing Guidelines Manual* § 2G2.2 (Nov.1993).[FN2] Because Nanda possessed sexually explicit material involving prepubescent minors or minors under the age of twelve, Nanda's base offense level was increased an additional two levels. *See* U.S.S.G. § 2G2.2(b)(1). The district court denied Nanda's request for a four-level reduction for minimal role. *See* U.S.S.G. § 3B1.2(a). The district court assessed a two-level enhancement for obstruction of justice based upon perjury at the suppression hearing. *See* U.S.S.G. § 3C1.1. The district court denied Nanda's request for a two-level reduction for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). Finally, the district court denied Nanda's request for a downward departure for diminished capacity, *see* U.S.S.G. § 5K2.13, and for voluntary disclosure, *see* U.S.S.G. § 5K2.16. With an adjusted offense level of 19 and a criminal history category of I, Nanda's guideline range was 30-37 months. *See* U.S.S.G. Ch. 5, Pt. A. The district court sentenced Nanda to 33 months imprisonment and three months supervised release. On December 15, 1997, Nanda filed a timely notice of appeal.

FN2. Although Nanda was sentenced in 1997, the 1993 version of the Guidelines Manual was used pursuant to U.S.S.G. § 1B1.11(b)(1).

Nanda advances several arguments on appeal. First, he argues that the district court erred in denying his motion to suppress statements he made to federal agents in the course of their interview and his motion to suppress evidence found during a search of his computer on the ground that he was

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
(Table, Text in WESTLAW), Unpublished Disposition
(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))

promised that he would not suffer any adverse consequences by cooperating, thus rendering his consent involuntary. Next, Nanda argues that the district court erred in admitting twelve additional images of child pornography and four sexually oriented chat-room dialogues with purported minors found on his computer as evidence of other crimes, wrongs, or acts under Fed. R. Evid. 404(b), because this evidence was neither relevant nor reliable. Next, Nanda argues that the district court erred in refusing to declare a mistrial after the prosecutor made statements at closing argument that improperly made reference to Nanda's failure to testify, that misstated the nature and character of the offense for which Nanda was charged, and that improperly appealed to the jury's emotions and passions.

**\*4** With regard to his sentence, Nanda argues that the district court erred in enhancing his offense level by two levels for receipt of materials involving prepubescent minors or minors under the age of twelve because the Government failed to show that he intended to receive such photographs and that any of the minors in question were actually under twelve. Next, Nanda argues that the district court erred in not granting him a four-level minimal role adjustment because he did not forward the hot_yung.zip file to anyone, yet he received a harsher sentence than the more culpable individuals in the child pornography distribution scheme. Next, Nanda argues that the district court erred in enhancing his offense level by two levels for obstruction of justice based upon perjury at the suppression hearing because his false denials were not material to the subject matter of the hearing, which was whether he was subject to coercion or duress by the agents. Next, Nanda argues that the district court erred in denying him a two-level downward adjustment for acceptance of responsibility because he demonstrated acceptance of responsibility by his failure to proffer any testimony at trial regarding the demonstration of guilt, by statements of contrition in the presentence report, and by the uncontradicted sentencing testimony of three mental health

professionals who had evaluated Nanda and concluded that he had accepted responsibility for his actions and was compliant with treatment efforts. Finally, Nanda argues that the district court erred in rejecting his request for a downward departure for diminished capacity and for voluntary disclosure because the aforementioned testimony from the three mental health professionals amply support his claim for diminished capacity and because he voluntarily disclosed incriminating information regarding the commission of the instant offense. We address each of these arguments in turn.

II.

Nanda's first contention on appeal is that the district court erred in denying his motion to suppress statements he made to the federal agents in the course of their interview and his motion to suppress evidence seized from his computer during their search. In particular, Nanda argues that statements made by Perkins during the interview impliedly promised him that he would not suffer any adverse consequences by cooperating, thus rendering both his statements to the agents and his consent to the search involuntary. Nanda's argument raises two distinct issues that we address in turn.

A.

First, Nanda argues that his statements to the FBI agents were involuntary and, therefore, inadmissible. This Court "must make an independent determination on the issue of voluntariness, while accepting the district court's findings of fact on the circumstances surrounding the [statements] unless clearly erroneous." *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir.1997) (en banc) (internal quotation marks omitted). Deference to the district court's factual findings are particularly warranted where the district court bases its findings on the credibility of the witnesses. *See United States v. Locklear*, 829 F.2d 1314, 1317 (4th Cir.1987) (per curiam).

**\*5** Whether a defendant's statements are inadmissible because of implied promises made by a government agent is a matter governed by the Fifth

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
(Table, Text in WESTLAW), Unpublished Disposition
(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))

Amendment. *See Braxton,* 112 F.3d at 780. A statement is coerced if it was extracted by implied promises "however slight." *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976). "The proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired." *Braxton,* 112 F.3d 780 (internal quotation marks omitted). After hearing the testimony of Nanda and the FBI agents, the district court determined that the agents did not impliedly promise Nanda any immunity or leniency. Based on these factual findings, which are not clearly erroneous, we conclude that Nanda's statements to the agents were voluntary, and therefore admissible, under the Fifth Amendment. The district court did not err in denying Nanda's motion to suppress statements he made to the agents.

B.

Next, Nanda argues that his consent to the search of his computer was involuntary. Whether a defendant has freely and voluntarily consented to a search is a factual determination by the district court that this Court will reverse on appeal only if it is clearly erroneous. *See United States v. Lattimore,* 87 F.3d 647, 650 (4th Cir.1996) (en banc). "[W]hen the lower court bases a finding of consent on the oral testimony at a suppression hearing, the clearly erroneous standard is particularly strong since the [court] had the opportunity to observe the demeanor of the witnesses." *Id.* at 650-51 (internal quotation marks omitted) (alteration in original).

Voluntary consent to a search is an exception to the Fourth Amendment requirement of a search warrant. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). To determine whether a consent to search is voluntary, we examine the totality of the circumstances surrounding the consent. *See Lattimore,* 87 F.3d at 650. Factors that are appropriate for the district court to consider include the characteristics of the accused (such as age, maturity, education, intelligence, and experience) and the conditions under which the consent to search was given (such as the

officer's conduct, the number of officers present, and the duration of the encounter). *See id.* Whether the accused knew he possessed a right to refuse to consent is a relevant factor, but the government need not demonstrate that the defendant knew of his right to refuse consent to prove that consent was voluntary. *See id.*

After hearing the testimony of Nanda and the FBI agents, the district court concluded that the agents did not coerce Nanda into consenting to a search of his computer. The court found that Nanda was an educated individual who possessed a Ph.D. in nuclear physics and understood the purpose for which the agents were at his home. The court also found that Nanda's purported fear of the agents was not credible because it was belied by his eagerness to cooperate and his volunteering of information to the agents that they did not have. The court further noted that the interview took place at approximately 8:30 in the morning in Nanda's house and that Nanda was not a target of the agents' investigation at the time. In sum, the district court rejected Nanda's portrayal of his encounter with the agents as an "adversarial, aggressive, combative atmosphere" in concluding that he freely consented to the search. Based upon the deference this Court pays to credibility determinations by the district court, *see Lattimore,* 87 F.3d at 650-51, we cannot conclude that the district court's conclusion that Nanda's consent to search was voluntary and its subsequent denial of Nanda's motion to suppress the evidence found on his computer clearly erroneous.

III.

*6 Next, Nanda argues that the district court erred in admitting the Government's evidence of twelve additional images of child pornography and records of four sexually oriented chat-room dialogues with purported minors, all found on Nanda's computer, as evidence of other crimes, wrongs, or acts. *See* Fed.R.Evid. 404(b). In particular, Nanda argues that the photographs and chat-room talks were not admissible because they were not reliable,

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

and due to the inability of the Government to pin-point the dates of the photographs and the talks, they were not relevant. This Court reviews a district court's determination of the admissibility of evidence under Federal Rule of Evidence 404(b) for abuse of discretion. *See United States v. Queen,* 132 F.3d 991, 995 (4th Cir.1997), *cert. denied,* 118 S.Ct. 1572 (1998). A district court will not be found to have abused its discretion unless its decision to admit evidence under Rule 404(b) was "arbitrary or irrational." *United States v. Haney,* 914 F.2d 602, 607 (4th Cir.1990).

Rule 404(b) permits evidence of other crimes, wrongs, or acts to be introduced to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. Fed.R.Evid. 404(b). This Court has treated 404(b) as an inclusionary rule, excluding only evidence that has no purpose other than to prove criminal disposition. *See United States v. Sanchez,* 118 F.3d 192, 195 (4th Cir.1997) . "[E]vidence is admissible under 404(b) if it is (1) relevant to an issue other than character, (2) necessary, and (3) reliable." *Id.* (internal quotation marks omitted). Moreover, under Fed.R.Evid. 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *See United States v. Bailey,* 990 F.2d 119, 122 (4th Cir.1993).

Nanda's primary defense during trial was that the Government could not prove that he knowingly received the hot_yung.zip file. The additional photographs and chat-room dialogues were relevant and necessary because they tended to show Nanda's intent, knowledge, and absence of mistake with regard to the hot_ yung.zip file. *See United States v. Dornhofer,* 859 F.2d 1195, 1199 (4th Cir.1988) (holding that evidence of additional child pornography could be used to show the defendant's intent and absence of mistake). This evidence was reliable because it was found on the hard drive of Nanda's computer, where the five photographs named in Count One of the indictment also were found. Moreover, the relevance of the 404(b) evidence was

not substantially outweighed by the danger of unfair prejudice under Fed.R.Evid. 403, particularly considering that the district court limited the Government to twelve images out of the 700 that were found on Nanda's computer and instructed the jury that the 404(b) evidence could not be considered in determining whether Nanda actually performed the acts charged in the indictment: knowing and unlawful receipt of the hot_yung.zip file and the photographs contained therein. The district court, therefore, did not abuse its discretion in admitting into evidence the additional photographs and chat-room dialogues.

IV.

*7 Nanda also challenges his conviction on the ground that the prosecution made prejudicial comments during closing argument. During the Government's rebuttal following Nanda's closing argument, the third-year law student assisting the U.S. Attorney made the following statements:

> What the defense attorney would like you to believe is a lot of smoke because you notice he never put on any evidence, nor did he ever really show or rebut anything that was put on.

(J.A. at 557.)
> I think the defense attorney said you can only imagine what a conviction can do to a nuclear physicists[sic], and that's true, but I think you can imagine what exploitation can do to a child, a child that has pictures taken of that child and then spread all over the Internet.

(J.A. at 560.)
> Defense counsel started his opening argument out and said this is pretty serious indeed. I hope you would, as you go back and deliberate, realize this is serious business. The trading of these kind of images objectifies our children, whether they be your family or whether they be society.

(J.A. at 563.) Following each of these statements, the district court sustained an objection from Nanda's counsel. Following the Government's re-

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
(Table, Text in WESTLAW, Unpublished Disposition
(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))

buttal, the district court immediately issued a curative instruction that stated that the defendant was not obligated to call witnesses or to put on any evidence, and that the jury could not consider or draw an inference from the defendant's failure to testify or to present evidence. The court also instructed the jury to confine its concern to the charge for which the defendant was on trial. The court then denied Nanda's motion for a mistrial based upon these improper comments.

Nanda argues that the district court erred in not granting his motion for a mistrial. In particular, Nanda argues that the first objectionable statement improperly made reference to Nanda's failure to testify via his reference to his failure to present any evidence to rebut the government's case. Nanda also asserts that the second and third objectionable statements misstated the nature and character of the offense for which Nanda was indicted and made improper appeals to the jury's emotions and passions.

The "grant or denial of a motion for mistrial is within the sound discretion of the trial court, and will not be overturned absent a clear abuse of that discretion." *United States v. Dorsey,* 45 F.3d 809, 817 (4th Cir.1995). In order for a defendant to show that the trial court abused its discretion, the defendant must show prejudice; "no prejudice exists, however, if the jury could make individual guilt determinations by following the court's cautionary instructions." *Id.* (internal quotation marks omitted).

First, Nanda argues that a mistrial was warranted because the associate prosecutor improperly made reference to Nanda's failure to testify via his reference to Nanda's failure to present any evidence to rebut the government's case. In *United States v. Whitehead,* 618 F.2d 523 (4th Cir.1980), this Court held that "[t]he test for determining whether an indirect remark constitutes improper comment on a defendant's failure to testify is: Was the language used manifestly intended to be, or was it of such character that the jury would naturally and necessarily take it to *be a comment* on the failure of the

accused to testify." *Id.* at 527 (internal quotation marks omitted). In applying this standard, this Court has concluded that a statement by the Government during closing argument that its evidence was "uncontradicted" did not improperly comment on the accused's failure to testify where the defense rested without calling any witnesses of its own. *See United States v. Francis,* 82 F.3d 77, 79 (4th Cir.1996). Because the associate prosecutor's statement regarding Nanda's failure to put on evidence is almost identical to the objected-to statement in *Francis,* the district court did not abuse its discretion in denying Nanda's motion for a mistrial based upon this statement.[FN3]

> FN3. Even if the associate prosecutor's statement regarding Nanda's failure to put on evidence improperly commented on Nanda's failure to testify, the district court's immediate curative instruction to the jury to ignore Nanda's failure to testify and its closing charge to the same effect cured any improper impression and was sufficient to avoid declaring a mistrial. *See United States v. Lorick,* 753 F.2d 1295, 1298 (4th Cir.1985).

*8 With regard to the second and third objectionable statements, Nanda argues that a mistrial was warranted because the associate prosecutor misstated the nature and character of the offense for which Nanda was indicted and made improper appeals to the jury's emotions and passions. To establish prosecutorial misconduct, a defendant "must show that the remarks were improper and that they prejudicially affected the defendant's substantial rights so as to deprive [him] of a fair trial." *United States v. Adam,* 70 F.3d 776, 780 (4th Cir.1995) (internal quotation marks omitted). Any harm from the associate prosecutor's remark regarding the nature of the charge against Nanda was cured by the district court's immediate cautionary instruction that the jury should confine its concern to the charge for which Nanda was on trial. Moreover, although the associate prosecutor's remark regarding

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
(Table, Text in WESTLAW, Unpublished Disposition
(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))

child pornography generally was improper, it did not prejudicially affect Nanda's substantial rights so as to deprive him of a fair trial because the remark was isolated and not intentionally placed before the jury to divert attention to extraneous matters, and there was substantial evidence of Nanda's guilt in the absence of the remarks. *See United States v. Curry,* 993 F.2d 43, 46 (4th Cir.1993). The district court, therefore, did not abuse its discretion in denying Nanda's motion for a mistrial on the basis of these two statements.

### V.

Nanda also raises numerous objections on appeal with regard to his sentence. Specifically, Nanda contends that the district court erred: (1) in enhancing his offense level by two levels for receipt of materials involving minors who are prepubescent or under the age of twelve, (2) in not granting him a four-level downward adjustment for having a minimal role in the offense, (3) in imposing a two-level increase in offense level for obstruction of justice based upon perjury at the suppression hearing, (4) in refusing to grant him a two-level downward adjustment for acceptance of responsibility, and (5) in not granting him a downward departure for diminished capacity and for voluntary disclosure.

To give due deference to a district court's application of the Sentencing Guidelines, we review factual determinations for clear error and legal questions de novo. *See United States v. Blake,* 81 F.3d 498, 503 (4th Cir.1996). Moreover, this Court lacks authority to review a decision of a district court not to depart from the applicable guideline range unless the district court's decision is based upon the belief that it lacks the legal authority to depart. *See United States v. Brock,* 108 F.3d 31, 33 (4th Cir.1997). In such a case, this Court may review the district court's decision for abuse of discretion. *See Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 2046, 135 L.Ed.2d 392 (1996). With these principles in mind, we address Nanda's sentencing claims seriatim.

### A.

*9 First, Nanda argues that the district court erred in enhancing his offense level by two levels for receipt of material involving prepubescent minors or minors under twelve years old. *See* U.S.S.G. § 2G2.2(b)(1). In particular, Nanda argues that the government failed to show that he intended to receive such photographs and that any of the minors in question were actually under twelve.

In making the enhancement determination, the district court looked at record testimony regarding the uncharged material found on Nanda's hard drive pursuant to U.S.S.G. § 1B1.3. The district court concluded that a two-level enhancement was warranted because several of the photographs were images of prepubescent minors or minors under the age of twelve. In doing so, the district court treated Nanda's offense as one of aggregate harm under U.S.S.G. § 3D1.2(d). *See* U.S.S.G. § 1B1.3(a)(2). As further circumstantial evidence in support of the two-level enhancement, the district court credited the testimony of Agent Perkins that many of the files were found in subdirectories with abbreviated names referring to minors.

Nanda's offense was not one of aggregate harm, however, because under U.S.S.G. § 2G2.2, the offense level is not determined on the basis of quantity or other measure of aggregate harm. For offenses in which the offense level is not determined by aggregate harm, the Sentencing Guidelines provide that relevant conduct includes "all acts and omissions ... that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1)(A). Nanda's additional photographs did not occur during his receipt of the hot_yung.zip file, in preparation for receipt of the hot_yung.zip file, or in the course of attempting to avoid detection or responsibility for receipt of the hot_yung.zip file. The district court clearly erred in treating the additional 700 photographs as relevant conduct under § 1B1.3 and as a ground for enhancement under

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
(Table, Text in WESTLAW), Unpublished Disposition
(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))

§ 2G2.2(b)(1).

As additional support for the two-level enhancement, the district court relied on the descriptive names of the subdirectories in which the photographs were stored. In *United States v. Kimbrough,* 69 F.3d 723 (5th Cir.1995), the Fifth Circuit upheld a two-level enhancement pursuant to U.S.S.G. § 2G2.2(b)(1) where the district court based its enhancement on two files found on the defendant's computer described as "Eight Years Indian Girl" and "Preteen School Girl." *Id.* at 733-34. In this case, the district court heard testimony at sentencing from Agent Perkins that of the five photos in the hot_yung.zip file found on Nanda's hard drive, three were found in the subdirectory LGS, one was found in the subdirectory JMIS, and one was found in the subdirectory PT. Perkins testified that based upon her experience in other child pornography cases and training in the area, LGS stood for "little girls," JMIS stood for "junior miss," and PT stood for "preteen." Based upon the persuasive reasoning of *Kimbrough,* Perkins's testimony, and Nanda's own admission that he was curious about this type of material, we conclude that there was sufficient evidence establishing that the photos in the hot_yung.zip file were of prepubescent minors or minors under the age of twelve and that Nanda intended to receive such photos. It was therefore not clear error for the district court to assess a two-level enhancement for receipt of images showing prepubescent minors or minors under the age of twelve.

B.

**\*10** Next, Nanda argues that the district court erred in not reducing his offense level for having a minimal role in the offense. *See* U.S.S.G. § 3B1.2(a). In particular, Nanda argues that he should have received a minimal role reduction because he did not forward the hot_yung.zip file to anyone else, yet he received a harsher sentence than the more culpable individuals in the child pornography distribution scheme, including Craig Zucker.

A downward adjustment pursuant to U.S.S.G. § 3B1.2 is intended for a defendant "who plays a minimal role in concerted activity ... [and is] plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2, comment. (n.1). Furthermore, "[i]t is intended that the downward adjustment for a minimal participant will be used infrequently." U.S.S.G. § 3B1.2, comment. (n.2). That Nanda did not forward the file in question is of no import. Nanda was charged with the receipt, not the distribution, of child pornography. In light of the testimony presented at trial regarding the affirmative steps that one must go through to receive and download a zip file, Nanda clearly did not play a minimal role in the offense for which he was convicted: knowing and unlawful receipt of the hot_yung.zip file.[FN4]

> FN4. For the same reasons discussed *ante* in Section V.A, we are inclined to conclude that the additional 700 photographs and four chat-room dialogues cannot be considered in determining whether Nanda had a minimal role in the offense. This belief does not change our ultimate conclusion on this issue, however.

Further, the disposition of Zucker's case is wholly irrelevant to the determination of whether Nanda had a minimal role in the offense of conviction because Zucker was charged with a different offense, *distribution* of child pornography. Moreover, Zucker's sentence was not an appropriate factor for the district court to consider in sentencing Nanda. *Cf. United States v. Fonville,* 5 F.3d 781, 783-84 (4th Cir.1993) (holding that a downward departure is not warranted to correct sentencing disparities between co-defendants or co-conspirators). The district court, therefore, did not clearly err in refusing to grant Nanda's request for a downward adjustment for minimal role in the offense.

C.

Next, Nanda argues that the district court erred in imposing a two-level adjustment for obstruction of justice based upon Nanda's perjury at the suppression hearing. *See* U.S.S.G. § 3C1.1 & comment. (n.4). In particular, Nanda argues that his

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
(Table, Text in WESTLAW), Unpublished Disposition
(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))

false denials at the suppression hearing were not material to the subject matter of the hearing-whether he was subject to coercion or duress by the agents.

Before holding that a defendant has obstructed justice by committing perjury, the district court must make an independent finding that the defendant has "give[n] false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan,* 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993). A matter is material if testimony concerning it would "tend to influence or affect the issue under determination." U.S.S.G. § 3C1.1, comment. (n.5). The district court found that Nanda had falsely testified as to the alleged promises made by Perkins and the coercion he was subject to by the agents and had falsely stated that he had not marked several photographs in the hot_yung.zip file. Additionally, the district court determined that Nanda's statements that he did not tell Perkins that he had downloaded child pornography and that Perkins did not go over the consent form with him were untruthful. As the district court determined, these false statements were clearly material to the subject matter of the suppression hearing-whether Nanda had freely made incriminating statements during the interview and had voluntarily consented to a search of his computer. The district court, therefore, did not err in finding that Nanda had committed perjury, warranting a two-level enhancement for obstruction of justice.

D.

*11 Next, Nanda argues that the district court erred in refusing to grant him a two-level downward adjustment for acceptance of responsibility. *See* U.S.S.G. § 3E1.1(a). In particular, Nanda argues that he has demonstrated an acceptance of responsibility by his failure to proffer any testimony at trial regarding the determination of guilt, his statements of contrition in the presentence report, and the uncontradicted sentencing testimony of

three mental health professions who had evaluated Nanda and concluded that Nanda had accepted responsibility for his actions and was compliant with treatment efforts.

"In order to receive a downward departure, the defendant must first accept responsibility for *all* of his criminal conduct." *United States v. Strandquist,* 993 F.2d 395, 401 (4th Cir.1993) (emphasis added) (internal quotation marks omitted). Moreover, "[c]onduct resulting in an enhancement under § 3C1.1 (Obstruct[ion] ... of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." U.S.S.G. § 3E1.1, comment (n.4). Because Nanda's case is not an extraordinary one in which both the adjustments for obstruction of justice and for acceptance of responsibility might apply, his arguments are essentially foreclosed by the district court's assessment of a two-level enhancement for obstruction of justice. Moreover, the Sentencing Guidelines specifically state that the adjustment for acceptance of responsibility "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, comment. (n.2). Nanda's claims of acceptance of responsibility fall into this category. The district court's rejection of Nanda's request for a downward adjustment for acceptance of responsibility was therefore not clearly erroneous.

E.

Finally, Nanda argues that the district court erred in rejecting his request for a downward departure for diminished capacity, *see* U.S.S.G. § 5K2.13 , and for voluntary disclosure, *see* U.S.S.G. § 5K2.16. In particular, Nanda argues that the uncontradicted sentencing testimony from the three highly qualified mental health professionals amply support and warrant a downward departure for diminished mental capacity. He also argues that because he voluntarily disclosed incriminating information regarding the commission of the instant

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.)))**

offense, he is entitled to a downward departure for voluntary disclosure. Because the district court believed that it could not depart on the grounds urged by Nanda, this Court may review the district court's decision for abuse of discretion. *See Koon,* 116 S.Ct. at 2046.

With regard to the downward departure for diminished capacity pursuant to § 5K2.13, this Court has held that in order to qualify for such a departure, "a defendant must be suffering from something greater than emotional problems or hardship." *United States v. Withers,* 100 F.3d 1142, 1147-48 (4th Cir.1996) (internal citations and quotation marks omitted). The defendant "must show an inability to process information or to reason." *Id.* at 1148 (internal quotation marks omitted). Moreover, the defendant must demonstrate that his significantly reduced mental capacity bore a causal relationship to the crime. *See id.* In this case, the district court found that the defendant was clearly able to process information and to reason, given his superb on-the-job performance. Moreover, it is undisputed that the events that allegedly triggered Nanda's depression and anxiety, the deaths of his brother and his father, occurred two years after his receipt of the hot_yung.zip file. The district court, therefore, did not abuse its discretion in refusing to grant a downward departure on the basis of diminished capacity.

**\*12** With regard to the downward departure for voluntary disclosure pursuant to § 5K2.16, the district court found that Nanda did not voluntarily disclose any information to the agents; he merely corroborated their existing knowledge. Although Nanda provided the agents with his computer, they were already aware that he was in possession of the hot_yung.zip file and the photographs contained therein. We find no error in this determination. The district court, therefore, did not abuse its discretion in refusing to grant a downward departure on the basis of voluntary disclosure.

VI.

For the reasons discussed, we find no error by

the district court at the trial or sentencing phases of the criminal proceeding against Nanda. We therefore affirm Nanda's conviction and sentence.

*AFFIRMED*

C.A.4 (Va.),1999.
U.S. v. Nanda
178 F.3d 1287, 1999 WL 294548 (C.A.4 (Va.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.