IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:14-CR-023-A |
| CHRISTOPHER ROBERT WEAST (01) | |

### GOVERNMENT'S RESPONSE TO DEFENSE'S MEMORANDUM IN SUPPORT OF THE DISTRICT COURT'S TAKING JUDICIAL KNOWLEDGE OF CONGRESSIONAL FINDINGS

The Government requests that based upon the following, this Court deny the request by the Defense made in its Memorandum in Support of the District Court's Taking Judicial Knowledge of Congressional Findings.

Rule 201 of the Federal Rules of Evidence provides that a court may take judicial notice of a fact which is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to resources whose accuracy cannot be questioned." The Advisory Committee Notes for this rule indicate that this rule pertains only to judicial notice of "adjudicative facts."

In addressing the question of what constitutes an adjudicative fact, in the Advisory Committee Notes to that rule, citing to Professor Davis, A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69, 73 (1964), " 'When a court or an agency finds facts concerning the immediate parties - who did what, where, when, how, and with what motive or intent - the court or agency is performing an

adjudicative function, and the facts are conveniently called adjudicative facts.' " In re Katrina Canal Breaches Consol. Litig., CIV.A.05-4182, 2008 WL 4185869 (E.D. La. Sept. 8, 2008).

The Advisory Committee Notes further state "[t]he usual method of establishing adjudicative facts is through the introduction of evidence, ordinarily consisting of the testimony of witnesses. If particular facts are outside of reasonable controversy, this process is dispensed with as unnecessary. A high degree of indisputability is the essential prerequisite."

In the instant case, the Defense requests that this Court take judicial notice of select portions of the Child Pornography Prevention Act of 1995, which include the following:

> Congress finds:
> . . .
>   (5) new photographic and computer imaging technologies make it possible to produce by electronic, mechanical, or other means, visual depictions of what appear to be children engaging in sexually explicit conduct that are virtually indistinguishable to the unsuspecting viewer from unretouched photographic images of actual children engaging in sexually explicit conduct;
>   (6) computers and computer imaging technology can be used to-
>     (A) alter sexually explicit photographs, films, and videos in such a way as to make it virtually impossible for unsuspecting viewers to identify individuals, or to determine if the offending material was produced using children;
>     (B) produce visual depictions of child sexual activity designed to satisfy the preferences of individual child molesters, pedophiles, and pornography collectors; and
>     (C) alter innocent pictures of children to create visual depictions of those children engaging in sexual conduct…

Disputing this Congressional finding, the 5th Circuit held the following in *United States v. McNealy*, 625 F.3d 858, 867 (5th Cir. 2010): "We note that after the Supreme Court's decision in *Ashcroft v. Free Speech Coalition*, Congress amended the Child Pornography Prevention Act of 1996 and made certain findings. Congress found in 2003 that "[t]here is no substantial evidence that any of the child pornography images being trafficked today were made other than by the abuse of real children," and [l]eading experts agree that, to the extent that the technology exists to computer generate realistic images of child pornography, the cost in terms of time, money, and expertise is—and for the foreseeable future will remain—prohibitively expensive. As a result, for the foreseeable future, it will be more cost-effective to produce child pornography using real children."

Additionally disputing the Congressional findings cited by the defense, the 5th Circuit held "Juries are still capable of distinguishing between real and virtual images; and admissibility remains within the province of the sound discretion of the trial judge." *United States v. Slanina*, 359 F.3d 356 (5th Cir. 2004).

Lastly disputing the Congressional findings cited by the defense, the Supreme Court held "Virtual images, the Government contends, are indistinguishable from real ones; they are part of the same market and are often exchanged. In this way, it is said, virtual images promote the trafficking in works produced through the exploitation of real children. The hypothesis is somewhat implausible. If virtual images were identical to illegal child pornography, the illegal images would be driven from the market by the indistinguishable substitutes.

Few pornographers would risk prosecution by abusing real children if fictional, computerized images would suffice." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 254 (2002).

As noted above, a court may take judicial notice of a fact which is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to resources whose accuracy cannot be questioned." As noted in the Advisory Committee Notes referenced above, this pertains to only adjudicative facts for which there is "a high degree of indisputability."

The Government does not dispute that the Child Pornography Prevention Act of 1995 exists. However, the *findings* of Congress cited by the Defense, especially in light of the Courts' opinions in *McNealy, Slanina,* and *Ashcroft*, are disputable. As such, this Court need not take judicial notice of the findings citied by the Defense because, as evidenced by *McNealy, Slanina,* and *Ashcroft*, they are subject to reasonable dispute. The theoretical possibility referenced in the Congressional findings cited by the defense that pornographic images can, or cannot be, produced using computer manipulation is certainly a matter which could be reasonably disputed. Furthermore, the resolution to this question is not capable of accurate and ready determination by resort to resources whose accuracy cannot be questioned. Accordingly, the Congressional findings cited do not fit the definition of a fact defined by Rule 201 which would allow this Court to take judicial notice, and further do not contain facts for which there exists a high degree of indisputability.

**Government's Response to Defense's Memorandum in Support of District Court's Taking Judicial Knowledge of Congressional Findings - Page 4 of 7**

Furthermore, the findings of Congress cited by the Defense do not even fall within the definition of adjudicative facts. As noted above, "[w]hen a court or an agency finds facts concerning the immediate parties - who did what, where, when, how, and with what motive or intent - the court or agency is performing an adjudicative function, and the facts are conveniently called adjudicative facts." The Congressional findings cited by the Defense do not contain facts, especially highly indisputable facts, which concern the Defendant. The findings cited by the Defense are only findings, conclusions drawn by Congressional officials based upon evidence which has not been examined by this Court.

Also, the findings of Congress cited by the Defense are not relevant to the current proceedings or the exhibits offered by the Government. The Defense presents no evidence that Congress based its findings on the testimony of qualified and trustworthy experts, or that the Congressional officials themselves have any particular degree of knowledge about the computer manipulation of images, or that these officials possessed any degree of knowledge allowing these officials to draw reliable conclusions from any evidence presented to Congress on this matter. Moreover, Congress certainly had no access to the images being offered by the Government in the instant case. As such, the Congressional findings cited by the Defense, which were made in 1995 and based upon none of the evidence being offered by the Government in the instant case, does not make any fact at issue in this case more probable or less probable than it would be without the admission of the findings.

Finally, even if this Court finds that the findings of Congress cited by the Defense are relevant, the findings should still be excluded under Rule 403 because its probative value is substantially outweighed by the danger of misleading the jury. As noted above, *McNealy, Slanina,* and *Ashcroft* each express opinions which are in opposition to the Congressional findings cited by the defense. Thus, taking judicial notice of Congressional findings (which *McNealy, Slanina,* and *Ashcroft* would indicate are in fact highly disputable findings) and presenting these findings to the jury as evidence, would present a substantial danger of misleading the jury. As such, even if deemed relevant, the Congressional findings cited by the defense should still be excluded under Rule 403.

Accordingly, the Government requests that based upon the above, this Court deny the request by the Defense made in its Memorandum in Support of the District Court's Taking Judicial Knowledge of Congressional Findings.

                                                    Respectfully submitted,

                                                    SARAH R. SALDAÑA
                                                    UNITED STATES OF ATTORNEY

                                                    */s/ signature*
                                                    _____
                                                    DAN COLE
                                                    Special Assistant United States Attorney
                                                    State Bar of Tennessee #017929
                                                    Burnett Plaza, Suite 1700
                                                    801 Cherry Street, Unit 4
                                                    Fort Worth, Texas 76102-6882
                                                    Telephone: 817-252-5200
                                                    Facsimile: 817-252-5455

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2014, a true copy of the foregoing Government's Response to Defense's Memorandum was served on Angela Saad at 819 Taylor Street, Room 9A10, Fort Worth, Texas 76012, counsel for Christopher Robert Weast.

DAN COLE
Special Assistant United States Attorney