IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUL 28 2014
CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:14-CR-023-A |
| CHRISTOPHER ROBERT WEAST (01) | |

## BRIEF REGARDING TESTIMONY OF DEFENSE EXPERT

TO THE HONORABLE JOHN MCBRYDE, UNITED STATES DISTRICT JUDGE:

The United States Attorney for the Northern District of Texas, by and through the undersigned Assistant United States Attorney, files this brief opposing the introduction of some, but not all, of the testimony Weast seeks to introduce through its expert.

On July 25, 2014, the Court held a *Daubert* hearing regarding the qualifications of Bill McGregor and his ability to testify about two subjects previously described by the defense: (1) computers are susceptible to remote access and hacking; and (2) it is impossible to look at a visual depiction and know if it depicts an actual minor.

**1.  Testimony about remote access and hacking**

Although the government maintains that McGregor's testimony on this subject is irrelevant because there is no evidence of Weast's computer actually being hacked or remotely accessed, the government does not object to his testifying that Weast's computer was *susceptible* to hacking or remote access.

Since McGregor did not testify that Weast's computer was hacked or remotely accessed, the government does object to his testifying to any such conclusion without first providing notice and an opportunity to test the basis for such an opinion.

**Brief regarding Defendant's Expert - Page 1 of 8**

2. **Testimony about images and technology**

The government continues to object to McGregor's testimony regarding visual depictions and technology.

   a. **Lack of qualifications and proper foundation for testimony**

A witness may qualify as an expert based on his knowledge, skill, experience, training or education. FED R. EVID. 702. Prior to the hearing, the government objected that, based on his resume, McGregor lacked qualifications to testify as an expert regarding digital visual depictions because he failed to identify any specialized training or knowledge that supports that he has expertise in the area of computer-generated depictions. (Doc.157, pp 2-3).

At the *Daubert* hearing, McGregor confirmed that he has no specialized training or expertise regarding his ability to look at an image to determine whether it depicts a real minor. McGregor has never testified in child pornography cases. (Tr. 24)[1] He has no background or training as a graphic artist or "image analyst." (Tr. 20) In fact, he has no training at all on image authentication. (Tr. 19)

McGregor also failed to identify any principles or methods that he applied to reach his opinion about visual depictions. When asked to identify what technology he was using to support his opinion, he said, "Internet, digital age." (Tr.21) And when this Court asked him about studies related to detection of virtual images, McGregor had none to offer. (Tr. 22) McGregor also failed to provide any specific examples that corroborate

---

[1] Transcript of *Daubert* hearing held July 25, 2014.

**Brief regarding Defendant's Expert - Page 2 of 8**

that his theory is in fact supported by the scientific community but instead made the blanket assertion that his theory is accepted "pretty much everywhere." (Tr. 17)

### b. Opinions are confusing and irrelevant

The government maintains that McGregor's proposed testimony still is not relevant under Rule 401. To establish that testimony is relevant, Weast must show that

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b) the fact is of consequence in determining the action.

FED R. EVID. 401. Whether a fact is "of consequence" is determined by the substantive law that governs an action, which in a criminal case, "consists of elements of the offense charged and any relevant defenses to defeat criminal liability." *United States v. Lamberty*, 778 F.2d 59, 61 (1st Cir. 1985) (citing *United States v. Hall*, 653 F.2d 1002, 1005-06 (5th Cir. 1981).

The problem with McGregor's testimony is that he has conflated two distinct subject areas, which further confirms that he lacks the understanding and expertise to testify on a matter relevant to the jury.

McGregor's testimony concerned whether a copy of a file is the exact same as the original file. (Tr. 22: "When it's digital on the screen…it would be very, very difficult to say this is that exact picture…") Because he does not have an original file to compare with the copy, rather than conclude that it is impossible to tell whether the copy is identical to the original, he makes the illogical leap that there is no way to look at an image and determine whether it depicts a real minor. McGregor's opinion, taken to its

**Brief regarding Defendant's Expert - Page 3 of 8**

conclusion, would either invalidate every child pornography law except production of child pornography or would require the government to put on testimony from the producer of a child pornography image to acknowledge that the copy of the image possessed/received/distributed by the person standing trial depicted an actual minor.

Another problem with McGregor's testimony is that a copy of a file does not have to be "100 percent" the same as the original to still depict a "real" minor. For example, if a picture of a child is enlarged, brightened, or even just rotated through computer software, the picture will still continue to depict a real minor. These changes may cause the file properties to differ from those of the original image, but the character and content of the image would not have changed. The government submits that the Third Circuit, although addressing a different legal issue, best encapsulated the flaw of McGregor's testimony:

> "The mere fact that an image is computer-generated or produced by electronic means does not make it 'virtual pornography'...[the defendant's] argument would transform actual images captured on a digital camera or manipulated with software into 'virtual images.' We see nothing in the text of this statute to suggest that Congress intended such an illogical and impractical result."

*United States v. Payne*, 394 Fed. Appx. 891, 896[2] (3d Cir. 2010) (unpublished opinion)(copy attached).

---

[2] The last page listed in the opinion is 895, which appears on page four of the attached decision. But it appears from an asterisk that omits a page number on page five of the opinion that the pinpoint citation would actually be 896.

**Brief regarding Defendant's Expert - Page 4 of 8**

Finally, McGregor stated that there is no way to look at a visual depiction and determine whether it is a real minor. (Tr. 16) That is simply incorrect. Although a jury can make a determination by viewing the visual depiction as to whether it depicts a real minor, qualified experts can and do exist who can testify about whether a visual depiction is of a real minor. For example, experts in the field of digital photography, graphic arts, and even in the motion picture industry have testified about whether an image depicts a real minor or a composite image of a minor. *See, e.g., United States v. Reardon*, 349 F.3d 608, 613 (9th Cir. 2003)(testimony by an employee of a visual effects studio was an expert in the creation of visual effects based on his training and experience in the film industry); *United States v. Bynum*, 604 F.3d 161, 167-68 (4th Cir. 2010)(FBI analyst qualified as an expert due to his proficiency in image authentication, ascertaining an image's resolution and focus, sharpness and depth, and identifying certain human characteristics like skin, teeth, ears, and hair, which are difficult to recreate by computer).

McGregor cannot offer any of this type of testimony—and indeed, even he would agree, because he is not qualified to render such opinions. When the Court asked McGregor if he had *ever* been able to make a decision about whether an image depicted a real person, McGregor stated, "No, sir." (Tr. 25) Thus, when McGregor makes the leap that no one is able to tell if an image is morphed, his testimony is not only misleading, but it is inaccurate. Moreover, his testimony—that without an original file it is impossible to determine whether any subsequent copies of the file are exactly the same— is irrelevant.

### c. Lack of understanding regarding the standard of proof

McGregor also lacked an understanding about the standard of proof by which evidence must be proven to a jury. In so doing, he misstates the law, which again would likely confuse the jurors. In his opinion, no one could be certain "100 percent" of the time or "beyond a shadow of a doubt" as to whether an image depicted a real minor. (Tr. 11, 27)

Of course the government does not need to prove with 100 percent certainty that an image depicts a minor, because the standard of proof is beyond a reasonable doubt.

### d. Testimony will not assist the triers of fact

McGregor's testimony suggests that a jury cannot rely on its own reasoning and common sense to determine whether *any* image depicts a real person. Regardless of the state of technology, the government submits that such testimony is grounded neither in facts nor common sense.

Therefore, his testimony would not be helpful to the jury; instead, it will be misleading and confusing, because the state of the law in the Fifth Circuit and many other circuits is just the contrary—jurors *can* determine whether an image depicts a real minor without the assistance of experts. *See, United States v. Slanina*, 359 F.3d 356, 357 (5th Cir. 2005) (the government was not required to present any additional evidence or expert testimony to meet its burden of proof to show that the images downloaded by [the defendant] depicted real children, and not virtual children."); *United States v. McNealy*, 625 F.3d, 858, 865 (5th Cir. 2010).

Finally, should the Court conclude that such testimony was somehow based on reliable methodology and relevant, its probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury. FED. R. EVID. 403. McGregor's testimony may lead jurors to wrongly believe that expert testimony is required in every case before they can conclude that an image depicts a real minor. Or, they could wrongly believe that only testimony from the producer of an image can establish whether an image depicts a real minor. Finally, the jury could wrongly conclude that, simply because an image is processed through software such as Photoshop, which could be used to rotate or brighten an image, it no longer depicts a real minor.

## Conclusion

This Court has already recognized its "gatekeeping role" to determine the admissibility of expert testimony. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993)). Before expert testimony is admissible, the court must find that it is relevant and reliable. *Id.* Part of this finding involves determining whether the expert has "reliably applied the methods in question." *Id.* (citation omitted).

On the subject of visual depictions, McGregor offers no research or peer-reviewed studies to substantiate his claims; in fact, he has failed to provide any credible basis to support his conclusions about visual depictions. Because McGregor's testimony is confusing, lacks foundation in scientific principle and at best would only mislead the

jury, the government re-urges the Court to prohibit McGregor from providing any testimony or opinions about visual depictions and technology.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

*/s/ Aisha Saleem*

AISHA SALEEM
Assistant United States Attorney
Texas State Bar No. 00786218
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Facsimile: 817-252-5455
Email: aisha.saleem@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2014, the foregoing Government's Response to Weast's Motion for Expert Designation was served by hand delivery to Angela Saad at 819 Taylor Street, Room 9A10, Fort Worth, Texas 76102.

*/s/ Aisha Saleem*

AISHA SALEEM
Assistant United States Attorney

Westlaw.

Page 1

394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.))
**(Not Selected for publication in the Federal Reporter)**
(Cite as: 394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.)))

H
This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Third Circuit LAR, App. I, IOP 5.7. (Find CTA3 App. I, IOP 5.7)

United States Court of Appeals,
Third Circuit.
UNITED STATES of America
v.
George PAYNE, Appellant.

No. 08–1102.
Submitted pursuant to Third Circuit LAR 34.1(a)
Feb. 1, 2010.
Opinion filed: Sept. 20, 2010.

**Background:** Following denial of his motion to suppress evidence, 519 F.Supp.2d 466 and 2007 WL 3145931, defendant was convicted in the United States District Court for the District of New Jersey, William J. Martini, J., of knowingly receiving child pornography and knowingly possessing child pornography. Defendant was subsequently sentenced to 60 months of concurrent imprisonment on each count, followed by ten years of supervised release, and he appealed.

**Holdings:** The Court of Appeals, McKee, Chief Circuit Judge, held that:
(1) information relied upon to obtain search warrant was not stale;
(2) good faith exception applied in any event; and
(3) provisions of the Child Pornography Prevention Act of 1996 (CPPA) under which defendant was convicted did not violate the First Amendment.

Affirmed

West Headnotes

[1] Obscenity 281 ⇌285(2)

281 Obscenity
    281VI Searches and Seizures
        281k279 Warrants
            281k285 Time for Application
                281k285(2) k. Staleness. Most Cited Cases
    (Formerly 281k7.6)
Search warrant affidavit supported an inference that defendant's computer would retain at least a digital footprint of illegal activity months after his initial subscription to the child pornography website ended, and thus, information relied upon to obtain the warrant was not stale; affidavit stated that defendant paid $79.99 for a subscription to a child pornography website and established a reasonable basis to believe that he used his home computer to download images of child pornography, and a law enforcement agent applied for the warrant less than three months after defendant's subscription began and only two months after the initial 20-day subscription ended. U.S.C.A. Const.Amend. 4.

[2] Criminal Law 110 ⇌392.38(12)

110 Criminal Law
    110XVII Evidence
        110XVII(I) Competency in General
            110k392.1 Wrongfully Obtained Evidence
                110k392.38 Good Faith or Objectively Reasonable Conduct Doctrine
                    110k392.38(6) Exceptions Relating to Defects in Warrant
                      110k392.38(12) k. Particular cases. Most Cited Cases
    (Formerly 110k394.4(6))
Even if a warrant to search for evidence of illegal activity months after defendant's initial subscription to a child pornography website ended was invalid because of staleness, the executing officers were entitled to rely on the good faith exception to the exclusionary rule, such that suppression was not warranted. U.S.C.A. Const.Amend. 4.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.)))

[3] Constitutional Law 92 €→1175

92 Constitutional Law
　92X First Amendment in General
　　92X(B) Particular Issues and Applications
　　　92k1172 Sex in General
　　　　92k1175 k. Pornography. Most Cited Cases
　　Provisions of the Child Pornography Prevention Act of 1996 (CPPA) under which defendant was convicted of possession and receipt of actual pornography did not violate the First Amendment, despite case law invalidating, on First Amendment grounds, CPPA provisions prohibiting "virtual pornography." U.S.C.A. Const.Amend. 1; 18 U.S.C.A. § 2256(8)(A).

*892 Appeal from the United States District Court for the District of New Jersey (Crim. No. 07–cr–00226), District Judge: Hon. William J. Martini.George S. Leone, Esq., John F. Romano, Esq., Office of United States Attorney, Newark, NJ, for Appellee.

Denis P. Kelleher, Esq., Kelleher & Dunne, New York, NY, for Appellant.

Before: McKEE, Chief Circuit Judge, HARDIMAN, Circuit Judges, and POLLAK, District Judge.FN*

　FN* Hon. Louis H. Pollak, Senior District Judge for the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

OPINION
McKEE, Chief Circuit Judge.
　**1 George Payne argues that the district court erred in denying his suppression motion and also in not dismissing the indictment charging him with violating provisions*893 of the Child Pornography Prevention Act of 1996 ("CPPA"), 18 U.S.C. §§ 2251 et seq. In Count One, he was charged with knowingly receiving child pornography, as defined by 18 U.S.C. § 2256(8)(A), in violation of 18 U.S.C. § 2252A(a)(2)(A). In Count Two, he was charged with knowingly possessing child pornography, as defined by 18 U.S.C. § 2256(8)(A), in violation of 18 U.S.C. § 2252A(a)(5)(B).

　Before trial Payne moved to suppress physical evidence seized from his residence, and he also moved to dismiss the indictment based on the alleged unconstitutionality of the CPPA. Both motions were denied and Payne was convicted following a bench trial on stipulated facts. On October 25, 2007, the district court filed an opinion explaining its findings and legal conclusions. See United States v. Payne, 519 F.Supp.2d 466 (D.N.J.2007).

　Payne was subsequently sentenced to sixty months of concurrent imprisonment on each count, followed by ten years of supervised release. For the reasons that follow, we will affirm.

I. Motion To Suppress.
　Because we write primarily for the parties, we set forth only those facts necessary to our analysis. In addition, the district court's analysis of the search warrant application is recited in the district court's opinion and need not be repeated here. See 519 F.Supp.2d at 468–472.

　Our review of the district court's denial of a motion to suppress is plenary. United States v. Vosburgh, 602 F.3d 512, 526 (3d Cir.2010) (citation omitted). "Thus, we apply the same standard the District Court was required to apply," i.e., "whether the magistrate who issued the warrant had a substantial basis for determining that probable cause existed." Id. (citation and internal quotation marks omitted). "We owe great deference to the magistrate's probable cause determination, but we will not simply rubber stamp it." Id. (citations and internal quotation marks omitted).

　In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Court explained:

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.)))

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, ... there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for ... concluding that probable cause existed.

*Id.* at 238–39, 103 S.Ct. 2317 (citation, internal quotation marks and bracket omitted).

Payne rests his challenge to the denial of his suppression motion in part on *United States v. Zimmerman,* 277 F.3d 426 (3d Cir.2002). There, the police obtained a warrant to search Zimmerman's home for adult and **child pornography**, and found, *inter alia,* several **images** of the latter. *Id.* at 429. However, the warrant application contained no information suggesting that Zimmerman possessed **child pornography** in his home. *Id.* We concluded that there was no probable cause to search for **child pornography**, because there was nothing to suggest that **child pornography** was ever in the home. Indeed, the government conceded as much. *Id.* at 432.

**\*\*2** [1] *Zimmerman* is not as helpful as Payne believes because the warrant application here linked a computer in Payne's home to a **child pornography** website that provided access to thousands of illegal **images** of **child pornography**. The affidavit also stated that Payne paid $79.99 for a subscription to the **child pornography** website and that he never challenged that charge on his credit card, nor did he attempt to cancel his paid subscription. **\*894** That is clearly sufficient to establish a reasonable basis to believe that Payne used his home computer to download images of child pornography and that evidence of child pornography possession and receipt would be found there. *See, e.g., United States v. Gourde,* 440 F.3d 1065, 1070–71 (9th Cir.2006) (*en banc*).

Payne also contends that the affidavit was stale. The "[a]ge of the information supporting a warrant application is a factor in determining probable cause." *United States v. Harvey,* 2 F.3d 1318, 1322 (3d Cir.1993). "If too old, the information is stale, and probable cause may no longer exist." *Zimmerman,* 277 F.3d at 434. "Age alone, however, does not determine staleness." *Harvey,* 2 F.3d at 1322. In analyzing a staleness claim, "we must do more than simply count the number of days between the date of the alleged criminal activity and the date of the warrant. We must also consider the nature of the crime and the type of evidence." *Vosburgh,* 602 F.3d at 528. (Internal quotation marks omitted).

Payne contends that the eight month delay between the initiation of the investigation and service of the search warrant renders the information in the warrant affidavit stale. We disagree.

The government did not wait eight months to apply for the warrant to search Payne's computer. Although the government's investigation of the illegal child pornography website began in October 2005, Payne did not subscribe to that site until February 12, 2006. And, the agent applied for the search warrant on May 3, 2006, less than three months after Payne's subscription began and only two months after the initial twenty-day subscription ended. Given the nature of the material, it was reasonable to believe that the two-month "delay" did not make the affidavit stale.

As we have explained, child pornography "is illegal and difficult to obtain," and it is, therefore, to be presumed that "individuals will protect and retain child pornography for long periods of time." *Zimmerman,* 277 F.3d at 434; *see also United States v. Shields,* 458 F.3d 269, 279 n. 7 (3d Cir.2006) ("We have noted that collectors of child pornography often store their material and rarely discard it.") (citation omitted). In *Shields,* we rejected a claim that a nine month lapse between shutting down "e-groups" trading in child pornography and filing an application for a search warrant did not render the information stale. *Shields,* 458 F.3d at 279 n. 7.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.)))

Moreover, as the district court noted, "the nature of digital evidence also weighs against a finding of staleness." 519 F.Supp.2d at 477. The affidavit explained why images are easy to store and difficult to permanently delete. Thus, once images are "burned" to a hard drive, forensic experts can often recover them later even though someone subsequently tries to hide, encrypt or erase them. App. 35–38. Thus, the affidavit clearly supported an inference that Payne's computer would retain at least a digital footprint of illegal activity months after the initial subscription to the child pornography website ended. Thus, the district court did not err in rejecting Payne's argument that the evidence should have been suppressed because the information relied upon to obtain the warrant was stale.

**3 [2] Moreover, we agree with the district court's conclusion that, even if the warrant was invalid because of staleness, the executing officers were entitled to rely on the good faith exception to the exclusionary rule. *See United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). "The fact that an officer executes a search pursuant to a warrant suffices to prove that an officer conducted a *895 search in good faith and justifies application of the good faith exception." *United States v. Ninety–Two Thousand Four Hundred Twenty–Two Dollars And Fifty–Seven Cents ($92,422.57),* 307 F.3d 137, 146 (3d Cir.2002) (citation and internal quotation marks omitted). Although there are "four narrow exceptions" to this rule, none of them apply here, and Payne's argument is not to the contrary. *Id.*

Rather, Payne contends that our decision in *United States v. Zimmerman, supra,* "also limited the applicability of the [good faith] [e]xception where, as here, the Affiant ... is also one of the executing officers." Payne' Br. at 20. He bases his contention on the following statement in *Zimmerman:*

And particularly where the affiant is also one of the executing officers, it is somewhat disingenuous, after having gone to the magistrate with the paltry showing seen here, to suggest, as the government suggests, that at bottom it was the magistrate who made the error and the search and seizure are insulated because the officer's reliance on that error was objectively reasonable.

277 F.3d at 438.

However, *Zimmerman* merely reinforced the longstanding exception to the good faith rule that "paltry" affidavits which " 'on their face preclude reasonable reliance' " cannot trigger "application of the good faith exception...." *Zimmerman,* 277 F.3d at 437–438 (quoting *United States v. Hove,* 848 F.2d 137, 140 (9th Cir.1988)). It did not create another exception to the rule enunciated in *Leon.* There is nothing on this record to suggest that the agent who obtained the search warrant was acting in anything other than good faith in preparing the supporting affidavit and obtaining the challenged warrant. Thus, the district court properly denied Payne's suppression motion.

**II. Motion to Dismiss the Superseding Indictment.**

[3] The superseding indictment specifically charged that Payne received and possessed **child pornography** as defined by 18 U.S.C. § 2256(8)(A). Section 2256(8)(A) defines " **child pornography** " as "any visual **depiction**, including any photograph, film, video, picture, or computer or computer-generated **image** or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where— *the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct.* " (emphasis added). Payne argues that the Supreme Court's holding in *Ashcroft v. Free Speech Coalition,* 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002), invalidated the entire CPPA, including the provisions he was charged with violating. Our review of Payne's constitutional attack on the CPPA is plenary. *United States v. Rodia,* 194 F.3d 465, 469 (3d Cir.1999).

**4 In *Free Speech Coalition,* the Supreme

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.))
(Not Selected for publication in the Federal Reporter)
(Cite as: 394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.)))

Court struck down, as overbroad and unconstitutional, two subsections of the CPPA that were part of the statutory definition of " **child pornography**." 535 U.S. at 256, 258, 122 S.Ct. 1389. Those provisions were 18 U.S.C. § 2256(8)(B), which prohibited any visual **depiction**, including a computer-generated **image**, that "is, or appears to be, of a **minor** engaging in sexually explicit conduct," and § 2256(8)(D) which prohibited any sexually explicit **image** that was "advertised, promoted, presented, described, or distributed in such a manner that conveys the impression" it **depicted** "a **minor** engaged in sexually explicit conduct." *Id. Free Speech Coalition* held that the "virtual **pornography** " prohibited by these provisions is speech that is protected under the First Amendment. *Id.*

\* In 2003, Congress repealed 18 U.S.C. § 2256(8)(D) and amended the definition of **child pornography** in 18 U.S.C. § 2256(8)(B) to include a "visual **depiction** " that "is a digital **image**, computer **image**, or computer-generated **image** that is, or is indistinguishable from, that of a **minor** engaging in sexually explicit conduct." *See* Prosecutorial Remedies and Other Tools Against the Exploitation of **Children** Today Act, Pub.L. No. 108–21, § 502(a)(1), (a)(3), 117 Stat. 650, 678 (2003).

Payne claims that the 2003 amendment to § 2256(8)(B) does not materially differ from the definition found unconstitutional in *Free Speech Coalition*. However, Payne's case has nothing to do with "virtual **pornography** " protected under the First Amendment. He was charged with possession and receipt of *actual* **pornography** as defined in § 2256(8)(A). Moreover, § 2256(8)(A) was taken from an earlier definition of **child pornography** that involved the use of " **actual minors** " which was deemed constitutional in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). *Free Speech Coalition*, 535 U.S. at 241, 122 S.Ct. 1389.

Payne next argues that § 2256(8)(A) runs afoul of *Free Speech Coalition* because it defines "child pornography" to include a "computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means of sexually explicit conduct" but does not contain a definition of "computer-generated" or the production methods of electronic, mechanical or other means. The argument borders on frivolity.

The mere fact that an **image** is computer-generated or produced by electronic means does not make it the "virtual **pornography** " at issue in *Free Speech Coalition*. As the district court explained: "If an **image's** 'production ... involves the use of a **minor** engaging in sexually explicit conduct,' as § 2256( A)(8) specifically requires, then the resulting **image** is **actual** —not virtual— **child pornography** ." 519 F.Supp.2d at 480 (citing *Free Speech Coalition*, 535 U.S. at 250–51, 122 S.Ct. 1389). Payne's argument would transform **actual images** captured on a digital camera or manipulated with software into "virtual" **images**. We see nothing in the text of this statute to suggest that Congress intended such an illogical and impractical result. Payne's case clearly involves neither of the provisions struck down in *Free Speech Coalition* nor the provisions passed by Congress in reaction to *Free Speech Coalition*.

### III. Conclusion.
\*\*5 Because the district court did not err in denying Payne's motion to suppress and his motion to dismiss the superseding indictment, we will affirm the district court's judgment of conviction and sentence.

C.A.3 (N.J.),2010.
U.S. v. Payne
394 Fed.Appx. 891, 2010 WL 3622949 (C.A.3 (N.J.))

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.