ORIGINAL

United States district court
Northern District of Texas
Fort Worth Division



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

FILED

OCT 20 2014

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

UNITED STATES OF AMERICA )
                         )
                         )
v.                       ) No. 4:14-CR-00023-A
                         )
CHRISTOPHER ROBERT WEAST ) Special Appearance Only

Mandatory Judicial Notice
FRCP 201(d)
Evidence in Support of Motions Undecided

comes now Christopher Robert of the family Weast, a living, breathing Man, in my own Handwriting, as a Citizen of Heaven on Earth, domiciled within Heaven on Earth, and a National of the united Sovereigns of Earth, present the following evidence as follows:

1. Judges Canons 1-7 attached as Exhibit A1a pages 1-16.

2. Fed. R. Civ. P. Rule 60, Relief from a Judgment or Order (b)(3); (b)(4) and (b)(6) attached as Exhibit A2a. pages 1-4.

3. Loss of nationality by native-born or naturalized [citizen]; voluntary action; burden of proof; presumptions attached as Exhibit A3a.

4. Rule 301 Fed. R. Civ. P. Presumptions in Civil Cases Generally attached as Exhibit A4a.

5. Fed. R. Civ. P. Rule 12 Defenses and Objections attached as Exhibit A5a pages 1-3.

6. §411 Issuance to reserve banks; nature of obligation; redemption attached as ~~Exhibit~~ Exhibit A6a.

7. Obligations of the United States attached as Exhibit A7a.

8. §2281 "Debt-for-nature exchange" defined attached as Exhibit A8a.

9. §1602. Findings and declaration of purpose attached as Exhibit B1 Immunity from jurisdiction of United States courts.

10. 28 U.S.C. §1603 Definitions attached as Exhibit B2.

11. 28 U.S.C. §1605 General exceptions to the jurisditional immunity of a foreign state attached as Exhibit B4. pages 1-4.

12. 28 U.S.C. §1606 Extent of liability attached as Exhibit B5.

13. 28 U.S.C. § 1607 Counterclaims attached as Exhibit B6.

14. 28 U.S.C. §1608 Service; time to answer; default attached as Exhibit B7A. pages 1-2.

15. 4 U.S.C. §110 Same; definitions attached as Exhibit B8.

16. 5 U.S.C. §§5721 Definitions attached as Exhibit B9.

17. Jurisdiction of United States district courts attached as Exhibits B10 and B11.

18. 1 U.S.C. §8 "Person", "human being", "child", and "individual", as including born-alive infant attached

as Exhibit D1.

19. 1 U.S.C. §1 Words denoting number, gender, and so forth attached as Exhibit D2.

# CANON 1

## A JUDGE SHOULD UPHOLD THE INTEGRITY AND INDEPENDENCE OF THE JUDICIARY

An independent and honorable judiciary is indispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing high standards of conduct, and should personally observe those standards, so that the integrity and independence of the judiciary may be preserved. The provisions of this Code should be construed and applied to further that objective.

### COMMENTARY

Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges. The integrity and independence of judges depend in turn upon their acting without fear or favor. Although judges should be independent, they should comply with the law, as well as the provisions of this Code. Public confidence in the impartiality of the judiciary is maintained by the adherence of each judge to this responsibility. Conversely, violation of this Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law.

The Canons are rules of reason. They should be applied consistent with constitutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances. The Code is to be construed so as not to impinge on the essential independence of judges in making judicial decisions.

The Code is designed to provide guidance to judges and nominees for judicial office. The Code may also provide standards of conduct for application in proceedings under the Judicial Councils Reform and Judicial Conduct and Disability Act of 1980 (28 U.S.C. §§ 332(d)(1), 372(c)), although it is not intended that disciplinary action would be appropriate for every violation of its provisions. Whether disciplinary action is appropriate, and the degree of discipline to be imposed, should be determined through a reasonable application of the text and should depend on such factors as the seriousness of the violation, the intent of the judge, whether there is a pattern of improper activity, and the effect of the improper activity on others or on the judicial system. Many of the proscriptions in the Code are necessarily cast in general terms, and it is not suggested that disciplinary action is appropriate where reasonable judges might be uncertain as to whether or not the conduct is proscribed. Furthermore, the Code is not designed or intended as a basis for civil liability or criminal prosecution. Finally, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding.

# CANON 2

USCS                                                                1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A1a

47797177

## A JUDGE SHOULD AVOID IMPROPRIETY AND THE APPEARANCE OF IMPROPRIETY IN ALL ACTIVITIES

A. A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.

B. A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not lend the prestige of the judicial office to advance the private interests of others; nor convey or permit others to convey the impression that they are in a special position to influence the judge. A judge should not testify voluntarily as a character witness.

C. A judge should not hold membership in any organization that practices invidious discrimination on the basis of race, sex, religion, or national origin.

### COMMENTARY

*Canon 2A.* Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly. The prohibition against behaving with impropriety or the appearance of impropriety applies to both the professional and personal conduct of a judge. Because it is not practicable to list all prohibited acts, the proscription is necessarily cast in general terms that extend to conduct by judges that is harmful although not specifically mentioned in the Code. Actual improprieties under this standard include violations of law, court rules or other specific provisions of this Code. The test for appearance of impropriety is whether the conduct would create in reasonable minds, with knowledge of all the relevant circumstances that a reasonable inquiry would disclose, a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality, and competence is impaired.

*Canon 2B.* The testimony of a judge as a character witness injects the prestige of the judicial office into the proceeding in which the judge testifies and may be misunderstood to be an official testimonial. This Canon, however, does not afford the judge a privilege against testifying in response to an official summons. Except in unusual circumstances where the demands of justice require, a judge should discourage a party from requiring the judge to testify as a character witness.

A judge should avoid lending the prestige of judicial office for the advancement of the private interests of the judge or others. For example, a judge should not use the judge's judicial position to gain advantage in litigation involving a friend or a member of the judge's family. In contracts for publication of a judge's writings, a judge should retain control over the advertising to avoid

USCS                                          2

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

exploitation of the judge's office.

A judge should be sensitive to possible abuse of the prestige of office. A judge should not initiate the communication of information to a sentencing judge or a probation or corrections officer but may provide to such persons information in response to a formal request. Judges may participate in the process of judicial selection by cooperating with appointing authorities and screening committees seeking names for consideration, and by responding to official inquiries concerning a person being considered for a judgeship.

*Canon 2C.* Membership of a judge in an organization that practices invidious discrimination gives rise to perceptions that the judge's impartiality is impaired. Canon 2C refers to the current practices of the organization. Whether an organization practices invidious discrimination is often a complex question to which judges should be sensitive. The answer cannot be determined from a mere examination of an organization's current membership rolls but rather depends on how the organization selects members and other relevant factors, such as that the organization is dedicated to the preservation of religious, ethnic or cultural values of legitimate common interest to its members, or that it is in fact and effect an intimate, purely private organization whose membership limitations could not be constitutionally prohibited. *See New York State Club Ass'n. Inc. v. City of New York*, 487 U.S. 1, 108 S. Ct. 2225, 101 L. Ed. 2d 1 (1988); *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 107 S. Ct. 1940, 95 L. Ed. 2d 474 (1987); *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S. Ct. 3244, 82 L. Ed. 2d 462 (1984). Other relevant factors include the size and nature of the organization and the diversity of persons in the locale who might reasonably be considered potential members. Thus the mere absence of diverse membership does not by itself demonstrate a violation unless reasonable persons with knowledge of all the relevant circumstances would expect that the membership would be diverse in the absence of invidious discrimination. Absent such factors, an organization is generally said to discriminate invidiously if it arbitrarily excludes from membership on the basis of race, religion, sex, or national origin persons who would otherwise be admitted to membership.

Although Canon 2C relates only to membership in organizations that invidiously discriminate on the basis of race, sex, religion or national origin, a judge's membership in an organization that engages in any invidiously discriminatory membership practices prohibited by applicable law violates Canons 2 and 2A and gives the appearance of impropriety. In addition, it would be a violation of Canons 2 and 2A for a judge to arrange a meeting at a club that the judge knows practices invidious discrimination on the basis of race, sex, religion, or national origin in its membership or other policies, or for the judge to use such a club regularly. Moreover, public manifestation by a judge of the judge's knowing approval of invidious discrimination on any basis gives the appearance of impropriety under Canon 2 and diminishes public confidence in the integrity and impartiality of the judiciary, in violation of Canon 2A.

USCS                                  3

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

When a judge determines that an organization to which the judge belongs engages in invidious discrimination that would preclude membership under Canon 2C or under Canons 2 and 2A, the judge is permitted, in lieu of resigning, to make immediate and continuous efforts to have the organization discontinue its invidiously discriminatory practices.  If the organization fails to discontinue its invidiously discriminatory practices as promptly as possible (and in all events within two years of the judge's first learning of the practices), the judge should resign immediately from the organization.

CANON 3

**A JUDGE SHOULD PERFORM THE DUTIES OF THE OFFICE IMPARTIALLY AND DILIGENTLY**

The judicial duties of a judge take precedence over all other activities.  In performing the duties prescribed by law, the judge should adhere to the following standards:

A. *Adjudicative responsibilities.*
    (1) A judge should be faithful to and maintain professional competence in the law, and should not be swayed by partisan interests, public clamor, or fear of criticism.
    (2) A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings.
    (3) A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity, and should require similar conduct of those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process.
    (4) A judge should accord to every person who is legally interested in a proceeding, or the person's lawyer, full right to be heard according to law, and, except as authorized by law, neither initiate nor consider *ex parte* communications on the merits, or procedures affecting the merits, of a pending or impending proceeding.  A judge may, however,  obtain the advice of a disinterested expert on the law applicable to a proceeding before the judge if the judge gives notice to the parties of the person consulted and the substance of the advice, and affords the parties reasonable opportunity to respond.  A judge may, with consent of the parties, confer separately with the parties and their counsel in an effort to mediate or settle pending matters.
    (5) A judge should dispose promptly of the business of the court.
    (6) A judge should avoid public comment on the merits of a pending or impending action, requiring similar restraint by court personnel subject to the judge's direction and control.  This proscription does not extend to public statements made in the course of the judge's official duties, to the explanation of court procedures, or to a scholarly presentation made for purposes of legal education.

USCS                                          4

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

B. *Administrative responsibilities.*

(1) A judge should diligently discharge the judge's administrative responsibilities, maintain professional competence in judicial administration, and facilitate the performance of the administrative responsibilities of other judges and court officials.

(2) A judge should require court officials, staff, and others subject to the judge's direction and control, to observe the same standards of fidelity and diligence applicable to the judge.

(3) A judge should initiate appropriate action when the judge becomes aware of reliable evidence indicating the likelihood of unprofessional conduct by a judge or lawyer.

(4) A judge should not make unnecessary appointments and should exercise that power only on the basis of merit, avoiding nepotism and favoritism. A judge should not approve compensation of appointees beyond the fair value of services rendered.

(5) A judge with supervisory authority over other judges should take reasonable measures to assure the timely and effective performance of their duties.

C. *Disqualification.*

(1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances in which:

(a) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) the judge served as lawyer in the matter in controversy, or a lawyer with whom the judge previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness;

(c) the judge knows that the judge, individually or as a fiduciary, or the judge's spouse or minor child residing in the judge's household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding;

(d) the judge or the judge's spouse, or a person related to either within the third degree of relationship, or the spouse of such a person:

(i) is a party to the proceeding, or an officer, director, or trustee of a party;

(ii) is acting as a lawyer in the proceeding;

(iii) is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding; or

(iv) is to the judge's knowledge likely to be a material witness in the proceeding.

(e) the judge has served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the proceeding or has expressed an opinion concerning the merits of the particular case in controversy.

(2) A judge should keep informed about the judge's personal and fiduciary financial interests, and make a reasonable effort to keep informed about the personal financial interests of the

USCS                                                  5

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

judge's spouse and minor children residing in the judge's household.

(3) For the purposes of this section:

(a) the degree of relationship is calculated according to the civil law system; the following relatives are within the third degree of relationship: parent, child, grandparent, grandchild, great grandparent, great grandchild, sister, brother, aunt, uncle, niece and nephew; the listed relatives include whole and half blood relatives and most step relatives;

(b) "fiduciary" includes such relationships as executor, administrator, trustee, and guardian;

(c) "financial interest" means ownership of a legal or equitable interest, however small, or a relationship as director, advisor, or other active participant in the affairs of a party, except that:

(i) ownership in a mutual or common investment fund that holds securities is not a "financial interest" in such securities unless the judge participates in the management of the fund;

(ii) an office in an educational, religious, charitable, fraternal, or civic organization is not a "financial interest" in securities held by the organization;

(iii) the proprietary interest of a policy holder in a mutual insurance company, or a depositor in a mutual savings association, or a similar proprietary interest, is a "financial interest" in the organization only if the outcome of the proceeding could substantially affect the value of the interest;

(iv) ownership of government securities is a "financial interest" in the issuer only if the outcome of the proceeding could substantially affect the value of the securities.

(d) "proceeding" includes pretrial, trial, appellate review, or other stages of litigation.

(4) Notwithstanding the preceding provisions of this Canon, if a judge to whom a matter has been assigned would be disqualified, after substantial judicial time has been devoted to the matter, because of the appearance or discovery, after the matter was assigned to him or her, that he or she individually or as a fiduciary, or his or her spouse or minor child residing in his or her household, has a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the judge, spouse or minor child, as the case may be, divests himself or herself of the interest that provides the grounds for the disqualification.

D. *Remittal of disqualification.*

A judge disqualified by the terms of Canon 3C(1), except in the circumstances specifically set out in subsections (a) through (e), may, instead of withdrawing from the proceeding, disclose on the record the basis of disqualification. If the parties and their lawyers after such disclosure and an opportunity to confer outside of the presence of the judge, all agree in writing or on the record that the judge should not be disqualified, and the judge is then willing to participate, the judge

USCS                                                      6

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

may participate in the proceeding.  The agreement shall be incorporated in the record of the proceeding.

## COMMENTARY

*Canon 3A(3).* The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court.  Courts can be efficient and businesslike while being patient and deliberate.

The duty under Canon 2 to act in a manner that promotes public confidence in the integrity and impartiality of the judiciary applies to all the judge's activities, including the discharge of the judge's adjudicative and administrative responsibilities.  For example, the duty to be respectful of others includes the responsibility to avoid comment or behavior that can reasonably be interpreted as manifesting prejudice or bias towards another on the basis of personal characteristics like race, sex, religion, or national origin.

*Canon 3A(4).* The proscription against communications concerning a proceeding includes communications from lawyers, law teachers, and other persons who are not participants in the proceeding, except to the limited extent permitted.  It does not preclude a judge from consulting with other judges, or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities.  A judge should make reasonable efforts to ensure that this provision is not violated through law clerks or other staff personnel.

An appropriate and often desirable procedure for a court to obtain the advice of a disinterested expert on legal issues is to invite the expert to file a brief amicus-curiae.

*Canon 3A(5).* In disposing of matters promptly, efficiently and fairly, a judge must demonstrate due regard for the rights of the parties to be heard and to have issues resolved without unnecessary cost or delay.  A judge should monitor and supervise cases so as to reduce or eliminate dilatory practices, avoidable delays and unnecessary costs.  A judge should encourage and seek to facilitate settlement, but parties should not feel coerced into surrendering the right to have their controversy resolved by the courts.

Prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to insist that court officials, litigants and their lawyers cooperate with the judge to that end.

*Canon 3A(6).* The admonition against public comment about the merits of a pending or impending action continues until completion of the appellate process.  If the public comment involves a case from the judge's own court, particular care should be taken that the comment does not denigrate public confidence in the integrity and impartiality of the judiciary in violation of Canon 2A.  This provision does not restrict comments about proceedings in which the judge is a litigant in a

USCS                                          7

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

personal capacity, but in mandamus proceedings when the judge is a litigant in an official capacity, the judge should not comment beyond the record.

"Court personnel" does not include the lawyers in a proceeding before a judge. The conduct of lawyers is governed by the rules of professional conduct applicable in the various jurisdictions.

*Canon 3B(3).* Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, and reporting the violation to the appropriate authorities.

*Canon 3B(4).* Appointees of the judge include officials such as referees, commissioners, special masters, receivers, guardians, and personnel such as clerks, secretaries, and bailiffs. Consent by the parties to an appointment or an award of compensation does not relieve the judge of the obligation prescribed by this subsection.

*Canon 3C(1)(d)(ii).* The fact that a lawyer in a proceeding is affiliated with a law firm with which a lawyer-relative of the judge is affiliated does not of itself disqualify the judge. Under appropriate circumstances, the fact that "the judge's impartiality might reasonably be questioned" under Canon 3C(1), or that the lawyer-relative is known by the judge to have an interest in the law firm that could be "substantially affected by the outcome of the proceeding" under Canon 3C(1)(d)(iii) may require the judge's disqualification.

CANON 4

**A JUDGE MAY ENGAGE IN EXTRA-JUDICIAL ACTIVITIES TO IMPROVE THE LAW, THE LEGAL SYSTEM, AND THE ADMINISTRATION OF JUSTICE**

A judge, subject to the proper performance of judicial duties, may engage in the following law-related activities, if in doing so the judge does not cast reasonable doubt on the capacity to decide impartially any issue that may come before the judge:

A. A judge may speak, write, lecture, teach, and participate in other activities concerning the law, the legal system, and the administration of justice.

B. A judge may appear at a public hearing before, or otherwise consult with, an executive or legislative body or official on matters concerning the law, the legal system, and the administration of justice to the extent that it would generally be perceived that a judge's judicial experience provides special expertise in the area. A judge acting pro se may also appear before or consult with such officials or bodies in a matter involving the judge or the judge's interest.

C. A judge may serve as a member, officer, or director of an organization or governmental agency devoted to the improvement of the law, the legal system, or the administration of justice. A judge

USCS                                            8

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

may assist such an organization in planning fund-raising activities and may participate in the management and investment of funds, but should not personally participate in public fund-raising activities. A judge may make recommendations to public and private fund-granting agencies on projects and programs concerning the law, the legal system, and the administration of justice. A judge may solicit funds from other judges over whom the judge does not exercise supervisory or appellate authority. A judge shall not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or is essentially a fund-raising mechanism.

D. A judge should not use to any substantial degree judicial chambers, resources, or staff to engage in activities permitted by this Canon.

### COMMENTARY

*Canon 4.* As a judicial officer and person specially learned in the law, a judge is in a unique position to contribute to the improvement of the law, the legal system, and the administration of justice, including revision of substantive and procedural law and improvement of criminal and juvenile justice. To the extent that the judge's time permits, the judge is encouraged to do so, either independently or through a bar association, judicial conference, or other organization dedicated to the improvement of the law. Within the boundaries of applicable law, see, e.g., 18 U.S.C. § 953, a judge may express opposition to the persecution of lawyers and judges anywhere in the world if the judge has ascertained, after reasonable inquiry, that the persecution is occasioned by conflict between the professional responsibilities of the persecuted judge or lawyer and the policies or practices of the relevant government.

*Canon 4C.* Service on the board of a public, as well as private, law school is permissible.

A judge may attend fund-raising activities of a law-related organization although the judge may not be a speaker, guest of honor, or featured on the program of such an event.

CANON 5

### A JUDGE SHOULD REGULATE EXTRA-JUDICIAL ACTIVITIES TO MINIMIZE THE RISK OF CONFLICT WITH JUDICIAL DUTIES

A. *Avocational activities.* A judge may write, lecture, teach, and speak on non-legal subjects, and engage in the arts, sports, and other social and recreational activities, if such avocational activities do not detract from the dignity of the judge's office or interfere with the performance of the judge's judicial duties.

B. *Civic and charitable activities.* A judge may participate in civic and charitable activities that do not reflect adversely upon the judge's impartiality or interfere with the performance of judicial duties. A judge may serve as an officer, director, trustee, or non-legal advisor of an educational,

USCS                                              9

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

religious, charitable, fraternal, or civic organization not conducted for the economic or political advantage of its members, subject to the following limitations:

(1) A judge should not serve if it is likely that the organization will be engaged in proceedings that would ordinarily come before the judge or will be regularly engaged in adversary proceedings in any court.

(2) A judge should not solicit funds for any educational, religious, charitable, fraternal, or civic organization, or use or permit the use of the prestige of the judicial office for that purpose, but the judge may be listed as an officer, director, or trustee of such an organization. A judge should not personally participate in membership solicitation if the solicitation might reasonably be perceived as coercive or is essentially a fund-raising mechanism.

(3) A judge should not give investment advice to such an organization, but may serve on its board of directors or trustees even though it has the responsibility for approving investment decisions.

C. *Financial activities.*

(1) A judge should refrain from financial and business dealings that tend to reflect adversely on the judge's impartiality, interfere with the proper performance of judicial duties, exploit the judicial position, or involve the judge in frequent transactions with lawyers or other persons likely to come before the court on which the judge serves.

(2) Subject to the requirements of subsection (1), a judge may hold and manage investments, including real estate, and engage in other remunerative activity, but should not serve as an officer, director, active partner, manager, advisor, or employee of any business other than a business closely held and controlled by members of the judge's family. For this purpose, "members of the judge's family" means persons related to the judge or the judge's spouse within the third degree of relationship calculated according to the civil law system, any other relatives with whom the judge or the judge's spouse maintains a close familial relationship, and the spouse of any of the foregoing.

(3) A judge should manage investments and other financial interests to minimize the number of cases in which the judge is disqualified. As soon as the judge can do so without serious financial detriment, the judge should divest himself or herself of investments and other financial interests that might require frequent disqualification.

(4) A judge should not solicit or accept anything of value from anyone seeking official action from or doing business with the court or other entity served by the judge, or from anyone whose interests may be substantially affected by the performance or nonperformance of official duties; except that a judge may accept a gift as permitted by the Judicial Conference gift regulations. A judge should endeavor to prevent a member of a judge's family residing in the household from soliciting or accepting a gift except to the extent that a judge would be permitted to do so by the Judicial Conference gift regulations.

(5) For the purposes of this section "members of the judge's family residing in the judge's

USCS                                          **10**

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

household" means any relative of a judge by blood or marriage, or a person treated by a judge as a member of the judge's family, who resides in the judge's household.

(6) A judge should report the value of any gift, bequest, favor, or loan as required by statute or by the Judicial Conference of the United States.

(7) A judge is not required by this Code to disclose his or her income, debts, or investments, except as provided in this Canon and Canons 3 and 6.

(8) Information acquired by a judge in the judge's judicial capacity should not be used or disclosed by the judge in financial dealings or for any other purpose not related to the judge's judicial duties.

D. *Fiduciary activities.* A judge should not serve as the executor, administrator, trustee, guardian, or other fiduciary, except for the estate, trust, or person of a member of the judge's family, and then only if such service will not interfere with the proper performance of judicial duties. "Member of the judge's family" means any relative of a judge by blood, adoption, or marriage or any other person treated by a judge as a member of the judge's family.

As a family fiduciary a judge is subjected to the following restrictions:

(1) The judge should not serve if it is likely that as a fiduciary the judge will be engaged in proceedings that would ordinarily come before the judge or if the estate, trust or ward becomes involved in adversary proceedings in the court on which the judge serves or one under its appellate jurisdiction.

(2) While acting as a fiduciary a judge is subject to the same restrictions on financial activities that apply to the judge in his or her personal capacity.

E. *Arbitration.* A judge should not act as an arbitrator or mediator or otherwise perform judicial functions in a private capacity unless expressly authorized by law.

F. *Practice of law.* A judge should not practice law. Notwithstanding this prohibition, a judge may act pro se and may, without compensation, give legal advice to and draft or review documents for a member of the judge's family.

G. *Extra-judicial appointments.* A judge should not accept appointment to a governmental committee, commission, or other position that is concerned with issues of fact or policy on matters other than the improvement of the law, the legal system, or the administration of justice, unless appointment of a judge is required by Act of Congress. A judge should not, in any event, accept such an appointment if the judge's governmental duties would interfere with the performance of judicial duties or tend to undermine the public confidence in the integrity, impartiality, or independence of the judiciary. A judge may represent the judge's country, state, or locality on ceremonial occasions or in connection with historical, educational, and cultural activities.

USCS                                              **11**

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

H. *Chambers, resources, and staff.* Chambers, Resources, and Staff.  A judge should not use judicial chambers, resources, or staff to engage in activities permitted by this Canon, except for uses that are de minimis.

## COMMENTARY

*Canon 5A.* Complete separation of a judge from extra-judicial activities is neither possible nor wise; a judge should not become isolated from the society in which the judge lives.

*Canon 5B(1).* The changing nature of some organizations and of their relationship to the law makes it necessary for a judge regularly to reexamine the activities of each organization with which the judge is affiliated to determine if it is proper for the judge to continue the judge's relationship with it.  For example, in many jurisdictions charitable hospitals are now more frequently in court than in the past.  Similarly, the boards of some legal aid organizations now make policy decisions that may have political significance or imply commitment to causes that may come before the courts for adjudication.

*Canon 5B(2) and (3).* A judge may attend fund-raising activities of the organization although the judge may not be a speaker, a guest of honor, or featured on the program of such an event.  Use of an organization's letterhead for fund-raising or membership solicitation does not violate Canons 5B(2) and (3) provided the letterhead lists only the judge's name and position in the organization, and, if comparable designations are listed for other persons, the judge's judicial designation.

*Canon 5C.* Canon 3 requires a judge to disqualify in any proceeding in which the judge has a financial interest, however small;  Canon 5 requires a judge to refrain from engaging in business and from financial activities that might interfere with the impartial performance of the judge's judicial duties;  Canon 6 requires a judge to report all compensation received for activities outside the judicial office.  A judge has the rights of an ordinary citizen with respect to financial affairs, except for limitations required to safeguard the proper performance of the judge's duties.  A judge's participation in a closely held family business, while generally permissible, may be prohibited if it takes too much time or involves misuse of judicial prestige or if the business is likely to come before the judge's court.  Owning and receiving income from investments do not as such affect the performance of a judge's duties.

*Canon 5C(4).* Reimbursement or direct payment of travel expenses may be a gift and, if so, its acceptance is governed by Canons 5C(4) and (5).  A judge or employee may receive as a gift travel expense reimbursement including the cost of transportation, lodging, and meals, for the judge and a relative incident to the judge's attendance at a bar-related function or at an activity devoted to the improvement of the law, the legal system, or the administration of justice.

*Canon 5D.* Mere residence in the household of a judge is insufficient for a person to be

USCS                                12

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

considered a member of the judge's family for purposes of this Canon. The person must be treated by the judge as a member of the judge's family.

*Canon 5D(1).* The Applicable Date of Compliance provision of this Code qualifies this subsection with regard to a judge who is an executor, administrator, trustee, or other fiduciary at the time this Code becomes effective.

*Canon 5D(2).* A judge's obligation under this Code and the judge's obligation as a fiduciary may come into conflict. For example, a judge should resign as trustee if it would result in detriment to the trust to divest it of holdings whose retention would place the judge in violation of Canon 5C(3).

*Canon 5F.* This prohibition refers to the practice of law in a representative capacity and not in a pro se capacity. A judge may act for himself or herself in all legal matters, including matters involving litigation and matters involving appearances before or other dealings with legislative and other governmental bodies. However, in so doing, a judge must not abuse the prestige of office to advance the interests of the judge or the judge's family.

*Canon 5G.* Valuable services have been rendered in the past to the states and the nation by judges appointed by the executive to undertake important extra-judicial assignments. The appropriateness of conferring these assignments on judges must be reassessed, however, in light of the demands on judicial resources created by today's crowded dockets and the need to protect the courts from involvement in extra-judicial matters that may prove to be controversial. Judges should not be expected or permitted to accept governmental appointments that could interfere with the effectiveness and independence of the judiciary.

The dangers attendant upon acceptance of extra-judicial governmental assignments are ordinarily less serious where the appointment of a judge is required by legislation. Such assignments ordinarily do not involve excessive commitments of time, and they typically do not pose a serious threat to the independence of the judiciary.

A code of conduct ought not compel judges to refuse, without regard to the circumstances, tasks Congress has seen fit to authorize as appropriate in the public interest. Although legislatively prescribed extra-judicial assignments should be discouraged, where Congress requires the appointment of a judge to perform extra-judicial duties, the judge may accept the appointment provided that the judge's services would not interfere with the performance of the judge's judicial responsibilities or tend to undermine public confidence in the judiciary.

CANON 6

## A JUDGE SHOULD REGULARLY FILE REPORTS OF COMPENSATION RECEIVED FOR LAW-RELATED AND EXTRA-JUDICIAL ACTIVITIES

USCS                                    13

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A judge may receive compensation and reimbursement of expenses for the law-related and extra-judicial activities permitted by this Code, if the source of such payments does not give the appearance of influencing the judge in the judge's judicial duties or otherwise give the appearance of impropriety, subject to the following restrictions:

A. *Compensation.* Compensation should not exceed a reasonable amount nor should it exceed what a person who is not a judge would receive for the same activity.

B. *Expense reimbursement.* Expense reimbursement should be limited to the actual costs of travel, food, and lodging reasonably incurred by the judge and, where appropriate to the occasion, by the judge's spouse or relative. Any payment in excess of such an amount is compensation.

C. *Public reports.* A judge should make required financial disclosures in compliance with applicable statutes and Judicial Conference regulations and directives.

### COMMENTARY

Additional restrictions on the receipt of compensation by judges are imposed by the Ethics Reform Act of 1989 and regulations promulgated by the Judicial Conference thereunder. That Act and those regulations should be consulted before a judge enters into any arrangement involving the receipt of compensation. The restrictions so imposed include, but are not limited to: (1) a prohibition against receiving "honoraria" (defined as anything of value received for a speech, appearance, or article), (2) a prohibition against receiving compensation for service as a director, trustee, or officer of a profit or nonprofit organization, (3) a requirement that compensated teaching activities receive prior approval, and (4) a 15% limitation on the receipt of "outside earned income."

CANON 7

### A JUDGE SHOULD REFRAIN FROM POLITICAL ACTIVITY

A. A judge should not:
    (1) act as a leader or hold any office in a political organization;
    (2) make speeches for a political organization or candidate or publicly endorse or oppose a candidate for public office;
    (3) solicit funds for or pay an assessment or make a contribution to a political organization or candidate, attend political gatherings, or purchase tickets for political party dinners, or other functions.

B. A judge should resign the judicial office when the judge becomes a candidate either in a primary or in a general election for any office.

USCS                                           14

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

C. A judge should not engage in any other political activity; provided, however, this should not prevent a judge from engaging in the activities described in Canon 4.

## COMPLIANCE WITH THE CODE OF CONDUCT

Anyone who is an officer of the federal judicial system authorized to perform judicial functions is a judge for the purpose of this Code. All judges should comply with this Code except as provided below.

A. Part-time Judge. A part-time judge is a judge who serves on a continuing or periodic basis, but is permitted by law to devote time to some other profession or occupation and whose compensation for that reason is less than that of a full-time judge. A part-time judge:

    (1) is not required to comply with Canons 5C(2), D, E, F, and G, and Canon 6C;

    (2) except as provided in the Conflict-of-Interest Rules for Part-time Magistrate Judges, should not practice law in the court on which the judge serves or in any court subject to the appellate jurisdiction of the court on which the judge serves, or act as a lawyer in a proceeding in which the judge has served as a judge or in any other proceeding related thereto.

B. Judge Pro Tempore. A judge pro tempore A judge pro tempore is a person who is appointed to act temporarily as a judge or as a special master.

    (1) While acting as such, a judge pro tempore is not required to comply with Canons 5C(2), (3), D, E, F, and G, and Canon 6C; further, one who acts solely as a special master is not required to comply with Canons 4C, 5B (except the first sentence thereof), 5C(4), and 7.

    (2) A person who has been a judge pro tempore should not act as a lawyer in a proceeding in which the judge has served as a judge or in any other proceeding related thereto.

C. Retired Judge. A retired judge who is retired under 28 U.S.C. §§ 371(b) or 372(a), or who is recalled to judicial service, should comply with all the provisions of this Code except Canon 5G, but the judge should refrain from judicial service during the period of an extra-judicial appointment not sanctioned by Canon 5G. All other retired judges who are eligible for recall to judicial service (except those in Territories and Possessions) should comply with the provisions of this Code governing part-time judges. A senior judge in the Territories and Possessions must comply with this Code as prescribed by 28 U.S.C. § 373(c)(5) and (d).

## APPLICABLE DATE OF COMPLIANCE

Persons to whom this Code becomes applicable should arrange their affairs as soon as reasonably possible to comply with it and should do so in any event within the period of one year following appointment. If, however, the demands on the person's time and the possibility of conflicts of interest are not substantial, such a person may continue to act, without compensation, as an executor, administrator, trustee, or other fiduciary for the estate or person of one who is not a

USCS                                   **15**

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

member of the person's family, if terminating such relationship would unnecessarily jeopardize any substantial interest of the estate or person and the judicial council of the circuit approves.

**16**

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

Rule 60.          Relief from a Judgment or Order

(a) **Corrections Based on Clerical Mistakes; Oversights and Omissions.**   The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b) **Grounds for Relief from a Final Judgment, Order, or Proceeding.**   On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

(c) **Timing and Effect of the Motion.**
(1) *Timing.* A motion under Rule 60(b) must be made within a reasonable time-and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.
(2) *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

(d) **Other Powers to Grant Relief.**   This rule does not limit a court's power to:
(1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
(2) grant relief under 28 U.S.C. § 1655 to a defendant who was not personally notified of the action; or
(3) set aside a judgment for fraud on the court.

(e) **Bills and Writs Abolished.**   The following are abolished: bills of review, bills in the nature of bills of review, and writs of coram nobis, coram vobis, and audita querela.

(Amended March 19, 1948; Oct. 20, 1949; Aug. 1, 1987; Dec. 1, 2007.)

HISTORY; ANCILLARY LAWS AND DIRECTIVES

USCSRULE                                    1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A2a

47797177

**Other provisions:**

**Notes of Advisory Committee.** *Note to Subdivision (a).* See former Equity Rule 72 (Correction of Clerical Mistakes in Orders and Decrees); Mich. Court Rules Ann. (Searl, 1933) Rule 48, § 3; 2 Wash. Rev. Stat. Ann. (Remington, 1932) § 464(3); Wyo. Rev. Stat. Ann. (Courtright, 1931) § 89-2301(3). For an example of a very liberal provision for the correction of clerical errors and for amendment after judgment, see Va. Code Ann. (Michie, 1936) §§ 6329, 6333.

*Note to Subdivision (b).* Application to the court under this subdivision does not extend the time for taking an appeal, as distinguished from the motion for new trial. This section is based upon Calif. Code Civ. Proc. (Deering, 1937) § 473. See also N.Y.C.P.A. (1937) § 108; 2 Minn. Stat. (Mason, 1927) § 9283.

For the independent action to relieve against mistake, etc., see Dobie, Federal Procedure, pages 760-765, compare 639; and Simkins, Federal Practice, ch CXXI (pp 820-830) and ch. CXXII (pp 831-834), compare § 214.

**Notes of Advisory Committee on 1946 amendments.** *Note to Subdivision (a).* The amendment incorporates the view expressed in *Perlman v. 322 West Seventy-Second Street Co., Inc.,* 127 F.2d 716 (2d Cir. 1942) ; 3 Moore's Federal Practice, 1938, 3276, and further permits correction after docketing, with leave of the appellate court. Some courts have thought that upon the taking of an appeal the district court lost its power to act. See *Schram v. Safety Investment Co.,* 45 F. Supp. 636 (E.D. Mich. 1942); also *Miller v. United States,* 114 F.2d 267 (7th Cir. 1940).

*Note to Subdivision (b).* When promulgated, the rules contained a number of provisions, including those found in Rule 60(b), describing the practice by a motion to obtain relief from judgments, and these rules, coupled with the reservation in Rule 60(b) of the right to entertain a new action to relieve a party from a judgment, were generally supposed to cover the field. Since the rules have been in force, decisions have been rendered that the use of bills of review, coram nobis, or audita querela, to obtain relief from final judgments is still proper, and that various remedies of this kind still exist although they are not mentioned in the rules and the practice is not prescribed in the rules. It is obvious that the rules should be complete in this respect and define the practice with respect to any existing rights or remedies to obtain relief from final judgments. For extended discussion of the old common law writs and equitable remedies, the interpretation of Rule 60, and proposals for change, see Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L. J. 623. See also 3 Moore's Federal Practice, 1938, 3254 et seq.; Commentary, Effect of Rule 60b on Other Methods of Relief From Judgment, 1941, 4 Fed. Rules Serv. 942, 945; *Wallace v. United States,* 142 F.2d 240 (2d Cir. 1944), cert. denied, 323 U.S. 712, 89 L. Ed. 573, 65 S. Ct. 37 (1944).

The reconstruction of Rule 60(b) has for one of its purposes a clarification of this situation. Two types of procedure to obtain relief from judgments are specified in the rules as it is proposed to amend them. One procedure is by motion in the court and in the action in which the judgment was rendered. The other procedure is by a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered the judgment. Various rules, such as the one dealing with a motion for new trial and for amendment of judgments, Rule 59, one for amended findings, Rule 52, and one for judgment notwithstanding the verdict, Rule 50(b), and including the provisions of Rule 60(b) as amended, prescribe the various types of cases in which the practice by motion is permitted. In each case there is a limit upon the time within which resort to a motion is permitted, and this time limit may not be enlarged under Rule 6(b). If the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

new or independent action to set aside a judgment upon those principles which have heretofore been applied in such an action. Where the independent action is resorted to, the limitations of time are those of laches or statutes of limitations. The Committee has endeavored to ascertain all the remedies and types of relief heretofore available by coram nobis, coram vobis, audita querela, bill of review, or bill in the nature of a bill of review. See Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L. J. 623, 659-682. It endeavored then to amend the rules to permit, either by motion or by independent action, the granting of various kinds of relief from judgments which were permitted in the federal courts prior to the adoption of these rules, and the amendment concludes with a provision abolishing the use of bills of review and the other common law writs referred to, and requiring the practice to be by motion or by independent action.

To illustrate the operation of the amendment, it will be noted that under Rule 59(b) as it now stands, without amendment, a motion for new trial on the ground of newly discovered evidence is permitted within ten days after the entry of the judgment, or after that time upon leave of the court. It is proposed to amend Rule 59(b) by providing that under that rule a motion for new trial shall be served not later than ten days after the entry of the judgment, whatever the ground be for the motion, whether error by the court or newly discovered evidence. On the other hand, one of the purposes of the bill of review in equity was to afford relief on the ground of newly discovered evidence long after the entry of the judgment. Therefore, to permit relief by a motion similar to that heretofore obtained on bill of review. Rule 60(b) as amended permits an application for relief to be made by motion, on the ground of newly discovered evidence, within one year after judgment. Such a motion under Rule 60(b) does not affect the finality of the judgment, but a motion under Rule 59, made within 10 days, does affect finality and the running of the time for appeal.

If these various amendments, including principally those to Rule 60(b), accomplish the purpose for which they are intended, the federal rules will deal with the practice in every sort of case in which relief from final judgments is asked, and prescribe the practice. With reference to the question whether, as the rules now exist, relief by coram nobis, bills of review, and so forth, is permissible, the generally accepted view is that the remedies are still available, although the precise relief obtained in a particular case by use of these ancillary remedies is shrouded in ancient lore and mystery. See *Wallace v. United States*, 142 F.2d 240 (2d Cir. 1944), cert. denied, 323 U.S. 712, 89 L. Ed. 573, 65 S. Ct. 37 (1944); *Fraser v. Doing*, 130 F.2d 617 (D.C. Cir. 1942); *Jones v. Watts*, 142 F.2d 575 (5th Cir. 1944); *Preveden v. Hahn*, 36 F. Supp. 952 (S.D.N.Y. 1941); *Cavallo v. Agwilines, Inc.*, 6 Fed. Rules Serv. 60b.31, Case 2, 2 F.R.D. 526 (S.D.N.Y. 1942); *McGinn v. United States*, 6 Fed. Rules Serv. 60b.51, Case 3, 2 F.R.D. 562 (D. Mass. 1942); *City of Shattuck, Oklahoma ex rel. Versluis v. Oliver*, 8 Fed. Rules Serv. 60b.31, Case 3 (W. D. Okla. 1945); Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L. J. 623, 631-653; 3 Moore's Federal Practice, 1938, 3254 et seq.; Commentary, Effect of Rule 60b on Other Methods of Relief from Judgment, op cit supra. Cf. *Norris v. Camp*, 144 F.2d 1 (10th Cir. 1944); *Reed v. South Atlantic Steamship Co. of Delaware*, 2 F.R.D. 475, 6 Fed. Rules Serv. 60b.31, Case 1 (D. Del. 1942); *Laughlin v. Berens*, 8 Fed. Rules Serv. 60b.51, Case 1, 73 W.L.R. 209 (D. D.C. 1945)

The transposition of the words "the court" and the addition of the word "and" at the beginning of the first sentence are merely verbal changes. The addition of the qualifying word "final" emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.

The qualifying pronoun "his" has been eliminated on the basis that it is too restrictive, and that the

USCSRULE                                          3

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

subdivision should include the mistake or neglect of others which may be just as material and call just as much for supervisory jurisdiction as where the judgment is taken against the party through his mistake, inadvertence, etc.

Fraud, whether intrinsic or extrinsic, misrepresentation, or other misconduct of an adverse party are express grounds for relief by motion under amended subdivision (b). There is no sound reason for their exclusion. The incorporation of fraud and the like within the scope of the rule also removes confusion as to the proper procedure. It has been held that relief from a judgment obtained by extrinsic fraud could be secured by motion within a "reasonable time," which might be after the time stated in the rule had run. *Fiske v. Buder*, 125 F.2d 841 (8th Cir, 1942); see also inferentially *Bucy v. Nevada Construction Co.*, 125 F.2d 213 (9th Cir. 1942). On the other hand, it has been suggested that in view of the fact that fraud was omitted from original Rule 60(b) as a ground for relief, an independent action was the only proper remedy. Commentary, Effect of Rule 60(b) on Other Methods of Relief From Judgment, 1941, 4 Fed Rules Serv 942, 945. The amendment settles this problem by making fraud an express ground for relief by motion; and under the saving clause, fraud may be urged as a basis for relief by independent action insofar as established doctrine permits. See Moore and Rogers, Federal Relief from Civil Judgments, 1946, 55 Yale L. J. 623, 653-659; 3 Moore's Federal Practice, 1938, 3267 et seq. And the rule expressly does not limit the power of the court, when fraud has been perpetrated upon it, to give relief under the saving clause. As an illustration of this situation, see *Hazel-Atlas Glass Co. v. Hartford Empire Co.*, 322 U.S. 238, 88 L. Ed. 1250, 64 S. Ct. 997 (1944).

The time limit for relief by motion in the court and in the action in which the judgment was rendered has been enlarged from six months to one year.

It should be noted that Rule 60(b) does not assume to define the substantive law as to the grounds for vacating judgments, but merely prescribes the practice in proceedings to obtain relief. It should also be noted that under § 200(4) of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. Appendix. §§ 501 et seq. [§ 520(4)], a judgment rendered in any action or proceeding governed by the section may be vacated under certain specified circumstances upon proper application to the court.

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

§ 1481.       Loss of nationality by native-born or naturalized citizen; voluntary action; burden of proof; presumptions

(a) A person who is a national of the United States whether by birth or naturalization, shall lose his nationality by voluntarily performing any of the following acts with the intention of relinquishing United States nationality--

(1) obtaining naturalization in a foreign state upon his own application or upon an application filed by a duly authorized agent, after having attained the age of eighteen years; or

(2) taking an oath or making an affirmation or other formal declaration of allegiance to a foreign state or a political subdivision thereof, after having attained the age of eighteen years; or

(3) entering, or serving in, the armed forces of a foreign state if (A) such armed forces are engaged in hostilities against the United States, or (B) such persons serve as a commissioned or noncommissioned officer; or

(4) (A) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years if he has or acquires the nationality of such foreign state; or (B) accepting, serving in, or performing the duties of any office, post, or employment under the government of a foreign state or a political subdivision thereof, after attaining the age of eighteen years for which office, post, or employment an oath, affirmation, or declaration of allegiance is required; or

(5) making a formal renunciation of nationality before a diplomatic or consular officer of the United States in a foreign state, in such form as may be prescribed by the Secretary of State; or

(6) making in the United States a formal written renunciation of nationality in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense; or

(7) committing any act of treason against, or attempting by force to overthrow, or bearing arms against, the United States, violating or conspiring to violate any of the provisions of section 2383 of title 18, United States Code, or willfully performing any act in violation of section 2385 of title 18, United States Code, or violating section 2384 of said title by engaging in a conspiracy to overthrow, put down, or to destroy by force the Government of the United States, or to levy war against them, if and when he is convicted thereof by a court martial or by a court of competent jurisdiction.

(b) Whenever the loss of United States nationality is put in issue in any action or proceeding commenced on or after the enactment of this subsection [enacted Sept. 26, 1961] under, or by virtue of, the provisions of this or any other Act, the burden shall be upon the person or party

USCS                                        1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A3a

47797177

Rule 301.        Presumptions in Civil Cases Generally

In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.

(Jan. 2, 1975, P. L. 93-595, § 1, 88 Stat. 1931; April 26, 2011, eff. Dec. 1, 2011.)

USCSRULE                                    1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A4a

47797177

Rule 12.      Defenses and Objections: When and How Presented; Motion for Judgment on the Pleadings; Consolidating Motions; Waiving Defenses; Pretrial Hearing

(a) **Time to Serve a Responsive Pleading.**

(1) *In General.* Unless another time is specified by this rule or a federal statute, the time for serving a responsive pleading is as follows:

(A) A defendant must serve an answer:

(i) within 21 days after being served with the summons and complaint; or

(ii) if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent, or within 90 days after it was sent to the defendant outside any judicial district of the United States.

(B) A party must serve an answer to a counterclaim or crossclaim within 21 days after being served with the pleading that states the counterclaim or crossclaim.

(C) A party must serve a reply to an answer within 21 days after being served with an order to reply, unless the order specifies a different time.

(2) *United States and Its Agencies, Officers, or Employees Sued in an Official Capacity.* The United States, a United States agency, or a United States officer or employee sued only in an official capacity must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the United States attorney.

(3) *United States Officers or Employees Sued in an Individual Capacity.* A United States officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on the United States' behalf must serve an answer to a complaint, counterclaim, or crossclaim within 60 days after service on the officer or employee or service on the United States attorney, whichever is later.

(4) *Effect of a Motion.* Unless the court sets a different time, serving a motion under this rule alters these periods as follows:

(A) if the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action; or

(B) if the court grants a motion for a more definite statement, the responsive pleading must be served within 14 days after the more definite statement is served.

(b) **How to Present Defenses.** Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1) lack of subject-matter jurisdiction;

(2) lack of personal jurisdiction;

(3) improper venue;

(4) insufficient process;

(5) insufficient service of process;

USCSRULE                                   1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*Exhibit A5a*

47797177

(6) failure to state a claim upon which relief can be granted; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

(c) **Motion for Judgment on the Pleadings.** After the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings.

(d) **Result of Presenting Matters Outside the Pleadings.** If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

(e) **Motion for a More Definite Statement.** A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

(f) **Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:

(1) on its own; or

(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

(g) **Joining Motions.**

(1) *Right to Join.* A motion under this rule may be joined with any other motion allowed by this rule.

(2) *Limitation on Further Motions.* Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.

(h) **Waiving and Preserving Certain Defenses.**

(1) *When Some Are Waived.* A party waives any defense listed in Rule 12(b)(2)-(5) by:

(A) omitting it from a motion in the circumstances described in Rule 12(g)(2); or

(B) failing to either:

USCSRULE                                  2

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

(i) make it by motion under this rule; or

(ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course.

(2) *When to Raise Others.* Failure to state a claim upon which relief can be granted, to join a person required by Rule 19(b), or to state a legal defense to a claim may be raised:

(A) in any pleading allowed or ordered under Rule 7(a);

(B) by a motion under Rule 12(c); or

(C) at trial.

(3) *Lack of Subject-Matter Jurisdiction.* If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.

(i) **Hearing Before Trial.** If a party so moves, any defense listed in Rule 12(b)(1)-(7)-whether made in a pleading or by motion-and a motion under Rule 12(c) must be heard and decided before trial unless the court orders a deferral until trial.

(Amended March 19, 1948; July 1, 1963; July 1, 1966; Aug. 1, 1987; Dec. 1, 1993; Dec. 1, 2000; Dec. 1, 2007; Dec. 1, 2009.)

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

§ 411. Issuance to reserve banks; nature of obligation; redemption

Federal reserve notes, to be issued at the discretion of the Federal Reserve Board [Board of
Governors of the Federal Reserve System] for the purpose of making advances to Federal reserve
banks through the Federal reserve agents as hereinafter set forth and for no other purpose, are
hereby authorized. The said notes shall be obligations of the United States and shall be receivable
by all national and member banks and Federal reserve banks and for all taxes, customs, and other
public dues. They shall be redeemed in lawful money on demand at the Treasury Department of
the United States, in the city of Washington, District of Columbia, or at any Federal reserve bank.

(Dec. 23, 1913, ch 6, § 16, ¶ 1, 38 Stat. 265; Jan. 30, 1934, ch 6, § 2(b)(1), 48 Stat. 337.)

USCS                                      1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A6a
47797177

Subject to such limitations, restrictions and regulations as the Federal Reserve Board [Board of Governors of the Federal Reserve System] may prescribe, any Federal reserve bank may make advances to any individual, partnership or corporation on the promissory notes of such individual, partnership or corporation secured by direct **obligations of the United States** or by any obligation which is a direct obligation of, or fully guaranteed as to principal and interest by, any agency of the United States. Such advances shall be made for periods not exceeding 90 days and shall bear interest at rates fixed from time to time by the Federal reserve bank, subject to the review and determination of the Federal Reserve Board [Board of Governors of the Federal Reserve System].

USCS                                          1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A7a

4779717

§ 2281.      "Debt-for-nature exchange" defined

For purpose of this chapter [22 USCS §§ 2281 et seq.], the term "debt-for-nature exchange" means the cancellation or redemption of the foreign debt of the government of a country in exchange for--

(1) that government's making available local currencies (including through the issuance of bonds) which are used only for eligible projects involving the conservation or protection of the environment in that country (as described in section 463 [22 USCS § 2283]); or

(2) that government's financial resource or policy commitment to take certain specified actions to ensure the restoration, protection, or sustainable use of natural resources within that country; or

(3) a combination of assets and actions under both paragraphs (1) and (2).

(Sept. 4, 1961, P. L. 86-195, Part I, Ch 7, § 461, as added Dec. 19, 1989, P. L. 101-240, Title VII, Part A, § 711, 103 Stat. 2521.)

USCS                                    1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit A8a

47797177

§ 1602.        Findings and declaration of purpose

The Congress finds that the determination by United States courts of the claims of foreign states
to immunity from the jurisdiction of such courts would serve the interests of justice and would
protect the rights of both foreign states and litigants in United States courts. Under international
law, states are not immune from the jurisdiction of foreign courts insofar as their commercial
activities are concerned, and their commercial property may be levied upon for the satisfaction of
judgments rendered against them in connection with their commercial activities. Claims of foreign
states to immunity should henceforth be decided by courts of the United States and of the States
in conformity with the principles set forth in this chapter [28 USCS §§ 1602 et seq.].

    (Added Oct. 21, 1976, P. L. 94-583, § 4(a), 90 Stat. 2892.)

Exhibit B1

USCS                                          1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement.

4779717

§ 1603.        Definitions

For purposes of this chapter [28 USCS §§ 1602 et seq.]--
   (a) A "foreign state", except as used in section 1608 of this title [28 USCS § 1608], includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).
   (b) An "agency or instrumentality of a foreign state" means any entity-
      (1) which is a separate legal person, corporate or otherwise, and
      (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
      (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title [28 USCS § 1332(c) and (e)] nor created under the laws of any third country.
   (c) The "United States" includes all territory and waters, continental or insular, subject to the jurisdiction of the United States.
   (d) A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
   (e) A "commercial activity carried on in the United States by a foreign state" means commercial activity carried on by such state and having substantial contact with the United States.
   (Added Oct. 21, 1976, P. L. 94-583, § 4(a), 90 Stat. 2892; Feb. 18, 2005, P. L. 109-2, § 4(b)(2), 119 Stat. 12.)

Exhibit B2

USCS                                   1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

47797177

§ 1605.        General exceptions to the jurisdictional immunity of a foreign state

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of
the States in any case-
    (1) in which the foreign state has waived its immunity either explicitly or by implication,
notwithstanding any withdrawal of the waiver which the foreign state may purport to effect
except in accordance with the terms of the waiver;
    (2) in which the action is based upon a commercial activity carried on in the United States by
the foreign state; or upon an act performed in the United States in connection with a
commercial activity of the foreign state elsewhere; or upon an act outside the territory of the
United States in connection with a commercial activity of the foreign state elsewhere and that
act causes a direct effect in the United States;
    (3) in which rights in property taken in violation of international law are in issue and that
property or any property exchanged for such property is present in the United States in
connection with a commercial activity carried on in the United States by the foreign state; or
that property or any property exchanged for such property is owned or operated by an agency
or instrumentality of the foreign state and that agency or instrumentality is engaged in a
commercial activity in the United States;
    (4) in which rights in property in the United States acquired by succession or gift or rights in
immovable property situated in the United States are in issue;
    (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought
against a foreign state for personal injury or death, or damage to or loss of property, occurring
in the United States and caused by the tortious act or omission of that foreign state or of any
official or employee of that foreign state while acting within the scope of his office or
employment; except this paragraph shall not apply to--
        (A) any claim based upon the exercise or performance or the failure to exercise or perform
a discretionary function regardless of whether the discretion be abused, or
        (B) any claim arising out of malicious prosecution, abuse of process, libel, slander,
misrepresentation, deceit, or interference with contract rights; or
    (6) in which the action is brought, either to enforce an agreement made by the foreign state
with or for the benefit of a private party to submit to arbitration all or any differences which
have arisen or which may arise between the parties with respect to a defined legal relationship,
whether contractual or not; concerning a subject matter capable of settlement by arbitration
under the laws of the United States, or to confirm an award made pursuant to such an
agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the
United States, (B) the agreement or award is or may be governed by a treaty or other
international agreement in force for the United States calling for the recognition and
enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate,

USCS                                                    1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions
and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B4

47797177

could have been brought in a United States court under this section or section 1607 [28 USCS § 1607], or (D) paragraph (1) of this subsection is otherwise applicable.

(7) [Deleted]

(b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state: *Provided*, That-

(1) notice of the suit is given by delivery of a copy of the summons and of the complaint to the person, or his agent, having possession of the vessel or cargo against which the maritime lien is asserted; and if the vessel or cargo is arrested pursuant to process obtained on behalf of the party bringing the suit, the service of process of arrest shall be deemed to constitute valid delivery of such notice, but the party bringing the suit shall be liable for any damages sustained by the foreign state as a result of the arrest if the party bringing the suit had actual or constructive knowledge that the vessel or cargo of a foreign state was involved; and

(2) notice to the foreign state of the commencement of suit as provided in section 1608 of this title [28 USCS § 1608] is initiated within ten days either of the delivery of notice as provided in paragraph (1) of this subsection or, in the case of a party who was unaware that the vessel or cargo of a foreign state was involved, of the date such party determined the existence of the foreign state's interest.

(c) Whenever notice is delivered under subsection (b)(1), the suit to enforce a maritime lien shall thereafter proceed and shall be heard and determined according to the principles of law and rules of practice of suits in rem whenever it appears that, had the vessel been privately owned and possessed, a suit in rem might have been maintained. A decree against the foreign state may include costs of the suit and, if the decree is for a money judgment, interest as ordered by the court, except that the court may not award judgment against the foreign state in an amount greater than the value of the vessel or cargo upon which the maritime lien arose. Such value shall be determined as of the time notice is served under subsection (b)(1). Decrees shall be subject to appeal and revision as provided in other cases of admiralty and maritime jurisdiction. Nothing shall preclude the plaintiff in any proper case from seeking relief in personam in the same action brought to enforce a maritime lien as provided in this section.

(d) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any action brought to foreclose a preferred mortgage, as defined in section 31301 of title 46. Such action shall be brought, heard, and determined in accordance with the provisions of chapter 313 of title 46 [46 USCS §§ 31301 et seq.] and in accordance with the principles of law and rules of practice of suits in rem, whenever it appears that had the vessel been privately owned and possessed a suit in rem might have been maintained.

USCS                                        2

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B4A

(e), (f) [Repealed]

(g) **Limitation on discovery.**

    (1) In general.

        (A) Subject to paragraph (2), if an action is filed that would otherwise be barred by section 1604 [28 USCS § 1604], but for section 1605A [28 USCS § 1605A], the court, upon request of the Attorney General, shall stay any request, demand, or order for discovery on the United States that the Attorney General certifies would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action, until such time as the Attorney General advises the court that such request, demand, or order will no longer so interfere.

        (B) A stay under this paragraph shall be in effect during the 12-month period beginning on the date on which the court issues the order to stay discovery. The court shall renew the order to stay discovery for additional 12-month periods upon motion by the United States if the Attorney General certifies that discovery would significantly interfere with a criminal investigation or prosecution, or a national security operation, related to the incident that gave rise to the cause of action.

    (2) Sunset.

        (A) Subject to subparagraph (B), no stay shall be granted or continued in effect under paragraph (1) after the date that is 10 years after the date on which the incident that gave rise to the cause of action occurred.

        (B) After the period referred to in subparagraph (A), the court, upon request of the Attorney General, may stay any request, demand, or order for discovery on the United States that the court finds a substantial likelihood would--

            (i) create a serious threat of death or serious bodily injury to any person;

            (ii) adversely affect the ability of the United States to work in cooperation with foreign and international law enforcement agencies in investigating violations of United States law; or

            (iii) obstruct the criminal case related to the incident that gave rise to the cause of action or undermine the potential for a conviction in such case.

    (3) Evaluation of evidence. The court's evaluation of any request for a stay under this subsection filed by the Attorney General shall be conducted ex parte and in camera.

    (4) Bar on motions to dismiss. A stay of discovery under this subsection shall constitute a bar to the granting of a motion to dismiss under rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.

    (5) Construction. Nothing in this subsection shall prevent the United States from seeking protective orders or asserting privileges ordinarily available to the United States.

    (Added Oct. 21, 1976, P. L. 94-583, § 4(a), 90 Stat. 2892; Nov. 9, 1988, P. L. 100-640, § 1, 102 Stat.

USCS                   3

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B4B

47787177

3333; Nov. 16, 1988, P. L. 100-669, § 2, 102 Stat. 3969; Dec. 1, 1990, P. L. 101-650, Title III, § 325(b)(8), 104 Stat. 5121; April 24, 1996, P. L. 104-132, Title II, Subtitle B, § 221(a), 110 Stat. 1241; April 25, 1997, P. L. 105-11, 111 Stat. 22; Nov. 28, 2001, P. L. 107-77, Title VI, § 626(c), 115 Stat. 303; Jan. 10, 2002, P. L. 107-117, Div B, Ch. 2, § 208, 115 Stat. 2299; Oct. 6, 2006, P. L. 109-304, § 17(f)(2), 120 Stat. 1708; Jan. 28, 2008, P. L. 110-181, Div A, Title X, Subtitle F, § 1083(b)(1), 122 Stat. 341.)

USCS

4

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B4C

4779717

§ 1606.         Extent of liability

As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or 1607 of this chapter [28 USCS § 1605 or 1607], the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances; but a foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages; if, however, in any case wherein death was caused, the law of the place where the action or omission occurred provides, or has been construed to provide, for damages only punitive in nature, the foreign state shall be liable for actual or compensatory damages measured by the pecuniary injuries resulting from such death which were incurred by the persons for whose benefit the action was brought.

(Added Oct. 21, 1976, P. L. 94-583, § 4(a), 90 Stat. 2894; Oct. 21, 1998, P. L. 105-277, Div A, § 101(h) [Title I, § 117(b)], 112 Stat. 2681-491; Oct. 28, 2000, P. L. 106-386, Div C, § 2002(g)[(f)](2), 114 Stat. 1543; Nov. 26, 2002, P. L. 107-297, Title II, § 201(c)(3), 116 Stat. 2337.)

USCS                              1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B5

4779717

§ 1607.        Counterclaims

In any action brought by a foreign state, or in which a foreign state intervenes, in a court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim-

    (a) for which a foreign state would not be entitled to immunity under section 1605 or 1605A of this chapter [28 USCS § 1605 or 1605A] had such claim been brought in a separate action against the foreign state; or

    (b) arising out of the transaction or occurrence that is the subject matter of the claim of the foreign state; or

    (c) to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

(Added Oct. 21, 1976, P. L. 94-583, § 4(a), 90 Stat. 2894; Jan. 28, 2008, P. L. 110-181, Div A, Title X, Subtitle F, § 1083(b)(2), 122 Stat. 341.)

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B6

4779177

§ 1608.        Service; time to answer; default

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the

USCS                                        1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B7A

47797177

clerk of the court to the agency or instrumentality to be served, or
(C) as directed by order of the court consistent with the law of the place where service is to be made.

(c) Service shall be deemed to have been made-
(1) in the case of service under subsection (a)(4), as of the date of transmittal indicated in the certified copy of the diplomatic note; and
(2) in any other case under this section, as of the date of receipt indicated in the certification, signed and returned postal receipt, or other proof of service applicable to the method of service employed.

(d) In any action brought in a court of the United States or of a State, a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state shall serve an answer or other responsive pleading to the complaint within sixty days after service has been made under this section.

(e) No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

(Added Oct. 21, 1976, P. L. 94-583, § 4(a), 90 Stat. 2894.)

USCS                                     2

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B7B
47797177

§ 110. Same; definitions

As used in sections 105-109 of this title [4 USCS §§ 105-109]--

(a) The term "person" shall have the meaning assigned to it in section 3797 of title 26.

(b) The term "sales or use tax" means any tax levied on, with respect to, or measured by, sales, receipts from sales, purchases, storage, or use of tangible personal property, except a tax with respect to which the provisions of section 104 of this title [4 USCS § 104] are applicable.

(c) The term "income tax" means any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts.

(d) The term "State" includes any Territory or possession of the United States.

(e) The term "Federal area" means any lands or premises held or acquired by or for the use of the United States or any department, establishment, or agency of the United States; and any Federal area, or any part thereof, which is located within the exterior boundaries of any State, shall be deemed to be a Federal area located within such State.

(July 30, 1947, ch 389, 61 Stat. 645.)

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B8

47797177

§ 5721.        Definitions

For the purpose of this subchapter [5 USCS §§ 5721 et seq.]--
    (1) "agency" means--
        (A) an Executive agency;
        (B) a military department;
        (C) a court of the United States;
        (D) the Administrative Office of the United States Courts;
        (E) the Library of Congress;
        (F) the Botanic Garden;
        (G) the Architect of the Capitol;
        (H) the Government Printing Office; and
        (I) the government of the District of Columbia;
but does not include a Government controlled corporation;
    (2) "employee" means an individual employed in or under an agency;
    (3) "continental United States" means the **several States** and the District of Columbia, but does not include Alaska or Hawaii;
    (4) "Government" means the Government of the United States and the government of the District of Columbia;
    (5) "appropriation" includes funds made available by statute under section 9104 of title 31;
    (6) "United States" means the **several States**, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, the territories and possessions of the United States, and the areas and installations in the Republic of Panama that are made available to the United States pursuant to the Panama Canal Treaty of 1977 and related agreements (as described in section 3(a) of the Panama Canal Act of 1979 [22 USCS § 3602(a)]); and
    (7) "Foreign Service of the United States" means the Foreign Service as constituted under the Foreign Service Act of 1980.

(Sept. 6, 1966, P. L. 89-554, § 1, 80 Stat. 500; Sept. 13, 1982, P. L. 97-258, § 3(a)(14), 96 Stat. 1063; Oct. 19, 1998, P. L. 105-264, § 6(1), 112 Stat. 2356; Dec. 26, 2007, P. L. 110-161, Div H, Title I, § 1303(a), 121 Stat. 2242.)

USCS                                    1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B9

4779717

It is elementary, of course, that United States District Courts have only such jurisdiction as conferred by an Act of Congress under Article III, § 2 of the Constitution. Except for the narrow exception set forth in 28 U.S.C. § 1344, (of which, more later) there is no Act of Congress which has conferred upon federal district courts jurisdiction to hear and decide, solely as an election contest, what candidate received a majority of the votes legally cast in an election for state or local office.

C05_11CS

1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B10

47797177

### 20. **Jurisdictional challenge**

It is not important whether objection to jurisdiction of federal court is called motion to dismiss or one for summary judgment, since same relief is sought, and difference in name is unimportant; in any event, affidavits presented are available on either motion, pursuant to Rule 43(e).  Central Mexico Light & Power Co. v Munch (1940, CA2 NY) 116 F.2d 85 (criticized in Synagro-WWT, Inc. v Louisa County (2001, WD Va) 2001 US Dist LEXIS 10974)

It is not abuse of discretion to decide motion to dismiss for want of jurisdiction on basis of affidavits and other documents when neither party makes timely and unequivocal request for evidentiary hearing. Sunseri v Macro Cellular Partners (2005, CA11 Fla) 412 F.3d 1247

If allegations of jurisdiction are appropriately challenged by motion to dismiss, plaintiff must support them by competent proof in form of affidavits, oral testimony, or depositions.  Starns v Success Portrait Co. (1940, DC Tenn) 1 FRD 503

In passing upon motion which challenges jurisdiction of federal district court, it is accepted practice that affidavits and other competent documentary evidence may be considered, and in doing so, court is not required to treat such motion as motion for summary judgment.  Gallogly v Bakery & Confectionery Workers International Union (1960, DC RI) 180 F Supp 778, 46 BNA LRRM 2271, 40 CCH LC ¶ 66438

Pursuant to Rule 43(e), it is proper to support motion challenging jurisdiction of court over person, by affidavit or by other evidence if court so directs.  Fisher v First Nat'l Bank (1972, SD Iowa) 338 F Supp 525, app dismd (1972, CA8 Iowa) 466 F.2d 511

USCSRULE                                    1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit B11

47797177

§ 8.     "Person", "human being", "child", and "individual" as including born-alive infant

(a) In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the words "person", "human being", "child", and "individual", shall include every infant member of the species homo sapiens who is born alive at any stage of development.

(b) As used in this section, the term "born alive", with respect to a member of the species homo sapiens, means the complete expulsion or extraction from his or her mother of that member, at any stage of development, who after such expulsion or extraction breathes or has a beating heart, pulsation of the umbilical cord, or definite movement of voluntary muscles, regardless of whether the umbilical cord has been cut, and regardless of whether the expulsion or extraction occurs as a result of natural or induced labor, cesarean section, or induced abortion.

(c) Nothing in this section shall be construed to affirm, deny, expand, or contract any legal status or legal right applicable to any member of the species homo sapiens at any point prior to being "born alive" as defined in this section.

(Added Aug. 5, 2002, P. L. 107-207, § 2(a), 116 Stat. 926.)

USCS                                      1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit D1

47797177

§ 1.    Words denoting number, gender, and so forth

In determining the meaning of any Act of Congress, unless the context indicates otherwise--
    words importing the singular include and apply to several persons, parties, or things;
    words importing the plural include the singular;
    words importing the masculine gender include the feminine as well;
    words used in the present tense include the future as well as the present;
    the words "insane" and "insane person" shall include every idiot, insane person, and person non compos mentis;
    the words "person" and "whoever" include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals;
    "officer" includes any person authorized by law to perform the duties of the office;
    "signature" or "subscription" includes a mark when the person making the same intended it as such;
    "oath" includes affirmation, and "sworn" includes affirmed;
    "writing" includes printing and typewriting and reproductions of visual symbols by photographing, multigraphing, mimeographing, manifolding, or otherwise.

(July 30, 1947, ch 388, § 1, 61 Stat. 633; June 25, 1948, ch 645, § 6, 62 Stat. 859; Oct. 31, 1951, ch 655, § 1, 65 Stat. 710; Dec. 28, 2012, P. L. 112-231, § 2(a), 126 Stat. 1619.)

USCS                                          1

© 2014 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Exhibit D2

47797177

Christopher Robert of the family West
#49171-171
Federal Corrections Institution
P.O. Box 15330
Fort Worth, Texas
Non Domestic, Non Federal

Legal Mail

2014 OCT 20  PH 1: 30
CLERK OF COUR...

#47797-177∞
Eldon B Mahon
Judge Mcbryde
501 W. 10TH ST
Room 310
FORT Worth, & Texas
Non Domestic, Non Federal

Mailed on 10/16/2014

