In the District Court of the United States
Northern District of Texas
Fort Worth Division

☐ ORIGINAL

UNITED STATES OF AMERICA
Corporation

v.

No. 4:14-CR-00023-A

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 17 2014

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

CHRISTOPHER ROBERT WEAST, ex rel
Franchise                                    Special Appearance Only

Challenge to Territorial Jurisdiction
Challenge to Subject-Matter Jurisdiction
Declaration of Nationality/Citizenship/Domicile
Affidavit of Fact

This Declaration/affidavit is submitted by Christopher Robert of the ~~family House of~~ Weast and is NOT the declaration/affidavit of CHRISTOPHER ROBERT WEAST.

## FACTS

1. Christopher Robert of the family Weast (Hereinafter "Affiant") is a living, breathing Man and

CHRISTOPHER ROBERT WEAST does not exist.

2. According to the indictment, the government alleges that the Affiant was in the "Fort Worth Division of the Northern District of Texas yet Affiant does not, nor has Affiant ever, been domiciled in the Fort Worth Division of the Northern District of Texas.

3. Affiant is not, nor ever has, been a Citizen of, or resided in, the Fort Worth Division of the Northern District of Texas, and no proof to the contrary has ever been entered, on and for the record, in writing, by the government.

4. In order for the Fort Worth Division of the Northern District of Texas to be a "territory" or "possession of the [United States] there would have to exist, a gross violation of the Separation of Powers as well as the Equal Footing Doctrine which clearly states that every state entered the Union on equal footing.

5. Affiant is a wrongfully accused innocent third party.

6. Affiant is a dual national, Non-citizen national of USA (NOT "U.S.") pursuant to 8 U.S.C. §1452 AND Kingdom of Heaven on Earth as described and defined in the Federal Pleading/Motion/Petition Attachment.

7. Affiant's domicile is, and always has been, Kingdom of Heaven on Earth because Affiant has a religious objection to having an earthly domicile within any existing, man-made government. Affiant is a "transient foreigner" but not an "inhabitant" with respect to the man-made government having jurisdiction in the place where I temporarily live. The Bible says in Psalm 89:11-13, Isaiah 45:12, Deut. 10-14 that the Earth was created and is owned exclusively by God and NOT any man or government of men. It [the Bible] also says in Psalm 47:7 that God is the King of all the Earth. Therefore no one but God's Kingdom can have domiciliaries because presence on the territory of the Sovereign is a prerequisite to all declarations of domicile and allegiance.

8. Affiant is an Employee or agent of God's government on earth. Affiant abandoned all aid and protection of man-made government and became a "stateless person" pursuant to [Newman-Green v. Alfonso Larrain, 490 U.S. 826 (1989)], Phil. 3:20, Psalm 118:19, Psalm 68:8-9.

9. Affiant/Submitter makes this appearance by "special visitation" and has never made a voluntary, intentional general appearance in this instant matter as Affiant has been forced, in handcuffs and shackles, into the courtrooms, under threat and duress.

10. Affiant has never made a _voluntary submission_ to the court's jurisdiction.

11. Affiant Reserves all rights without prejudice pursuant to UCC 1-308 and its predecessor, UCC 1-207 in all places and at all times and waives no rights at any time or in any place.

12. Affiant is not acting in a representative or security capacity within these proceedings and denies being either a "public officer" as described in 26 U.S.C. § 7701 (a)(26) or "employee" of the [United States] as described in 5 U.S.C. § 2105 and/or 26 U.S.C. § 3401(c), and no evidence proving the contrary has been submitted, in writing, on and for the record, by the government.

13. Affiant is a "foreign sovereign" protected by the Foreign Sovereign Immunities Act, 28 U.S.C. Part IV, Chapter 97, and as such, the Court and a government opponent are violating due process of law if they do not satisfy the requirements of the Minimum Contacts Doctrine described by the Supreme Court of the [United States in International Shoe Co. v. Washington, 326 U.S. 310 (1945)]. A failure or omission by the Court or the government opponent to satisfy the Minimum Contacts Doctrine shall constitute a _tacit admission_ by both that this court is exceeding its jurisdiction, operating in a political rather than legal capacity, and that any rulings beyond that point are VOID. [World-Wide

Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980)]
("A judgment rendered in violation of due process is
void in the rendering State and is not entitled to
full faith and credit elsewhere."[Pennoyer v. Neff,
95 U.S. 714, 732-733 (1878)].

14. CHRISTOPHER ROBERT ~~WEAST~~ WEAST, in all CAPS, is
a "Franchise" created by the UNITED STATES and
owned by the UNITED STATES, who fraudulently
used the "birth" certificate to unlawfully
change the citizenship and domicile of the Man
Christopher Robert of the family Weast.

15. Affiant is not, and has never been, a statutory
"citizen" as defined in 8 U.S.C. § 1401 which
defines a "citizen" as a "person" domiciled
on federal territory that is no part of the
Union and is ~~not~~ NOT the "Citizen" mentioned
in the Constitution for the united states of
America as a Union.

16. 1 Stat. 477 from the Statutes at Large proves
that Congress calls persons domiciled in states
of the Union "Citizens of the United States of

America" or "American Citizens" and _NOT_ "U.S. citizens" or "citizens of the United States".

17. 96 Stat. 1211 of the Statutes at Large prooves that Congress declared the Bible to be the Law of God

18. In order to properly dismiss for lack of subject matter jurisdiction, under Fed. R. Civ. P. 12(b)(1), complaint must be successfully challenged on its face or on factual truthfulness of its averments; in facial attack, court restricts itself to face of pleadings and all of factual allegations concerning jurisdiction are presumed to be true, but in factual challenge, court considers matters outside pleadings, and no presumptive truthfulness attaches to plaintiff's allegations. [Bowden v. United States (2004, Ed Mo) 2004-1 USTC 50263, 93 AFTR 2d 2013]

19. Through Fed. R. Civ. P. 12(b)(1) motion, party may challenge sufficiency of pleading on its face or may challenge factual truthfulness of its averments. [Albert v. OSI Educ. Servs. (2004, DC Minn) 93 AFTR 2d 1508]

20. While the United States District Judge is appointed and confirmed under Article III of the Constitution for the united states of America, when he/she steps into the ~~United~~ UNITED STATES DISTRICT COURT, they do so not as an Article III judicial officer but as an Article IV administrative hearing officer, who is not independent nor impartial just as McBryde has not been independent nor impartial as McBryde practiced Law from the bench twice at the May 28th, 2014 hearing when he suggested that the government file enhancements to the charges which the government did as well as the numerous time he questioned witnesses at the July 28, 2014 trial as though he, himself, were the Prosecutor.

21. Attached as Exhibit 2A is a Freedom of Information Act (FOIA) regarding federal territory.

22. As Exhibit 1020, attached to this petition shows, this court also lacks diversity jurisdiction in this alleged case.

23. Exhibit 9, which is attached to this petition, shows all of the places where Congress has exclusive legislative powers and the Republic of Texas is not listed.

24. Exhibit 1A which goes into great detail regarding the fact that Article IV courts, meaning ALL Federal District, Circuit, and Tax Courts are Part of the Executive Branch instead of the Judicial Branch and therefore can only render political opinions and not orders.

25. The complaint discloses that it involves a transaction consummated in Fort Worth, Texas state, Non Domestic Non Federal and involving commerce only in places outside of the United States, so that the claim does not involve "commercial activity carried on in the United States" within the meaning of 28 U.S.C. § 1605 (a)(2), nor does the complaint involve a tortious act that resulted in personal injury, death, or loss of property "occuring in the United States," within the meaning of 28 U.S.C. § 1605 (a)(5).

~~Therefore,~~

27. Exhibit C1 is a certified copies of the Original Articles XIII and XIV as they were ratified, in 1867.

28. Exhibit 1F is a copy of the Forty Fifth Congress, Sess. II. 1878 wherein the "Municipal Corporation"

known as the District of Columbia was created in order to give Congress policing powers over the territories and possessions of the United States and not the 50 states of the Union.

29. Exhibit 1G is a copy of the Forty-First Congress, Session III. CH. 61, 62. 1871

30. The next Forty-One pages goes directly to jurisdiction.

U.S. Code Annotated, Article III-The Judiciary:


UNITED STATES CODE ANNOTATED


CONSTITUTION OF THE UNITED STATES


ARTICLE III--THE JUDICIARY


Current through P.L. 106-73, approved 10-19-1999


Section 2, Clause 1. Jurisdiction of Courts


Consent of the parties cannot confer subject matter jurisdiction on federal court, nor can party ever waive its right to challenge the subject matter jurisdiction of the court.  United Indus. Workers, Service, Transp., Professional Government of North America of Seafarers' Intern. Union of North America, Atlantic, Gulf, Lakes and Inland Waters Dist. AFL-CIO, (Local No. 16) on Behalf of Bouton v. Government of Virgin Islands, C.A.3 (Virgin Islands) 1993, 987 F.2d 162.


Federal jurisdiction cannot be conferred upon court by consent of parties, nor may its absence be waived.  Commonwealth Land Title Ins. Co. v. U.S., D.Conn.1991, 759 F.Supp. 87.


United States district court has only limited jurisdiction, depending upon either the existence of a federal question or diverse citizenship of the parties, and where such elements of jurisdiction are wanting district court cannot proceed, even with the consent of the parties.

1

Wolkstein v. Port of New York Authority, D.C.N.J.1959, 178 F.Supp. 209.

Parties may not by stipulation invoke judicial power of United States in litigation which does not present actual "case or controversy." Sosna v. Iowa, U.S.Iowa 1975, 95 S.Ct. 553, 419 U.S. 393, 42 L.Ed.2d 532;  Memphis Light, Gas and Water Division v. Craft, Tenn.1978, 98 S.Ct. 1554, 436 U.S. 1, 56 L.Ed.2d 30.

Parties may not confer jurisdiction either upon the Supreme Court of the United States or a United States District Court by stipulation.   California v. LaRue, U.S.Cal.1972, 93 S.Ct. 390, 409 U.S. 109, 34 L.Ed.2d 342, rehearing denied 93 S.Ct. 1351, 410 U.S. 948, 35 L.Ed.2d 615.

Parties may not by stipulation invoke judicial power of the United States in litigation which does not present an actual case or controversy.  Citizens Concerned for Separation of Church and State v. City and County of Denver, C.A.10 (Colo.) 1980, 628 F.2d 1289, certiorari denied 101 S.Ct. 3114, 452 U.S. 963, 69 L.Ed.2d 975.

Federal courts are not bound by factual stipulations that impact on their jurisdiction; hence, courts are not bound by stipulations on which existence of a "case or controversy" might turn.  Occidental of Umm al Qaywayn, Inc. v. A Certain Cargo of Petroleum Laden Aboard Tanker Dauntless Colocotronis, C.A.5 (La.) 1978, 577 F.2d 1196, certiorari denied 99 S.Ct. 2857, 442 U.S. 928, 61 L.Ed.2d 296.

Parties cannot invoke jurisdiction of federal court by stipulating to jurisdictional requirement of standing.  Vannatta v. Keisling, D.Or.1995, 899 F.Supp. 488, affirmed 151 F.3d 1215, certiorari denied 119 S.Ct. 870, 142 L.Ed.2d 771.

Norwood v. Kenfield, 34 C. 329; Ex parte Giabonini, 117 C. 573, [49 P. 732]

"A universal principle as old as the law, is that a proceedings of a court without jurisdiction are

a nullity and its judgment therein without effect either on person or property."

[Norwood v. Kenfield, 34 C. 329; Ex parte Giabonini, 117 C. 573, [49 P. 732]]

Re Application of Wyatt, 114 Ca.App. 557, [300 P. 132]; Re Cavitt, 47 Cal.App.2d. 698, [118 P.2d. 846].

Jurisdiction is fundamental and a judgment rendered by a court that does not have jurisdiction to hear is void ab initio.

[Re Application of Wyatt, 114 Ca.App. 557, [300 P. 132]; Re Cavitt, 47 Cal.App.2d. 698, [118 P.2d. 846].]

Brooks v. Yawkey,  200 F. 2d 633

"...federal jurisdiction cannot be assumed, but must be clearly shown".

[Brooks v. Yawkey,  200 F. 2d 633]

Stanard v. Olesen,  74 S. Ct. 768

"No sanction can be imposed absent proof of jurisdiction".

[Stanard v. Olesen,  74 S. Ct. 768]

Osborn v. Bank of U.S., 22 U.S. 738, 1824 WL 2682 (U.S.,1824)

"But whatever may be the correct interpretation of the constitution upon this point, it has long been settled, that the Circuit Courts can exercise no jurisdiction but what is conferred upon them by law. The judiciary act does not vest them with jurisdiction where a State is a party. On the contrary, in a case like the present, it vests exclusive jurisdiction in the Supreme Court."

[Osborn v. Bank of U.S., 22 U.S. 738, 1824 WL 2682 (U.S.,1824)]

Williamson v. Puerifoy, 316 F.2d 774 (5 Cir. 1963),

'In the first place, the State courts are older than the Federal courts. They were here administering justice and functioning between litigants for 150 years before the Federal Government was organized. When the Constitution was written and adopted these State courts were not abolished nor subordinated to the national courts created by the Constitution of the new nation. The national courts have jurisdiction only of those things conferred upon them by law. And at the time of the creation of the national courts and at time of writing the Constitution itself the State courts were kept as a separate and distinct judicial institution. As a result all cases that originate in the State court must be appealed to an appellate court of the State and thence to the Supreme Court of the State. All cases originating in the United States court must be appealed to the Circuit Court of the United States or to the Supreme Court of the United States. Nowhere has a Federal trial court been given supervisory or appellate jurisdiction over State judges.' (emphasis added)

[Williamson v. Puerifoy, 316 F.2d 774 (5 Cir. 1963)]

Basso v. Utah Power and Light Company, 495 F.2d 906 (1974)

"A court lacking diversity jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisidiction is lacking.  28 U.S.C.A. § 1332."

4

"Party invoking jurisdiction of the court has duty to establish that federal jurisdiction does ~~not~~ exist.  28 U.S.C.A. §§1332, 1332(c)."

"There is a presumption against existence of federal jurisdiction; thus, party invoking federal court's jurisdiction bears the burden of proof.  28 U.S.C.A. §§1332, 1332(c); Fed.Rules Civ. Proc. rule 12(h)(3), 28 U.S.C.A."

"If parties do not raise question of lack of jurisdiction, it is the duty of the federal court to determine the manner sua sponte.  28 U.S.C.A. §1332."

"Lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction, or stipulation.  28 U.S.C.A. §1332."

"Although defendant did not present evidence to support dismissal for lack of jurisdiction, burden rested with plaintiffs to prove affirmatively that jurisdiction did exist.  28 U.S.C.A. § 1332".  Basso v. Utah Power and Light Company, 495 F.2d 906 (1974)

[Basso v. Utah Power and Light Company, 495 F.2d 906 (1974)]

PDF Basso v. Utah Power and Light Company, 495 F.2d 906 (1974)

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that 'whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.' A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking. Bradbury v. Dennis, 310 F.2d 73 (10th Cir. 1962), cert. denied, 372 U.S. 928, 83 S.Ct. 874, 9 L.Ed.2d 733 (1963). The party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction does exist, Wilshire Oil Co. of Texas v. Riffe, 409 F.2d 1277 (10th Cir. 1969), but, since the courts of the United States are courts of limited jurisdiction, there is a presumption against its existence. City of Lawton, Okla. v. Chapman, 257 F.2d 601 (10th Cir. 1958). Thus, the party invoking the federal court's jurisdiction bears the burden of proof. Becker

v. Angle, 165 F.2d 140 (10th cir. 1947).

If the parties do not raise the question of lack of jurisdiction, it is the duty of the federal court to determine the matter sua sponte. Atlas Life Insurance Co. v. W. I. Southern Inc., 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987 (1939); Continental Mining and Milling Co. v. Migliaccio, 16 F.R.D. 217 (D.C. Utah 1954). Therefore, lack of jurisdiction cannot be waived and jurisdiction cannot be conferred upon a federal court by consent, inaction or stipulation. California v. LaRue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); Natta v. Hogan, 392 F.2d 686 (10th Cir. 1968); Reconstruction Finance Corp. v. Riverview State Bank, 217 F.2d 455 (10th Cir. 1955).

[Basso v. Utah Power and Light Company, 495 F.2d 906 (1974)]

O'Donohue v. United States, 289 U.S. 516 (1933): Ruled that district courts were Art. III courts.

'As the only judicial power vested in Congress is to create courts whose judges shall hold their offices during good behavior, it necessarily follows that, if Congress authorizes the creation of courts and the appointment of judges for a limited time, it must act independently of the Constitution and upon territory which is not part of the United States within the meaning of the Constitution. ... It is sufficient to say that this case (The American Insurance Company et al. v. Canter, supra) has ever since been accepted as authority for the proposition that the judicial clause of the Constitution has no application to courts created in the territories, and that with respect to them Congress has a power wholly unrestricted by it.' [289 U.S. 516, 543]   After an exhaustive review of the prior decisions of this court relating to the matter, the following propositions, among others, were stated as being established:

'1. That the District of Columbia and the territories are not states within the judicial clause of the Constitution giving jurisdiction in cases between citizens of different states;

'2. That territories are not states within the meaning of Rev. St. 709, permitting writs of error from this court in cases where the validity of a state statute is drawn in question;

'3. That the District of Columbia and the territories are states as that word is used in treaties with foreign powers, with respect to the ownership, disposition, and inheritance of property;

'4. That the territories are not within the clause of the Constitution providing for the

creation of a supreme court and such inferior courts as Congress may see fit to establish.'

[O'Donohue v. United States, 289 U.S. 516 (1933)]

IMPORTANCE OF JURISDICTION:

The major reason Citizens of the 50 states have been punished for laws that were not applicable to them is because they did not challenge jurisdiction. They were, therefore, "presumed" to be citizens subject to the territorial jurisdiction of the United States Government.

Challenging jurisdiction is done by demanding written legal FACTS from the agency asserting their jurisdiction over the subject matter and you. Remember, jurisdiction cannot be ASSUMED, it must be PROVEN! Without FACTS substantiating jurisdiction, a case cannot be held over for trial. A simple Freedom Form challenging jurisdiction is included here. Jurisdiction can also be challenged in Pre-Trial hearings.

40 U.S.C. §3112:  Federal Jurisdiction

TITLE 40 > SUBTITLE II > PART A > CHAPTER 31 > SUBCHAPTER II > § 3112

§ 3112. Federal jurisdiction

(a) Exclusive Jurisdiction Not Required.— It is not required that the Federal Government obtain exclusive jurisdiction in the United States over land or an interest in land it acquires.

(b) Acquisition and Acceptance of Jurisdiction.— When the head of a department, agency, or independent establishment of the Government, or other authorized officer of the department, agency, or independent establishment, considers it desirable, that individual may accept or secure, from the State in which land or an interest in land that is under the immediate

7

jurisdiction, custody, or control of the individual is situated, consent to, or cession of, any jurisdiction over the land or interest not previously obtained. The individual shall indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State or in another manner prescribed by the laws of the State where the land is situated.

(c) Presumption.— It is conclusively presumed that jurisdiction has not been accepted until the Government accepts jurisdiction over land as provided in this section.

Old Wayne Mut. Life Assn v. McDonough, 204 U.S. 8 (1907)

The plaintiff in error insists that the Pennsylvania court had no jurisdiction to proceed against it; consequently the judgment it rendered was void for the want of the due process of law required by the 14th Amendment. If the defendant had no such actual, legal notice of the Pennsylvania suit as would bring it into court, or if it did not voluntarily appear therein by an authorized representative, then the Pennsylvania court was without jurisdiction, and the conclusion just stated would follow, even if the judgment would be deemed conclusive in the courts of that commonwealth. The constitutional requirement that full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state is necessarily to be interpreted in connection with other provisions of the Constitution, and therefore no state can obtain in the tribunals of other jurisdictions full faith and credit for its judicial proceedings if they are wanting in the due process of law enjoined by the fundamental law. 'No judgment of a court is due process of law, if rendered without jurisdiction in the court, or without notice to the party.' Scott v. McNeal, 154 U.S. 34, 46 , 38 S. L. ed. 896, 901, 14 Sup. Ct. Rep. 1108. No state can, by any tribunal or representative, render nugatory a provision of the supreme law. And if the conclusiveness of a judgment of decree in a court of one state is questioned in a court of another government, Federal or state, it is open, under proper averments, to inquire whether the court rendering the decree or judgment had jurisdiction to render it.

Such is the settled doctrine of this court. In the leading case of Thompson v. Whitman, 18 Wall. 457, 468, 21 L. ed. 897, 901, the whole question was fully examined in the light of the authorities. Mr. Justice Bradley, speaking for the court and delivering its unanimous judgment, stated the conclusion to be clear that the jurisdiction of a court rendering judgment in one state may be questioned in a collateral proceeding in another state, [204 U.S. 8, 16]   notwithstanding the averments in the record of the judgment itself. The court, among other things, said that if it

8

be once conceded that 'the validity of a judgment may be attacked collaterally by evidence showing that the court had no jurisdiction, it is not perceived how any allegation contained in the record itself, however strongly made, can affect the right so to question it. The very object of the evidence is to invalidate the paper as a record. If that can be successfully done no statements contained therein have any force. If any such statements could be used to prevent inquiry, a slight form of words might always be adopted so as effectually to nullify the right of such inquiry. Recitals of this kind must be regarded like asseverations of good faith in a deed, which avail nothing if the instrument is shown to be fraudulent.' This decision was in harmony with previous decisions. Chief Justice Marshall had long before observed in Rose v. Himely, 4 Cranch, 241, 269, 2 L. ed. 608, 617, that, upon principle, the operation of every judgment must depend on the power of the court to render that judgment. In Williamson v. Berry, 8 How. 495, 540, 12 L. ed. 1170, 1189, it was said to be well settled that the jurisdiction of any court exercising authority over a subject 'may be inquired into in every other court when the proceedings in the former are relied upon and brought before the latter by a party claiming the benefit of such proceedings,' and that the rule prevails whether 'the decree or judgment has been given in a court of admiralty, chancery, ecclesiastical court, or court of common law, or whether the point ruled has arisen under the laws of nations, the practice in chancery, or the municipal laws of states.' In his Commentaries on the Constitution, Story, 1313, referring to Mills v. Duryee, 7 Cranch, 481, 484, 3 L. ed. 411, 413, and to the constitutional requirement as to the faith and credit to be given to the records and judicial proceedings of a state, said: "But this does not prevent an inquiry into the jurisdiction of the court in which the original judgment was given, to pronounce it; or the right of the state itself to exercise authority over the person or the subject-matter. The Con- [204 U.S. 8, 17]  stitution did not mean to confer [upon the states] a new power or jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the territory." In the later case of Galpin v. Page, 18 Wall. 350, 365, 366, 368, 21 L. ed. 959, 962, 963,-decided after, but at the same term as, Thompson v. Whitman,-the court, after referring to the general rule as to the presumption of jurisdiction in superior courts of general jurisdiction, said that such presumptions 'only arise with respect to jurisdictional facts concerning which the record is silent. Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made. When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred.' In the same case: 'It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court; by which is meant until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered.'

9

[Old Wayne Mut. Life Assn v. McDonough, 204 U.S. 8 (1907)]

Foley Brothers, Inc. v. Filardo, 336 US 281 (1949)

"The canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States, Blackmer v. United States, supra, 284 U.S. at 437, 52 S.Ct. at page 254, is a valid approach whereby unexpressed congressional intent may be ascertained It is based on the assumption that Congress is primarily concerned with domestic conditions. We find nothing in the Act itself, as amended, nor in the legislative history, which would lead to the belief that Congress entertained any intention other than the normal one in this case. The situation here is different from that in Vermilya-Brown Co. v. Connell, 335 U.S. 377, where we held that by specifically declaring that the Act covered 'possessions' of the United States, Congress directed that the Fair Labor Standards Act, 29 U.S.C.A. 201 et seq., applied those areas over which the United States has sovereignty and was in effect in all 'possessions.' This Court concluded that the leasehold there involved was a 'possession' within the meaning of the Fair Labor Standards Act."

[Foley Brothers, Inc. v. Filardo, 336 US 281 (1949)]

Downes v. Bidwell, 182 US 244 (1901)

In passing upon the questions involved in this and kindred cases, we ought not to overlook the fact that, while the Constitution was intended to establish a permanent form of government for the states which should elect to take advantage of its conditions, and continue for an indefinite future, the vast possibilities of that future could never have entered the minds of its framers. The states had but recently emerged from a war with one of the most powerful nations of Europe, were disheartened by the failure of the confederacy, and were doubtful as to the feasibility of a stronger union. Their territory was confined to a narrow strip of land on the Atlantic coast from Canada to Florida, with a somewhat indefinite claim to territory beyond the Alleghenies, where their sovereignty was disputed by tribes of hostile Indians supported, as was popularly believed, by the British, who had never formally delivered possession [182 U.S. 244, 285] under the treaty of peace. The vast territory beyond the Mississippi, which formerly had been claimed by France, since 1762 had belonged to Spain, still a powerful nation and the owner of a great part of the Western Hemisphere. Under these circumstances it is little wonder that the question of annexing these territories was not made a subject of debate. The difficulties of bringing about a union of the states were so great, the objections to it seemed so formidable,

that the whole thought of the convention centered upon surmounting these obstacles. The question of territories was dismissed with a single clause, apparently applicable only to the territories then existing, giving Congress the power to govern and dispose of them.

Had the acquisition of other territories been contemplated as a possibility, could it have been foreseen that, within little more than one hundred years, we were destined to acquire, not only the whole vast region between the Atlantic and Pacific Oceans, but the Russian possessions in America and distant islands in the Pacific, it is incredible that no provision should have been made for them, and the question whether the Constitution should or should not extend to them have been definitely settled. If it be once conceded that we are at liberty to acquire foreign territory, a presumption arises that our power with respect to such territories is the same power which other nations have been accustomed to exercise with respect to territories acquired by them. If, in limiting the power which Congress was to exercise within the United States, it was also intended to limit it with regard to such territories as the people of the United States should thereafter acquire, such limitations should have been expressed. Instead of that, we find the Constitution speaking only to states, except in the territorial clause, which is absolute in its terms, and suggestive of no limitations upon the power of Congress in dealing with them. The states could only delegate to Congress such powers as they themselves possessed, and as they had no power to acquire new territory they had none to delegate in that connection. The logical inference from this is that if Congress had power to acquire new territory, which is conceded, that power was not hampered by the constitutional provisions. If, upon the other hand, we assume [182 U.S. 244, 286]  that the territorial clause of the Constitution was not intended to be restricted to such territory as the United States then possessed, there is nothing in the Constitution to indicate that the power of Congress in dealing with them was intended to be restricted by any of the other provisions.

[. . .]

If those possessions are inhabited by alien races, differing from us in religion, customs, laws, methods of taxation, and modes of thought, the administration of government and justice, according to Anglo-Saxon principles, may for a time be impossible; and the question at once arises whether large concessions ought not to be made for a time, that ultimately our own theories may be carried out, and the blessings of a free government under the Constitution extended to them. We decline to hold that there is anything in the Constitution to forbid such action.

11

We are therefore of opinion that the island of Porto Rico is a territory appurtenant and belonging to the United States, but not a part of the United States within the revenue clauses of the Constitution; that the Foraker act is constitutional, so far as it imposes duties upon imports from such island, and that the plaintiff cannot recover back the duties exacted in this case.

[Downes v. Bidwell, 182 US 244 (1901)]

Ashwander v. TVA, 297 U.S. 288 (1936)

"The judicial power does not extend to the determination of abstract questions. Muskrat v. United States, 219 U.S. 346, 361 , 31 S.Ct. 250; Liberty Warehouse Company v. Grannis, 273 U.S. 70 , 74 , 47 S.Ct. 282; Willing v. Chicago Auditorium Ass'n, 277 U.S. 274, 289 , 48 S.Ct. 507; Nashville, Chattanooga & St. Louis R. Co. v. Wallace, 288 U.S. 249, 262 , 264 S., 53 S.Ct. 345, 87 A.L. R. 1191."

[Ashwander v. TVA, 297 U.S. 288 (1936)]

Cohens v. Virginia, 19 U.S. 264, 6 Wheat. 265; 5 L.Ed. 257 (1821)<

It is clear, that Congress cannot punish felonies generally; and, of consequence, cannot punish misprision of felony. It is equally clear, that a State legislature, the State of Maryland for example, cannot punish those who, in another State, conceal a felony committed in Maryland. How, then, is it that Congress, legislating exclusively for a fort, punishes those who, out of that fort, conceal a felony committed within it?

The solution, and the only solution of the difficulty, is, that the power vested in Congress, as the legislature of the United States, to legislate exclusively within any place ceded by a State, carries with it, as an incident, the right to make that power effectual. If a felon escape out of the State in which the act has been committed, the government cannot pursue him into another State, and apprehend him there, but must demand him from the executive power of that other State. If Congress were to be considered merely as the local legislature for the fort or other place in which the offence might be committed, then this principle would apply to them as to other local [19 U.S. 264, 429]   legislatures, and the felon who should escape out of the fort, or other place, in which the felony may have been committed, could not be apprehended by the marshal, but

12

must be demanded from the executive of the State. But we know that the principle does not apply; and the reason is, that Congress is not a local legislature, but exercises this particular power, like all its other powers, in its high character, as the legislature of the Union. The American people thought it a necessary power, and they conferred it for their own benefit. Being so conferred, it carries with it all those incidental powers which are necessary to its complete and effectual execution.

Whether any particular law be designed to operate without the District or not, depends on the words of that law. If it be designed so to operate, then the question, whether the power so exercised be incidental to the power of exclusive legislation, and be warranted by the constitution, requires a consideration of that instrument. In such cases the constitution and the law must be compared and construed. This is the exercise of jurisdiction. It is the only exercise of it which is allowed in such a case. For the act of Congress directs, that 'no other error shall be assigned or regarded as a ground or reversal, in any such case as aforesaid, than such as appears on the face of the record, and immediately respects the before mentioned questions of validity or construction of the said constitution, treaties,' &c.

[. . .]

It is clear that Congress, as a legislative body, exercise two species of legislative power: the one, limited as to its objects, but extending all over the Union: the other, an absolute, exclusive legislative power over the District of Columbia. The preliminary inquiry in the case now before the Court, is, by virtue of which of these authorities was the law in question passed? When this is ascertained, we shall be able to determine its extent and application. In this country, we are trying the novel experiment of a divided sovereignty, between the national government and the States. The precise line of division between these is not always distinctly marked. Government is a moral not a mathematical science; and the powers of such a government especially, cannot be defined with mathematical [19 U.S. 264, 435]   accuracy and precision. There is a competition of opposite analogies.

[Cohens v. Virginia, 19 U.S. 264, 6 Wheat. 265; 5 L.Ed. 257 (1821)]

American Banana Co. v. U.S. Fruit, 213 U.S. 347 at 357-358

13

The foregoing considerations would lead, in case of doubt, to a construction of any statute as intended to be confined in its operation and effect to the territorial limits over which the lawmaker has general and legitimate power. 'All legislation is prima facie territorial.' Ex parte Blain, L. R. 12 Ch. Div. 522, 528; State v. Carter, 27 N. J. L. 499; People v. Merrill, 2 Park. Crim. Rep. 590, 596. Words having universal scope, such as 'every contract in restraint of trade,' 'every person who shall monopolize,' etc., will be taken, as a matter of course, to mean only everyone subject to such legislation, not all that the legislator subsequently may be able to catch. In the case of the present statute, the improbability of the United States attempting to make acts done in Panama or Costa Rica criminal is obvious, yet the law begins by making criminal the acts for which it gives a right to sue. We think it entirely plain that what the defendant did in Panama or Costa Rica is not within the scope of the statute so far as the present suit is concerned. Other objections of a serious nature are urged, but need not be discussed.

[American Banana Co. v. U.S. Fruit, 213 U.S. 347 at 357-358]

Sandberg v. McDonald, 248 U.S. 185 (1918)

"Legislation is presumptively territorial and confined to limits over which the law-making power has jurisdiction. American Banana Company v. United Fruit Co., 213 U.S. 347, 357 , 29 S. Sup. Ct. 511, 16 Ann. Cas. 1047. In Patterson v. Bark Eudora, supra, this court declared such legislation as to foreign vessels in United States ports to be constitutional. We think that [248 U.S. 185, 196] there is nothing in this section to show that Congress intended to take over the control of such contracts and payments as to foreign vessels except while they were in our ports. Congress could not prevent the making of such contracts in other jurisdictions. If they saw fit to do so, foreign countries would continue to permit such contracts and advance payments no matter what our declared law or policy in regard to them might be as to vessels coming to our ports."

[Sandberg v. McDonald, 248 U.S. 185 (1918)]

New Orleans v. United States, 35 U.S. (10 Pet.) 662 (1836)

"Special provision is made in the constitution, for the cession of jurisdiction from the states over places where the federal government shall establish forts, or other military works. And it is only

14

in these places, or in the territories of the United States, where it can exercise a general jurisdiction."

[New Orleans v. United States, 35 U.S. (10 Pet.) 662 (1836)]

U.S. v. Spelar, 338 U.S. 217 at 222 (1949)

In Foley Bros. v. Filardo,12 we had occasion to refer to the 'canon of construction which teaches that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States * * * .' That presumption, far from being overcome here, is doubly fortified by the language of this statute and the legislative purpose underlying it.

[U.S. v. Spelar, 338 U.S. 217 at 222 (1949)]

Pollard v. Hagan, 44 U.S. 213, 221, 223 (1845)

". . .the United States never held any municipal sovereignty, jurisdiction, or right of soil in Alabama or any of the new states which were formed ...

When Alabama was admitted into the union, on an equal footing with the original states, she succeeded to all the rights of sovereignty, jurisdiction, and eminent domain which Georgia possessed at the date of the cession, except so far as this right was diminished by the public lands remaining in the possession and under the control of the United States, for the temporary purposes provided for in the deed of cession and the legislative acts connected with it. Nothing remained to the United States, according to the terms of the agreement, but the public lands. And, if an express stipulation had been inserted in the agreement, granting the municipal right of sovereignty and eminent domain to the United States, such stipulation would have been void and inoperative: because the United States have no constitutional capacity to exercise municipal jurisdiction, sovereignty, or eminent domain, within the limits of a state or elsewhere, except in the cases in which it is expressly granted. 7 "

[Pollard v. Hagan, 44 U.S. 213, 221, 223 (1845)]

15

Heath v. Alabama, 474 U.S. 82 (1985)


"... the states are separate sovereigns with respect to the federal government"


[Heath v. Alabama, 474 U.S. 82 (1985)]


Hagans v. Lavine, 415 U.S. 533 (1974)


"Jurisdiction . . . is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction." Id., at 682 (citations omitted). 10


[Hagans v. Lavine, 415 U.S. 533 (1974)]


Lowe v. Alexander 15 Cal. 296


It is well settled that no intendments can be indulged in favor of the jurisdiction of inferior courts, but that their jurisdiction must affirmatively appear, or their judgments will be absolutely void. "The general distinction seems to be fully agreed, that power and authority shall be intended as to courts of general jurisdiction, but as to inferior or limited courts, those who claim any right or exemption under their proceedings, are bound to show affirmatively that they had jurisdiction." (1 Phil. Ev. Cow. & Hill's notes, 206.) There is no doubt about the law upon this subject, and the authorities are so numerous, and so familiar to the profession, that a citation of them is entirely unnecessary."

[Lowe v. Alexander 15 Cal. 296]

Louisville RR v. Motley, 211 U.S. 149, 29 S.Ct. 42 (1908)

"Neither party has questioned that jurisdiction, but it is the duty of this court to see to it that the jurisdiction of the circuit court, which is defined and limited by statute, is not exceeded. This duty we have frequently performed of our own motion. Mansfield, C. & L. M. R. Co. v. Swan, 111 U.S. 379, 382 , 28 S. L. ed. 462, 463, 4 Sup. Ct. Rep. 510; King Iron Bridge & Mfg. Co. v. Otoe County, 120 U.S. 225 , 30 L. ed. 623, Sup. Ct. Rep. 552; Blacklock v. Small, 127 U.S. 96, 105 , 32 S. L. ed. 70, 73, 8 Sup. Ct. Rep. 1096; Cameron v. Hodges, 127 U.S. 322, 326 , 32 S. L. ed. 132, 134, 8 Sup. Ct. Rep. 1154; Metcalf v. Watertown, 128 U.S. 586, 587 , 32 S. L. ed. 543, 9 Sup. Ct. Rep. 173; Continental Nat. Bank v. Buford, 191 U.S. 120 , 48 L. ed. 119, 24 Sup. Ct. Rep. 54.  "

There was no diversity of citizenship, and it is not and cannot be suggested that there was any ground of jurisdiction, except that the case was 'suit . . . arising under the Constitution or laws of the United States.' 25 Stat. at L. 434, chap. 866, U. S. Comp. Stat. 1901, p. 509. It is the settled interpretation of these words, as used in this statute, conferring jurisdiction, that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States.

[Louisville RR v. Motley, 211 U.S. 149, 29 S.Ct. 42 (1908)]

U.S. ex. rel. Brookfield Const. Co. v. Stewart, 284 F.Supp. 94 (1964)

"In addition, there are several well known subordinate principles. The Government may not be sued except by its consent. The United States has not submitted to suit for specific performance*99 or for an injunction. This immunity may not be avoided by naming an officer of the Government as a defendant. The officer may be sued only if he acts in excess of his statutory authority or in violation of the Constitution for then he ceases to represent the Government."

17

[U.S. ex. rel. Brookfield Const. Co. v. Stewart, 284 F.Supp. 94 (1964)]

PDF Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970 (1984)

"Our own experience is fully consistent with the common law's rejection of a rule of judicial immunity from prospective relief. We never have had a rule of absolute judicial immunity from prospective relief, and there is no evidence that the absence of that immunity has had a chilling effect on judicial independence. None of the seminal opinions on judicial immunity, either in England or in this country, has involved [466 U.S. 522, 537]   immunity from injunctive relief. 15 No Court of Appeals ever has concluded that immunity bars injunctive relief against a judge. See n. 6, supra. At least seven Circuits have indicated affirmatively that there is no immunity bar to such relief, and in situations where in their judgment an injunction against a judicial officer was necessary to prevent irreparable injury to a petitioner's constitutional rights, courts have granted that relief. 16 "

[Pulliam v. Allen, 466 U.S. 522, 104 S.Ct. 1970 (1984)]

PDF Dykes v. Hosemann, 743 F.2d 1488 (1984)

We also agree with the Rankin court that immunity for judicial acts in the clear absence of jurisdiction is lost only if the judge knows that he lacks jurisdiction, or acts in the face of clearly valid statutes or case law expressly depriving him of jurisdiction. See 633 F.2d at 849. Issues of jurisdiction are often complex, and judges should be free to decide them without concern that their errors may subject them to liability.

In the instant case, the federal district court judge assumed that a court which had subject matter jurisdiction did not act in the clear absence of jurisdiction. The court refused to reconsider its ruling when the appellants introduced Rankin as new authority. Because the issues of whether Judge Hosemann knew he lacked personal jurisdiction or acted in the face of clearly valid statutes or case law expressly depriving him of jurisdiction are matters for initial determination in the district court, we reverse the order dismissing the claim against Judge Hosemann and remand to the district court for further proceedings not inconsistent with this

18

opinion.FN10

[Dykes v. Hosemann, 743 F.2d 1488 (1984)]

Manning v. Ketcham, 58 F.2d 948 (1932)

An affirmance results. When a judge acts in the clear absence of all jurisdiction, i. e., of authority to act officially over the subject-matter in hand, the proceeding is coramnon judice. In such a case the judge has lost his judicial function, has become a mere private person, and is liable as a trespasser for the damages resulting from his unauthorized acts. Such has been the law from the days of the case of The Marshalsea, 10 Coke 68. It was recognized as such in Bradley v. Fisher, 13 Wall. (80 U. S.) 335, 351, 20 L. Ed. 646. In State ex rel. Egan v. Wolever, 127 Ind. 306, 26 N. E. 762, 763, the court said: 'The converse statement of it is also ancient. Where there is no jurisdiction at all there is no judge; the proceeding is as nothing.'

[. . .]

Honesty of purpose and sincere belief that appellant was acting in the discharge of his official duty under his oath of office and for the public welfare is not available as a defense further than in mitigation of damages. See Glazar v. Hubbard, 102 Ky. 68, 69, 42 S. W. 1114, 39 L. R. A. 210, 80 Am. St. Rep. 340; Prell v. McDonald, 7 Kan. 266, 283, 12 Am. Rep. 423; DeCourcey v. Cox, 94 Cal. 665, 669, 30 P. 95; Truesdell v. Combs, 33 Ohio St. 186, 194.

[Manning v. Ketcham, 58 F.2d 948 (1932)]

PDF Bradley v.Fisher,80 U.S. 335, 13 Wall 335, 351, 352 (1871)

In the present case we have looked into the authorities and are clear, from them, as well as from the principle on which any exemption is maintained, that the qualifying words used were not necessary to a correct statement of the law, and that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess

19

of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus, if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if on the other hand a judge of a criminal court, invested with general criminal jurisdiction over offences committed within a certain district, should hold a particular act to be a public offence, which is not by the law made an offence, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him, for these are particulars for his judicial consideration, whenever his general jurisdiction over the subject-matter is invoked. Indeed some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons.


*12 The distinction here made between acts done in excess of jurisdiction and acts where no jurisdiction whatever over the subject-matter exists, was taken by the Court of King's Bench, in Ackerley v. Parkinson. FN18 In that case an action was brought against the vicar-general of the Bishop of Chester and his surrogate, who held the consistorial and episcopal court of the bishop, for excommunicating the plaintiff with the greater excommunication for contumacy, in not taking upon himself the administration of an intestate's effects, to whom the plaintiff was next of kin, the citation issued to him being void, and having been so adjudged. The question presented was, whether under these circumstances the action would lie. The citation being void, the plaintiff had not been legally brought before the court, and the subsequent proceedings were set aside, on appeal, on that ground. Lord Ellenborough observed that it was his opinion that the action was not maintainable if the ecclesiastical court had a general jurisdiction over the subject-matter, although the citation was a nullity, and said, that 'no authority had been cited to show that the judge would be liable to an action where he has jurisdiction, but has proceeded

20

erroneously, or, as it is termed, inverso ordine.' Mr. Justice Blanc said there was 'a material distinction between a case where a party comes to an erroneous conclusion in a matter over which he has jurisdiction and a case where he acts wholly without jurisdiction;' and held that where the subject-matter was within the jurisdiction of the judge, and the conclusion was erroneous, although the party should by reason of the error be entitled to have the conclusion set aside, and to be restored to his former rights, yet he was not entitled to claim compensation in damages for the injury done by such erroneous conclusion, as if the court had proceeded without any jurisdiction.FN19

[Bradley v.Fisher,80 U.S. 335, 13 Wall 335, 351, 352 (1871)]

Pierson v. Ray, 386 U.S. 547 (1967)

Few doctrines were more solidly [386 U.S. 547, 554]   established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. 335 (1872). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it " is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." (Scott v. Stansfield, L. R. 3 Ex. 220, 223 (1868), quoted in Bradley v. Fisher, supra, 349, note, at 350.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation.

We do not believe that this settled principle of law was abolished by 1983, which makes liable " every person" who under color of law deprives another person of his civil rights. The legislative record gives no clear indication that Congress meant to abolish wholesale all common-law immunities. Accordingly, this Court held in Tenney v. Brandhove, 341 U.S. 367 (1951), that the immunity of legislators for acts within the legislative role was not abolished. The immunity of judges for acts within the judicial role is equally well established, and [386 U.S. 547, 555]   we presume that Congress would have specifically so provided had it wished to abolish the doctrine. 9

21

The common law has never granted police officers an absolute and unqualified immunity, and the officers in this case do not claim that they are entitled to one. Their claim is rather that they should not be liable if they acted in good faith and with probable cause in making an arrest under a statute that they believed to be valid. Under the prevailing view in this country a peace officer who arrests someone with probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. Restatement, Second, Torts 121 (1965); 1 Harper & James, The Law of Torts 3.18, at 277-278 (1956); Ward v. Fidelity & Deposit Co. of Maryland, 179 F.2d 327 (C. A. 8th Cir. 1950). A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. Although the matter is not entirely free from doubt, 10 the same consideration would seem to require excusing him from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional, on its face or as applied.

[Pierson v. Ray, 386 U.S. 547 (1967).]

U.S. v. Will, 449 U.S. 200 (1980)

"In another, not unrelated context, Chief Justice Marshall's exposition in Cohens v. Virginia, 6 Wheat, 264 (1821), could well have been the explanation of the Rule of Necessity; he wrote that a court "must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them." Id., at 404 (emphasis added)

[U.S. v. Will, 449 U.S. 200 (1980)]

FEDERAL RULES OF CIVIL PROCEDURE CITES RELATING TO JURISDICTION:

Federal Rules of Civil Procedure, Rule 12(b) provides the escape clause from federal prosecution

for the Citizens of the 50 states:

Rule 12.  Defenses and Objections--

(b) "...the following defenses may at the option of the pleader be made by motion:

  (1)  lack of jurisdiction over the subject matter.

(2)  lack of jurisdiction over the person.

...A motion making any of these defenses shall be made before pleading..

(h)(3)  "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

Pacemaker Diagnostic Clinic of America Inc. v. Instromedix Inc., 725 F.2d 537 (9th Cir. 02/16/1984)

   Pacemaker argues that in the federal system a party may not consent to jurisdiction, so that the parties cannot waive their rights under Article III. The maxim that parties may not consent to the jurisdiction of federal courts is not applicable here. The rule is irrelevant because it applies only where the parties attempt to confer upon an Article III court a subject matter jurisdiction that Congress or the Constitution forbid. See, e.g., Jackson v. Ashton, 33 U.S. (8 Peters), 148, 148-49, 8 L. Ed. 898 (1834); Mansfield, Coldwater & Lake Michigan Railway Co. v. Swan, 111 U.S. 379, 28 L. Ed. 462, 4 S. Ct. 510 (1884). The limited jurisdiction of the federal courts and the need to respect the boundaries of federalism underlie the rule. In the instant case, however, the subject matter, patents, is exclusively one of federal law. The Supreme Court has explicitly held that Congress may "confer upon federal courts jurisdiction conditioned upon a defendant's consent." Williams v. Austrian, 331 U.S. 642, 652, 91 L. Ed. 1718, 67 S. Ct. 1443 (1947); see Harris v. Avery Brundage Co., 305 U.S. 160, 83 L. Ed. 100, 59 S. Ct. 131 (1938). The litigant waiver in this case is similar to waiver of a defect in jurisdiction over the person, a waiver federal courts

23

permit. Hoffman v. Blaski, 363 U.S. 335, 343, 4 L. Ed. 2d 1254, 80 S. Ct. 1084 (1960).

[Pacemaker Diagnostic Clinic of America Inc. v. Instromedix Inc., 725 F.2d 537 (9th Cir. 02/16/1984)]

PDF Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 (9th Cir. 01/12/2006)

In International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme Court held that a court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Id. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be "present" in that forum for all purposes, a forum may exercise only "specific" jurisdiction - that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim. The parties agree that only specific jurisdiction is at issue in this case.

In this circuit, we analyze specific jurisdiction according to a three-prong test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). The first prong is determinative in this case. We have sometimes referred to it, in shorthand fashion, as the "purposeful availment" prong. Schwarzenegger, 374 F.3d at 802. Despite its label, this prong includes both purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof.

We have typically treated "purposeful availment" somewhat differently in tort and contract cases. In tort cases, we typically inquire whether a defendant "purposefully direct[s] his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. See Schwarzenegger, 374 F.3d at 803 (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)). By contrast, in contract cases, we typically inquire whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s] [a] transaction" in the forum, focusing on activities such as delivering goods or executing a contract. See Schwarzenegger, 374 F.3d at 802. However, this case is neither a tort nor a contract case. Rather, it is a case in which Yahoo! argues, based on the First Amendment, that the French court's interim orders are unenforceable by an American court.

LICRA and UEJF contend that we must base our analysis on the so-called "effects" test of Calder v. Jones, 465 U.S. 783 (1984), which is normally employed in purposeful direction cases. See, e.g., CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1111 (9th Cir. 2004); Schwarzenegger, 374 F.3d at 803; Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). In Calder, a California-based entertainer sued the National Enquirer and various individual defendants for an allegedly defamatory article published in the Enquirer. The article had been written and edited in Florida, and the defendants had few contacts with California. The Court nonetheless upheld the exercise of personal jurisdiction in California because the defendants knew that the article would have an effect in that state. In the words of the Court, the defendants had not engaged in "mere untargeted negligence"; rather, their "intentional, and allegedly tortious, actions were expressly aimed at California." 465 U.S. at 789.

In this circuit, we construe Calder to impose three requirements: "the defendant allegedly [must] have

(1) committed an intentional act,


(2) expressly aimed at the forum state,


(3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 803 (quoting Dole Food, 303 F.3d at 1111).


In some of our cases, we have employed a slightly different formulation of the third requirement, specifying that the act must have "caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000) (emphasis added). The "brunt" of the harm formulation originated in the principal opinion in Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482 (9th Cir. 1993). That opinion required that the "brunt" of the harm be suffered in the forum state; based on that requirement, it concluded that there was no purposeful availment by the defendant. Id. at 1486. A dissenting judge would have found purposeful availment. Relying on the Supreme Court's opinion in Keeton v. Hustler Magazine, 465 U.S. 770 (1984), he specifically disavowed the "brunt" of the harm formulation. Core-Vent, 11 F.3d at 1492 (Wallace, C.J., dissenting) ("[T]he Supreme Court has already rejected the proposition that the brunt of the harm must be suffered in the forum."). Without discussing the disputed "brunt" of the harm formulation, a concurring judge agreed with the dissenter that purposeful availment could be found. Id. at 1491 (Fernandez, J., concurring) ("I agree with Chief Judge Wallace that purposeful availment can be found in this case."). Later opinions picked up the "brunt" of the harm formulation of the principal opinion in Core-Vent without noting that at least one, and possibly two, of the judges on the panel disagreed with it. See, e.g., Bancroft & Masters, 223 F.3d at 1087; Panavision, 141 F.3d at 1321; Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995).


We take this opportunity to clarify our law and to state that the "brunt" of the harm need not be suffered in the forum state. If a jurisdictionally sufficient amount of harm is suffered in the forum state, it does not matter that even more harm might have been suffered in another state. In so stating we are following Keeton, decided the same day as Calder, in which the Court sustained the exercise of personal jurisdiction in New Hampshire even though "[i]t is undoubtedly true that the bulk of the harm done to petitioner occurred outside New Hampshire." 465 U.S. at 780.

LICRA and UEJF contend that the Calder effects test is not satisfied because, in their view, Calder requires that the actions expressly aimed at and causing harm in California be tortious or otherwise wrongful. LICRA and UEJF contend that they have done no more than vindicate their rights under French law, and that their behavior has therefore not been wrongful. They conclude that their behavior therefore does not confer personal jurisdiction in California. We agree with LICRA and UEJF that the Calder effects test is appropriately applied to the interim orders of the French court. But we disagree with them about the meaning and application of Calder.

In any personal jurisdiction case we must evaluate all of a defendant's contacts with the forum state, whether or not those contacts involve wrongful activity by the defendant. See, e.g., Quill Corp. v. North Dakota, 504 U.S. 298, 308 (1992) (upholding jurisdiction to enforce state tax on out-of-state corporation that sent catalogs and goods to forum); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479 (1985) (upholding personal jurisdiction based on a course of dealing related to a franchise agreement). Many cases in which the Calder effects test is used will indeed involve wrongful conduct by the defendant. See, e.g., Calder, 465 U. S. at 790, (allegedly defamatory publication purposefully directed at California); Bancroft & Masters, 223 F.3d at 1088 (wrongful interference with California corporation's use of domain name); Sinatra v. Nat'l Enquirer, Inc., 854 F.2d 1191, 1192 (9th Cir. 1988) (unauthorized use of celebrity's name and likeness to promote Swiss clinic); Lake, 817 F.2d at 1422-23 (provision of legal services to secure allegedly improper custody order). But we do not read Calder necessarily to require in purposeful direction cases that all (or even any) jurisdictionally relevant effects have been caused by wrongful acts. We do not see how we could do so, for if an allegedly wrongful act were the basis for jurisdiction, a holding on the merits that the act was not wrongful would deprive the court of jurisdiction.

We therefore analyze all of LICRA and UEJF's contacts with California relating to its dispute with Yahoo!, irrespective of whether they involve wrongful actions by LICRA and UEJF. There are three such contacts. The first two contacts, taken by themselves, do not provide a sufficient basis for jurisdiction. However, the third contact, considered in conjunction with the first two, does provide such a basis.

The first contact is the cease and desist letter that LICRA sent to Yahoo!, demanding that Yahoo! alter its behavior in California to conform to what LICRA contended were the commands of French law. A cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter. Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected

27

infringement."). There are strong policy reasons to encourage cease and desist letters. They are normally used to warn an alleged rights infringer that its conduct, if continued, will be challenged in a legal proceeding, and to facilitate resolution of a dispute without resort to litigation. If the price of sending a cease and desist letter is that the sender thereby subjects itself to jurisdiction in the forum of the alleged rights infringer, the rights holder will be strongly encouraged to file suit in its home forum without attempting first to resolve the dispute informally by means of a letter. See Red Wing Shoe, 148 F.3d at 1360-1361; Cascade Corp. v. Hiab-Foco AB, 619 F.2d 36, 38 (9th Cir. 1980); Douglas Furniture Co. of Cal., Inc. v. Wood Dimensions, Inc., 963 F. Supp. 899, 903 (C.D. Cal. 1997) ("If any attempt by an intellectual property holder to put an alleged wrongdoer on notice forced the property holder to submit to the jurisdiction of the alleged wrongdoer's forum, an intellectual property owner would be forced to file an action in his own jurisdiction in order to avoid the threat of being haled before a court in another, possibly distant state.").

This is not to say that a cease and desist letter can never be the basis for personal jurisdiction. For example, in Bancroft & Masters, we upheld jurisdiction based on two letters sent by Augusta National Inc. ("ANI"), based in Georgia, contending that Bancroft & Masters, Inc. ("B & M") was improperly using its domain name. One letter was sent to Network Solutions, Inc. ("NSI") in Virginia. NSI was then the sole registrar of domain names. The other, a cease and desist letter, was sent to B & M at its corporate offices in California. B & M sued ANI in federal district court in California seeking a declaratory judgment that it had the right to the disputed domain name. On the assumption that B & M's factual allegation was true, we held that the letters were intended to trigger NSI's dispute resolution procedures, to interfere wrongfully with B & M's use of its domain name, and to misappropriate that name for ANI's own use. 223 F.3d at 1087. We therefore upheld jurisdiction under Calder based on the letters.

LICRA's letter was not used to facilitate settlement. Although it stated that LICRA would file suit in eight days if Yahoo! had not complied with LICRA's demands, LICRA filed suit five days after the date of the letter. Nonetheless, LICRA's letter to Yahoo! was more like a normal cease and desist letter than the letters at issue in Bancroft & Masters, for it was not abusive, tortious or otherwise wrongful. Rather, it simply alerted Yahoo! to its view of French law and stated its intent to file suit in France to enforce that law against Yahoo!.

Under these circumstances, we do not believe that LICRA's letter is a contact that would, if considered alone, justify the exercise of personal jurisdiction.

LICRA and UEJF's second contact (or, more precisely, set of contacts) with California was service of process on Yahoo! in California. LICRA first effected service of process to commence the French suit. LICRA and UEJF later effected service of the French court's two interim orders. We do not regard the service of documents in connection with a suit brought in a foreign court as contacts that by themselves justify the exercise of personal jurisdiction over a foreign litigant in a United States court. If we were to hold that such service were a sufficient basis for jurisdiction, we would be providing a forum-choice tool by which any United States resident sued in a foreign country and served in the United States could bring suit in the United States, regardless of any other basis for jurisdiction. We are unaware of any case so holding, and Yahoo! has cited none.

Third, and most important, LICRA and UEJF have obtained two interim orders from the French court directing Yahoo! to take actions in California, on threat of a substantial penalty. We agree with LICRA and UEJF that the French court's orders are appropriately analyzed under the Calder effects test.

The first two requirements are that LICRA and UEJF "have '(1) committed an intentional act, [which was] (2) expressly aimed at the forum state[.]' " Schwarzenegger, 374 F.3d at 805 (quoting Dole Food, 303 F.3d at 1111). It is obvious that both requirements are satisfied. LICRA intentionally filed suit in the French court. Indeed, it had previously signaled its intent to file suit in its April 5 letter to Yahoo!. UEJF intentionally joined LICRA's suit ten days later. Further, LICRA and UEJF's suit was expressly aimed at California. The suit sought, and the French court granted, orders directing Yahoo! to perform significant acts in California. It is of course true that the effect desired by the French court would be felt in France, but that does not change the fact that significant acts were to be performed in California. The servers that support yahoo.com are located in California, and compliance with the French court's orders necessarily would require Yahoo! to make some changes to those servers. Further, to the extent that any financial penalty might be imposed pursuant to the French court's orders, the impact of that penalty would be felt by Yahoo! at its corporate headquarters in California. See Dole Food, 303 F.3d at 1113-14.

The third requirement is that LICRA and UEJF's acts " 'caus[e] harm that the defendant knows is likely to be suffered in the forum state.' " Id. This requirement is somewhat problematic, for Yahoo! has not shown or even alleged any specific way in which it has altered its behavior in response to the French court's interim orders. Yahoo! changed its policy with respect to Yahoo.com after the French court's orders were entered, but Yahoo! has consistently maintained that the change was unrelated to the orders. Therefore, even if we were persuaded that Yahoo!'s change of policy harmed it in some way, Yahoo! itself has represented that such

harm was not caused by any action of LICRA or UEJF. Nor is it clear that, absent the interim orders, Yahoo! would change its policy in the future. Indeed, Yahoo! represented to us during oral argument that there is nothing that it would like to do, but is now refraining from doing, because of the interim orders.


Yahoo!, however, points to the possibility that a substantial penalty will be assessed under the French court's November 20 interim order. It points in particular to the provision in that order specifying that the potential amount of the penalty increases by 100,000 Francs for every day that Yahoo! is in violation of the court's orders. Yahoo! represents to us that even now, after its change of policy, it is acting in plain violation of the orders. It contends that a declaratory judgment determining the enforceability by an American court of the French court's orders will allow it to determine an appropriate course of conduct with respect to the activities in which it continues to engage. The district court found that, notwithstanding its new policy, the Yahoo.com auction site still offers certain items for sale (such as stamps, coins, and a copy of Mein Kampf) which appear to violate the French Order. While Yahoo! has removed the Protocol of the Elders of Zion from its auction site, it has not prevented access to numerous other sites which reasonably "may be construed as constituting an apology for Nazism or a contesting of Nazi crimes."


[Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199 (9th Cir. 01/12/2006)]


Annotated Constitution, Article III, Congressional Research Service


Suits by Foreign States.—The privilege of a recognized foreign state to sue in the courts of another state upon the principle of comity is recognized by both international law and American constitutional law.1029 To deny a sovereign this privilege "would manifest a want of comity and friendly feeling."1030 Although national sovereignty is continuous, a suit in behalf of a national sovereign can be maintained in the courts of the United States only by a government which has been recognized by the political branches of our own government as the authorized government of[p.775]the foreign state.1031 As the responsible agency for the conduct of foreign affairs, the State Department is the normal means of suggesting to the courts that a sovereign be granted immunity from a particular suit.1032 Once a foreign government avails itself of the privilege of suing in the courts of the United States, it subjects itself to the procedure and rules of decision governing those courts and accepts whatever liabilities the court may decide to be a reasonable incident of bringing the suit.1033 The rule that a foreign nation instituting a suit in a federal

district court cannot invoke sovereign immunity as a defense to a counterclaim growing out of the same transaction has been extended to deny a claim of immunity as a defense to a counterclaim extrinsic to the subject matter of the suit but limited to the amount of the sovereign's claim.1034 Moreover, certain of the benefits extending to a domestic sovereign do not extend to a foreign sovereign suing in the courts of the United States. A foreign state does not receive the benefit of the rule which exempts the United States and its member States from the operation of the statute of limitations, because those considerations of public policy back of the rule are regarded as absent in the case of the foreign sovereign.1035

[. . .]

Narrow Construction of the Jurisdiction.—As in cases of diversity jurisdiction, suits brought to the federal courts under this category must clearly state in the record the nature of the parties. As early as 1809, the Supreme Court ruled that a federal court could not take jurisdiction of a cause where the defendants were described in the record as "late of the district of Maryland," but were not designated as citizens of Maryland, and plaintiffs were described as aliens and subjects of the United Kingdom.1037 The meticulous care manifested in this case appeared twenty years later when the Court narrowly construed Sec. 11 of the Judiciary Act of 1789, vesting the federal courts with jurisdiction when an alien was a party, in order to keep it within the limits of this clause. The judicial power was further held not to extend to private suits in which an alien is a party, unless a citizen is the adverse party.1038 This interpretation was extended in 1870 by a holding that if there is more than one plaintiff or defendant, each plaintiff or defendant must be competent to sue or liable to suit.1039 These rules, however, do not preclude a suit between citizens of the same State if the plaintiffs are merely nominal parties and are suing on behalf of an alien.1040

[Annotated Constitution, Article III, Congressional Research Service]

FEDERAL STUDY ON JURISDICTION WITHIN THE STATES:

In June, 1957, the government of the United States published a work entitled Jurisdiction Over Federal Areas Within The States: Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal Areas Within the States, Part II. The Committee stated at pg. 45 :

"It scarcely needs to be said that unless there has been a transfer of jurisdiction pursuant to clause 17 by a Federal acquisition of land with State consent, or by cession from the State to the Federal Government, or unless the Federal Government has reserved jurisdiction upon admission of the State, the Federal Government possesses no legislative jurisdiction over any area within a State, such jurisdiction being for exercise by the State, subject to non-interference by the State with Federal functions..."

"The consent requirement of Article I, section 8, clause 17 was intended by the framers of the Constitution to preserve the State's jurisdictional integrity against federal encroachment. The Federal Government cannot, by unilateral action on its part, acquire legislative jurisdiction over any area within the exterior boundaries of a State," Id., at 46.

According to the April, 1956, report (Part I), pages 41-47 of the Interdepartmental Committee "Study Of Jurisdiction Over Federal Areas Within The States," the court has recognized three methods by which the federal government may acquire exclusive legislative jurisdiction over a physical area:

mg1but.jpg   Constitutional consent.--Other than the District of Columbia, the Constitution gives express recognition to but one means of Federal acquisition of legislative jurisdiction-- purchase with State consent under article I, section 8, clause 17.

..."and to exercise like authority over all places purchased by the consent of the legislature of the state in which the same shall be, for the creation of forts, magazines, arsenals, dockyards and other needful buildings...."

"The debates in the Constitutional Convention and State ratifying conventions leave little doubt that both the opponents and proponents of Federal exercise of exclusive legislature jurisdiction over the seat of government were of the view that a constitutional provision such as clause 17 was essential if the Federal government was to have such jurisdiction.... While, as has been indicated in the preceding chapter, little attention was given in the course of the debates to Federal exercise of exclusive legislative jurisdiction over areas other than the seat of government, it is reasonable to assume that it was the general view that a special constitution provision was essential to enable the United States to acquire exclusive legislative jurisdiction

32

over any area..."

According to the 1956 report, pages 7-8, "... the provision of the second portion, for transfer of like jurisdiction [as the District of Columbia] to the Federal Government over other areas acquired for Federal purposes, was not uniformly exercised during the first 50 years of the existence of the United States. It was exercised with respect to most, but not all, lighthouse sites, with respect to various forts and arsenals, and with respect to a number of other individual properties. But search of appropriate records indicates that during this period it was often the practice of the Government merely to purchase the lands upon which its installations were to be placed and to enter into occupancy for the purposes intended, without also acquiring legislative jurisdiction over the lands."

mg1but.jpg   "Federal reservation.--In Fort Leavenworth R.R. v. Lowe, 114 U.S. 525 (1885), the Supreme Court approved a method not specified in the Constitution of securing legislative jurisdiction in the United States. Although the matter was not in issue in the case, the Supreme Court said (p. 526):

"The land constituting the Reservation was part of the territory acquired in 1803 by cession from France, and until the formation of the State of Kansas, and her admission into the Union, the United States possessed the rights of a proprietor, and had political dominion and sovereignty over it. For many years before that admission it had been reserved from sale by the proper authorities of the United States for military purposes, and occupied by them as a military post. The jurisdiction of the United States over it during this time was necessarily paramount. But in 1861 Kansas was admitted into the Union upon an equal footing with the original States, that is, with the same rights of political dominion and sovereignty, subject like them only to the Constitution of the United States. Congress might undoubtedly, upon such admission, have stipulated for retention of the political authority, dominion and legislative power of the United States over the Reservation so long as it should be used for military purposes by the government; that is, it could have excepted the place from the jurisdiction of Kansas, as one needed for the uses of the general government. But from some cause, inadvertence perhaps, or over-confidence that a recession of such jurisdiction could be had whenever desired, no such stipulation or exception was made."(See also United States v. Gratoit concerning post-statehood reservation of mines, salt licks, salt springs, and mill seats in the (former) Eastern ceded territories.)

mg1but.jpg   "State cession.--In the same case, ( Fort Leavenworth R.R. v. Lowe,)  the United

33

States Supreme Court sustained the validity of an act of Kansas ceding to the United States legislative jurisdiction over the Fort Leavenworth military reservation, but reserving to itself the right to serve criminal and civil process in the reservation and the right to tax railroad, bridge, and other corporations, and their franchises and property on the reservation. In the course of its opinion sustaining the cession of legislative jurisdiction , the Supreme Court said (p. 540):

"... Though the jurisdiction and authority of the general government are essentially different form those of the State, they are not those of a different country; and the two, the State and general government, may deal with each other in any way they may deem best to carry out the purposes of the Constitution. It is for the protection and interests of the States, their people and property, as well as for the protection and interests of the people generally of the United States, that forts, arsenals, and other buildings for public uses are constructed within the States. As instrumentalities for the execution of the powers of the general government, they are, as already said, exempt from such control of the States as would defeat or impair their use for those purposes; and if, to their more effective use, a cession of legislative authority and political jurisdiction by the State would be desirable, we do not perceive any objection to its grant by the Legislature of the State. Such cession is really as much for the benefit of the State as it is for the benefit of the United States."

The United States v. Worrall, 32 U.S. 384 (1798):

"Whenever a government has been established, I have always supposed, that a power to preserve itself, was a necessary, and an inseparable, concomitant. But the existence of the Federal government would be precarious, it could no longer be called an independent government, if, for the punishment of offences of this nature [bribery of a tax collector], tending to obstruct and pervert the administration of its affairs, an appeal must be made to the State tribunals, or the offenders must escape with absolute impunity. The power to punish misdemeanors, is originally and strictly a common law power; of which, I think, the United States are constitutionally possessed. It might have been exercised by Congress in the form of a Legislative act; but, it may, also, in my opinion be enforced in a course of Judicial proceeding. Whenever an offence aims at the subversion of any Federal institution, or at the corruption of its public officers, it is an offence against the well-being of the United States; from its very nature, it is cognizable under their authority; and, consequently, it is within the jurisdiction of this Court, by virtue of the 11th section of the Judicial act. [2 U.S. 384, 396]   The Court being divided in opinion, it became a doubt, whether sentence could be pronounced upon the defendant; and a wish was expressed by the Judges and the Attorney of the District, that the case might be put into such a form, as would admit of obtaining the ultimate decision of the Supreme Court, upon

34

the important principle of the discussion: But the counsel for the prisoner did not think themselves authorised to enter into a compromise of that nature. The Court, after a short consultation, and declaring, that the sentence was mitigated in consideration of the defendant's circumstances, proceeded to adjudge,

"That the defendant be imprisoned for three months; that he pay a fine of 200 dollars; and that he stand committed, 'till this sentence be complied with, and the costs of prosecution paid."

[The United States v. Worrall, 32 U.S. 384 (1798)]

Utah Power and Light v. United States, 243 U.S. 389 (1917)

The first position taken by the defendants is that their claims must be tested by the laws of the state in which the lands are situate rather than by the legislation of Congress, and in support of this position they say that lands of the United States within a state, when not used or needed for a fort or other governmental purpose of the [243 U.S. 389, 404]   United States, are subject to the jurisdiction, powers, and laws of the state in the same way and to the same extent as are similar lands of others. To this we cannot assent. Not only does the Constitution (art. 4, 3, cl. 2) commit to Congress the power 'to dispose of and make all needful rules and regulations respecting' the lands of the United States, but the settled course of legislation, congressional and state, and repeated decisions of this court, have gone upon the theory that the power of Congress is exclusive, and that only through its exercise in some form can rights in lands belonging to the United States be acquired. True, for many purposes a state has civil and criminal jurisdiction over lands within its limits belonging to the United States, but this jurisdiction does not extend to any matter that is not consistent with full power in the United States to protect its lands, to control their use, and to prescribe in what manner others may require rights in them. Thus, while the state may punish public offenses, such as murder or larceny, committed on such lands, and may tax private property, such as live stock, located thereon, it may not tax the lands themselves, or invest others with any right whatever in them. United States v. McBratney, 104 U.S. 621, 624 , 26 S. L. ed. 869, 870; Van Brocklin v. Tennessee (Van Brocklin v. Anderson) 117 U.S. 151, 168 , 2 S.. L. ed. 845, 851, 6 Sup. Ct. Rep. 670; Wisconsin C. R. Co. v. Price County, 133 U.S. 496, 504 , 33 S. L. ed. 687, 690, 10 Sup. Ct. Rep. 341. From the earliest times Congress by its legislation, applicable alike in the states and territories, has regulated in many particulars the use by others of the lands of the United States, has prohibited and made punishable various acts calculated to be injurious to them or to prevent their use in the way intended, and has provided for and controlled the acquisition of rights of way over them

35

for highways, railroads, canals, ditches, telegraph lines, and the like. The states and the public have almost uniformly accepted this legislation as controlling, and in the instances where it has been questioned in this court its validity has been upheld and [243 U.S. 389, 405]   its supremacy over state enactments sustained. Wilcox v. Jackson, 13 Pet. 498, 516, 10 L. ed. 264, 273; Jourdan v. Barrett, 4 How. 169, 185, 11 L. ed. 924, 931; Gibson v. Chouteau, 13 Wall. 92, 99, 20 L. ed. 534, 536; Camfield v. United States, 167 U.S. 518 , 42 L. ed. 260, 17 Sup. Ct. Rep. 864; Light v. United States, 220 U.S. 523, 536 , 537 S., 55 L. ed. 570, 574, 31 Sup. Ct. Rep. 485. And so we are of opinion that the inclusion within a state of lands of the United States does not take from Congress the power to control their occupancy and use, to protect them from trespass and injury, and to prescribe the conditions upon which others may obtain rights in them, even though this may involve the exercise in some measure of what commonly is known as the police power. 'A different rule,' as was said in Camfield v. United States, 167 U.S. 518 , 42 L. ed. 260, 17 Sup. Ct. Rep. 864, 'would place the public domain of the United States completely at the mercy of state legislation.'


It results that state laws, including those relating to the exercise of the power of eminent domain, have no bearing upon a controversy such as is here presented, save as they may have been adopted or made applicable by Congress.


[Utah Power and Light v. United States, 243 U.S. 389 (1917) ]


Rasul v. Bush, 542 U.S. 466 (2004)


The Court is correct, in my view, to conclude that federal courts have jurisdiction to consider challenges to the legality of the detention of foreign nationals held at the Guantanamo Bay Naval Base in Cuba. While I reach the same conclusion, my analysis follows a different course. JUSTICE SCALIA exposes the weakness in the Court's conclusion that Braden v. 30th Judicial Circuit Court of Ky., 410 U.S. 484 (1973), "overruled the statutory predicate to Eisentrager's holding," ante at ___. As he explains, the Court's approach is not a plausible reading of Braden or Johnson v. Eisentrager, 339 U.S. 763 (1950). In my view, the correct course is to follow the framework of Eisentrager.


Eisentrager considered the scope of the right to petition for a writ of habeas corpus against the backdrop of the constitutional command of the separation of powers. The issue before the Court was whether the Judiciary could exercise jurisdiction over the claims of German prisoners

36

held in the Landsberg prison in Germany following the cessation of hostilities in Europe. The Court concluded the petition could not be entertained. The petition was not within the proper realm of the judicial power. It concerned matters within the exclusive province of the Executive, or the Executive and Congress, to determine.

The Court began by noting the "ascending scale of rights" that courts have recognized for individuals depending on their connection to the United States. Id. at 770. Citizenship provides a longstanding basis for jurisdiction, the Court noted, and among aliens physical presence within the United States also "gave the Judiciary power to act." Id. at 769, 771. This contrasted with the "essential pattern for seasonable Executive constraint of enemy aliens." Id. at 773. The place of the detention was also important to the jurisdictional question, the Court noted. Physical presence in the United States "implied protection," id. at 777-778, whereas in Eisentrager "th[e] prisoners at no relevant time were within any territory over which the United States is sovereign," id. at 778. The Court next noted that the prisoners in Eisentrager "were actual enemies" of the United States, proven to be so at trial, and thus could not justify "a limited opening of our courts" to distinguish the "many [aliens] of friendly personal disposition to whom the status of enemy" was unproven. Id. at 778. Finally, the Court considered the extent to which jurisdiction would "hamper the war effort and bring aid and comfort to the enemy." Id. at 779. Because the prisoners in Eisentrager were proven enemy aliens found and detained outside the United States, and because the existence of jurisdiction would have had a clear harmful effect on the Nation's military affairs, the matter was appropriately left to the Executive Branch and there was no jurisdiction for the courts to hear the prisoner's claims.

The decision in Eisentrager indicates that there is a realm of political authority over military affairs where the judicial power may not enter. The existence of this realm acknowledges the power of the President as Commander in Chief, and the joint role of the President and the Congress, in the conduct of military affairs. A faithful application of Eisentrager, then, requires an initial inquiry into the general circumstances of the detention to determine whether the Court has the authority to entertain the petition and to grant relief after considering all of the facts presented. A necessary corollary of Eisentrager is that there are circumstances in which the courts maintain the power and the responsibility to protect persons from unlawful detention even where military affairs are implicated. See also Ex parte Milligan, 4 Wall. 2 (1866).

The facts here are distinguishable from those in Eisentrager in two critical ways, leading to the conclusion that a federal court may entertain the petitions. First, Guantanamo Bay is in every practical respect a United States territory, and it is one far removed from any hostilities. The opinion of the Court well explains the history of its possession by the United States. In a formal

37

sense, the United States leases the Bay; the 1903 lease agreement states that Cuba retains "ultimate sovereignty" over it. Lease of Lands for Coaling and Naval Stations, Feb. 23, 1903, U.S.-Cuba, Art. III, T.S. No. 418. At the same time, this lease is no ordinary lease. Its term is indefinite and at the discretion of the United States. What matters is the unchallenged and indefinite control that the United States has long exercised over Guantanamo Bay. From a practical perspective, the indefinite lease of Guantanamo Bay has produced a place that belongs to the United States, extending the "implied protection" of the United States to it. Eisentrager, supra, at 777-778.

The second critical set of facts is that the detainees at Guantanamo Bay are being held indefinitely, and without benefit of any legal proceeding to determine their status. In Eisentrager, the prisoners were tried and convicted by a military commission of violating the laws of war and were sentenced to prison terms. Having already been subject to procedures establishing their status, they could not justify "a limited opening of our courts" to show that they were "of friendly personal disposition" and not enemy aliens. 339 U.S. at 778. Indefinite detention without trial or other proceeding presents altogether different considerations. It allows friends and foes alike to remain in detention. It suggests a weaker case of military necessity and much greater alignment with the traditional function of habeas corpus. Perhaps, where detainees are taken from a zone of hostilities, detention without proceedings or trial would be justified by military necessity for a matter of weeks; but as the period of detention stretches from months to years, the case for continued detention to meet military exigencies becomes weaker.

In light of the status of Guantanamo Bay and the indefinite pretrial detention of the detainees, I would hold that federal court jurisdiction is permitted in these cases. This approach would avoid creating automatic statutory authority to adjudicate the claims of persons located outside the United States, and remains true to the reasoning of Eisentrager. For these reasons, I concur in the judgment of the Court.

[Rasul v. Bush, 542 U.S. 466 (2004)]

Teledyne, Inc. v. Kone Corp., 892 F.2d 1404, C.A.9 (Cal.)  (1989)

Unlike state courts, the lower federal courts are courts of limited jurisdiction. "It remains rudimentary law that 'as regards all courts of the United States inferior to [the Supreme Court]

38

two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it····' " Finley, 109 S.Ct. at 2006 (quoting The Mayor v. Cooper, 6 Wall. 247, 252, 18 L.Ed. 851 (1868)).

[Teledyne, Inc. v. Kone Corp., 892 F.2d 1404, C.A.9 (Cal.)  (1989)]

Jones v. Mayer, 392 U.S. 409 (1968):  An "act of Congress" that has national scope and operates inside the states

"As its text reveals, the Thirteenth Amendment "is not a mere prohibition of State laws establishing or upholding slavery, but an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." Civil Rights Cases, 109 U.S. 3, 20 . It has never been doubted, therefore, "that the power vested in Congress to enforce the article by appropriate legislation," ibid., includes the power to enact laws "direct and primary, operating upon the acts of individuals, whether sanctioned by State legislation or not." Id., at 23. 74

"Thus, the fact that 1982 operates upon the unofficial acts of private individuals, whether or not sanctioned by state law, presents no constitutional problem. If Congress has power under the Thirteenth Amendment to eradicate conditions that prevent Negroes from buying and renting property because of their race or color, then no federal statute calculated to achieve that objective [392 U.S. 409, 439]  can be thought to exceed the constitutional power of Congress simply because it reaches beyond state action to regulate the conduct of private individuals. The constitutional question in this case, therefore, comes to this: Does the authority of Congress to enforce the Thirteenth Amendment "by appropriate legislation" include the power to eliminate all racial barriers to the acquisition of real and personal property? We think the answer to that question is plainly yes.

"By its own unaided force and effect," the Thirteenth Amendment "abolished slavery, and established universal freedom." Civil Rights Cases, 109 U.S. 3, 20 . Whether or not the Amendment itself did any more than that - a question not involved in this case - it is at least clear that the Enabling Clause of that Amendment empowered Congress to do much more. For that clause clothed "Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States." Ibid. (Emphasis added.)

39

Those who opposed passage of the Civil Rights Act of 1866 argued in effect that the Thirteenth Amendment merely authorized Congress to dissolve the legal bond by which the Negro slave was held to his master. 75 Yet many had earlier opposed the Thirteenth Amendment on the very ground that it would give Congress virtually unlimited power to enact laws for the protection of Negroes in every State. 76 And the majority leaders in Congress - who were, after all, the authors of the Thirteenth Amendment - had no doubt that its Enabling Clause contemplated the sort of positive legislation that [392 U.S. 409, 440]   was embodied in the 1866 Civil Rights Act. Their chief spokesman, Senator Trumbull of Illinois, the Chairman of the Judiciary Committee, had brought the Thirteenth Amendment to the floor of the Senate in 1864. In defending the constitutionality of the 1866 Act, he argued that, if the narrower construction of the Enabling Clause were correct, then

"the trumpet of freedom that we have been blowing throughout the land has given an `uncertain sound,' and the promised freedom is a delusion. Such was not the intention of Congress, which proposed the constitutional amendment, nor is such the fair meaning of the amendment itself. . . . I have no doubt that under this provision . . . we may destroy all these discriminations in civil rights against the black man; and if we cannot, our constitutional amendment amounts to nothing. It was for that purpose that the second clause of that amendment was adopted, which says that Congress shall have authority, by appropriate legislation, to carry into effect the article prohibiting slavery. Who is to decide what that appropriate legislation is to be? The Congress of the United States; and it is for Congress to adopt such appropriate legislation as it may think proper, so that it be a means to accomplish the end." 77

"Surely Senator Trumbull was right. Surely Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation. Nor can we say that the determination Congress has made is an irrational [392 U.S. 409, 441]   one. For this Court recognized long ago that, whatever else they may have encompassed, the badges and incidents of slavery - its "burdens and disabilities" - included restraints upon "those fundamental rights which are the essence of civil freedom, namely, the same right . . . to inherit, purchase, lease, sell and convey property, as is enjoyed by white citizens." Civil Rights Cases, 109 U.S. 3, 22 . 78 Just as the Black Codes, enacted after the Civil [392 U.S. 409, 442]   War to restrict the free exercise of those rights, were substitutes for the slave system, so the exclusion of Negroes from white communities became a substitute for the Black Codes. And when racial discrimination herds men [392 U.S. 409, 443]   into ghettos and makes their ability to buy property turn on the

color of their skin, then it too is a relic of slavery.


"Negro citizens, North and South, who saw in the Thirteenth Amendment a promise of freedom - freedom to "go and come at pleasure" 79 and to "buy and sell when they please" 80 - would be left with "a mere paper guarantee" 81 if Congress were powerless to assure that a dollar in the hands of a Negro will purchase the same thing as a dollar in the hands of a white man. At the very least, the freedom that Congress is empowered to secure under the Thirteenth Amendment includes the freedom to buy whatever a white man can buy, the right to live wherever a white man can live. If Congress cannot say that being a free man means at least this much, then the Thirteenth Amendment made a promise the Nation cannot keep."


[Jones v. Mayer, 392 U.S. 409 (1968)]

I declare under penalty of perjury under the laws of the Republic where I temporarily occupy but do not maintain a "domicile" or "residence" and from without the "United States" defined in 28 U.S.C. §1603(c ) 26 U.S.C. §7408(d), and 26 U.S.C. §7701(a)(9) and (10) and only when litigated under the following conditions that the facts, exhibits, and statements made by in this and the attached pleading me are true, correct, and complete to the best of my knowledge and ability in accordance with 28 U.S.C §1746(1).

1. Jury trial in a court of a state of the Union and not a federal court.

2. Constitutional diversity of citizenship under U.S. Constitution Article III, Section 2 but NOT statutory diversity pursuant to 28 U.S.C. §1332(a)(2).

3. No jurist or judge may be a statutory "U.S. citizen" under 8 U.S.C. §1401, a "taxpayer" under 26 U.S.C. §7701(a)(14), or be in receipt of any federal financial or other privilege, benefit, or employment, nor maintain a domicile on federal territory in order to avoid violating 18 U.S.C. §597 and 28 U.S.C. §455. Such persons would NOT be my "peers", but my mortal socialist enemies.

4. The common law of the state of the Union and no federal law or act of Congress or the Internal Revenue Code are the rules of decision, as required Fed.R.Civ.P. Rule 17(b), 28 U.S.C. §1652, and Erie RR v. Tompkins, 304 U.S. 64 (1938).

5. Any judge who receives retirement or employment benefits derived from Subtitle A of the I.R.C. recuse himself in judging the law and defer to the jury to judge both the facts and the law, as required under
18 U.S.C. §208, 28 U.S.C. §144, and 28 U.S.C. §455.

6. All of the pleadings, exhibits, and statements made, including those about the law, are admitted into evidence and subject to examination by the jury and/or fact finder.

7. None of the pleadings in the case are sealed or unpublished so as to cover up government wrongdoing or otherwise obstruct justice.

8. The signator is not censored or restricted by the judge in what he can say to the jury during the trial.

9. Submitter is treated as a "foreign sovereign" under the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 through 1611.

10. Submitter is not treated as a "person" under 26 U.S.C. § 6671(b) or 26 U.S.C. §7343, which is defined as an officer of a corporation or partnership who has a fiduciary duty to the public as a "public officer".
See:http://sedm.org/Forms/MemLaw/WhyThiefOrEmployee.pdf
http://sedm.org/Forms/Affidavits/AffCorpDenial.pdf

11. Submitter is not treated as an "individual", which is defined in 5 U.S.C. § 552a(a)(2) as a "U.S. Citizen" under 8 U.S.C. §1401 or a permanent resident, who collectively are domiciliaries of the "United States", which is defined as the "District of Columbia" in 26 U.S.C. §7701(a)(9) and (a)(10) and is not extended elsewhere in the code to include states of the Union.

12. If the I.R.C. Subtitle A, which is private law, a "public right", a franchise, and a "statutory privilege" that only applies to those who consent explicitly or implicitly, is cited by the opponent against the Submitter, then the opponent must provide written proof of informed consent by the Submitter to the terms of the private law being cited. This is a fulfillment of the requirement that when jurisdiction is challenged, proof of jurisdiction must appear on the record. Otherwise, the private law must be removed from evidence of a liability or obligation. "Waivers of Constitutional rights not only must be voluntary, but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."
[Brady v. U.S., 397 U.S. 742 (1970)]

Non-acceptance of this affirmation or refusal to admit all evidence attached to this pleading into the record by the Court shall constitute evidence of duress upon the Submitter. This affirmation is an extension of my right to contract guaranteed under Article 1, Section 10of the United States
Constitution and may not be interfered with by any court of a State of the Union or of the United States

_November 9th, 2014_
Date Signed

_/s/ Christopher Robert_        Signature

04.019



**United States Department of the Interior**
**Bureau of Land Management**
Eastern States
7450 Boston Boulevard
Springfield, Virginia 22153
http://www.es.blm.gov
June 7, 2007



IN REPLY REFER TO:
1278 (954)
FOIA ES-2007-10

Certified Mail No. 7006 ████████1524

David ████

████████
Lebanon, Ohio ████

Dear Mr. ████

This is in response to your Freedom of Information Act (FOIA) request dated
March 10, 2007, received in our office on April 6, 2007. You have requested information on the
following items:

**1. I would like to acquire a documented list of property [i.e. federal territory] within the
boundaries of the state of Ohio (by address or geographic location) that has been ceded to
the federal government. Ideally this would be some documented list organized by location
of property, date when ceded, etc.**

Paula Langley, Land Records Specialist from our Milwaukee Field Office (MFO) provided the
search for responsive records. Based upon subsequent communiqués, it is understood that your
questions are centered on current Federal land holdings. As such, there are three informational
areas to address:

The MFO maintains an unofficial list of Federal properties for the 20 northeastern states,
including Ohio, used to identify federally owned lands in support of the Bureau's mineral leasing
function. This list is largely derived from the General Services Administration's (GSA) Federal
Real Property Profile (FRPP). The GSA has made a determination that the FRPP site specific
data is not available for release to the public. Therefore, we are withholding the materials
pursuant to exemption 5 of the FOIA (5 U.S.C. 552(b)(5)), which permits an agency to withhold
information pertaining to internal practices of an agency.

    a.    An excerpt of their justification reads as follows:

        *"GSA maintains that the information contained in the FRPP is highly
        sensitive and affects the ability of Federal agencies to provide a safe and
        secure environment for persons and property. In accordance with*

Exhibit 2A

*5 U.S.C. § 552(b)(2), which authorizes the withholding of information relating to the internal practices of an agency, GSA has determined the FRPP data to be "sensitive but unclassified... The Federal Real Property Report, summarizing the Government's real property assets, represents what we have determined to be publicly-releasable information. Any release of data beyond that which is otherwise available in these summary reports is a security concern to the Federal government." The FY 2005 and previous annual summary reports may be viewed at:  http://www.gsa.gov/realpropertyprofile.*

   b.   GeoCommunicator may aid you in your research:

        i.   Access http://www.geocommunicator.gov/NILS-PARCEL2/map.jsp on the world-wide web.  This site contains an interactive map of the United States.
        ii.   Click on the *Layers* tab in the area to the right of the national map.
        iii.   Under the folder labeled *"Base Map"*, click on the button labeled *Surface Managing Agency*.
        iv.   Zoom into the area for Ohio to see what Federal lands are identified.

   c.   The BLM is the steward of public domain (PD) lands.  Land title records under BLM custody center on land patents issued by the Federal government which divest the USA of PD land under the authority of a variety of laws, including the homestead acts (now repealed).  Any remnant of the original PD in the state of Ohio is withdrawn from entry and dedicated for use and management by the USDA Forest Service, the Department of Defense, or other Federal agency.  If you require additional information regarding withdrawn PD land, contact Ida Doup at (703) 440-1541.  Beyond this, BLM considers the USA to be divested of any interest in the original PD lands in Ohio.

**2.  Included in item 1, are there any federal territories [properties] that might have been sold to the federal government but have not gone through the official process to cede property completely within Ohio and federal law?**

The BLM does not maintain a list; the responsibility for compliance with the law and for record keeping resides with each individual agency.  Oversight is performed within agencies, at the department level, and by the Government Accountability Office (GAO).  Federal law, case law, Department of Justice guidelines and internal agency guidance direct each agency in their land acquisition and disposal activities; http://www.usdoj.gov/enrd/index.html.

In your e-mail dated May 11, 2007, you raised the question of jurisdiction, citing City of Cincinnati v. Jack Nussbaum.  The following excerpt describes the process whereby agencies may, optionally, file with the state to secure exclusive jurisdiction over acquired lands on behalf of the USA.  Whether an agency files for exclusive jurisdiction has no bearing on land title.

     http://www.oscn.net/applications/oscn/DeliverDocument.asp?CiteID=393575.
     *"Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been*

*Exhibit 2A*

*or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or accession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of such State or in such other manner as may be prescribed by the laws of the State where such lands are situated. Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted."*

**3. If no list is available, please forward copies of real-estate, treaty or other property records indicative of federal territory within the geographic boundaries of the state of Ohio.**

Each agency is responsible for maintaining its own land title records. The only property records maintained by the BLM are addressed in our above response to item #1.

**4. I would like to know—outside of military bases—if there is any habitable federal property [i.e. federal territory] within the boundaries of the state of Ohio. If there is, a documented list would be nice.**

GSA administers Title V of the McKinney-Vento Act, where suitable Federally-owned real property categorized as underutilized, unutilized, excess, or surplus may be made available to States, units of local government, and nonprofit organizations at no cost to provide housing to the homeless.

**5. What contact point (accessible to the public) maintains such records for various states of the Union?**

A download link on the web page captioned "GSA Provides the Best Real Estate Contacts" contains a link to a directory titled <u>The Real Estate and Workplace Contacts Directory</u>.

If you interpret this response to be a denial of your request, you may file an appeal by writing to:

> Freedom of Information Act Appeals Officer
> Office of the Chief Information Officer
> U.S. Department of the Interior
> 1849 C Street, NW
> MS-6556, MIB
> Washington, D.C.  20240
>
> (202) 208-5339

*Exhibit 2A*

4

Your appeal must be received no later than 30 workdays after the date of this letter. The appeal should be marked, both on the envelope and face of the appeal letter, with the legend "FREEDOM OF INFORMATION APPEAL." Your appeal letter must be received no later than 30 calendar days (excluding Saturdays, Sundays and legal holidays) from the date you receive this letter. The appeal should be accompanied by a copy of your original request and this letter, along with a brief explanation of why you believe this decision is in error.

Generally, the FOIA provides for the collection of fees for the processing of FOIA requests. These fees can cover research, duplication, and review costs. However, the Department of the Interior's FOIA regulations provides for the waiver of fees if they do not exceed a $30 threshold. Fees for your request **did** exceed the threshold. However, due to the fact that you were not made aware of these fees initially, they have been waived.

If you have any questions concerning your request, please contact Pam Mozina, FOIA Coordinator, at (703) 440-1561.

Sincerely,

/s/ Terry Lewis, Acting State Director

Michael D. Nedd
State Director

*Exhibit 2A*

## 500    180 FEDERAL SUPPLEMENT

watchman and as a messenger, earning $589.42 in 1951, $1,123.30 in 1952, $305.94 in 1953, and $347.26 in 1954.

The plaintiff contends that he became totally and permanently disabled within the meaning of the Social Security Act in 1946, when he suffered his initial heart attack; that he is entitled to have his wage record frozen from that time until March 23, 1957, the date of his fiftieth birthday; and to collect disability payments from July, 1957.

I disagree. The record discloses that, although the plaintiff suffered his first heart attack in 1946, he was able to return to work as a messenger and as a watchman during the years of 1951, 1952, 1953 and 1954. His record of earnings, which is attached to the record of the proceedings before the Social Security Administration at page 65, shows that he was employed in the last three quarters of 1951, the first three quarters of 1952, the first and last quarters of 1953, and the first two quarters of 1954. He has not been employed since then. It would appear, therefore, that his disability, if any, commenced in the third quarter of 1954. However, in a letter dated February 6, 1958, written to the plaintiff by Arthur E. Hess, Assistant Director of the Social Security Administration, a copy of which is attached to the record at pages 63 and 64, the date of the plaintiff's disability was fixed at September 30, 1952.

The first question to be determined is whether the plaintiff, either on September 30, 1952 or on June 30, 1954, had met the earnings requirements of twenty quarters of coverage in the forty calendar quarters ending with the quarter in which the disability began, and whether he acquired not less than six quarters of this coverage in the last thirteen quarters of the same period, as required by the Social Security Act, Title 42 U.S.C.A. § 416(i) (2), (3) and (4). On neither of these dates did he meet the earnings requirements. As of September 30, 1952, he had sixteen quarters of coverage in the preceding forty calendar quarters, and six quarters of coverage in the preceding thirteen calendar quarters. As of June

30, 1954, he had sixteen quarters of coverage in the preceding forty calendar quarters and ten quarters of coverage in the preceding thirteen calendar quarters.

[1, 2] The Social Security Administration has found that the plaintiff has not met the earnings requirements, and there is substantial evidence to support that finding. The decision of the Secretary denying the disability benefits is, therefore, conclusive on this Court, pursuant to the provisions of Section 405(g) of Title 42.

The plaintiff's motion for summary judgment is denied and the defendant's motion is granted.

Settle order on notice.



---

Max EISENBERG, Plaintiff,

v.

COMMERCIAL UNION ASSURANCE
COMPANY Limited North British
Group, Defendant.

United States District Court
S. D. New York.

Dec. 19, 1960.

Diversity action by citizen of New York against British corporation. Corporation moved to dismiss for lack of diversity. The District Court, Dimock, J., held that where corporation was in business of British corporation was in London, England, there was sufficient diversity of citizenship between plaintiff and defendant. Plaintiff is a citizen of New York. Defendant has a British corporation with its principal place of business in London. Defendant has many places of business in the United States but its principal one in the United States is in New York.

Motion denied.

---

## EISENBERG v. COMMERCIAL UNION ASSURANCE COMPANY    501
Cite as 189 F.Supp. 500 (1960)

The question presented involves the interpretation of section 1332 of title 28 U.S.Code, as amended in 1958, which reads as follows:

**"§ 1332.   Diversity of citizenship;
amount in controversy;
costs**

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

"(1) citizens of different States;

"(2) citizens of a State, and foreign states or citizens or subjects thereof; and

"(3) citizens of different States and in which foreign states or citizens or subjects thereof are additional parties.

"(b) Except when express provision therefor is otherwise made in a statute of the United States, where the plaintiff who files the case originally in the Federal courts is finally adjudged to be entitled to recover less than the sum or value of $10,000, computed without regard to any setoff or counterclaim to which the defendant may be adjudged to be entitled, and exclusive of interest and costs, the district court may deny costs to the plaintiff and, in addition, may impose costs on the plaintiff.

"(c) For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business.

"(d) The word 'States', as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico."

Defendant's position is that it has its principal place of business in the State of New York and that therefore, under the express terms of subdivision (c), it is to be deemed a citizen of New York and

### 1. Courts ⊃321

Under statute giving District Court jurisdiction based on diversity of citizenship, unless a corporation is incorporated by a state of the United States, it will not be deemed a citizen of the state where it has its principal place of business. 28 U.S.C.A. § 1332(c).

### 2. Courts ⊃321

Where principal place of business of British corporation was in London, England, there was sufficient diversity of citizenship between corporation and citizen of New York to give the District Court jurisdiction, although corporation's principal place of business within the United States was in New York. 28 U.S.C.A. § 1332(c).

### 3. Courts ⊃314

Although purpose of amendment which made a corporation a citizen of state where it had its principal place of business as well as state where it was incorporated, for purpose of diversity jurisdiction, was to reduce number of cases which would come to federal courts under diversity jurisdiction, it was not the purpose of the amendment to abandon the protection from local prejudice against outsiders as the reason for diversity jurisdiction. 28 U.S.C.A. § 1332 (c).

Karp, Scholer, Fierman, Hays & Handler, New York City, for plaintiff; Joseph J. Moscon, New York City, of counsel.

Edward F. Sweeney, New York City, for defendant.

DIMOCK, District Judge.

Defendant moves for dismissal of this action on the ground that there is no diversity of citizenship between plaintiff and defendant. Plaintiff is a citizen of New York. Defendant is a British corporation with its principal place of business in London. Defendant has many places of business in the United States but its principal one in the United States is in New York.

EXHIBIT 1020

502   180 FEDERAL SUPPLEMENT

there is no diversity of citizenship between it and plaintiff New York citizen.

[1] It is to be noted that the statute differentiates between States of the United States and foreign States by the use of a capital S for the word when applied to a State of the United States. Subdivision (c), therefore, in dealing with the *place of incorporation,* refers only to a corporation incorporated in a State of the United States. When subdivision (c) goes on to deal with *principal place of business,* it refers to the same corporation and thus only to a corporation incorporated in a State of the United States. The subdivision is not susceptible of the construction as if it read "all corporations shall be deemed citizens of the States by which they have been incorporated and of the States where they have their principal places of business." Unless a corporation is incorporated by a State of the United States it will not be deemed a citizen of the State where it has its principal place of business.

[2] If I am wrong about this and that a corporation incorporated by a foreign state is to be deemed a citizen of the State where it has its principal place of business, defendant is in no better case on this motion. Defendant would have me read its place of business in New York; it is in London. Defendant could not have me read subdivision (c) as if words were added to it so as to make it read "of the State where it has its principal place of business" *within the United States.*

[3] I do not believe that the statute ought to be read otherwise than literally. It is true that the purpose of the amendment which made a corporation a citizen of the State where (i) had its principal place of business as well as of the State where it was incorporated was to reduce the number of cases which would come to the Federal courts under the diversity jurisdiction. Hughes v. United Engineers & Constructors, Inc., D.C.S.D.N.Y., 178 F.Supp. 895. Even if, however, the amendment carried out this purpose by taking away from foreign States, corporations whose principal place of business was within the State as well as all State corporations whose principal place of business was within the State, the right of removal of a case brought by a resident of this State, it was not the purpose of the amendment to abandon the protection from local prejudice against outsiders as the reason for diversity jurisdiction. It is a fair inference that a corporation which has located its principal place of business in a State has adopted that State as its actual residence and will not be subject to prejudice against outsiders. If a British corporation has located its principal place of business outside of the United States, however, and has set up two branches in the United States, one in Chicago and one in New York, and the one in New York is merely its principal place of business in the United States, no inference as to the residence is legitimately drawn from those facts that it has adopted New York as its actual residence. Its contact with New York may be so slight that it is still an outsider there. On the other hand, if a Bahamian corporation, for example, has located its principal place of business in New York, the inference is legitimate that it has adopted New York as its actual residence and that it is no longer entitled to be considered an outsider and to deserve the protection accorded outsiders.

Diversity of citizenship exists in this case and defendant cannot refuse the protection of federal jurisdiction that plaintiff thrusts upon it.

Motion denied.

So ordered.

---

## LEWIS v. MEARS
Cite as 180 F.Supp. 502 (1960)

John L. LEWIS, Henry G. Schmidt and Josephine Roche, as Trustees of the United Mine Workers of America Welfare and Retirement Fund, Plaintiffs,

v.

Edward MEARS, individually and trading as Mears Coal Company, Defendant.

Civ. A. No. 12388.

United States District Court
W.D. Pennsylvania.

Nov. 23, 1960.

As Amended Dec. 5, 1960.

Action by trustees of mine workers' welfare and retirement fund to recover payments allegedly due from mine operator pursuant to contract allegedly entered into by operator and mine workers' union. The case was submitted to the jury on two interrogatories. Verdict was rendered and an order was filed denying plaintiffs' motion for directed verdict and entering judgment in favor of defendant in accordance with the answers to the interrogatories. Plaintiffs filed motion to reopen judgment and for directed verdict in favor of the plaintiffs and a motion for a new trial. The District Court, Rabe F. Marsh, Jr., J., held that admission of operator's testimony that no contract existed in that union officer who procured operator's signature to contract had agreed that contract would not become effective until operator received a copy signed by mine workers' union and that operator had never received such copy was not in violation of the parol evidence rule.

Motions denied.

1. Evidence ⊜439
In action by trustees of mine workers' welfare and retirement fund to recover payments allegedly due from mine operator pursuant to contract allegedly entered into by operator and allegedly union, admission of operator's testimony that no contract existed in that union officer who procured operator's signature to contract had agreed that contract would not become effective until operator received a copy signed by miners' union and that operator had never received such copy was not in violation of the parol evidence rule; but testimony was admissible to show that no contract existed inasmuch as the condition precedent to the formation of the contract had never occurred.

2. Evidence ⊜397(2)
The "parol evidence rule" provides generally that whenever any contract is contained in writing which appears to be complete and regular on its face, it is the sole evidence of the agreement and cannot be varied, altered, or contradicted by parol except in certain circumstances.
See publication Words and Phrases for other judicial constructions and definitions of "Parol Evidence Rule".

3. Evidence ⊜397(1)
It is fundamental that with respect to the application of the parol evidence rule to contracts there must first be a contract.

4. Estoppel ⊜119
Labor Relations ⊜777
In action by trustees of mine workers' welfare and retirement fund to recover payments allegedly due from mine operators pursuant to contract allegedly entered into by operator and mine workers' union, the evidence, including evidence relating to operator's acceptance of fund hospitalization benefits, to operator's payment of royalties in accordance with contract, to operator's having checked off union dues consistent with contract, and to operator's failure to disavow contract, and to operator's failure to notify trustees of his intention to terminate contract and discontinue payments, created such doubt on contract and operator's estoppel to maintain that contract never legally existed as would preclude binding instructions or any ruling in favor of plaintiffs as a matter of law. Fed.Rules Civ.Proc. rule 49(c), 28 U.S.C.A.

5. Estoppel ⊜119
Labor Relations ⊜777
In action by trustees of mine workers' welfare and retirement fund to re-

503

EXHIBIT 9

# DISTRICT OF COLUMBIA AN U.S. TERRITORIES POSSESSIONS COMMONWEALTHS AND STATES IN FREE ASSOCIATION

SIXTY-THIRD CONGRESS   SESS 1   1913   CH. 16.   1913        PAGE 177        SECTION TWO

★H.   That the word "State" or "United States" when used in this section shall be construed to include( to mean) any Territory, Alaska, the District of Columbia, Puerto Rico, and the Philippine Islands, when construction is necessary to carry out its provisions.

ACT OF CONGRESS     OCTOBER 3, 1913     SIXTEENTH     AMENDMENT

1.  District of Columbia
2.  American Samoa
3.  Guam
4.  Commonwealth of Puerto Rico
5.  Virgin Islands
6.  Midway Island
7.  Wake Island
8.  Commonwealth of the Northern Marianas
9.  Republic of Palau, Federated States of Micronesia (Independent)
10. Johnston Island
11. Baker, Howland and Jarvis Islands
12. Kingman Reef and Palmyra Island
13. Navassa Island

Locator map for all possessions, including unincorporated territories.

IMPORTANT: See current Quarterly Cumulative Supplement for changes.



Various Constitutional amendments such as the 16th concerning the federal income tax do **NOT** apply to the 50 FREE & INDEPENDENT States of America; rather only to the exclusive federal areas specified by Congress (see above), because such power jurisdiction is as foreign to the 50 States as they are to each other by Law.  Read-NY. Re: MERRIAM 36 NE 505. 141 NY 479, Affirmed 16 SCt. 1973, 41 Led 287. This law has not been changed.

# POLITICAL JURISDICTION
Last revised: 6/24/2014



# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................2
LIST OF TABLES....................................................................................................................2
TABLE OF AUTHORITIES ....................................................................................................2
1    Introduction and definition .........................................................................................10
2    Authorities on "political questions" ...........................................................................10
3    Choice of "Citizenship" is a strictly political question ...........................................11
4    Choice of "Domicile" is a strictly political question................................................12
5    Civil and Political statuses ...........................................................................................13
6    Political Rights derive from the coincidence of "nationality" and "domicile".........14
7    Statutory citizenship and domicile compared ...........................................................16
8    The Foreign Sovereign Immunities Act Protects State Citizens from Changes in their
     Domicile and Citizenship by the Courts..................................................................19
9    Effect of Religious Beliefs on Domicile and Citizenship .........................................21
10   Anyone may change their citizenship or domicile and no Court may interfere with that
     political choice ...........................................................................................................22
11   Federal District, Circuit, and Tax Courts are Part of the Executive Branch instead of the
     Judicial Branch and therefore can only render political opinions and not orders .................24
     11.1   Introduction.......................................................................................................... 24
     11.2   District Court:  Article IV ...................................................................................... 26
     11.3   Tax Court: Freytag v. Commissioner, 501 U.S. 868 (1991) ................................... 27
     11.4   Courts hearing income tax matters are acting in an "administrative" and not "judicial" capacity as part of the
            Executive and not Judicial Branch ........................................................................ 31
12   How Courts Unconstitutionally Operate in  Political Rather than Legal Capacity, and in
     violation of the Separation of Powers .....................................................................41
     12.1   Judges who advantage the government by OMITTING to rule on issues before them or by substituting
            PRESUMPTIONS for evidence are acting in a POLITICAL capacity rather than LEGAL capacity ................ 41
     12.2   Judges interfering with choice of domicile or citizenship are terrorists, according to the Federal Regulations ... 44
     12.3   Presumptions about the status of the parties ........................................................ 46
     12.4   Abusing the word "frivolous".............................................................................. 47
     12.5   Adding things to the statutory meaning of words ................................................ 48
     12.6   Citing or enforcing irrelevant case law or statutes in civil cases relating to parties with a foreign domicile ....... 49
     12.7   Refusal of franchise courts to dismiss cases involving those who are not franchisees ...................................... 51
13   Questions that Readers, Grand Jurors, and Petit Jurors Should be Asking the
     Government ................................................................................................................53

# LIST OF TABLES

Table 1: Civil and political status........................................................................... 13
Table 2: Effect of domicile on citizenship status ................................................. 18
Table 3: Comparison of CONSTITUTIONAL court with LEGISLATIVE FRANCHISE court........................................... 42

# TABLE OF AUTHORITIES

## Constitutional Provisions

Annotated Constitution, Year 2002, p. 640 ................................................................ 35
Art. I, 8 ..................................................................................................................... 11
Art. I, Sec, 10 ........................................................................................................... 44
Art. III ...................................................................................................................... 52
Article 1 ........................................................................................................... 27, 39, 51
Article 1, Section 8, Clause 1 ............................................................................ 29, 33, 38
Article 1, Section. 10 ............................................................................................... 44
Article 4, Section 3, Clause 2 .................................................................................. 52
Article I .................................................................................................................... 35
Article II, § 2 ..................................................................................................... 27, 29
Article III ..................................................................... 26, 27, 29, 31, 34, 35, 38, 39
Article III, Section 2 ................................................................................................ 21
Article IV ........................................................................................... 25, 26, 27, 38
Bill of Rights ........................................................................................................... 35
California Constitution, Article II, Section 2 ..................................................... 14, 56
Constitution, Article 1, Section 8, Clause 1 ............................................................. 33
Constitution's Equal Protection Clause .................................................................... 14
Declaration of Independence ...................................................................... 16, 24, 55
Federalist Paper #51, James Madison ...................................................................... 46
Federalist Paper No. 79 ............................................................................................ 40
Federalist Papers ...................................................................................................... 40
First Amendment .............................................................. 16, 17, 21, 30, 50, 55, 57, 58
Thirteenth Amendment ................................................................................. 47, 52, 59
U.S. Const. Art. 4, Section 4 .................................................................................... 32
U.S. Constitution Article III ............................................................................... 31, 35
U.S.C.A. Const. art. 3, sec. 2 ................................................................................... 27
U.S.Const. Art. I, Sect 9, Cl. 3 ................................................................................ 44
United States Constitution ................................................................................. 27, 40

## Statutes

1 U.S.C. §204 .................................................................................................... 30, 48
15 U.S.C.A. s 89 ...................................................................................................... 38
18 U.S.C. §1201 ...................................................................................................... 59
18 U.S.C. §1324b ..................................................................................................... 12
18 U.S.C. §597 ........................................................................................................ 46
18 U.S.C. §912 ................................................................................................... 43, 52
26 U.S.C. §§6901 and 6903 ..................................................................................... 28
26 U.S.C. §§7701(a)(9) and (a)(10), 7701(a)(39), and 7408(d) ............................... 18
26 U.S.C. §1100 (1952 ed.) ..................................................................................... 28
26 U.S.C. §7408(d) .................................................................................................. 18
26 U.S.C. §7441 ................................................................................................. 39, 51
26 U.S.C. §7443(f) ................................................................................................... 28
26 U.S.C. §7701(a)(14) ................................................................................. 29, 35, 51
26 U.S.C. §7701(a)(39) ....................................................................................... 18, 32
26 U.S.C. §7701(a)(9) and (a)(10) .......................................................................... 58
28 U.S.C. § 2201 ..................................................................................................... 43
28 U.S.C. §1201 ...................................................................................................... 21
28 U.S.C. §1332 ...................................................................................................... 21
28 U.S.C. §1603 ...................................................................................................... 20
28 U.S.C. §1604 ...................................................................................................... 19
28 U.S.C. §1605 ...................................................................................................... 21
28 U.S.C. §1608(a) .................................................................................................. 19
28 U.S.C. §1608(b) .................................................................................................. 19
28 U.S.C. §171 ........................................................................................................ 26
28 U.S.C. §2201(a) .................................................................................................. 43
28 U.S.C. §911 ........................................................................................................ 21

28 U.S.C.A. §1344 ........................................................................................................................ 27
4 U.S.C. §110(d) ..................................................................................................................... 18, 20
42 U.S.C. §1983 ........................................................................................................................... 25
42 U.S.C. Chapt. 21B .................................................................................................................. 30
5 U.S.C. §2105 ............................................................................................................................. 32
5 U.S.C. §552a(a)(2) ................................................................................................................... 13
8 U.S.C. §1101(a)(22) ................................................................................................................. 13
8 U.S.C. §1101(a)(21) ...................................................................................... 13, 16, 17, 18, 20, 55
8 U.S.C. §1101(a)(22)(B) ............................................................................................... 17, 18, 55
8 U.S.C. §1101(a)(3) ................................................................................................................... 13
8 U.S.C. §1401 ..................................................................................... 16, 18, 19, 21, 33, 47
Anti-Injunction Act, 26 U.S.C. §7421 .................................................................... 32, 35, 38, 39
California Civil Code, Section 22.2 ............................................................................................. 26
California Election Code § 349 ............................................................................................ 14, 56
Declaratory Judgments Act, 28 U.S.C. §2201(a) ...................................... 35, 36, 38, 39, 53
District of Columbia Act of 1871, 16 Stat. 419, 426, Sec. 34 .................................................. 18
Foreign Sovereign Immunities Act (FSIA) ............................................................................... 21
Foreign Sovereign Immunities Act, 28 U.S.C. §1602 ............................................................... 19
Foreign Sovereign Immunities Act, 28 U.S.C. §1605 ............................................................... 49
I.R.C. Subtitle A ......................................................................................................... 33, 39, 48
I.R.C. Subtitles A and C ............................................................................................... 32, 37
Internal Revenue Code ........................................................................................ 28, 36, 47, 51
Pub. L. 97–164 ............................................................................................................................. 26
Religious Freedom Restoration Act, 42 U.S.C. Chapter 21B .................................................... 30
Revenue Act of 1926, c. 27, 44 Stat., pt. 2, p. 109 (26 USCA ss 1224-1227) ......................... 39
Rules of Decision Act, 28 U.S.C. §1652 .................................................................................... 25
Title 28 of the United States Code .............................................................................................. 26
Title 5 of the U.S. Code ............................................................................................................... 35
U.C.C. §1-308 ............................................................................................................................... 40

## Regulations

26 C.F.R. §1.1-1(a)(2)(ii) ........................................................................................................... 19
26 C.F.R. §1.1441-1(c)(3) ........................................................................................................... 19
28 C.F.R. §0.85 ............................................................................................................................ 44

## Rules

Federal Rule of Civil Procedure 17(b) ................................................................................. 17, 49
Federal Rule of Civil Procedure 8(b)(6) ..................................................................................... 53
Federal Rule of Criminal Procedure 43 ...................................................................................... 40
Federal Rule of Evidence 610 ..................................................................................................... 46
Hearsay Rule, Federal Rule of Evidence 802 ............................................................................. 46
Tax Court Rule 13(a) ............................................................................................................ 38, 51

## Cases

Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n, 430 U.S. 442, 450, n. 7, 97 S.Ct. 1261, 1266, n. 7, 51 L.Ed.2d. 464 (1977) .................................................................................................................. 52
Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n, 430 U.S., at 455, n. 13, 97 S.Ct., at 1269, n. 13 ... 52
Baker v. Carr, 369 U.S. 186 (1962) ................................................................................. 10, 11, 57
Baker v. Carr, 369 U.S. 186, 208-210, 82 S.Ct. 691, 705-706, 7 L.Ed.2d. 663 ...................... 10
Balzac v. Porto Rico, 258 U.S. 298 at 312, 42 S.Ct. 343, 66 L.Ed. 627 (1922) ...................... 27

Beagle v. Motor Vehicle Acc. Indemnification Corp., 44 Misc.2d. 636, 254 N.Y.S.2d. 763, 765 ..................... 53
Beebe v. Robinson, 52 Ala. 66 ............................................................................................................................ 15
Bishop v. U.S., D.C.Tex., 334 F.Supp. 415, 418............................................................................................... 25
Boyd v. State of Nebraska, 143 U.S. 135 (1892)........................................................................................ 15, 24
Brady v. U.S., 397 U.S. at 749, 90 S.Ct. 1463 at 1469 (1970)......................................................................... 37
Broadrick v. Oklahoma, 413 U.S. 601, 616 -617 (1973)................................................................................... 57
Buckley v. Valeo, 424 U.S., at 122, 96 S.Ct., at 683........................................................................................ 52
Budd v. People of State of New York, 143 U.S. 517 (1892).............................................................................. 31
Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d. 321, 325 .................................................................................... 36
Butterworth v. U.S., 112 U.S. 50, 60, 5 S.Ct. 25, 28 L.Ed. 656 ...................................................................... 38
Calder v. Jones, 465 U.S. 783, 789-90 (1984)................................................................................................. 50
Chae Chan Ping v. U.S., 130 U.S. 581 (1889) ................................................................................................. 23
Charles C. Steward Machine Co. v. Davis, 301 U.S. 548 (1937)..................................................................... 26
Civil Service Comm'n v. Letter Carriers, 413 U.S. 548, 556 (1973)................................................................ 57
Clearfield Trust Co. v. United States, 318 U.S. 363, 369 (1943) ..................................................................... 50
Cochrane v. McCleary, 22 Iowa 75 ................................................................................................................... 15
Cohens v. Virginia, 6 Wheat, 264 (1821) .......................................................................................................... 43
Colautti v. Franklin, 439 U.S. 379, 392, and n. 10 (1979) ............................................................................... 36
Colautti v. Franklin, 439 U.S. at 392-393, n. 10 ........................................................................................ 36, 48
Coleman v. Miller, 307 U.S. 433, 452 -454 (1939)........................................................................................... 11
Connick v. Myers, 461 U.S. 138, 147 (1983).................................................................................................... 57
Cooke v. United States, 91 U.S. 389, 398 (1875)............................................................................................. 50
Couper v. Smyth (N. D. Ga.) 84 Fed. 757 ......................................................................................................... 15
Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) .............................................................. 52
Crowell v. Benson, supra, 285 U.S., at 50-51, 52 S.Ct., at 292........................................................................ 52
Dayton v. Czechoslovak Socialist Republic, 834 F.2d. 203 (D.C. Cir. 1987).................................................. 20
Delany v. Moralitis, C.C.A.Md., 136 F.2d. 129, 130 ....................................................................................... 53
Delehanty v. Warner, 75 Ill. 185 ....................................................................................................................... 15
Democratic Party of U.S. v. Wisconsin, ex re. LaFollette, 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d. 82 (1981)............... 10
Dobson v. Commissioner, 320 U.S. 489, 495-501 (1943)................................................................................. 28
Economy Plumbing & Heating v. U.S., 470 F.2d. 585 (1972) .................................................................... 35, 51
Edlow Int'l Co. v. Nuklearna Elektrarna Krsko, 441 F Supp. 827 (D.D.C. 1977) ........................................... 20
Everson v. Bd. of Ed., 330 U.S. 1, 15 (1947).................................................................................................... 30
Ex parte Bakelite Corporation, 279 U.S. 438, 449, 49 S.Ct. 411, 73 L.Ed. 789............................................. 39
Farmer-Labor State Central Committee v. Holm, 227 Minn. 52, 33 N.W.2d. 831 (1948)............................... 10
Federal Radio Commission v. General Electric Co., 281 U.S. 464, 50 S.Ct. 389 (U.S.,1930) ....................... 39
Fletcher v. Tuttle, 151 Ill. 41, 37 N.E. 683 (1894)........................................................................................... 10
Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 647 (1960) ...................................................................... 38
Fong Yue Ting v. United States, 149 U.S. 698 (1893).......................................................................... 12, 22, 24
Fox v. Standard Oil Co. of N.J., 294 U.S. 87, 95-96 (1935)...................................................................... 36, 48
Freytag v. Commissioner, 501 U.S. 868 (1991)................................................................................................ 27
Freytag v. Commissioner, 501 U.S. 868, 908-909 (1991)................................................................................ 29
Freytag v. Commissioner, 501 U.S. 868, 909-910 (1991)................................................................................ 28
Freytag v. Commissioner, 501 U.S. 868, 911-912 (1991)................................................................................ 28
Freytag v. Commissioner, 501 U.S. 868, 912 (1991)........................................................................................ 28
Freytag v. Commissioner, 501 U.S. 868, 914-915 (1991).......................................................................... 28, 43
Frost & Frost Trucking Co. v. Railroad Comm'n of California, 271 U.S. 583 ................................................. 31
Gardner v. Broderick, 392 U.S. 273, 277 -278 (1968)..................................................................................... 57
General v. Clarendon, 17 Ves. 488, 491 ........................................................................................................... 15
Glidden Co. v. Zdanok, 370 U.S., at 548-549, and n. 21, 82 S.Ct., at 1471-1472, and n. 2........................... 52
Gomillion v. Lightfoot, 364 U.S. 339, 345......................................................................................................... 31
Granfinanciera, S.A. v. Nordberg, 492 U.S. at 52-54....................................................................................... 35
Guinn v. United States, 238 U.S. 347, 364 365................................................................................................. 15
Hagner v. Heyberger, 7 Watts & S. 104 ............................................................................................................ 15
Hale v. Henkel, 201 U.S. 43 (1906) .................................................................................................................. 26
Harman v. Forssenius, 380 U.S. 528 at 540, 85 S.Ct. 1177, 1185 (1965) ....................................................... 31

Harper v. Virginia State Board of Elections Butts v. Harrison, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d. 169, 1965 WL
    130114 (1966) ..................................................................................................................................... 14
Harris v. VAO Intourist Moscow, D.C. N.Y. 1979, 481 F.Supp. 1056 .................................................. 20
Heiner v. Donnan, 285 U.S. 312 (1932) ........................................................................................... 42
Hubbard v. Ammerman, 465 F.2d. 1169 (5th Cir. 1972) ..................................................................... 27
Hughes v. United States, 953 F.2d. 531, 536-537 (9th Cir. 1991) ....................................................... 43
Humphrey's Executor v. United States, 295 U.S. 602 (1935) ............................................................... 27
Insurance Co. of North America v. Kunin, 175 Neb. 260, 121 N.W.2d. 372, 375, 376 ............................. 40
International Shoe Co. v. Washington, 326 U.S. 310 (1945) ............................................................ 49, 50
Islamic Republic of Iran v. Pahlavi, 116 Misc.2d. 590, 455 N.Y.S.2d. 987, 990 ................................... 10
Jaremillo v. Romero, 1 N.Mex. 190, 194 ......................................................................................... 59
Keller v. Potomac Electric Power Co., 261 U.S. 428, 442-444, 43 S.Ct. 445, 67 L.Ed. 731 ...................... 38
Keller v. Potomac Electric Power Co., supra, page 444, of 261 U.S., 43 S.Ct. 445, 67 L.Ed. 731 .............. 38
Kelley v. Johnson, 425 U.S. 238, 247 (1976) .................................................................................... 57
Kilbourn v. Thompson, 103 U.S. 168, 190-191, 26 L.Ed. 377 .............................................................. 34
Liberty Warehouse Co. v. Grannis, 273 U.S. 70, 74, 47 S. 282, 71 L.Ed. 541 ....................................... 39
Liebowitz v. Aimexco, Inc., Colo.App. 701 P.2d. 140, 142 .................................................................. 47
Long v. Rasmussen, 281 F. 236 (1922) ....................................................................................... 43, 51
Luther v. Borden, 48 U.S. 1 (1849) ............................................................................... 10, 34, 45, 58
Lynch v. Torquato, 343 F.2d. 370 (3rd Cir. 1965) ............................................................................. 10
Marbury v. Madison, 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803) ....................................................... 36
Martin v. Mott, 12 Wheat. 19 (1827) ............................................................................................... 28
Meese v. Keene, 481 U.S. 465, 484 (1987) ....................................................................................... 36
Meese v. Keene, 481 U.S. 465, 484-485 (1987) ............................................................................ 36, 48
Miller Brothers Co. v. Maryland, 347 U.S. 340 (1954) ......................................................... 12, 34, 37
Milliken v. Meyer, 311 U.S. 457, 463 (1940) .................................................................................... 50
Milwaukee v. White, 296 U.S. 268 (1935) ........................................................................................ 37
Minor v. Happersett, 88 U.S. (21 Wall.) 162, 166-168 (1874) ............................................................. 12
Minor v. Happersett, 88 U.S. 162 (1874) .................................................................................... 16, 54
Morgan v. Nunn, 84 Fed. 551 ......................................................................................................... 15
Moulton v. Reid, 54 Ala. 320 .......................................................................................................... 15
Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 284 (1856) .................................. 52
Newblock v. Bowles, 170 Okl. 487, 40 P.2d. 1097, 1100 ..................................................................... 36
Nixon v. Herndon, 273 U.S. 536, 540 .............................................................................................. 57
Nixon v. United States, 506 U.S. 224 (1993) .................................................................................... 11
Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858 (1983) ................ 52
Northern Pipeline, 458 U.S. at 113 .................................................................................................. 28
O'Brien v. Brown, 409 U.S. 1 (1972) ............................................................................................... 10
O'Connor v. Ortega, 480 U.S. 709, 723 (1987) ................................................................................. 57
Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 724-727, 49 S.Ct. 499, 73 L.Ed. 918 .............. 39
Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 725 (1929) ....................................................... 28
O'Neill v. United States, 231 Ct.Cl. 823, 826 (1982) .......................................................................... 50
Outboard Marine Corp. v. Pezetel, D.C. Del. 1978, 461 F.Supp. 384 .................................................... 20
People v. Rehman, 253 C.A.2d. 119, 61 Cal.Rptr. 65, 85 .................................................................... 25
Plessy v. Ferguson, 163 U.S. 537, 542 (1896) .................................................................................. 59
Postum Cereal Co. v. California Fig Nut Company, supra, pages 700-701 of 272 U.S. 47 S.Ct. 284, 71 L.Ed. 478 ......... 39
Postum Cereal Company v. California Fig Nut Company, 272 U.S. 693, 698, 47 S.Ct. 284, 285, 71 L.Ed. 478 ............ 38
Powe v. United States, 109 F.2d. 147 (1940) .................................................................................... 11
Powell v. McCormack, 395 U.S. 486, 548 (1969) ............................................................................... 11
Public Workers v. Mitchell, 330 U.S. 75, 101 (1947) .......................................................................... 57
Recently in Reynolds v. Sims, 377 U.S. 533, 561-562, 84 S.Ct. 1362, 1381, 12 L.Ed.2d. 506 .................. 14
Rice v Cayetano, 528 U.S. 495, 120 S.Ct. 1044, 145 L.Ed.2d. 1007 (2000) .......................................... 15
Roboz v. Kennedy, 219 F.Supp. 892 (D.D.C. 1963), p. 24 .................................................................. 56
Rowen v. U.S., 05-3766MMC. (N.D.Cal. 11/02/2005) ........................................................................ 43
Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990) ................................................................... 57
S&S Mach. Co. v. Masinen export import, 706 F.2d. 411 (2d Cir.), cert. denied, 464 U.S. 850 (1983) ......... 20
Samuels, Kramer & Co. v. Commissioner, 930 F.2d. 975, 992-993 (CA2 1991) ..................................... 28

Sawyer's Case, 124 U.S. 200, 223 , 8 S.Sup.Ct. 482 .............................................................. 15
Schwarzenegger v. Fred Martin Motor Co., 374 F.3d. 797, 802 (9th Cir. 2004) ........................ 50
Sheridan v. Colvin, 78 Ill. 237 ............................................................................................. 15
Sinking Fund Cases, 99 U.S. 700 (1878) ................................................................................ 43
Slaughter House Cases, 16 Wall, 36 ..................................................................................... 59
Smith v. Allwright, 321 U.S. 649, 644 ................................................................................... 31
Smith v. Smith, 206 Pa.Super. 310, 213 A.2d. 94 ................................................... 12, 20, 54
Snowden v. Hughes, 321 U.S. 1, 11 ...................................................................................... 57
South Carolina v. United States, 199 U.S. 437, 448, 26 S.Ct. 110, 4 Ann.Cas. 737 .............. 26
Springer v. Philippine Islands, 277 U.S. 189, 201, 202, 48 S.Ct. 480, 72 L.Ed. 845 .......... 29, 33
State ex re. Maisano v. Mitchell, 155 Conn. 256, 231 A.2d. 539, 542 ..................................... 53
Stenberg v. Carhart, 530 U.S. 914 (2000) ....................................................................... 36, 48
Talbot v. Janson, 3 U.S. 133 (1795) .................................................................................... 54
Talbot v. Janson, 3 U.S. 133 (1795) (headnotes, not within case) .................................. 11, 16
Tappan v. Gray, 3 Edw. Ch. 450 ......................................................................................... 15
Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d. 514 (1986) ..... 11
Terry v. Adams, 345 U.S. 461, 469 470 ............................................................................... 15
U.S. v. Will, 449 U.S. 200 (1980) .................................................................................. 37, 43
United Euram Corp. v. Union of Soviet Socialist Republics, D.C N.Y. 1978, 461 F.Supp. 609 ...... 20
United States v. Bostwick, 94 U.S. 53, 66 (1877) ................................................................. 50
United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1715, 14 L.Ed. 484, 492 ...... 39, 44
United States v. Cruikshank, 92 U.S. 542 (1875) .................................................................. 22
United States v. Kusche, D.C.Cal., 56 F.Supp. 201, 207, 208 ................................................ 53
United States v. Lovett, 328 U.S. 303, 315, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252 .............. 39, 44
United States v. National Exchange Bank of Baltimore, 270 U.S. 527, 534 (1926) .................. 50
United States v. Winstar Corp. 518 U.S. 839 (1996) ............................................................ 50
Updegraff v. Crans, 47 Pa.St. 103 ...................................................................................... 15
Western and Atlantic Railroad v. Henderson, 279 U.S. 639 (1929) ........................................ 42
Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 502 (1945) ................................. 36, 48
White v. Berry, 171 U.S. 366 (1898) .............................................................................. 10, 15
Williams v. U.S., 289 U.S. 553, 53 S.Ct. 751 (1933) ................................................. 29, 33, 34
Willing v. Chicago Auditorium Association, 277 U.S. 274, 289, 48 S.Ct. 507, 72 L.Ed. 880 ...... 39
Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d. 1199 (9th Cir. 01/12/2006) ...... 50
Yessenin-Bolpin v. Novosti Press Agency 443 F.Supp. 849, 852 (S.D.N.Y. 1978) .................. 20
Yick Wo v. Hopkins, 118 U.S. 356 (1885) ............................................................................ 46
Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 ............................ 14

## Other Authorities

2 Bouv. Inst. n. 2279, 2327 ................................................................................................. 40
2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.07, p. 152, and n. 10 (5th ed. 1992) ......... 36, 48
3 Co. Inst. 23 ..................................................................................................................... 40
81A Corpus Juris Secundum (C.J.S.), United States, §29 (2003) ......................................... 19
Amar, Marbury, Section 13, and the Original Jurisdiction of the Supreme Court, 56 U.Chi.L.Rev. 443, 451, n. 43 (1989). 28
Black's Law Dictionary ....................................................................................................... 47
Black's Law Dictionary, Sixth Edition, p. 1159 .................................................................... 14
Black's Law Dictionary, Sixth Edition, p. 1407 .................................................................... 53
Black's Law Dictionary, Sixth Edition, p. 165 ...................................................................... 44
Black's Law Dictionary, Sixth Edition, p. 276 ...................................................................... 26
Black's Law Dictionary, Sixth Edition, p. 485 ............................................... 12, 20, 54, 56
Black's Law Dictionary, Sixth Edition, p. 648 ...................................................................... 19
Black's Law Dictionary, Sixth Edition, p. 668 ...................................................................... 48
Black's Law Dictionary, Sixth Edition, p. 97 ........................................................................ 40
Black's Law Dictionary, Sixth Edition, pp. 1158-1159 .......................................................... 10
Board of Tax Appeals ......................................................................................................... 39
Conflicts in a Nutshell, David D. Siegel and Patrick J. Borchers, West Publishing, p. 24 ........ 56

Corporatization and Privatization of the Government, Form #05.024 .................................................. 18
Correcting Erroneous Information Returns, Form #04.001 ............................................................ 53
Court of International Trade ................................................................................................................. 26
Department of State Website ................................................................................................................ 19
Department of the Treasury .................................................................................................................. 40
Department of Treasury ........................................................................................................................ 27
Flawed Tax Arguments To Avoid, Form #08.004, Section 6.10 ...................................................... 47
Foreign Relations Law of the United States, Sec. 452, p. 399-401 (1986) .................................... 19
Government Conspiracy to Destroy the Separation of Powers, Form #05.023 ........................ 41, 48
Government Instituted Slavery Using Franchises, Form #05.030 ..................................................... 52
Government Instituted Slavery Using Franchises, Form #05.030, Section 21 ................................ 51
Government Instituted Slavery Using Franchises, Form #05.030, Section 21.6 ............................. 31
Government Instituted Slavery Using Franchises, Form #05.030, Sections 16-17 ........................ 44
Great IRS Hoax, Form #11.302, Chapter 2 ....................................................................................... 23
Great IRS Hoax, Form #11.302, Section 4.11.2 ............................................................................... 18
H. Dubroff, The United States Tax Court 47-175 (1979) .................................................................. 28
Headless Fourth Branch ....................................................................................................................... 27
House of Representatives ...................................................................................................................... 29
Internal Revenue Service ...................................................................................................................... 28
IRS Form 1040 ................................................................................................................................ 18, 21
IRS Form 1040 plus 2555 .................................................................................................................... 18
IRS Form 1040NR ................................................................................................................................ 18
IRS Form W-4 ....................................................................................................................................... 21
IRS Forms W-4 or 1040 ....................................................................................................................... 30
Justice Antonin Scalia ..................................................................................................................... 27, 43
Katz, Federal Legislative Courts, 43 Harv.L.Rev. 894, 917-918 (1930) ........................................ 52
Meaning of the Word "Frivolous", Form #05.027 ............................................................................ 48
Meaning of the Words "includes" and "including", Form #05.014 ............................................ 37, 49
Minimum Contacts Doctrine ................................................................................................................ 49
Note, Breaking Out of the Capitalist Paradigm: The Significance of Ideology in Determining the Sovereign Immunity of
    Soviet and Eastern-Bloc Commercial Entities, 2 Hous. J. Int"l. L. 425 (1980) ......................... 20
Note, Foreign Sovereign Immunity: Communist and Socialist Organizations - Effects of State's System of Property
    Ownership on Determination of Agency or Instrumentality Status Under the Foreign Sovereign Immunities Act of 1976,
    9 Ga. J. Int"l & Comp. L. 111 (1979) .......................................................................................... 20
Presumption:  Chief Weapon for Unlawfully Enlarging Federal Jurisdiction, Form #05.017 .... 47, 48
Proof That There is a "Straw Man", Form #05.042 .......................................................................... 47
Reasonable Belief About Income Tax Liability, Form #05.007 .................................................... 48, 53
Requirement for Reasonable Notice, Form #05.022 .......................................................................... 48
SEDM Jurisdictions Database Online, Litigation Tool #09.004 ....................................................... 49
SEDM Jurisdictions Database, Litigation Tool #09.003 ................................................................... 49
Separation of Powers Doctrine ............................................................................................................ 41
Social Security Form SS-5 ................................................................................................................... 21
Tax Court ............................................................................................................................................... 27
The Law of Nations, Vattel .................................................................................................................. 24
Thomas Jefferson to Abbe Arnoux, 1789. ME 7:423, Papers 15:283 ............................................. 44
U.S. Circuit Court ................................................................................................................................. 49
U.S. District Court ..................................................................................................................... 40, 49, 52
U.S. Supreme Court ........................................................................... 22, 23, 25, 26, 33, 38, 46
U.S. Tax Court ................................................. 25, 27, 28, 29, 30, 31, 33, 38, 39, 40, 43, 49, 52, 53
Vatt. Law Nat. pp. 92, 93 ............................................................................................................... 22, 24
What Happened to Justice?, Form #06.012 .................................................................. 24, 25, 38, 47
Why Domicile and Becoming a "Taxpayer" Require Your Consent, Form #05.002 .......... 14, 21, 37
Why Statutory Civil Law is Law for Government and Not Private Persons, Form #05.037 .. 14, 47, 51
Why You are a "national", "state national", and Constitutional but not Statutory Citizen, Form #05.006 .......... 14, 17, 20, 56
Why Your Government is Either a Thief or you are a "Public Officer" for Income Tax Purposes, Form #05.008 ........ 32, 47

## Scriptures

1 John 2:15-17.................................................................................................................... 22
2 Corinthians 6:17-18.......................................................................................................... 22
Exodus 23:8......................................................................................................................... 46
Heaven.................................................................................................................................. 24
James 1:27............................................................................................................................ 22
James 4:4.............................................................................................................................. 22
Luke 16:13............................................................................................................................ 21
Philippians 3:20................................................................................................................... 22
Rev. 19:19............................................................................................................................. 60
The Open Bible, New King James Version, Thomas Nelson Publishers, 1997, p. 340 .................... 46

# 1   Introduction and definition

The subject of how to distinguish between "legal questions" and "political questions" is an often overlooked area of law that can have dramatic affects especially in relation to the subjects of taxation, sovereignty, and freedom. The reason an understanding of this matter is important is that courts will frequently interfere especially in tax cases with a party's chosen domicile or citizenship in order to compel them to become a "taxpayer". Most litigants don't realize that this actually amounts to an abuse of jurisdiction and produces a void judgment and they lack the ability to explain why. Consequently, they allow themselves to be needlessly victimized by a corrupted court. This memorandum will focus on providing legal authorities to prove why courts which do this are violating their authority, breaking down the separation of powers, and involving themselves in political matters or "political questions". This information will provide standing to either challenge or dismiss any ruling against them which adversely affects their choice of citizenship or domicile.

Black's Law Dictionary, Sixth Edition defines "political questions" as follows:

> *"Political questions. Questions of which courts will refuse to take cognizance, or to decide, on account of their purely political character, or because their determination would involve an encroachment upon the executive or legislative powers.*
>
> *"Political questions doctrine" holds that certain issues should not be decided by courts because their resolution is committed to another branch of government and/or because those issues are not capable, for one reason or another, of judicial resolution. Islamic Republic of Iran v. Pahlavi, 116 Misc.2d. 590, 455 N.Y.S.2d. 987, 990.*
>
> *A matter of dispute which can be handled more appropriately by another branch of the government is not a "justiciable" matter for the courts. However, a state apportionment statute is not such a political question as to render it nonjusticiable. Baker v. Carr, 369 U.S. 186, 208-210, 82 S.Ct. 691, 705-706, 7 L.Ed.2d. 663.*
> [Black's Law Dictionary, Sixth Edition, pp. 1158-1159]

# 2   Authorities on "political questions"

Courts may not involve themselves in any strictly political question:

1. *Baker v. Carr*, 369 U.S. 186 (1962). Establishes criteria for determining jurisdiction to decide specific aspects of political questions.
2. *Luther v. Borden*, 48 U.S. 1 (1849). Denied all court's jurisdiction to hear strictly political matters.
3. *Fletcher v. Tuttle*, 151 Ill. 41, 37 N.E. 683 (1894). Defined "political rights".
4. *O'Brien v. Brown*, 409 U.S. 1 (1972). Ruled that equity courts must refrain from interfering in the administration of the internal affairs of a political party. The court will note that any number of people, including a single person, can defined a political party.

Courts may not involve themselves in the affairs of a political party or its members:

1. *Lynch v. Torquato*, 343 F.2d. 370 (3rd Cir. 1965). Court dismissed petitioner's challenge to the method of selecting the Democratic County Committee and Chairman.
2. *Farmer-Labor State Central Committee v. Holm*, 227 Minn. 52, 33 N.W.2d. 831 (1948). Court ruled that "In factional controversies within a party, where there is not controlling statute or clear right based on statute law, the courts will not assume jurisdiction, but will leave the matter for determination within the party organization... Such a convention is a deliberative body, and unless it acts arbitrarily, oppressively, or fraudulently, its final determination as to candidates, or any other question of which it has jurisdiction, will be followed by the courts."
3. *White v. Berry*, 171 U.S. 366 (1898). Ruled that court of equity will refrain from exercising jurisdiction over the appointment or removal of public officers.

Courts may not compel participation in political parties or interfere with membership in them:

1. *Democratic Party of U.S. v. Wisconsin, ex re. LaFollette*, 450 U.S. 107, 101 S.Ct. 1010, 67 L.Ed.2d. 82 (1981). Court ruled that freedom of political association "necessarily presupposes the freedom to identify the people who comprise the association, and to limit the association to those people only."

2. _Tashjian v. Republican Party of Connecticut, 479 U.S. 208, 107 S.Ct. 544, 93 L.Ed.2d. 514 (1986)_: Ruled that a state could not constitutionally require that voters in party primaries be registered members of that party.

The criteria for determining whether a question is a "political question" is best described in _Baker v. Carr_, which was explained in _Nixon v. United States_, 506 U.S. 224 (1993) as follows:

> "_A controversy is nonjusticiable -- i.e., involves a political question -- where there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it...._"
> _[Nixon v. United States, 506 U.S. 224 (1993)]_

The second criteria above: "or a lack of judicially discoverable and manageable standards for resolving it" is explained in the same case:

> _The majority states that the question raised in this case meets two of the criteria for political questions set out in Baker v. Carr, 369 U.S. 186 (1962). It concludes first that there is "'a textually demonstrable constitutional commitment of the issue to a coordinate political department.'" It also finds that the question cannot be resolved for "'a lack of judicially discoverable and manageable standards.'" Ante, at 228._

> _Of course the issue in the political question doctrine is not whether the constitutional text commits exclusive responsibility for a particular governmental function to one of the political branches. There are numerous instances of this sort of textual commitment, e.g., Art. I, 8, and it is not thought that disputes implicating these provisions are nonjusticiable. Rather, the issue is whether the Constitution has given one of the political branches final responsibility for interpreting the scope and nature of such a power._

> _Although Baker directs the Court to search for "a textually demonstrable constitutional commitment" of such responsibility, there are few, if any, explicit and unequivocal instances in the Constitution of this sort of textual commitment. Conferral on Congress of the power to "judge" qualifications of its Members by Art. I, 5, may, for example, preclude judicial review of whether a prospective member in fact meets those qualifications. See Powell v. McCormack, 395 U.S. 486, 548 (1969). The courts therefore are usually left to infer the presence of a political question from the text and structure of the Constitution. In drawing the inference that the Constitution has committed final interpretive authority to one of the political branches, courts are sometimes aided by textual evidence that the judiciary was not meant to exercise judicial review - a coordinate inquiry expressed in Baker's "lack of judicially discoverable and manageable standards" criterion. See, e.g., Coleman v. Miller, 307 U.S. 433, 452 -454 (1939), where the Court refused to determine [506 U.S. 224, 241] the lifespan of a proposed constitutional amendment, given Art. V's placement of the amendment process with Congress and the lack of any judicial standard for resolving the question. See also id., at 457-460 (Black, J., concurring)._
> _[Nixon v. United States, 506 U.S. 224 (1993)]_

## 3  Choice of "Citizenship" is a strictly political question

The U.S. Supreme Court admitted that CONSTITUTIONAL "citizenship" is a "political tie", when it held:

> "_Citizenship is a political tie; allegiance is a territorial tenure. [...] The doctrine is, that allegiance cannot be due to two sovereigns; and taking an oath of allegiance to a new, is the strongest evidence of withdrawing allegiance from a previous, sovereign...._"
> _[Talbot v. Janson, 3 U.S. 133 (1795) (headnotes, not within case)]_

Consistent with the above, it and lower courts have also described constitutional citizenship as a POLITICAL status rather than a CIVIL or STATUTORY status:

> "_This section contemplates two sources of citizenship, and two sources only,-birth and naturalization. The persons declared to be citizens are 'all persons born or naturalized in the United States, and subject to the jurisdiction thereof.' The evident meaning of these last words is, not merely subject in some respect or degree to the jurisdiction of the United States, but completely subject to their [plural, not singular, meaning states of the Union] political jurisdiction, and owing them [the state of the Union] direct and immediate allegiance. And the words relate to the time of birth in the one case, as they do [169 U.S. 649, 725] to the time of naturalization in the other. Persons not thus subject to the jurisdiction of the United States at the time of birth cannot become so afterwards, except by being naturalized, either individually, or as by proceedings under the naturalization acts, or collectively, as by the force of a treaty by which foreign territory is acquired._"
> _[U.S. v. Wong Kim Ark, 169 U.S. 649, 18 S.Ct. 456; 42 L.Ed. 890 (1898)]_

> "_Pursuing further the application of the statute now before us, in Baldwin v. Franks, supra, it was held the word 'citizen' means citizen of the United States in a political sense, and did not include a resident Chinese._"
> _[Powe v. United States, 109 F.2d. 147 (1940)]_

Consequently, a court which interferes with one's voluntary choice of citizenship is involving itself in a strictly "political matter". However, courts may intervene in preventing the oppression of political right which spring from one's citizenship. For instance, the statute below protects people based on their citizenship status:

> *TITLE 8 > CHAPTER 12 > SUBCHAPTER II > Part VIII > § 1324b*
> *§ 1324b. Unfair immigration-related employment practices*
>
> *Prohibition of discrimination based on national origin or citizenship status*
>
> *(3) "Protected individual" defined*
>
> *As used in paragraph (1), the term "protected individual" means an individual who—*
>
> *(A) is a citizen or national of the United States, or*

## 4   Choice of "Domicile" is a strictly political question

Black's Law Dictionary defines "domicile" as follows:

> *"**domicile**. A person's legal home. That place where a man has his true, fixed, and **permanent home** and principal establishment, and to which whenever he is absent he has **the intention of** returning. Smith v. Smith, 206 Pa.Super. 310, 213 A.2d. 94. Generally, physical presence within a state and **the intention** to make it one's home are the requisites of establishing a "domicile" therein. The permanent residence of a person or the place to which he **intends** to return even though he may actually reside elsewhere. A person may have more than one residence but only one domicile. **The legal domicile of a person is important since it, rather than the actual residence, often controls the jurisdiction of the taxing authorities and determines where a person may exercise the privilege of voting and other legal rights and privileges.**"*
> *[Black's Law Dictionary, Sixth Edition, p. 485]*

Domicile is based on the coincidence of a voluntary commitment of allegiance and consent and physical presence. The voluntary commitment of allegiance constitutes essentially political allegiance to the regional government, which becomes the protector and sovereign of those claiming allegiance. That allegiance manifests itself through obedience to the law of the place where one claims "domicile":

> *"Allegiance and protection [by the government from harm] are, in this connection, reciprocal obligations. The one is a compensation for the other; allegiance for protection and protection for allegiance."*
> *[Minor v. Happersett, 88 U.S. (21 Wall.) 162, 166-168 (1874)]*

> *"**Thus, the Court has frequently held that domicile or residence, more substantial than mere presence in transit or sojourn, is an adequate basis for taxation, including income, property, and death taxes.** Since the Fourteenth Amendment makes one a citizen of the state wherein he resides, **the fact of residence creates universally reciprocal duties of protection by the state and of allegiance and support by the citizen. The latter obviously includes a duty to pay taxes, and their nature and measure is largely a political matter.** Of course, the situs of property may tax it regardless of the citizenship, domicile, or residence of the owner, the most obvious illustration being a tax on realty laid by the state in which the realty is located."*
> *[Miller Brothers Co. v. Maryland, 347 U.S. 340 (1954)]*

We make our intention known of selecting a domicile by virtue of the government forms we fill out. This would include voter registration, change of address forms, driver's license applications, marriage license applications, income tax forms, etc.

> *This right of domicile, he continues, is not established unless the person makes sufficiently known his intention of fixing there, either tacitly or by an express declaration. Vatt. Law Nat. pp. 92, 93.*
> *[Fong Yue Ting v. United States, 149 U.S. 698 (1893)]*

If the choice of domicile has not been directly identified on a government form then several other additional factors are considered by courts to determine domicile:

1. Continuous presence in the state.
2. Payment of ad valorem (property) taxes.
3. Payment of personal income taxes.
4. Reliance upon state sources for financial support.

5. Domicile in the state of family, or other relatives, or persons legally responsible for the person.
6. Former domicile in the state and maintenance of significant connections therein while absent.
7. Ownership of a home or real property.
8. Admission to a licensed practicing profession in the state.
9. Long term military commitments in the state.
10. Commitments to further education in the state indicating an intent to stay here permanently.
11. Acceptance of an offer of permanent employment in the state.
12. Location of spouse's employment, if any.
13. Address of student listed on selective service (draft or reserves) registration.

Other factors indicating an intent to make a state one's domicile may be considered. Normally, the following circumstances do not constitute evidence of domicile sufficient to effect classification as a domiciliary:

1. Voting or registration for voting.
2. The lease of living quarters.
3. A statement of intention to acquire a domicile in state.
4. Automobile registration; address on driver's license; payment of automobile taxes.
5. Location of bank or saving accounts.

## 5   Civil and Political statuses

We have taken the type to distinguish civil statuses associated with domicile to political statuses associated with nationality. Our findings are summarized in the table below:

**Table 1:  Civil and political status**

| Location of birth | Political status | Civil status if domiciled WITHIN "United States**" | Civil status if domiciled WITHOUT "United States**" |
|---|---|---|---|
| "United States**" per 8 U.S.C. §1101(a)(38), per 8 U.S.C. §1101(a)(36), 8 C.F.R.§215.1(f) | "national of the United States**" per 8 U.S.C. §1101(a)(22) | Statutory "citizen of the United States** at birth" per 8 U.S.C. §1401; "United States person" per 26 U.S.C. §7701(a)(30) | "non-citizen national of the United States**" per 8 U.S.C. §1452 |
| "outlying possession of United States" per 8 U.S.C. §1101(a)(29) | "non-citizen national of the United States**" per 8 U.S.C. §1101(a)(22)(B) | "non-citizen national of the United States** at birth" per 8 U.S.C. §1408 and 8 U.S.C. §1452 "United States** person" per 26 U.S.C. §7701(a)(30) | "non-citizen national of the United States**" per 8 U.S.C. §1408, 8 U.S.C. §1452 |
| A Constitutional Union state | Constitutional "citizen of the United States***" per 14th Amendment; "national" of the United States of America per 8 U.S.C. §1101(a)(21) | "United States** person" per 26 U.S.C. §7701(a)(30) | "nonresident alien" per 26 U.S.C. §7701(b)(1)(B)  if a public officer "non-resident NON-person" if not a public officer |
| A foreign country | Foreign  "national" per 8 U.S.C. §1101(a)(21) "alien" per 8 U.S.C. §1101(a)(3) | "resident" (alien) per 26 U.S.C. §7701(b)(1)(A) "United States** person" per 26 U.S.C. §7701(a)(30) | "nonresident alien" per 26 U.S.C. §7701(b)(1)(B) if a public officer "non-resident NON-person" if not a public officer |

For further information on the differences between civil status and political status, see:

1. *Why Domicile and Becoming a "Taxpayer" Require Your Consent*, Form #05.002.  Describes the origin of "civil status".
   http://sedm.org/Forms/FormIndex.htm
2. *Why Statutory Civil Law is Law for Government and Not Private Persons*, Form #05.037 – describes all statutory civil law as law for government and not private people or humans.
   http://sedm.org/Forms/FormIndex.htm
3. *Why You are a "national", "state national", and Constitutional but not Statutory Citizen*, Form #05.006.  Describes how nationality and domicile interact with each other to determin both the civil status and political status of the person.
   http://sedm.org/Forms/FormIndex.htm

## 6   Political Rights derive from the coincidence of "nationality" and "domicile"

Black's Law Dictionary defines "political rights" as follows:

> "*Political rights*.  Those which may be exercised in the formation or administration of the government.  Rights of citizens established or recognized by constitutions which give them the power to participate directly or indirectly in the establishment or administration of government."
> [Black's Law Dictionary, Sixth Edition, p. 1159]

The origins of political rights are usually in the individual's domicile.  The California Constitution, Article II, Section 2, declares the following qualifications for voting:

> *California Constitution, Article II, Section 2*
>
> SEC. 2.  A United States citizen 18 years of age and resident in this State may vote.

The California Election Code § 349 then defines the meaning of "residence" for the purposes of voting, which is equated there with "domicile":

> California Election Code
> *349.  (a) "Residence" for voting purposes means a person's domicile.*
>
> (b) The domicile of a person is that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning.  At a given time, a person may have only one domicile.
>
> (c) The residence of a person is that place in which the person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining.  At a given time, a person may have more than one residence.

Therefore, at least in California, a person may not become a registered voter *without* a "domicile" in the state.  A person who registers to vote is volunteering to involve him or her self in political affairs and act essentially as a "public officer", who directs or influences the affairs of the government.  Voting also is described as a franchise by the U.S. Supreme Court:

> "Long ago in *Yick Wo v. Hopkins, 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 the Court referred to 'the political franchise of voting' as a 'fundamental political right, because preservative of all rights.' Recently in Reynolds v. Sims, 377 U.S. 533, 561*—562, 84 S.Ct. 1362, 1381, *12 L.Ed.2d. 506, we said, 'Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society. Especially since the right to exercise the franchise in a free and uninjured manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.' There we were considering charges that voters in one part of the State had greater representation per person in the State Legislature than voters in another part of the State.* We concluded:
>
> 'A citizen, a qualified voter, is no more nor no less so because he lives in the city or on the farm. This is the clear and strong command of our Constitution's Equal Protection Clause. This is an essential part of the concept of a government of laws and not men. This is at the heart of Lincoln's vision of 'government of the people, by the people, (and) for the people.' The Equal Protection Clause demands no less than substantially equal state legislative representation for all citizens, of all places as well as of all races.' Id., at 568, 84 S.Ct. at 1385."
>
> [Harper v. Virginia State Board of Elections Butts v. Harrison, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d. 169, 1965 WL 130114 (1966)]

*"The National Government and the States may not deny or abridge the right to vote on account of race. __The Amendment reaffirms the equality of races at the most basic level of the democratic process, the exercise of the voting franchise__. It protects all persons, not just members of a particular race. Important precedents give instruction in the instant case. The Amendment was quite explicit to invalidate a grandfather clause that did not mention race but instead used ancestry in an attempt to confine and restrict __the voting franchise__, Guinn v. United States, 238 U.S. 347, 364 365; and it sufficed to strike down the white primary systems designed to exclude one racial class (at least) from voting, see, e.g., Terry v. Adams, 345 U.S. 461, 469 470."*

[Rice v Cayetano, 528 U.S. 495, 120 S.Ct. 1044, 145 L.Ed.2d. 1007 (2000)]

Below is how the U.S. Supreme Court describes the exercise of this sovereignty of "We the People" over their servants in government, which is implemented in part by what it calls "the political franchise of voting":

*"'The words 'people of the United States' and 'citizens,' are synonymous terms, and mean the same thing. They both describe the political body who, according to our republican institutions, form the sovereignty, and who hold the power and conduct [run] the government through their representatives [servants]. They are what we familiarly call the 'sovereign people,' and every citizen is one of this people, and a constituent member of this sovereignty. ..."*
[Boyd v. State of Nebraska, 143 U.S. 135 (1892) ]

This supervision over the affairs of government by "We the People" as individuals occurs both as a voter and as a jurist. White v. Berry, 171 U.S. 366 (1898) ruled that courts of equity may not interfere with the appointment or removal of public officers.

*In Sawyer's Case, 124 U.S. 200, 223, 8 S.Sup.Ct. 482, Chief Justice Waite, in a dissenting opinion, said that he was not prepared to hold that an officer of a municipal government could not, under any circumstances, apply to a court of chancery to restrain the municipal authorities from proceeding to remove him from his office without authority of law; that there might be cases when the tardy remedies of quo warranto, certiorari, and other like writs, would be entirely inadequate. In that view of the jurisdiction of equity the writer of this opinion concurred at the time the court disposed of that case.*

*But the court in its opinion in that case observed that, under the constitution and laws of the United States, the distinction between common law and equity, as existing in England at the time of the separation of the two countries, had been maintained, although both jurisdictions were vested in the same courts, and held that __a court of equity had no jurisdiction over the appointment and removal of public officers, and that to sustain a bill in equity to restrain or relieve against proceedings for the removal of public officers would invade the domain of the courts of common law, or of the executive and administrative departments of the government.__*

*After referring to numerous authorities, American and English, in support of the general proposition that a court of chancery had no power to restrain criminal proceedings unless they had been instituted by a party to a suit already [171 U.S. 366, 377]  pending before it, and to try the same right that was in issue there, the court proceeded: '__It is equally well settled that a court of equity has no jurisdiction over the appointment and removal of public officers, whether the power of removal is vested, as well as that of appointment, in executive or administrative boards or officers, or is intrusted to a judicial tribunal.__ The jurisdiction to determine the title to a public office belongs exclusively to the courts of law, and is exercised either by certiorari, error, or appeal, or by mandamus, prohibition, quo warranto, or information in the nature of a writ of quo warranto, according to the circumstances of the case, and the mode of procedure established by common law or by statute. No English case has been found of a bill for an injunction to restrain the appointment or removal of a municipal officer. But an information in the court of chancery for the regulation of Harrow School, within its undoubted jurisdiction over public charities, was dismissed so far as it sought a removal of governors unlawfully elected; Sir William Grant saying, 'This court, I apprehend, has no jurisdiction of regard either to the election or a motion of court, I apprehend, has no jurisdiction with General v. Clarendon, 17 Ves. 488, 491. In the courts of the several states the power of a court of equity to restrain by injunction the removal of a municipal officer has been denied in many well- considered cases;' citing Tappan v. Gray, 3 Edw. Ch. 450, reversed by Chancellor Walworth on appeal (9 Paige, 507, 509, 512), whose decree was affirmed by the court of errors (7 Hill, 259); Hagner v. Heyberger, 7 Watts & S. 104; Updegraff v. Crans, 47 Pa.St. 103; Cochrane v. McCleary, 22 Iowa 75; Delehanty v. Warner, 75 Ill. 185; Sheridan v. Colvin, 78 Ill. 237; Beebe v. Robinson, 52 Ala. 66; and Moulton v. Reid, 54 Ala. 320.*

*The rule established in Sawyer's Case was applied in Morgan v. Nunn, 84 Fed. 551, in which Judge Lurton said that '__a court of equity will not, by injunction, restrain an executive officer from making a wrongful removal of a subordinate appointee, nor restrain the appointment of another.__' Similar decisions have been made in other circuit courts of [171 U.S. 366, 378]  the United States by Judges Pardee and Newman, in Couper v. Smyth (N. D. Ga.) 84 Fed. 757; by Judge Kirkpatrick, in Page v. Moffett (D. N. J.) 85 Fed. 38; by Judge Jenkins, in Carr v. Gordon (N. D. Ill.) 82 Fed. 373, 379; and by judge Baker, in Taylor v. Kercheval (D. Ind.) Id. 497, 499.*
[White v. Berry, 171 U.S. 366 (1898)]

1 Therefore, no court can interfere with your political choice of domicile and thereby preclude you from involving yourself in
2 the administration of government as a public officer or within the domicile of your choice.

3 ## 7   Statutory citizenship and domicile compared

4 Both "citizenship" and "domicile" depend on allegiance. For instance, our description of "domicile" in section 4 revealed
5 that it is based on allegiance in exchange for protection. Being a statutory "citizen" also has a prerequisite of allegiance. For
6 instance:

7 *TITLE 8 > CHAPTER 12 > SUBCHAPTER III > Part I > § 1401*
8 *§ 1401. Nationals and citizens of United States at birth*

9 *The following shall be __nationals__ and citizens of the United States at birth:*

10 *(a) a person born in the United States, and subject to the jurisdiction thereof;*

11 A "national" is then defined as a person who "owes allegiance":

12 *TITLE 8 > CHAPTER 12 > SUBCHAPTER I > Sec. 1101.*
13 *Sec. 1101. - Definitions*

14 *(a) (21) The term "national" means a person owing permanent allegiance to a state.*

15 The only difference between "citizenship" and "domicile" is therefore the object of allegiance. Allegiance, which must be
16 voluntary, is what makes both of them a political relation and the expression of a First Amendment right of free political
17 association. With "citizenship", the allegiance is directed towards a "state".

18 *"There cannot be a nation without a people. The very idea of a political community, such as a nation is, implies*
19 *an [88 U.S. 162, 166] association of persons for the promotion of their general welfare. Each one of the persons*
20 *associated becomes a member of the nation formed by the association. __He owes it allegiance and is entitled to__*
21 *__its protection. Allegiance and protection are, in this connection, reciprocal obligations. The one is a__*
22 *__compensation for the other; allegiance for protection and protection for allegiance.__*

23 *"For convenience it has been found necessary to give a name to this membership. The object is to designate by a*
24 *title the person and the relation he bears to the nation. For this purpose the words 'subject,' 'inhabitant,' and*
25 *'citizen' have been used, and the choice between them is sometimes made to depend upon the form of the*
26 *government. __Citizen is now more commonly employed, however, and as it has been considered better suited to__*
27 *__the description of one living under a republican government, it was adopted by nearly all of the States upon__*
28 *__their separation from Great Britain, and was afterwards adopted in the Articles of Confederation and in the__*
29 *__Constitution of the United States. When used in this sense it is understood as conveying the idea of membership__*
30 *__of a nation, and nothing more.__"*
31 *[Minor v. Happersett, 88 U.S. 162 (1874)]*

32 With "domicile", the allegiance is directed at the local government, which is a child or creation of a superior "state".
33 Regardless, both of these relations are entirely and exclusively "political", and cannot exist without either the tacit or express
34 "consent of the governed", as the Declaration of Independence requires. Below is how the U.S. Supreme Court compared
35 "allegiance" with "citizenship":

36 *"__Allegiance and citizenship, differ, indeed, in almost every characteristic. Citizenship is the effect of compact;__*
37 *__allegiance is the offspring of power and necessity. Citizenship is a political tie; allegiance is a territorial tenure.__*
38 *__Citizenship is the charter of equality; allegiance is a badge of inferiority. Citizenship is constitutional;__*
39 *__allegiance is personal. Citizenship is freedom; allegiance is servitude. Citizenship is communicable; allegiance__*
40 *__is repulsive. Citizenship may be relinquished; allegiance is perpetual. With such essential differences, the__*
41 *__doctrine of allegiance is inapplicable to a system of citizenship; which it can neither serve to control, nor to__*
42 *__elucidate.__ And yet, even among the nations, in which the law of allegiance is the most firmly established, the law*
43 *most pertinaciously enforced, there are striking deviations that demonstrate the invincible power of truth, and*
44 *the homage, which, under every modification of government, must be paid to the inherent rights of man....__The__*
45 *__doctrine is, that allegiance cannot be due to two sovereigns; and taking an oath of allegiance to a new, is the__*
46 *__strongest evidence of withdrawing allegiance from a previous, sovereign....__"*
47 *[Talbot v. Janson, 3 U.S. 133 (1795) (headnotes, not within case)]*

1     The implication of the preceding quote is that if allegiance derived from domicile and that derived from citizenship are in
2 conflict, then one has to take precedence because conflicting allegiances are not allowed.  The practical considerations of life
3 would lead most rational people to place the importance of allegiance from domicile above that of citizenship.

4     Citizenship and domicile are complementary aspects that fix a person's political affiliations, associations and relationships
5 under the First Amendment:

6    1.  "Nationality" (8 U.S.C. §1101(a)(21)) associates the individual with a group of people occupying a political community
7       called a "state".
8    2.  "Domicile" associates the individual with the government of local general jurisdiction in the area where he lives, and
9       thereby fixes his relationship to his immediate neighbors and his political rights in relation to those neighbors.  Domicile
10       requires the coincidence of intent with present or past physical presence.  This court cannot determine my "intent" or
11       compel me to consent, and therefore it cannot make me subject to its laws under Federal Rule of Civil Procedure 17(b)
12       without my explicit, informed, written consent, which do not and will not give.
13    3.  A human being whose "nationality" and "domicile" coincide and intersect within the same communities becomes a
14       "citizen".  If they do not match, then he becomes a "national" but not a "citizen" under 8 U.S.C. §1101(a)(21) and/or 8
15       U.S.C. §1101(a)(22)(B).  See the following link, section 2 for a complete and very thorough explanation of this:

> *Why You are a "national", "state national", and Constitutional but not Statutory Citizen*, Form #05.006
> http://sedm.org/Forms/FormIndex.htm

16
17     The table below, from the above link, describes the affect that changes in domicile have on citizenship status in the case
18 of both "foreign nationals" and "domestic nationals".  A "domestic national" is anyone born anywhere within any one
19 of the 50 states on nonfederal land or who was born in any territory or possession of the United States.  A "foreign
20 national" is someone who was born anywhere outside of these areas.  The jurisdiction mentioned in the right three
21 columns is the "federal zone".
22

**Table 2: Effect of domicile on citizenship status**

| Description | CONDITION | | |
| --- | --- | --- | --- |
| | Domicile WITHIN the FEDERAL ZONE and located in FEDERAL ZONE | Domicile WITHIN the FEDERAL ZONE and temporarily located abroad in foreign country | Domicile WITHOUT the FEDERAL ZONE and located WITHOUT the FEDERAL ZONE |
| Location of domicile | "United States" per 26 U.S.C. §§7701(a)(9) and (a)(10), 7701(a)(39), 7408(d) | "United States" per 26 U.S.C. §§7701(a)(9) and (a)(10), 7701(a)(39), 7408(d) | Without the "United States" per 26 U.S.C. §§7701(a)(9) and (a)(10), 7701(a)(39), 7408(d) |
| Physical location | Federal territories, possessions, and the District of Columbia | Foreign nations ONLY (NOT states of the Union) | Foreign nations states of the Union Federal possessions |
| Tax Status | "U.S. Person" 26 U.S.C. §7701(a)(30) | "U.S. Person" 26 U.S.C. §7701(a)(30) | "Nonresident alien individual" if a public officer in the U.S. government. 26 C.F.R. §1.1441-1(c)(3)(ii) "Non-resident NON-person" if NOT a public officer in the U.S. government |
| Tax form(s) to file | IRS Form 1040 | IRS Form 1040 plus 2555 | IRS Form 1040NR: "alien individuals", "nonresident alien individuals" No filing requirement: "non-resident NON-person" |
| Status if "national of the United States**" per 8 U.S.C. §1101(a)(22) | "national and citizen of the United States**" at birth" per 8 U.S.C. §1401 and "citizen of the United States**" per 8 U.S.C. §1101(a)(22)(A) if born in on federal territory. (Not required to file if physically present in the "United States" because no statute requires it) | Citizen abroad 26 U.S.C. §911 (Meets presence test) | "non-citizen National" if born in a state of the Union 8 U.S.C. §1408, 8 U.S.C. §1452, and 8 U.S.C. §1101(a)(22)(B)if born in a possession. |
| Status if FOREIGN "national" pursuant to 8 U.S.C. §1101(a)(21) | "Resident alien" 26 U.S.C. §7701(b)(1)(A) | "Resident alien abroad" 26 U.S.C. §911 (Meets presence test) | "Nonresident alien individual" if a public officer in the U.S. government. 26 C.F.R. §1.1441-1(c)(3)(ii) "Non-resident NON-person" if NOT a public officer in the U.S. government |

NOTES:
1. "United States" is defined as federal territory within 26 U.S.C. §§7701(a)(9) and (a)(10), 7701(a)(39), and 7408(d), and 4 U.S.C. §110(d). It does not include any portion of a Constitutional state of the Union.
2. The "District of Columbia" is defined as a federal corporation but not a physical place, a "body politic", or a de jure "government" within the District of Columbia Act of 1871, 16 Stat. 419, 426, Sec. 34. See: *Corporatization and Privatization of the Government*, Form #05.024; http://sedm.org/Forms/FormIndex.htm.
3. "nationals" of the United States of America who are domiciled outside of federal jurisdiction, either in a state of the Union or a foreign country, are "nationals" but not "citizens" under federal law. They also qualify as "nonresident aliens" under 26 U.S.C. §7701(b)(1)(B) if and only if they are engaged in a public office. See sections 4.11.2 of the *Great IRS Hoax*, Form #11.302 for details.
4. Temporary domicile in the middle column on the right must meet the requirements of the "Presence test" documented in IRS publications.
5. "FEDERAL ZONE"=District of Columbia and territories of the United States in the above table

6. The term "individual" as used on the IRS Form 1040 means an "alien" engaged in a "trade or business". All "taxpayers" are "aliens" engaged in a "trade or business". This is confirmed by 26 C.F.R. §1.1441-1(c)(3), 26 C.F.R. §1.1-1(a)(2)(ii), and 5 U.S.C. §552a(a)(2). Statutory "U.S. citizens" as defined in 8 U.S.C. §1401 are not "individuals" unless temporarily abroad pursuant to 26 U.S.C. §911 and subject to an income tax treaty with a foreign country. In that capacity, statutory "U.S. citizens" interface to the I.R.C. as "aliens" rather than "U.S. citizens" through the tax treaty.

## 8   The Foreign Sovereign Immunities Act Protects State Citizens from Changes in their Domicile and Citizenship by the Courts

The Legal Encyclopedia and other sources confirm that the U.S. government is a "foreign state" in relation to a state of the Union:

> *Foreign States:* "Nations outside of the United States...Term may also refer to another state; i.e. a sister state. The term 'foreign nations', ...should be construed to mean all nations and states other than that in which the action is brought; and hence, one state of the Union is foreign to another, in that sense."
> [Black's Law Dictionary, Sixth Edition, p. 648]

> "Generally, the states of the Union sustain toward each other the relationship of independent sovereigns or independent foreign states, except in so far as the United States is paramount as the dominating government, and in so far as the states are bound to recognize the fraternity among sovereignties established by the federal Constitution, as by the provision requiring each state to give full faith and credit to the public acts, records, and judicial proceedings of the other states..."
> [81A Corpus Juris Secundum (C.J.S.), United States, §29 (2003)]

Therefore, those serving as jurists or voters within a state of the Union amount to "agencies or instrumentalities of a foreign state" and are immune from federal jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §1602.

> *TITLE 28 > PART IV > CHAPTER 97 > § 1604*
> *§ 1604. Immunity of a foreign state from jurisdiction*
>
> *Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.*

A person such as a jurist or voter, who participates in the political affairs of a foreign sovereign, such as a state of the Union, is legally classified as an "agency or instrumentality of foreign state" under the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 et seq. Below is the description of what an "agency or instrumentality of a foreign state" is right off the Department of State Website:

> *Q. What is the difference between a foreign State, political subdivision, agency or instrumentality?*
>
> *A. Section 1330(a) of the Act gives federal district courts original jurisdiction in personam against foreign states, which are defined as including political subdivisions, agencies, and instrumentalities of foreign states. The Act provides distinct methods of service on a foreign state or political subdivision (28 USC 1608(a)) or service on an agency or instrumentality of a foreign state (28 USC 1608(b)). In order to serve the defendant, the claimant must determine into which category the defendant falls. If in doubt, a claimant should serve the defendant according to both sets of provisions. See Born & Westin. 340-344 (1989) and George, 19 Int'l Law. 51 (1985). The term "political subdivisions" includes all governmental units beneath the central government, including local governments according to the Act's legislative history. Section 1603(b) defines an "agency or instrumentality" of a foreign state as an entity*
>
> *(1) which is a separate legal person, corporate or otherwise, and*
> *(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and*
> *(3) which is neither a citizen of the a state of the United States as defined in Sec. 1332(c) and (d) nor created under the laws of any third country.*
>
> *An instrumentality of a foreign state includes a corporation, association, or other juridical person a majority of whose shares or other ownership interests are owned by the state, even when organized for profit. For a discussion of the responsibilities of states for the obligations of their instrumentalities, see Restatement (Third) of the Foreign Relations Law of the United States, Sec. 452, p. 399-401 (1986). See also, the legislative history of the Act at 1976 U.S. Code Cong. & Ad. News 6614-6618, in particular, which states in part: "[A]s a general matter, entities which meet the definition of an "agency or instrumentality of a foreign state" could assume a*

*variety of forms, organizations, such as a shipping line or an airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name. Id. at 6614. For a discussion of case law regarding the status of quasi-commercial entities in socialist states, see Born & Westin, p. 343-344 (1989); See also, Note, Breaking Out of the Capitalist Paradigm: The Significance of Ideology in Determining the Sovereign Immunity of Soviet and Eastern-Bloc Commercial Entities, 2 Hous. J. Int'l. L. 425 (1980); Note, Foreign Sovereign Immunity: Communist and Socialist Organizations - Effects of State's System of Property Ownership on Determination of Agency or Instrumentality Status Under the Foreign Sovereign Immunities Act of 1976, 9 Ga. J. Int'l & Comp. L. 111 (1979); But see, Yessenin-Bolpin v. Novosti Press Agency 443 F.Supp. 849, 852 (S.D.N.Y. 1978); Outboard Marine Corp. v. Pezetel, D.C. Del. 1978, 461 F.Supp. 384; Harris v. VAO Intourist Moscow, D.C. N.Y. 1979, 481 F.Supp. 1056; United Euram Corp. v. Union of Soviet Socialist Republics, D.C N.Y. 1978, 461 F.Supp. 609; S&S Mach. Co. v. Masinex export import, 706 F.2d. 411 (2d Cir.), cert. denied, 464 U.S. 850 (1983); Edlow Int'l Co. v. Nuklearna Elektrarna Krsko, 441 F Supp. 827 (D.D.C. 1977); Dayton v. Czechoslovak Socialist Republic, 834 F.2d. 203 (D.C. Cir. 1987).
[SOURCE: http://travel.state.gov/law/info/judicial/judicial_693.html]*

Therefore, courts of the United States may not interpose, especially in the political affairs of foreign sovereigns domiciled in states of the Union in the exercise of their political rights such as voting, jury service, citizenship, or choice of domicile. They may also not impute more than one domicile to a foreign sovereign, because under American legal jurisprudence, a person can have only ONE domicile:

*"**domicile**. A person's legal home. That place where a man has his true, fixed, and **permanent home** and principal establishment, and to which whenever he is absent he has **the intention of** returning. Smith v. Smith, 206 Pa.Super. 310, 213 A.2d. 94. Generally, physical presence within a state and **the intention** to make it one's home are the requisites of establishing a "domicile" therein. The permanent residence of a person or the place to which he **intends** to return even though he may actually reside elsewhere. **A person may have more than one residence but only one domicile**. The legal domicile of a person is important since it, rather than the actual residence, often controls the jurisdiction of the taxing authorities and determines where a person may exercise the privilege of voting and other legal rights and privileges."*
*[Black's Law Dictionary, Sixth Edition, p. 485]*

Some courts might try to ignorantly cite 28 U.S.C. §1603 as proof that a person born within and living within a state of the Union is NOT an agency or instrumentality of a foreign state:

*TITLE 28 > PART IV > CHAPTER 97 > § 1603*
*§ 1603. Definitions*

*For purposes of this chapter—*
*(a) A "foreign state", except as used in section 1608 of this title, includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).*
*(b) An "agency or instrumentality of a foreign state" means any entity—*
*    (1) which is a separate legal person, corporate or otherwise, and*
*    (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and*
*    (3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (d) of this title, nor created under the laws of any third country.*

The term "citizen of a State of the United States" refers to a person who is born within and living within a federal territory or possession. This is confirmed by the definition of "State" found in 4 U.S.C. §110(d):

*TITLE 4 > CHAPTER 4 > § 110*
*§ 110. Same: definitions*

*As used in sections 105–109 of this title—*

*[. . .]*

*(d) The term "State" includes any Territory or possession of the United States.*

The following pamphlet also exhaustively proves that a person born within a state of the Union rather than a federal territory or possession qualifies as a "national" but not a "citizen" under federal law, 8 U.S.C. §1101(a)(21) .

*Why You are a "national", "state national", and Constitutional but not Statutory Citizen*, Form #05.006
http://sedm.org/Forms/FormIndex.htm

Therefore, those born within or domiciled within states of the Union are "foreign" with respect to federal legislative jurisdiction and qualify as "foreign sovereigns" under the Foreign Sovereign Immunities Act (FSIA). Consequently, those domiciled in states of the Union:

1. Can only file under diversity of citizenship jurisdiction pursuant to Article III, Section 2 of the Constitution of the United States of America. Note that they may NOT assert diversity of citizenship pursuant to 28 U.S.C. §1332 because the "State" referred to in 28 U.S.C. §1332(d) is a federal territory or possession and NOT a state of the Union.

2. Enjoy sovereign immunity from the jurisdiction of federal courts, subject to the exceptions found in 28 U.S.C. §1605 relating mainly to commerce with the federal zone.

3. Are entitled to have their political choice of citizenship and domicile respected and recognized by every federal court. Any court that does not do this is involving itself in "political questions", and essentially is kidnapping the identity and domicile of the person and transporting it to the federal zone, in violation of 28 U.S.C. §1201.

4. Surrender their sovereignty if they voluntarily execute any contracts with the federal government, and especially those relating to commerce such as Social Security Form SS-5, IRS Form W-4, or IRS Form 1040.

5. Surrender their sovereignty and their constitutional rights and commit a crime under 28 U.S.C. §911 if they declare themselves to be "citizens of the United States" under federal law.

> *TITLE 18 > PART I > CHAPTER 43 > § 911*
> *§ 911, Citizen of the United States*
>
> *Whoever falsely and willfully represents himself to be a citizen of the United States shall be fined under this title or imprisoned not more than three years, or both.*

The U.S. Congress has actually encouraged sovereigns in states of the Union to lie about their citizenship status as described in item 5 above. Article III, Section 2 of the Constitution is the only avenue of redress in federal courts for those who are "nationals" but not "citizens" domiciled in states of the Union. 28 U.S.C. §1332 provides the equivalent of this portion of the Constitution in the case of ONLY federal territories and possessions, to exclude states of the Union. Paragraph (b) of that statute says that the minimum amount in controversy for a case involving a state sovereign citizen is $75,000. This effectively leaves no redress for those who are wronged by the IRS or the courts themselves if the monetary amounts involved are less than $75,000. Consequently, it prejudices the rights of those domiciled in federal territories and possessions in the case of wrongs committed by the federal government against them. This is the opposite of what one would expect. The very purpose that government was established was to protect the people it serves, and yet the people in the territories and possessions who are supposed to be protected by the federal government have no avenue of legal redress unless the wrongs are exorbitantly egregious. This statute need to be amended, because it essentially encourages people in states of the Union to misrepresent their citizenship and claim to be statutory "U.S. citizens" pursuant to 8 U.S.C. §1401 in order to be able to litigate their claims against the IRS or a corrupt federal agency.

## 9    Effect of Religious Beliefs on Domicile and Citizenship

Christians are not allowed to maintain an earthly domicile without committing idolatry. See:

> *Why Domicile and Becoming a "Taxpayer" Require Your Consent*, Form #05.002
> http://sedm.org/Forms/FormIndex.htm

Instead, their only Biblical domicile is Heaven. They are "Ambassadors" and/or "citizens" of Heaven" and they hold a public office in the affairs of their church and their God for the benefit of all mankind. Both the Bible and the Supreme Court admitted that you cannot owe primary allegiance to *two* sovereigns, and that is why the Black's Law Dictionary says you can only have domicile in ONE PLACE, which for Christians can be no place on earth.

> *"No servant can serve two masters ; for either he will hate the one and love the other, or else he will be loyal to the one and despise the other. You cannot serve God and mammon [government]."*
> *[Jesus [God] speaking in Luke 16:13, Bible, NKJV]]*

My sincerely held religious convictions establish that I as a believer cannot be a "citizen" or "subject" to any earthly government. Both of these statuses depend on a voluntary choice of domicile that is within the jurisdiction of a specific earthly government. You will also note that the result of exercising one's religious rights under the First Amendment implies the ability to allow one's religious views to impact their political affiliations as well. To conclude otherwise, is to interfere with the exercise of religious rights:

> *"For our citizenship is in heaven [primarily, and not earth], from which we also eagerly wait for the Savior, the Lord Jesus Christ"*
> *[Philippians 3:20, Bible, NKJV]*

> *"Come out from among them [the unbelievers]*
> *And be separate, says the Lord.*
> *Do not touch what is unclean,*
> *And I will receive you.*
> *I will be a Father to you,*
> *And you shall be my sons and daughters,*
> *Says the Lord Almighty."*
> *[2 Corinthians 6:17-18, Bible, NKJV]*

> *"Do not love the world or the things in the world. If anyone loves [is a citizen of] the world, the love of the Father is not in Him. For all that is in the world--the lust of the flesh, the lust of the eyes, and the pride of life--is not of the Father but is of the world. And the world is passing away, and the lust of it; but he who does the will of God abides forever."*
> *[1 John 2:15-17, Bible, NKJV]*

> *"Adulterers and adulteresses! Do you now know that friendship [and "citizenship"] with the world is enmity with God? Whoever therefore wants to be a friend [citizen or "taxpayer"] of the world makes himself an enemy of God."*
> *[James 4:4, Bible, NKJV]*

> *"Pure and undefiled religion before God and the Father is this: to visit orphans and widows in their trouble, and to keep oneself unspotted from the world [and the corrupted governments and laws of the world]."*
> *[James 1:27, Bible, NKJV]*

The Court should also note that the U.S. Supreme Court agreed that the choice of allegiance and domicile must be voluntary and uncoerced when it said:

> *"The citizen cannot complain, because he has voluntarily submitted himself to such a form of government. He owes allegiance to the two departments, so to speak, and within their respective spheres must pay the penalties which each exacts for disobedience to its laws. In return, he can demand protection from each within its own jurisdiction."*
> *[United States v. Cruikshank, 92 U.S. 542 (1875) [emphasis added]]*

The "citizen" they are talking about above is a domiciliary, not a "national". Here is the proof:

> *The writers upon the law of nations distinguish between a temporary residence in a foreign country for a special purpose and a residence accompanied with an intention to make it a permanent place of abode. The latter is styled by Vattel [in his book The Law of Nations as] "domicile," which he defines to be "a habitation fixed in any place, with an intention of always staying there." Such a person, says this author, becomes a member of the new society at least as a permanent inhabitant, and is a kind of citizen of the inferior order from the native citizens, but is, nevertheless, united and subject to the society, without participating in all its advantages. This right of domicile, he continues, is not established unless the person makes sufficiently known his intention of fixing there, either tacitly or by an express declaration. Vatt. Law Nat. pp. 92, 93. Grotius nowhere uses the word "domicile," but he also distinguishes between those who stay in a foreign country by the necessity of their affairs, or from any other temporary cause, and those who reside there from a permanent cause. The former he denominates "strangers," and the latter, "subjects." The rule is thus laid down by Sir Robert Phillimore:*

> *There is a class of persons which cannot be, strictly speaking, included in either of these denominations of naturalized or native citizens, namely, the class of those who have ceased to reside [maintain a domicile] in their native country, and have taken up a permanent abode in another. These are domiciled inhabitants. They have not put on a new citizenship through some formal mode enjoined by the law or the new country. They are de facto, though not de jure, citizens of the country of their [new chosen] domicile.*
> *[Fong Yue Ting v. United States, 149 U.S. 698 (1893)]*

## 10  Anyone may change their citizenship or domicile and no Court may interfere with that political choice

If a person decides that the laws and the people of the area in which he lives are injurious of his life, liberty, and property, then he is perfectly entitled to withhold his allegiance and shift his domicile to a place where better protection is afforded. When a person has allegiance and domicile to a place or society *other* than where he lives, then he is considered "foreign" in

that society and all people comprising that society become "foreigners" relative to him in such a case. He becomes a "transient foreigner" and the only laws that are obligatory upon him are the criminal laws and no other. Below is what the U.S. Supreme Court held about the right of people to choose to disassociate with such "foreigners" who can do them harm.  Note that they say the United States government has the right to exclude foreigners who are injurious.  This authority, it says, comes from the Constitution, which in turn was delegated by the Sovereign People.  The People cannot delegate an authority they do not have, therefore they must individually ALSO have this authority within their own private lives of excluding injurious peoples from their legal and political life by changing their domicile and citizenship.  This act of excluding such foreigners becomes what we call a "political divorce" and the result accomplishes the equivalent of "disconnecting from the government matrix":

> *"The government, possessing the powers which are to be exercised for protection and security, is clothed with authority to determine the occasion on which the powers shall be called forth; and its determinations, so far as the subjects affected are concerned, are necessarily conclusive upon all its departments and officers. If, therefore, the government of the United States, through its legislative department, considers the presence of foreigners of a different race in this country, who will not assimilate with us, to be dangerous to its peace and security, their exclusion is not to be stayed because at the time there are no actual hostilities with the nation of which the foreigners are subjects. The existence of war would render the necessity of the proceeding only more obvious and pressing. The same necessity, in a less pressing degree, may arise when war does not exist, and the same authority which adjudges the necessity in one case must also determine it in the other. In both cases its determination is conclusive upon the judiciary. If the government of the country of which the foreigners excluded are subjects is dissatisfied with this action, it can make complaint to the executive head of our government, or resort to any other measure which, in its judgment, its interests or dignity may demand; and there lies its only remedy.*
>
> *The power of the government to exclude foreigners from the country whenever, in its judgment, the public interests require such exclusion, has been asserted in repeated instances, [130 U.S. 581, 607]  and never denied by the executive or legislative departments.*
>
> *[. . .]*
>
> *The power of exclusion of foreigners being an incident of sovereignty belonging to the government of the United States as a part of those sovereign powers delegated by the constitution, the right to its exercise at any time when, in the judgment of the government, the interests of the country require it, cannot be granted away or restrained on behalf of any one. The powers of government are delegated in trust to the United States, and are incapable of transfer to any other parties. They cannot be abandoned or surrendered. Nor can their exercise be hampered, when needed for the public good, by any considerations of private interest. The exercise of these public trusts is not the subject of barter or contract."*
> [Chae Chan Ping v. U.S., 130 U.S. 581 (1889)]

Notice above the phrase:

> *"If the government of the country of which the foreigners excluded are subjects is dissatisfied with this action, it can make complaint to the executive head of our government, or resort to any other measure which, in its judgment, its interests or dignity may demand; and there lies its only remedy."*

The court is tacitly admitting that there is NO legal remedy in the case where a foreigner is expelled because the party expelling him has an absolute right to do so.  This right to expel harmful foreigners is just as true of what happens on a person's private property as it is to what they want to do with their ENTIRE LIFE, property, and liberty.  This same argument applies to us divorcing ourselves from the state where we live.  There is absolutely no legal remedy in any court and no judge has any discretion to interfere with your absolute authority to divorce not only the state, but HIM!  This is BIG, folks!  You don't have to prove that a society is injurious in order to disassociate from it because your right to do so is absolute, but  if you want or need a few very good reasons why our present political system is injurious that you can show to a judge or a court, read through chapter 2 of the free *Great IRS Hoax* book:

> *Great IRS Hoax*, Form #11.302, Chapter 2
> http://sedm.org/Forms/FormIndex.htm

If we divorce the society where we were born, do not abandon our nationality and allegiance to the state, but then choose a domicile in a place *other* than where we physically live and which is outside of any government that might have jurisdiction in the place where we live, then we become "transient foreigners" and here is the status the U.S. Supreme Court then attributes to us:

> *The writers upon the law of nations distinguish between a temporary residence in a foreign country for a special purpose and a residence accompanied with an intention to make it a permanent place of abode. The latter is*

*styled by Vattel [in his book The Law of Nations as] "domicile," which he defines to be "a habitation fixed in any place, with an intention of always staying there." Such a person, says this author, becomes a member of the new society at least as a permanent inhabitant, and is a kind of citizen of the inferior order from the native citizens, but is, nevertheless, united and subject to the society, without participating in all its advantages. This right of domicile, he continues, is not established unless the person makes sufficiently known his intention of fixing there, either tacitly or by an express declaration. Vatt. Law Nat. pp. 92, 93. Grotius nowhere uses the word "domicile," but he also distinguishes between those who stay in a foreign country by the necessity of their affairs, or from any other temporary cause, and those who reside there from a permanent cause. The former he denominates "strangers," and the latter "subjects." The rule is thus laid down by Sir Robert Phillimore:*

*There is a class of persons which cannot be, strictly speaking, included in either of these denominations of naturalized or native citizens, namely, the class of those who have ceased to reside [maintain a domicile] in their native country, and have taken up a permanent abode in another. These are domiciled inhabitants. They have not put on a new citizenship through some formal mode enjoined by the law or the new country. They are de facto, though not de jure, citizens of the country of their [new chosen] domicile.*
*[Fong Yue Ting v. United States, 149 U.S. 698 (1893)]*

We must remember that in America, the People, and not our public servants, are the Sovereigns. We The People, who are the Sovereigns, choose our associations and govern ourselves through our elected representatives.

*"The words 'people of the United States' and 'citizens,' are synonymous terms, and mean the same thing. They both describe the political body who, according to our republican institutions, form the sovereignty, and who hold the power and conduct the government through their representatives. They are what we familiarly call the 'sovereign people,' and every citizen is one of this people, and a constituent member of this sovereignty. ..." [Boyd v. State of Nebraska, 143 U.S. 135 (1892)]*

When those representatives cease to have our best interests or protection in mind, then we have not only a *right*, but a *duty*, according to our Declaration of Independence, to alter our form of self-government by whatever means necessary to guarantee our future security.

*"But when a long train of abuses and usurpations, pursuing invariably the same Object evinces a design to reduce them under absolute Despotism, it is their right, it is their duty, to throw off such Government, and to provide new Guards for their future security."*
*[Declaration of Independence]*

The lawful and most peaceful means of altering that form of government is simply to either choose another government or country that is already available elsewhere on the planet as our protector, or to use God's laws as the basis for your own self-government and protection, as suggested in this book. In effect, we are "firing" our local servants in government because they are not doing their job of protection adequately, and when we do this, we cease to have any obligation to pay for their services through taxation and they cease to have any obligation to provide any services. If we choose God and His laws as our form of government, then we choose Heaven as our domicile and our place of primary allegiance and protection. We then become:

1. "citizens of Heaven".
2. "nationals but not citizens" of the country in which we live.
3. Transient foreigners.
4. Ambassadors and ministers of a foreign state called Heaven.

## 11   Federal District, Circuit, and Tax Courts are Part of the Executive Branch instead of the Judicial Branch and therefore can only render political opinions and not orders

### 11.1   Introduction

The book *What Happened to Justice?* is available below:

> *What Happened to Justice?*, Form #06.012
> http://sedm.org/Forms/FormIndex.htm

The above book proves with overwhelming evidence, including over 5,800 pages of government documentation, the following facts about all federal courts:

1. That federal district, circuit, and even the U.S. Supreme Court's appellate but not original jurisdiction, are legislative Article IV territorial courts that, like Congress itself, have no jurisdiction within states of the Union.
2. That federal district and circuit courts are part of the *Executive*, and not *Judicial* Branch of the federal government.
3. That the federal government, excepting possibly the original jurisdiction Supreme Court, has been functioning without a Judicial Branch since the founding of this country in 1789.
4. That rulings of federal district, circuit, and U.S. Tax Courts are "opinions" and not "orders" in respect to persons domiciled in states of the Union.
5. That people domiciled within a state of the Union cannot lawfully serve as jurists in federal court.
6. That federal judges must reside on federal territory within the exterior limits of the judicial district in which they serve and are guilty of a high misdemeanor and may be impeached if they do not.
7. That legislative Article IV federal courts concern themselves exclusively with the "territory and other property of the United States" and do not concern themselves with the rights of persons.
8. That only those with some connection to federal property, including land, territory, franchises, or contracts, can lawfully appear before an Article IV court with a case or controversy. This is a natural consequence of the content of Article IV of the United States Constitution.

If any of the above facts and conclusions surprise you or are in dispute at this point, we strongly encourage you to obtain the CD version of the above book and refute the overwhelming physical evidence for yourself.

Based on the analysis found in the *What Happened to Justice?*, Form #06.012 *book*, any government court, employee, or officer who quotes rulings from federal courts against a person domiciled within a state of the Union is:

1. Engaging in "political questions" rather than "legal questions" or controversies.
2. Abusing federal case law and stare decisis as political propaganda that is irrelevant.
3. Trying to deceive the audience that are the target of such propaganda in order to deprive them of Constitutionally protected rights to life, liberty, and property.
4. Engaging in an unlawful deprivation of rights in violation of 42 U.S.C. §1983 which is an actionable tort.

This type of abuse of case law by government employees for "political and propaganda purposes" is commonplace in tax and other types of collection notices from state and federal governments. Frequently, the IRS and state revenue agencies will quote federal case law that is simply irrelevant to the recipient of the notice because he or she is domiciled within a state of the Union on other than federal territory. The fact that it is irrelevant is confirmed by:

1. The Rules of Decision Act, 28 U.S.C. §1652, which says on the subject:\

> *TITLE 28 > PART V > CHAPTER 111 > § 1652*
> *§ 1652. State laws as rules of decision*
>
> *The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.*

2. The rulings of the U.S. Supreme Court, which said on the subject:

> *"There is no Federal Common Law, and Congress has no power to declare substantive rules of Common Law applicable in a state. Whether they be local or general in their nature, be they commercial law or a part of the Law of Torts."*
> *[Erie Railroad v. Tompkins, 304 U.S. 64 (1938)]*

3. Black's Law Dictionary:

> *"Common law. As distinguished form statutory law created by the enactment of legislatures, the common law comprises the body of those principles and rules of action, relating to the government and security of persons and property, which derive their authority solely from usages and customs of immemorial antiquity, or from the judgments and decrees of the courts recognizing, affirming, and enforcing such usages and customs and, in this sense, particularly the ancient unwritten law of England. In general, it is a body of law that develops and derives through judicial decisions, as distinguished form legislative enactments. The "common law" is all the statutory and case law background of England and the American colonies before the American revolution. People v. Rehman, 253 C.A.2d. 119, 61 Cal.Rptr. 65, 85. It consists of those principles, usage and rules of action applicable to government and security of persons and property which do not rest for their authority upon any express and positive declaration of the will of the legislature. Bishop v. U.S., D.C.Tex., 334 F.Supp. 415, 418.*

*"Calif. Civil Code, Section 22.2, provides that the "common law of England, so far as it is not repugnant to or inconsistent with the Constitution of the United States, or the Constitution or laws of this State, is the rule of decision in all the courts of this State."*

*"In a broad sense, "common law" may designate all that part of the positive law, juristic theory, and ancient custom of any state or nation which is of general and universal application, thus marking off special or local rules or customs.*

*"For federal common law, see that title.*

*"As a compound adjective "common-law" is understood as contrasted with or opposed to "statutory," and sometimes also to "equitable" or to "criminal."*
*[Black's Law Dictionary, Sixth Edition, p. 276]*

It is the duty of vigilant Americans, federal judges, government employees, and government counsel to be alert for the abuse of case law as "political propaganda" and they should stop it immediately with appropriate citations of legal authority. If they do not, then there will be no end of further usurpations. Of this type of vigilance, the U.S. Supreme Court has held:

*"The necessity of preserving each [State of the Union] from every form of illegitimate [federal] intrusion or interference on the part of the other is so imperative as to require this court, when its judicial power is properly invoked, to view with a careful and discriminating eye any legislation challenged as constituting such an intrusion or interference. See South Carolina v. United States, 199 U.S. 437, 448, 26 S.Ct. 110; 4 Ann.Cas. 737."*
*[Charles C. Steward Machine Co. v. Davis, 301 U.S. 548 (1937)]*

---

*"It may be that it...is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way; namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance.  It is the duty of the courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachments thereon.  Their motto should be obsta principalis."*
*[Mr. Justice Brewer, dissenting, quoting Mr. Justice Bradley in Boyd v. United States, 116 U.S. 616, 29 L.Ed. 746, 6 Sup.Ct.Rep. 524]*
*[Hale v. Henkel, 201 U.S. 43 (1906)]*

## 11.2  District Court:  Article IV

United States District Courts, including all those situated within states of the Union, are established pursuant to Article IV of the United States Constitution.  Authorities documenting this fact include those below:

1.  There is no statute within Title 28 of the United States Code establishing any of them pursuant to Article III of the Constitution.
2.  When Congress wants to invoke Article III of the Constitution and directly confer Article III jurisdiction, they know EXACTLY how to do it.  Below is an example of such language expressly conferring Article III jurisdiction upon an earlier version of the Court of Claims prior to 1982.  The legislative notes under 28 U.S.C. §171 indicate that the Court of Claims originally was an Article III court but became an Article I court when the Court of Appeals for the Federal Circuit was created.  Since 1982, only TWO federal courts remain with Constitution Article III jurisdiction, which is the Court of International Trade and the U.S. Supreme Court's original and not appellate jurisdiction.

*28 U.S.C. §171 Legislative Notes*
*Amendments*

*1982—Pub. L. 97–164 designated existing provisions as subsec. (a), substituted "sixteen judges who shall constitute a court of record known as the United States Claims Court" for "a chief judge and six associate judges who shall constitute a court of record known as the United States Court of Claims" and "The court is declared to be a court established under article I of the Constitution of the United States" for "Such court is hereby declared to be a court established under article III of the Constitution of the United States" in subsec. (a) as so designated, and added subsec. (b).*

3.  The U.S. Supreme Court admitted they are established pursuant to Article IV of the Constitution:

> *"The United States District Court is not a true United States court established under Article III of the Constitution to administer the judicial power of the United States therein conveyed. It is created by virtue of the sovereign congressional faculty, granted under Article IV, Section 3, of that instrument, of making all needful rules and regulations respecting the territory belonging to the United States. The resemblance of its jurisdiction to that of true United States courts in offering an opportunity to nonresidents of resorting to a tribunal not subject to local influence, does not change its character as a mere territorial court."*
> *[Balzac v. Porto Rico, 258 U.S. 298, at 312, 42 S.Ct. 343, 66 L.Ed. 627 (1921), Chief Justice Taft, former President of the United States]*

4. Appeals Courts have admitted that United States District Courts are legislative courts, and that all of their authority derives only from acts of Congress, which implies that NONE of their authority derives directly from the Constitution of the United States.

> *"United States District Courts have only such jurisdiction as is conferred by an Act of Congress under the Constitution [U.S.C.A. Const. art. 3, sec. 2; 28 U.S.C.A. 1344]"*
> *[Hubbard v. Ammerman, 465 F.2d. 1169 (5th Cir. 1972)]*
> *[headnote 2. Courts]*

## 11.3  Tax Court: Freytag v. Commissioner, 501 U.S. 868 (1991)

Consistent with the previous section, even the U.S. Supreme Court has unconstitutionally jumped on the franchise/PLUNDER bandwagon by recognizing and thereby creating what it calls "The Fourth Branch of Government". This fictional entity is described by Justice Antonin Scalia in his concurring opinion within Freytag v. Commissioner, 501 U.S. 868 (1991), which deals with the U.S. Tax Court.

> *I must confess that, in the case of the Tax Court, as with some other independent establishments (notably, the so-called "independent regulatory agencies" such as the FCC and the Federal Trade Commission) permitting appointment of inferior officers by the agency head may not ensure the [501 U.S. 921] high degree of insulation from congressional control that was the purpose of the appointments scheme elaborated in the Constitution. That is a consequence of our decision in Humphrey's Executor v. United States, 295 U.S. 602 (1935), which approved congressional restriction upon arbitrary dismissal of the heads of such agencies by the President, a scheme avowedly designed to made such agencies less accountable to him, and hence he less responsible for them. Depending upon how broadly one reads the President's power to dismiss "for cause," it may be that he has no control over the appointment of inferior officers in such agencies; and if those agencies are publicly regarded as beyond his control -- __a "headless Fourth Branch"__ -- he may have less incentive to care about such appointments. It could be argued, then, that much of the raison d'etre for permitting appointive power to be lodged in "Heads of Departments," see supra at 903-908, does not exist with respect to the heads of these agencies, because they, in fact, will not be shored up by the President, and are thus not resistant to congressional pressures. That is a reasonable position -- though I tend to the view that adjusting the remainder of the Constitution to compensate for Humphrey's Executor is a fruitless endeavor. But, in any event, it is not a reasonable position that supports the Court's decision today -- both because __a "Cour[t] of Law" artificially defined as the Court defines it__ is even less resistant to those pressures, and because the distinction between those agencies that are subject to full Presidential control and those that are not is entirely unrelated to the distinction between Cabinet agencies and non-Cabinet agencies, and to all the other distinctions that the Court successively embraces. (The Central Intelligence Agency and the Environmental Protection Agency, for example, though not Cabinet agencies or components of Cabinet agencies, are not "independent" agencies in the sense of independence from Presidential control.) [501 U.S. 922] In sum, whatever may be the distorting effects of later innovations that this Court has approved, considering the Chief Judge of the Tax Court to be the head of a department seems to me the only reasonable construction of Article II, § 2.*
> *[Freytag v. Commissioner, 501 U.S. 868 (1991)]*

Here is how Justice Antonin Scalia describes the U.S. Tax Court, which is an administrative franchise/property court established under Article 1 of the United States Constitution per 26 U.S.C. §7441. His remarks by implication extend to other franchise courts that are part of the mysterious "Headless Fourth Branch" of administrative franchise courts and agencies:

1. It "exercises the executive power of the United States", and therefore is in the Executive Branch rather than the Judicial Branch. 501 U.S. 915.

2. It is an independent agency NOT within the Department of Treasury:

> *"Since __the Tax Court is not a court of law__, unless the Chief Judge is the head of a department, the appointment of the Special Trial Judge was void. __Unlike the Court, I think he is.__ [501 U.S. 915]*
>
> *I have already explained that __the Tax Court, like its predecessors, exercises the executive power of the United States__. This does not, of course, suffice to market a "Department[t]" for purposes of the Appointments Clause. __If__*

> *for instance, the Tax Court were a subdivision of the Department of the Treasury — as the Board of Tax*
> *Appeals used to be — it would not qualify. In fact, however, the Tax Court is a freestanding, self-contained*
> *entity in the Executive Branch, whose Chief Judge is removable by the President (and, save impeachment, no*
> *one else). Nevertheless, the Court holds that the Chief Judge is not the head of a department."*
> [Freytag v. Commissioner, 501 U.S. 868, 914-915 (1991)]

3.  It does NOT exercise <u>Constitutional</u> "judicial power", but rather statutory and ADMINISTRATIVE power, just like the I.R.S.

> *When the Tax Court was statutorily denominated an "Article I Court" in 1969, its judges did not magically acquire*
> *the judicial power. They still lack life tenure; their salaries may still be diminished; they are still removable by*
> *the President for "inefficiency, neglect of duty, or malfeasance in office." 26 U.S.C. § 7443(f). (In Bowsher v.*
> *Synar, supra at 729, we held that these latter terms are "very broad" and "could sustain removal . . . for any*
> *number of actual or perceived transgressions.") How anyone with these characteristics can exercise judicial*
> *power "independent . . . [of] the Executive Branch" is a complete mystery. It seems to me not entirely obvious that*
> *the Tax Court, like the Internal Revenue Service, the FCC, and the NLRB, exercises executive power. Amar,*
> *Marbury, Section 13, and the Original Jurisdiction of the Supreme Court, 56 U.Chi.L.Rev. 443, 451, n. 43 (1989).*
> *See also Northern Pipeline, 458 U.S. at 113 (WHITE, J., dissenting) (equating administrative agencies and Article*
> *I courts); Samuels, Kramer & Co. v. Commissioner, 930 F.2d. 975, 992-993 (CA2 1991) (collecting academic*
> *authorities for same proposition). [501 U.S. 913]*
> [Freytag v. Commissioner, 501 U.S. 868, 912 (1991)]

4.  The U.S. Tax Court is like every other administrative franchise/property court, in that it exercises administrative power within the Executive and not Judicial Branch:

> *The Tax Court is indistinguishable from my hypothetical Social Security Court. It reviews determinations by*
> *Executive Branch officials (the Internal Revenue Service) that this much or that much tax is owed -- a classic*
> *executive function. For 18 years its predecessor, the Board of Tax Appeals, did the very same thing, see H.*
> *Dubroff, The United States Tax Court 47-175 (1979), and no one suggested that body exercised "the judicial*
> *power." We held just the opposite:*

> *The Board of Tax Appeals is not a court. It is an executive or administrative board, upon the decision of which*
> *the parties are given an opportunity to base a petition for review to the courts after the administrative inquiry of*
> *the Board has been had and decided. Old [501 U.S. 912] Colony Trust Co. v. Commissioner, 279 U.S. 716, 725*
> *(1929) (Taft, C.J.). Though renamed "the Tax Court of the United States" in 1942, it remained "an independent*
> *agency in the Executive Branch," 26 U.S.C. ¶1100 (1952 ed.), and continued to perform the same function. As*
> *an executive agency, it possessed many of the accoutrements the Court considers "quintessentially judicial," ante*
> *at 891. It administered oaths, for example, and subpoenaed and examined witnesses, § 1114; its findings were*
> *reviewed "in the same manner and to the same extent as decisions of the district courts in civil actions tried*
> *without a jury," § 1141(a). This Court continued to treat it as an administrative agency, akin to the Federal*
> *Communications Commission (FCC) or the National Labor Relations Board (NLRB). See Dobson v.*
> *Commissioner, 320 U.S. 489, 495-501 (1943).*
> [Freytag v. Commissioner, 501 U.S. 868, 911-912 (1991)]

5.  Franchise courts adjudicate over "public monies", and these monies MUST BECOME public **BEFORE** a statutory franchise court can even lawfully entertain a petition for the services of the court. You must donate the monies, in fact, to a public use and a public office BEFORE they can even lawfully be reported to the IRS on an information return to begin with. Hence, those who go before the court must lawfully be serving in a public office and that office must be created and exist INDEPENDENT of any provision of the Internal Revenue Code and not be created BY the I.R.C. Tax Court Rule 13(a) says that ONLY "taxpayers", and hence "public officers" within the SAME branch as the U.S. Tax Court itself, can petition said court. 26 U.S.C. §§6901 and 6903 recognize, in fact, that those who petition said franchise court must be "transferees" over all property to be adjudicated, meaning that the property must ALREADY be public property before the court can even hear the matter:

> *It is no doubt true that all such bodies "adjudicate," i.e., they determine facts, apply a rule of law to those facts,*
> *and thus arrive at a decision. But there is nothing "inherently judicial" about "adjudication." To be a federal*
> *officer and to adjudicate are necessary but not sufficient conditions for the exercise of federal judicial power,*
> *as we recognized almost a century and a half ago.*

> *That the auditing of the accounts of a receiver of public moneys may be, in an enlarged sense, a judicial act,*
> *must be admitted. So are all those administrative duties the performance of which involves an inquiry into the*
> *existence of facts and the application to them of rules of law. In this sense the act of the President in calling out*
> *the militia under the act of 1795, [Martin v. Mott,] [501 U.S. 910] 12 Wheat. 19 [(1827)], or of a commissioner*
> *who makes a certificate for the extradition of a criminal, under a treaty, is judicial. But it is not sufficient to bring*
> *such matters under the judicial power, that they involve the exercise of judgment upon law and fact."*
> [Freytag v. Commissioner, 501 U.S. 868, 909-910 (1991)]

6. It is FRAUD on the part of the U.S. Supreme Court in the case of the majority opinion in Freytag, to identify the U.S. Tax Court as exercising "judicial power" in a constitutional sense, and by implication, to describe ANY franchise court as exercising such constitutional "judicial power". Hence, the I.R.C. itself may not operate in places protected by the Constitution, because the judicial power described is EXTRA-CONSTITUTIONAL. Therefore the I.R.C. can only operate upon federal territory, public officers within the government working on federal territory, and statutory but not constitutional "U.S. citizens" domiciled on federal territory WHEREVER physically situated:

> *Having concluded, against all odds, that "the Courts of Law" referred to in Article II, § 2, are not the courts of law established by Article III, the Court is confronted with the difficult problem of determining what courts of law they are. It acknowledges that they must be courts which exercise "the judicial power of the United States" and concludes that the Tax Court is such a court – even though it is not an Article III court. This is quite a feat, considering that Article III begins "The judicial Power of the United States" -- not "Some of the judicial Power of the United States," or even "Most of the judicial Power of the United States" -- "shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." Despite this unequivocal text, the Court sets forth the startling proposition that "the judicial power of the United States is not limited to the judicial power defined under Article III." Ante at 889. It turns out, however -- to our relief, I suppose it must be said -- that this is really only a pun. "The judicial power," as the Court uses it, bears no resemblance to the constitutional term of art we are all familiar with, but means only "the power to adjudicate in the manner of courts." So used, as I shall proceed to explain, the phrase covers an infinite variety of individuals exercising executive, rather than judicial, power (in the constitutional sense), and has nothing to do with the separation of powers or with any other characteristic that might cause one to believe that is what was meant by "the Courts of Law." As far as I can tell, the only thing to be said for this approach is that it makes the Tax [501 U.S. 909] Court a "Cour[t] of Law" -- which is perhaps the object of the exercise.*
> *[Freytag v. Commissioner, 501 U.S. 868, 908-909 (1991)]*

In addition to the problems duly noted by Justice Antonin Scalia in the above case, there are many other problems with the majority opinion in Freytag which they conveniently and deliberately ignored, such as:

1. Doesn't the U.S. Tax Court have to be in the Legislative and not Judicial Branch of the government, since Article 1, Section 8, Clause 1 of the Constitution delegates the power to lay AND collect ONLY to the Legislative Branch and not Executive Branch? The Constitution forbids delegating powers of one branch to any other branch. The delegation of the taxation to any branch outside the legislative branch separates the taxation and representation function between two branches of the government and therefore violates the separation of Powers doctrine and the purpose for establishing said government to begin with: That taxation and representation should coincide in the SAME physical person in the House of Representatives.

> *". . .a power definitely assigned by the Constitution to one department can neither be surrendered nor delegated by that department, nor vested by statute in another department or agency. Compare Springer v. Philippine Islands, 277 U.S. 189, 201, 202, 48 S.Ct. 480, 72 L.Ed. 845."*
> *[Williams v. U.S., 289 U.S. 553, 53 S.Ct. 751 (1933)]*

2. If the U.S. Tax Court really does exercise "judicial power", then how can they issue declaratory judgments about taxes, which are prohibited by 28 U.S.C. §2201(a)? The Freytag case says *"section 7443A(b) of the Internal Revenue Code specifically authorizes the Chief Judge of the Tax Court to assign four categories of cases to special trial judges: '(1) any declaratory judgment proceeding,'"* and yet 28 U.S.C. §2201(a) forbids declaratory judgments for a REAL court exercising REAL "judicial power". Here is an example of that prohibition upon a District Court, whereby someone wanted to be declared a "nontaxpayer":

> *Specifically, Rowen seeks a declaratory judgment against the United States of America with respect to "whether or not the plaintiff is a taxpayer pursuant to, and/or under 26 U.S.C. §7701(a)(14)." (See Compl. at 2.) This Court lacks jurisdiction to issue a declaratory judgment "with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986," a code section that is not at issue in the instant action. See 28 U.S.C. §2201; see also Hughes v. United States, 953 F.2d 531, 536-537 (9th Cir. 1991) (affirming dismissal of claim for declaratory relief under § 2201 where claim concerned question of tax liability). Accordingly, defendant's motion to dismiss is hereby GRANTED, and the instant action is hereby DISMISSED. [Rowen v. U.S., 05-3766MMC, (N.D.Cal. 11/02/2005)]*

Obviously, 28 U.S.C. §2201(a) can only pertain to public officers called "taxpayers" petitioning the court, and not to ALL people or even PRIVATE people protected by the Constitution. As a practical matter, it is a violation of the legislative intent of the Constitution for Congress to enact any law that interferes with or prevents the protection of PRIVATE rights that are the ONLY reason why governments were created to begin with. The clear message from the covetous courts and their self-serving interpretation of 28 U.S.C. §2201(a) is summarized by the following:

*"If you want to be our cheap whore who bends over for free, we'll issue a declaratory judgment telling you how many times and for how long you have to bend over for us. We'll even coach you on how much you have to pay U.S. for the PRIVILEGE of engaging in such a wonderful activity, which we call a 'benefit'/franchise. However, we ain't NEVER going to admit, even though its true, that:*

1. *No one has the power to compel you to BE a whore called a 'taxpayer' and if they do, it's involuntary servitude.*
2. *"Nontaxpayers" even exist.*
3. *Not everyone is a "taxpayer".*
4. *There is any such thing as private rights or private property.*
5. *We have the power or even the desire to protect private rights by calling you a "nontaxpayer".*
6. *No one in a state of the Union protected by the Constitution can lawfully be a statutory "taxpayer".*
7. *The U.S. Tax Court cannot lawfully hear the case of a 'nontaxpayer', but rather has to dismiss such as case and end the collection activity.*

*In short, we will NEVER satisfy the purpose of the creation of the government, which is the protection of PRIVATE rights and PRIVATE property. Instead, we will use every opportunity to adjudicate as a means to create our own little fiefdom by turning EVERYTHING into a privilege, converting all rights to privileges, and force you to waive all your rights before you can get any kind of remedy at all from the imperial judiciary. It's our way or the highway. You will either lick the hands that feed and LOVE IT, or we will destroy your commercial identity and implement genocide of you and your family until you do."*

3. The U.S. Supreme Court places the U.S. Tax Court OUTSIDE even the U.S. Treasury and says it is completely independent of said department. By what authority is a NEW department outside the existing Executive, Legislative, and Judicial Branches created?
   3.1. Is this what you call a "supernatural power", because it is not expressly created by the NATURAL human beings who penned the Constitution and delegated authority to the federal government to begin with?
   3.2. If it is a "supernatural being" with powers superior to the human beings who created it, isn't this a violation of the requirement for equal protection and equal treatment that is the foundation of the United States Constitution?
4. By what legal authority are the public offices supervised by this unconstitutional "Fourth Branch" created?
5. Where within the franchise agreements themselves does it expressly say that these public offices can lawfully be exercised? 4 U.S.C. §72 says these offices may be exercised ONLY in the District of Columbia and not elsewhere, which means they cannot be exercised within the borders of a state of the Union.
6. Aren't those who are NOT lawfully serving in public offices within this branch committing the crime of impersonating a public office per 18 U.S.C. §912 to even participate? Doesn't the U.S. Tax Court itself become a party to a conspiracy to commit this crime if it does not at least verify the lawful creation of the public office being supervised?
7. Is filling out a IRS Forms W-4 or 1040 an act of electing oneself into a public office by consenting to fill the office?
   7.1. By what authority are such elections held?
   7.2. By what Constitutional authority can people consent to join the fictitious Fourth Branch of government?
8. By what constitutional authority can those charged with protecting PRIVATE rights abuse their authority to compel EVERYONE to convert them to PUBLIC rights? Isn't it TREASON to make a business out abusing the legislation and "selective enforcement" to accomplish the OPPOSITE end of the creation of government to begin with?
9. How can the government create a Fourth Branch of government that behaves as a state-sponsored religion using nothing but judicial fiat and prima facie evidence (1 U.S.C. §204), make this religion the worship of civil rulers instead of the living God, and compel payment of tithes to this fake religion without violating the First Amendment establishment clause by creating a state-sponsored religion? The Religious Freedom Restoration Act applies EVERYWHERE, including federal territory and within government itself. See 42 U.S.C. Chapt. 21B.

*"The "establishment of religion" clause of the First Amendment means at least this: **neither a state nor the Federal Government can set up a church**. Neither can pass laws which aid one [state-sponsored political] religion, and all religions, or prefer one religion over another. Neither can force or influence a person to go to or to remain away from church against his will, or force him to profess a belief or disbelief in any religion. No person can be punished for entertaining or professing religious beliefs or disbeliefs, for church attendance or non-attendance. **No tax in any amount, large or small, can be levied to support any religious activities or institutions, whatever they may be called, or whatever form they may adopt to teach or practice religion. Neither a state nor the Federal Government can, openly or secretly, participate in the affairs of any religious organizations or groups and vice versa.**"*
*[Everson v. Bd. of Ed., 330 U.S. 1, 15 (1947)]*

10. Isn't it a violation of the separation of powers to FORCE EVERYONE into a public office in the Executive Branch as a statutory "taxpayer", and thereby to effectively:
    10.1. Replace a de jure government with a de facto government?
    10.2. Eliminate all PRIVATE rights and replace them with PUBLIC rights?

10.3. Convert all PRIVATE property into PUBLIC property, in one massive instance of "eminent domain"?

10.4. Outlaw personal responsibility by forbidding people from governing their own lives and forcing them to ask for permission to do ANYTHING from a judicial and administrative oligarchy.

10.5. Concentrate all power and sovereignty to what amounts to a private, de facto, for profit corporation monopoly called the "United States".

10.6. Make it impossible for a private person to get a remedy in ANY court in which franchise participation is at issue, because all potential jurists are receiving bribes from the franchise and possibly even participating unlawfully.

11. Isn't it a violation of the constitutional requirement for equal protection and the equivalent of a "bill of attainder" to, on the one hand provide an essentially ADMINISTRATIVE remedy to those who are statutory "taxpayers", and yet to NOT provide an equally convenient JUDICIAL remedy to those who are PRIVATE parties and "nontaxpayers"? There is no equivalent court for "nontaxpayers" and U.S. Tax Court Rule 13(a) prohibits these parties from even petitioning the franchise court. The only place PRIVATE parties who are "nontaxpayers" can go is a state court. This is rather scandalous, considering that the MAIN purpose for establishing government to begin with is to protect PRIVATE rights and CONSTITUTIONAL rights, and yet there IS not court within the federal government that can even entertain a suit or provide a remedy for such a person. Hence, there IS no real government at the federal level. The only way you can approach Uncle, in short, is as a privileged statutory "employee" or public officer who has no rights and works as a cheap whore for Uncle without compensation. To add insult to injury, this privileged state of affairs is termed a "benefit" for which you "owe" from a tax to sustain.

> "It has long been established that a State may not impose a penalty upon those who exercise a right guaranteed by the Constitution." Frost & Frost Trucking Co. v. Railroad Comm'n of California, 271 U.S. 583. "Constitutional rights would be of little value if they could be indirectly denied,' Smith v. Allwright, 321 U.S. 649, 644, or manipulated out of existence,' Gomillion v. Lightfoot, 364 U.S. 339, 345."
> [Harman v. Forssenius, 380 U.S. 528 at 540, 85 S.Ct. 1177, 1185 (1965)]

12. How did the monies being adjudicated become "public monies" in the case of those who are private parties and NOT public officers and who are the victim of false information returns that the IRS refuses its legal duty to correct?

> "Men are endowed by their Creator with certain unalienable rights,-'life, liberty, and the pursuit of happiness;' and to 'secure,' not grant or create, these rights, governments are instituted. That property [or income] which a man has honestly acquired he retains full control of, subject to these limitations: First, that he shall not use it to his neighbor's injury, **and that does not mean that he must use it for his neighbor's benefit [e.g. SOCIAL SECURITY, Medicare, and every other public "benefit"]**; second, that if he devotes it to a public use, he gives to the public a right to control that use; and third, that whenever the public needs require, the public may take it upon payment of due compensation."
> [Budd v. People of State of New York, 143 U.S. 517 (1892)]

You might want to ask some of these questions if you ever end up in front of the kangaroo U.S. Tax Court.

## 11.4  Courts hearing income tax matters are acting in an "administrative" and not "judicial" capacity as part of the Executive and not Judicial Branch[1]

This section will prove that:

1. The term "Internal" within the phrase "INTERNAL Revenue Service" means INTERNAL to the Executive Branches of the United States government and NOT internal to states of the Union.

2. Any court which is officiating over an income tax matter is:

   2.1. Engaging in "political questions".

   2.2. Acting as an administrative agency within the Executive Branch because it is engaging in "political questions" and because it is interfering with the activities of "public officers" within other branches of the government.

   2.3. Not exercising true "judicial power" within the meaning of the U.S. Constitution Article III, regardless of the origins of its authority as an Article III court.

3. Since courts exercising true "judicial power" within the meaning of the U.S. Constitution Article III may not engage in political questions, then they may not interfere with the collection of taxes associated with a "public office" or a "trade or business". This, in fact, is the basis:

---

[1] Adapted from: *Government Instituted Slavery Using Franchises*, Form #05.030, Section 21.6; http://sedm.org/Forms/FormIndex.htm.

3.1. For the authority of the Anti Injunction Act, 26 U.S.C. §7421: The judicial branch may not lawfully intrude on the internal affairs of the other two branches of the government.

3.2. For prohibiting federal courts from making declaratory judgments in relation to "taxes" under the authority of 28 U.S.C. §2201(a).

4. Compelling a person against their will to become a "public officer" or statutory "employee" (per 5 U.S.C. §2105) within the Executive Branch of the government, which is what a "taxpayer" is, represents a denial of the ONLY guarantee MANDATED within the U.S. Constitution of providing a "republican form of government". See U.S. Const. Art. 4, Section 4. A republican form of government requires separation of powers, and forcing everyone into becoming a "franchisee" and an "employee" within the U.S. Government:

4.1. Destroys the separation of powers between the state and federal government by making everyone into federal officers.

4.2. Destroys the separation between what is "public" and what is "private" by connecting everything to the public office using the Social Security Number, which is a license number to act as a trustee, fiduciary, and public officer of the U.S. government.

4.3. Effectively imposes imminent domain over all private property and brings it under the control of the federal government by connecting it with public property called a "Social Security Number". 20 C.F.R. §422.104 says that the Social Security Number and the card are property of the U.S. government and not the person carrying it. You cannot use this "public property" for a "private use" because that would be embezzlement and impersonating a public officer. Therefore, everything you connect the "trustee license number" to becomes "private property donated to a temporary public use to procure the benefit of a federal franchise".

We showed in *Why Your Government is Either a Thief or You are a "Public Officer" for Income Tax Purposes*, Form #05.008 that all taxpayer "franchisees" are "officers" and/or statutory "employees" (per 5 U.S.C. §2105) of the government. I.R.C. Subtitles A and C are franchises that apply only to those acting as "public officers" for the U.S. government. They are excise taxes upon an "activity" called a "trade or business", which is defined in 26 U.S.C. §7701(a)(26) as "the functions of a public office". As such:

1. The tax is upon "public offices" of the United States, all of whom are in the Executive Branches of the government. This branch of government are what is called the "political branch".

2. The tax is only upon federal "offices" and/or statutory "employees" (per 5 U.S.C. §2105).

   2.1. It is not upon state officers. If it were on state offices, then a violation of the separation of powers and a criminal conflict of interest occurs.

   2.2. The tax is NOT upon the OFFICER, but the OFFICE. The OFFICER and the OFFICE become connected ONLY through the mutual informed and voluntary consent of both the government and the OFFICER. This process is called a lawful "election" or "appointment". You're a USEFUL IDIOT if you volunteer for such an office in exchange for a criminal federal bribe such as a "benefit". Its also illegal to entice private people not already lawfully serving in public offices to assume the duties of the office by accepting the bribe and thereby effectively and unilaterally "electing" themselves into public office.

   For details on the above, see:

   *Why Your Government is Either a Thief or You are a "Public Officer" for Income Tax Purposes*, Form #05.008
   http://sedm.org/Forms/FormIndex.htm

3. The tax can only be imposed or collected where these "public offices" are lawfully established and exercised by law. 4 U.S.C. §72 requires that all public offices shall be exercised in the District of Columbia and NOT elsewhere except "as expressly provided by law". Congress has never enacted any law that "expressly extends" any public office that is the subject of I.R.C. Subtitles A and C taxes to any place within any state of the Union or to any place outside of federal territory not within any state. That is why

   3.1. The term "United States" is defined within 26 U.S.C. §7701(a)(9) and (a)(10) for the purposes of I.R.C. Subtitles A and C to mean the District of Columbia and no part of any state of the Union.

   3.2. 26 U.S.C. §7701(a)(39) and 26 U.S.C. §7408(d) moves the effective domicile of all "U.S. citizens" and "U.S. residents" to the District of Columbia for the purposes of judicial jurisdiction.

4. The tax is only upon federal "offices" and/or statutory "employees" (per 5 U.S.C. §2105) while they lawfully serve "abroad", which means in a foreign country that is NOT a state of the Union pursuant to 26 U.S.C. §911.

   4.1. There is *no provision* within the I.R.C. that EXPRESSLY imposes a tax upon "citizens or residents of the United States" while they are NOT "abroad", and therefore they don't owe a tax when geographically located "domestically". By "domestic", we mean within the "United States" (District of Columbia).

   4.2. 26 U.S.C. §911 expressly imposes a tax upon "citizens and residents of the United States" while abroad. What these two entities have in common is a legal "residence" within the "United States", which is defined as the District

of Columbia in 26 U.S.C. §7701(a)(9) and (a)(10) and nowhere extended to any state of the Union within the I.R.C. These statutory "citizens" and "residents" all work for the U.S. government as officers and employees because while they are on official duty, they are representing a federal corporation and take on the character of that corporation. That corporation, in turn, is a statutory (per 8 U.S.C. §1401) but not constitutional "citizen" of the place it was incorporated, which is the District of Columbia.

> *"A corporation is a citizen, resident, or inhabitant of the state or country by or under the laws of which it was created, and of that state or country only."*
> *[19 Corpus Juris Secundum (C.J.S.), Corporations, §886]*

For further details on the nature of I.R.C. Subtitle A as an excise tax upon "public offices" in the United States government, see:

> The "Trade or Business" Scam, Form #05.001
> http://sedm.org/Forms/FormIndex.htm

The Constitution, Article 1, Section 8, Clause 1 confers the power to both LAY and COLLECT taxes upon the Legislature, and not upon any other branch.

> *U.S. Constitution*
> *Article 1, Section 8, Clause 1*

> *The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States;*

Note that the above clause delegates BOTH laying AND collecting in the *same person* in the *Congress*. This is the basis for "taxation **with** representation".

1. Recall that the American revolution was fought BECAUSE of taxation WITHOUT representation.
2. This power may *not* lawfully be delegated to another branch, including the Judiciary or anyone in the Executive Branch, in the context of anything having to do with a state of the Union.
3. If it *is* delegated to another branch, can only be delegated in the context of tax collection or enforcement INTERNAL to the federal government itself and INTERNAL to federal territory where the Constitution does NOT apply.

A court which interferes with the collection or assessment of taxes is interfering with the exclusive functions delegated by the Constitution to the Executive Branch, which it cannot lawfully do and which is a strictly "political question". Here is the way the U.S. Supreme Court stated it:

> *". . .a power definitely assigned by the Constitution to one department can neither be surrendered nor delegated by that department, nor vested by statute in another department or agency. Compare Springer v. Philippine Islands, 277 U.S. 189, 201, 202, 48 S.Ct. 480, 72 L.Ed. 845."*
> *[Williams v. U.S., 289 U.S. 553, 53 S.Ct. 751 (1933)]*

Consequently, tax collection is a "political" function that is inherently non-judicial in nature. On the subject of taxes and the enforcement of lawful collection in a court of law, the U.S. Supreme Court has furthermore held that:

1. Any subject of litigation which can be delegated to an Article I administrative agency such as U.S. Tax Court does not involve the "judicial power" of the government.

> *"The view under discussion-that, Congress having consented that the United States may be sued, the judicial power defined in article 3 at once attaches to the court authorized to hear and determine the suits-must then be rejected, for the further reason, or, perhaps, what comes to the same reason differently stated, that it cannot be reconciled with the limitation fundamentally implicit in the constitutional separation of the powers, namely, that a power definitely assigned by the Constitution to one department can neither be surrendered nor delegated by that department, nor vested by statute in another department or agency. Compare Springer v. Philippine Islands, 277 U.S. 189, 201, 202, 48 S.Ct. 480, 72 L.Ed. 845. And since Congress, whenever it thinks proper, undoubtedly may, without infringing the Constitution, confer upon an executive officer or administrative board, or an existing or specially constituted court, or retain for itself, the power to hear and determine controversies respecting claims against the United States, it follows indubitably that such power, in whatever guise or by whatever agency exercised, is no part of the judicial power vested in the constitutional courts by the third*

*article. That is to say, a power which may be devolved, at the will of Congress, upon any of the three departments, plainly is not within the doctrine of the separation and independent exercise of governmental powers contemplated by the tripartite distribution of such powers. Compare Kilbourn v. Thompson, 103 U.S. 168, 190-191, 26 L.Ed. 377.*
[Williams v. U.S., 289 U.S. 553, 53 S.Ct. 751 (1933)]

Therefore, at least in the context of "taxes", regardless of what federal court the dispute is being heard in, the courts are operating in an "administrative mode" as part of the Legislative rather than Judicial branch of the government, even if the judges themselves are ordained as Article III judges.

2. All tax subjects are "political" in nature.

*"Thus, the Court has frequently held that domicile or residence, more substantial than mere presence in transit or sojourn, is an adequate basis for taxation, including income, property, and death taxes. Since the Fourteenth Amendment makes one a citizen of the state wherein he resides, the fact of residence creates universally reciprocal duties of protection by the state and of allegiance and support by the citizen. The latter obviously includes a duty to pay taxes, and their nature and measure is largely a political matter. Of course, the situs of property may tax it regardless of the citizenship, domicile, or residence of the owner, the most obvious illustration being a tax on realty laid by the state in which the realty is located."*
[Miller Brothers Co. v. Maryland, 347 U.S. 340 (1954)]

Note the phrase "their nature and measure is largely a "political matter".

3. The Judicial Branch is the only branch of the three branches of government that is NOT "political" and is prohibited from involving itself in "political questions".

*"But, fortunately for our freedom from political excitements in judicial duties, this court [the U.S. Supreme Court] can never with propriety be called on officially to be the umpire in questions merely political. The adjustment of these questions belongs to the people and their political representatives, either in the State or general government. These questions relate to matters not to be settled on strict legal principles. They are adjusted rather by inclination, or prejudice or compromise, often.*

*[. . .]*

*Another evil, alarming and little foreseen, involved in regarding these as questions for the final arbitrament of judges would be that, in such an event, all political privileges and rights would, in a dispute among the people, depend on our decision finally. We would possess the power to decide against, as well as for, them, and, under a prejudiced or arbitrary judiciary, the public liberties and popular privileges might thus be much perverted, if not entirely prostrated. But, allowing the people to make constitutions and unmake them, allowing their representatives to make laws and unmake them, and without our interference as to their principles or policy in doing it, yet, when constitutions and laws are made and put in force by others, then the courts, as empowered by the State or the Union, commence their functions and may decide on the rights which conflicting parties can legally set up under them, rather than about their formation itself. Our power begins after theirs [the Sovereign People] ends. Constitutions and laws precede the judiciary, and we act only under and after them, and as to disputed rights beneath them, rather than disputed points in making them. We speak what is the law, jus dicere, we speak or construe what is the constitution, after both are made, but we make, or revise, or control neither. The disputed rights beneath constitutions already made are to be governed by precedents, by sound legal principles, by positive legislation [e.g. "positive law"], clear contracts, moral duties, and fixed rules; they are per se questions of law, and are well suited to the education and habits of the bench. But the other disputed points in making constitutions, depending often, as before shown, on policy, inclination, popular resolves and popular will and arising not in respect to private rights, not what is meant and team, but in relation to politics, they belong to politics, and they are settled by political tribunals, and are too dear to a people bred in the school of Sydney and Russel for them ever to intrust their final decision, when disputed, to a class of men who are so far removed from them as the judiciary, a class also who might decide them erroneously, as well as right, and if in the former way, the consequences might not be able to be averted except by a revolution, while a wrong decision by a political forum can often be peacefully corrected by new elections or instructions in a single month; and if the people, in the distribution of powers under the constitution, should ever think of making judges supreme arbiters in political controversies when not selected by nor, frequently, amenable to them nor at liberty to follow such various considerations in their judgments as [48 U.S. 53] belong to mere political questions, they will dethrone themselves and lose one of their own invaluable birthrights; building up in this way -- slowly, but surely -- a new sovereign power in the republic, in most respects irresponsible and unchangeable for life, and one more dangerous, in theory at least, than the worst elective oligarchy in the worst of times. Again, instead of controlling the people in political affairs, the judiciary in our system was designed rather to control individuals, on the one hand, when encroaching, or to defend them, on the other, under the Constitution and the laws, when they are encroached upon. And if the judiciary at times seems to fill the important station of a check in the government, it is rather a check on the legislature, who may attempt to pass laws contrary to the Constitution, or on the executive, who may violate both the laws and Constitution, than on the people themselves in their primary capacity as makers and amenders of constitutions."*
[Luther v. Borden, 48 U.S. 1 (1849)]

Here is another example of the above phenomenon, from the United States Constitution annotated:

*The Public Rights Distinction*

*"That is, "public" rights are, strictly speaking, those in which the cause of action inheres in or lies against the Federal Government in its sovereign capacity, the understanding since Murray's Lessee. However, to accommodate Crowell v. Benson, Atlas Roofing, and similar cases, seemingly private causes of action between private parties will also be deemed "public" rights, when Congress, acting for a valid legislative purpose pursuant to its Article I powers, fashions a cause of action that is analogous to a common-law claim and so closely integrates it into a public regulatory scheme that it becomes a matter appropriate for agency resolution with limited involvement by the Article III judiciary. (82)"*

*[Footnote 82: Granfinanciera, S.A. v. Nordberg, 492 U.S. at 52-54. The Court reiterated that the Government need not be a party as a prerequisite to a matter being of "public right." Id. at 54. Concurring, Justice Scalia argued that public rights historically were and should remain only those matters to which the Federal Government is a party. Id. at 65.]*
*[Annotated Constitution, Year 2002, p. 640.*
*SOURCE: http://www.gpoaccess.gov/constitution/pdf2002/013.pdf]*

Based on the foregoing, whenever a court is hearing any matter relating to income taxation, then they are:

1. Not part of the judicial branch of the government.
2. Engaging in "political questions".
3. Acting as an administrative agency within the Executive Branch because it is engaging in "political questions" and because it is interfering with the activities of "public officers" within other branches of the government.
4. Not exercising true "judicial power" within the meaning of the U.S. Constitution Article III, regardless of the origins of its authority as an Article III court.
5. Engaging in criminal identify theft and kidnapping to take jurisdiction over such a matter if you are not, in fact lawfully serving in a public office in the U.S. government and administering a public right as part of such office. Note that tax forms and statutes DO NOT, in fact, create any new public offices, but simply regulate the exercise of EXISTING public offices lawfully created by means other than the tax code itself, such as under Title 5 of the U.S. Code.

Recognizing the above constraints imposed by the separation of powers between branches of the government, the Congress has enacted the following:

1. The Anti-Injunction Act, 26 U.S.C. §7421, prohibits federal courts from enjoining the assessment or collection of income taxes.
2. The Declaratory Judgments Act, 28 U.S.C. §2201(a) prohibits courts from declaring rights or status in the context of federal income taxes.

Both of these acts would be unconstitutional if used to adversely affect or undermine the rights of a person who is a *nontaxpayer*, which we define as a person who is *not* the "taxpayer" defined in 26 U.S.C. §7701(a)(14) and 26 U.S.C. §1313. This was confirmed by the federal courts when they said:

*"The revenue laws are a code or system in regulation of tax assessment and collection. They relate to taxpayers, and not to nontaxpayers. The latter are without their scope. No procedure is prescribed for nontaxpayers, and no attempt is made to annul any of their rights and remedies in due course of law. With them Congress does not assume to deal, and they are neither of the subject nor of the object of the revenue laws..."*
*[Long v. Rasmussen, 281 F. 236 (1922)]*

*"Revenue Laws relate to taxpayers [officers, employees, and elected officials of the Federal Government] and not to non-taxpayers [American Citizens/American Nationals not subject to the exclusive jurisdiction of the Federal Government]. The latter are without their scope. No procedures are prescribed for non-taxpayers and no attempt is made to annul any of their Rights or Remedies in due course of law. With them[non-taxpayers] Congress does not assume to deal and they are neither of the subject nor of the object of federal revenue laws."*
*[Economy Plumbing & Heating v. U.S., 470 F.2d. 585 (1972)]*

Courts may not undermine the Constitutional rights of those domiciled in places protected by the Constitution and the Bill of Rights without violating their oath to support and defend the Constitution. A consequence of this fact is that they may not engage in any of the following self-serving activities:

1. Declare a person who is a "nontaxpayer" as instead being a "taxpayer". The Declaratory Judgments Act, 28 U.S.C. §2201(a) prohibits all such presumptions or declarations by the court. Therefore, a person who declares under penalty of perjury that he is a "nontaxpayer" not domiciled in the "United States" must be presumed by the court and the government to be such from that point on.

2. Self-servingly presume that *everyone* is a franchisee called a "taxpayer". All such presumptions which prejudice constitutional rights are unconstitutional. See:

> *Presumption: Chief Weapon for Unlawfully Enlarging Federal Jurisdiction*, Form #05.017
> http://sedm.org/Forms/FormIndex.htm

3. Refuse to acknowledge the existence of "nontaxpayers". This perpetuates the false presumption that everyone is a "taxpayer".

4. Compel a person to accept the duties of a franchisee called a "taxpayer" or a "public officer" without any PROVEN compensation or benefit. This constitutes slavery in violation of the Thirteenth Amendment.

5. Refuse "nontaxpayers" the ability to discuss laws in front of the jury that prove the existence of "nontaxpayers" or the limitations upon the authority of the IRS or the Court. This advantages the government at the expense of individual Constitutional rights.

6. Extend definitions within the Internal Revenue Code by abusing the word "includes" to extend or enlarge his importance or jurisdiction by compelling false presumptions about his jurisdiction. This:

   6.1. Violates the rules of statutory construction.

> *"Expressio unius est exclusio alterius. A maxim of statutory interpretation meaning that __the expression of one thing is the exclusion of another.__ Burgin v. Forbes, 293 Ky. 456, 169 S.W.2d. 321, 325; Newblock v. Bowles, 170 Okl. 487, 40 P.2d. 1097, 1100. Mention of one thing implies exclusion of another. __When certain persons or things are specified in a law, contract, or will, an intention to exclude all others from its operation may be inferred.__ Under this maxim, if statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded." [Black's Law Dictionary, Sixth Edition, p. 581]*

> *"It is axiomatic that the statutory definition of the term excludes unstated meanings of that term. Colautti v. Franklin, 439 U.S. 379, 392, and n. 10 (1979). Congress' use of the term "propaganda" in this statute, as indeed in other legislation, has no pejorative connotation.{19} As judges, it is our duty to [481 U.S. 485] construe legislation as it is written, not as it might be read by a layman, or as it might be understood by someone who has not even read it."*
> *[Meese v. Keene, 481 U.S. 465, 484 (1987)]*

> *"__When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.__ Meese v. Keene, 481 U.S. 465, 484-485 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term"); Colautti v. Franklin, 439 U.S. at 392-393, n. 10 ("As a rule, `a definition which declares what a term "means" . . . excludes any meaning that is not stated"); Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 502 (1945); Fox v. Standard Oil Co. of N.J., 294 U.S. 87, 95-96 (1935) (Cardozo, J.); see also 2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.07, p. 152, and n. 10 (5th ed. 1992) (collecting cases). That is to say, the statute, read "as a whole," post at 998 [530 U.S. 943] (THOMAS, J., dissenting), leads the reader to a definition. That definition does not include the Attorney General's restriction -- "the child up to the head." Its words, "substantial portion," indicate the contrary."*
> *[Stenberg v. Carhart, 530 U.S. 914 (2000)]*

   6.2. Turns a society of law into a society of men.

> *"__The government of the United States has been emphatically termed a government of laws, and not of men.__ It will certainly cease to deserve that high appellation, if the laws furnish no remedy for the violation of a vested legal right."*
> *[ Marbury v. Madison, 5 U.S. 137; 1 Cranch 137, 2 L.Ed. 60 (1803)]*

   6.3. Makes the judge into an imperial monarch and a pagan deity to be worshipped in violation of the First Amendment establishment of religion clauses. See:

> *Socialism: The New American Civil Religion*, Form #05.016
> http://sedm.org/Forms/FormIndex.htm

   6.4. Unlawfully enlarges federal jurisdiction beyond its clear constitutional limits.

   6.5. Completely destroys the separation of powers between states of the Union. See:

> *Government Conspiracy to Destroy the Separation of Powers*, Form #05.023
> http://sedm.org/Forms/FormIndex.htm

   6.6. Causes the judge to engage in "treason":

---

> *"In another, not unrelated context, Chief Justice Marshall's exposition in Cohens v. Virginia, 6 Wheat, 264 (1821), could well have been the explanation of the Rule of Necessity; he wrote that a court "must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. Questions may occur which we would gladly avoid; but we cannot avoid them." Id., at 404 (emphasis added)*
> *[U.S. v. Will, 449 U.S. 200 (1980)]*

For further details on this scam, see:

> *Meaning of the Words "includes" and "including"*, Form #05.014
> http://sedm.org/Forms/FormIndex.htm

7.  Admit into evidence any provision of the I.R.C. as proof of an obligation or duty against a person who is not a "taxpayer" and who instead is a "nontaxpayer". All franchise agreements are "private law" and "Special law" and is essence behave as "contracts" or agreements. The U.S. Supreme Court, in fact, referred to income taxes, in fact, as "quasi-contractual" in *Milwaukee v. White*, 296 U.S. 268 (1935). As such, the provisions of these contracts or agreements may not lawfully be enforced or cited against those who are not party to them.

8.  Refuse to enforce the government's duty as moving party to prove that the existence of either explicit or implicit consent to the franchise agreement codified in I.R.C. Subtitles A and C *before* these provisions may be enforced against anyone.

> *"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."*
> *[Brady v. U.S., 397 U.S. at 749, 90 S.Ct. 1463 at 1469 (1970)]*

Consent may not be "presumed", and must be PROVEN with evidence. Absent demonstrate consent in some form, the provisions of the franchise agreement may not be enforced against those who do not consent. See:

> *Requirement for Consent*, Form #05.003
> http://sedm.org/Forms/FormIndex.htm

9.  Refuse to acknowledge that the basis for authority to impose an income tax is domicile within federal territory and the exclusive jurisdiction of the United States, regardless of where the "taxpayer" is physically located.

> *"Thus, the Court has frequently held that domicile or residence, more substantial than mere presence in transit or sojourn, is an adequate basis for taxation, including income, property, and death taxes. Since the Fourteenth Amendment makes one a citizen of the state wherein he resides, the fact of residence creates universally reciprocal duties of protection by the state and of allegiance and support by the citizen. The latter obviously includes a duty to pay taxes, and their nature and measure is largely a political matter. Of course, the situs of property may tax it regardless of the citizenship, domicile, or residence of the owner, the most obvious illustration being a tax on realty laid by the state in which the realty is located."*
> *[Miller Brothers Co. v. Maryland, 347 U.S. 340 (1954)]*

For details, see:

> *Why Domicile and Becoming a "Taxpayer" Require Your Consent*, Form #05.002
> http://sedm.org/Forms/FormIndex.htm

10. Refuse to acknowledge or enforce the requirement that domicile within any state of the Union on other than federal territory does not represent domicile within the "United States" as defined in 26 U.S.C. §7701(a)(9) and (a)(10). This:
    10.1. Leads to a complete destruction of the separation of powers and devolves a republican form of government into a totalitarian socialist monopoly and oligarchy.
    10.2. Denies a "republican form of government" to person domiciled in states of the Union, which is MANDATED by Article 4, Section 4 of the United States Constitution.

All of the above tactics are typically used by unscrupulous judges and U.S. attorneys to self-servingly, unlawfully, and criminally expand their importance, jurisdiction, revenues, and to advantage the government at the expense of your Constitutional rights. You as a vigilant citizen concerned about protecting your constitutional rights should anticipate all the above very common tactics and expose and oppose them in your pleadings and correspondence BEFORE they are even used.

The only way we can have a true "republican form of government" mandated by Article 4, Section 4 of the U.S. Constitution is:

1.  To have separate franchise courts within the Executive Branch for administering federal franchises such as income taxes.

2. To prohibit judges in federal district courts from entertaining any franchise issue and to focus exclusively on Article III functions of protecting rights.

3. Establish true Article III federal courts. Right now, the U.S. federal District and Circuit courts are Article IV legislative courts, not Article III courts. See:

> *What Happened to Justice?*, Form #06.012
> http://sedm.org/Forms/FormIndex.htm

4. To prevent Congress from determining directly the compensation of federal judges. Right now, federal judges salaries are determined directly by the U.S. Congress. Instead, Congress must establish a separate Judicial Branch and fund the ENTIRE branch and let the branch and not the Congress determine the pay.

5. To prohibit Article III judges from being "taxpayers" subject to IRS extortion. This will allow "nontaxpayers" to receive complete and independent judges in their tax trials.

6. To prevent the Legislative Branch from unlawfully delegating the authority to "collect" to another branch of the government, such as the Treasury within the Executive Branch because this separates the "taxation" from the "representation" functions and only encourages lack of accountability and usurpation. Article 1, Section 8, Clause 1 empowers Congress to 'LAY AND COLLECT" taxes and they delegated the collect part unlawfully to the Executive Branch, and more particularly to the Treasury and the IRS who serves them. Right now Congressmen conveniently uses the IRS and the separation of powers as a "scapegoat" why they can't remedy the evil activities of the IRS. Well, THEY created this problem by a treasonous act of unlawfully delegating the power to COLLECT taxes to another branch of the government while retaining the power to LAY those same taxes delegated by Article 1, Section 8, Clause 1 of the Constitution.

7. To modify the Anti-Injunction Act, 26 U.S.C. §7421, and the Declaratory Judgments Act, 28 U.S.C. §2201(a) to indicate that these provisions in the context of "taxes" only apply to "taxpayer" and not to "nontaxpayers" so that federal courts don't unlawfully and criminally abuse these acts against private citizens who are not within the United States federal government as "franchisees". Typically, they unlawfully abuse these acts in conjunction with the Full Payment Rule found in Flora v. United States, 362 U.S. 145, 80 S.Ct. 630, 647 (1960). to avoid litigation and force "nontaxpayers" to use franchise courts. This:

   7.1. Deprives "nontaxpayers" of their constitutional rights.

   7.2. Deprives persons protected by the Constitution of a trial by jury. U.S. Tax Court has no jury.

   7.3. Compels "nontaxpayers" into becoming "taxpayers". Tax Court Rule 13(a) says that only "taxpayers" can employ the U.S. Tax Court to resolve disputes. There is no equivalent court for "nontaxpayers".

Consistent with the above, the U.S. Supreme Court has held the following. Note that they indicated that they cannot exercise administrative jurisdiction as part of the Executive Branch, because they recognize that this would violate the separation of powers:

> *Referring to the provisions for patent appeals this court said in Butterworth v. U.S., 112 U.S. 50, 60, 5 S.Ct. 25, 28 L.Ed. 656, that the function of the court thereunder was not that of exercising ordinary jurisdiction at law or in equity, but of taking a step in the statutory proceeding under the patent laws in aid of the Patent Office. And in Postum Cereal Company v. California Fig Nut Company, 272 U.S. 693, 698, 47 S.Ct. 284, 285, 71 L.Ed. 478, which related to a provision for a like appeal in a trade-mark proceeding, this court held: 'The decision of the Court of Appeals under section 9 of the act of 1905 [FN2] is not a judicial judgment. It is a mere administrative decision. It is merely an instruction to the Commissioner of Patents by a court which is made part of the machinery of the Patent Office for administrative purposes.' Another case in point is Keller v. Potomac Electric Power Co., 261 U.S. 428, 442-444, 43 S.Ct. 445, 67 L.Ed. 731, which involved a statutory proceeding in the courts of the District of Columbia to revise an order of a commission fixing the valuation of the property of a public utility for future rate-making purposes. There this court held that the function assigned to the courts of the District in the statutory proceeding was not judicial in the sense of the constitution, but was legislative and advisory, because it was that of instructing and aiding the commission in the exertion of power which was essentially legislative.*

> *FN2. Now section 89, title 15, U.S. Code (15 USCA s 89). This jurisdiction also was transferred to the Court of Customs and Patent Appeals by the act cited in note 1.*

> *In the cases just cited, as also in others, it is recognized that the courts of the District of Columbia are not created under the judiciary article of the Constitution but are legislative courts, and therefore that Congress may invest them with jurisdiction of appeals and proceedings such as have been just described.*

> *But this court [the U.S. Supreme Court] cannot be invested with jurisdiction of that character, whether for purposes of review or otherwise. It was brought into being by the judiciary article of the Constitution, is invested with judicial power only, and can have no jurisdiction other than of cases and controversies falling within the classes enumerated in that article. It cannot give decisions which are merely advisory; nor can it exercise or participate in the exercise of functions which are essentially legislative or administrative. Keller v. Potomac Electric Power Co., supra, page 444, of 261 U.S., 43 S.Ct. 445, 67 L.Ed. 731, and cases cited; Postum Cereal*



*Co. v. California Fig Nut Company, supra, pages 700-701 of 272 U.S. 47 S.Ct. 284, 71 L.Ed. 478; Liberty Warehouse Co. v. Grannis, 273 U.S. 70, 74, 47 S. 282, 71 L.Ed. 541; Willing v. Chicago Auditorium Association, 277 U.S. 274, 289, 48 S.Ct. 507, 72 L.Ed. 880: Ex parte Bakelite Corporation, 279 U.S. 438, 449, 49 S.Ct. 411, 73 L.Ed. 789.*

*The proceeding on the appeal from the commission's action is quite unlike the proceeding, under sections 1001(a) to 1004(b) of the Revenue Act of 1926, c. 27, 44 Stat., pt. 2, p. 109 (26 USCA ss 1224-1227), on a petition for the review of a decision of the Board of Tax Appeals; for, as this court heretofore has pointed out, such a petition*

*(a) brings before the reviewing court the United States or **391 its representative on the one hand and the interested taxpayer on the other,*

*(b) presents for consideration either the right of the United States to the payment of a tax claimed to be due from the taxpayer or his right to have refunded to him money which he has paid to satisfy a tax claimed to have been erroneously charged against him, and*

*(c) calls for a judicial and binding determination of the matter so presented-all of which makes the proceeding a case or controversy within the scope of the judicial power as defined in the judiciary article. Old Colony Trust Co. v. Commissioner of Internal Revenue, 279 U.S. 716, 724-727, 49 S.Ct. 499, 73 L.Ed. 918. [Federal Radio Commission v. General Electric Co., 281 U.S. 464, 50 S.Ct. 389 (U.S.,1930)]*

The end of the above ruling compares the issue in the case with taxation and contains a deliberate deception. They refer to the function of the "Board of Tax Appeals", which today we know of as "U.S. Tax Court". They try to create the deception that the U.S. Tax Court as an Article III court that officiates over "rights". However, we now know by reading section 11.3 that "U.S. Tax Court is in the Executive Branch and that it officiates over the "trade or business" franchise that forms the heart of the income tax within I.R.C. Subtitle A. 26 U.S.C. §7441 identifies U.S. Tax Court as an Article I court within the Legislative and not Judicial Branch. They use the word "taxpayer", which is synonymous with a franchise under the I.R.C. Subtitle A franchise agreement. Franchisees do not have "rights", but only privileges granted by their "parens patriae", the government. Yet the Supreme Court uses the word "rights" in describing the transaction. This is FRAUD. Obviously, either they don't know the difference between a "right" and a "privilege" or they are trying to deceive you into thinking that a "taxpayer" is a person who has rights and who is NOT the subject of a franchise agreement. The distinction we wish to emphasize is that the only time "rights" instead of "privileges" can really be at issue in any court is when:

1. The court is willing and able to recognize the existence of persons who are not party to the franchise agreement, and who are called "non-taxpayers".
2. The court is willing and able to declare that you are a "non-taxpayer" not subject to the I.R.C. The only people who have REAL rights are those who don't participate in government franchises and who have this status recognized by the courts.
3. The court does not enforce the provisions of the franchise agreement in I.R.C. Subtitle A against a non-participant such as a "non-taxpayer".
4. The court does not interfere with the rights of "non-taxpayers" by invoking the Anti-Injunction Act, 26 U.S.C. §7421 to dismiss lawsuits brought by "non-taxpayers" intended to prevent illegal enforcement of the "trade or business" franchise against non-participants..
5. The court does not invoke the Declaratory Judgments Act, 28 U.S.C. §2201(a) as an excuse to avoid declaring the rights of a "non-taxpayer" who has illegally become the target of IRS enforcement.

We would like to conclude this section by emphasizing the following constraints imposed by the separation of powers doctrine upon the federal courts:

1. No judge or court can lawfully serve in TWO branches of the government at the same time. This would constitute an ongoing conflict of interest.
2. A judge or court that serves as an Executive Branch agency in the context of income taxes that apply to domiciliaries of federal territory cannot ALSO serve as an Article III judge under the Constitution.
3. A judge who is serving in a franchise court within the Executive Branch, if he orders any kind of penalty against a party before him, is violating the Constitutional prohibition against "bills of attainder", which are penalties administered by the Executive Branch rather than true "judicial power" under the Constitution.

> *Bill of attainder. Legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial. United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1715, 14 L.Ed. 484, 492; United States v. Lovett, 328 U.S. 303, 315, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252. An act is a "bill of attainder" when the punishment is death and a "bill of pains and penalties" when the punishment is less severe; both kinds of punishment fall within the scope*

*of the constitutional prohibition.  U.S.Const. Art. I, Sect 9, Cl. 3 (as to Congress);' Art. I, Sec, 10 (as to state legislatures).*
*[Black's Law Dictionary, Sixth Edition, p. 165]*

The only way for a legislative franchise court to bypass the constitutional prohibition against "bills of attainder" in the case of a litigant before it who is protected by the Constitution of the United States is for the individual to consent to it. At the point it is consensual is the point at which is ceases to be injurious:

*Volunti non fit injuria.*
*He who consents cannot receive an injury. 2 Bouv. Inst. n. 2279, 2327; 4 T. R. 657; Shelf. on mar. & Div. 449.*

*Consensus tollit errorem.*
*Consent removes or obviates a mistake. Co. Litt. 126.*

*Melius est omnia mala pati quam malo concentire.*
*It is better to suffer every wrong or ill, than to consent to it. 3 Co. Inst. 23.*

*Nemo videtur fraudare eos qui sciunt, et consentiunt.*
*One cannot complain of having been deceived when he knew the fact and gave his consent. Dig. 50, 17, 145.*
*[Bouvier's Maxims of Law, 1856;*
*SOURCE:  http://famguardian.org/Publications/BouvierMaximsOfLaw/BouviersMaxims.htm]*

Therefore, those who are protected by the Constitution and who are compelled to appear before a franchise court such as the U.S. Tax Court, a U.S. District Court, or a federal Circuit Court must:

3.1.  Emphasize that they do not consent to the jurisdiction of the court and thereby do not surrender their right to be protected from "bills of attainder" mandated under Article 1, Section 10 of the United States Constitution.

3.2.  Remind the court that they may not institute any penalties, duties, or "taxes" without express written consent on a writing that fully discloses ALL of the rights surrendered.

3.3.  Emphasize that you reserve all your rights without prejudice, U.C.C. §1-308 and its successor, U.C.C. §1-308.

3.4.  Never make an "appearance" and thereby consent to the jurisdiction of the court.

*__appearance__.  A coming into court as a party to a suit, either in person or by attorney, whether as plaintiff or defendant.  The formal proceeding by which a defendant submits himself to the jurisdiction of the court.  The __voluntary submission__ to a court's jurisdiction.*

*In civil actions the parties do not normally actually appear in person, but rather through their attorneys (who enter their appearance by filing written pleadings, or a formal written entry of appearance). Also, at many stages of criminal proceedings, particularly involving minor offenses, the defendant's attorney appears on his behalf.  See e.g., Federal Rule of Criminal Procedure 43.*

*An appearance may be either __general__ or __special__; the former is a simple and unqualified or unrestricted submission to the jurisdiction of the court, the latter is a submission to the jurisdiction for some specific purpose only, not for all the purposes of the suit.  A special appearance is for the purpose of testing or objecting to the sufficiency of service or the jurisdiction of the court over defendant without submitting to such jurisdiction; a general appearance is made where the defendant waives defects of service and submits to the jurisdiction of court.  Insurance Co. of North America v. Kunin, 175 Neb. 260, 121 N.W.2d. 372, 375, 376.*
*[Black's Law Dictionary, Sixth Edition, p. 97]*

3.5.  Continually emphasize that they are under financial duress.

4.  A judge cannot participate as a "public officer" engaged in a "trade or business" within the Executive Branch in the context of income taxes, and yet also claim to be a "judicial officer" within another branch of the government for other purposes.  This is an absurd contradiction.  The Federalist Papers confirms that power over a man's subsistence is power over his will.  This means that judges cannot be subject to enforcement by an Executive Branch agency within the Department of the Treasury called the IRS on the one hand, and at the same time have "judicial independence" and objectivity in any sense of the word in the context of income tax cases being heard before them.

*"In the general course of human nature, A POWER OVER A MAN's SUBSISTENCE AMOUNTS TO A POWER OVER HIS WILL."*
*[Alexander Hamilton, Federalist Paper No. 79]*

## 12   How Courts Unconstitutionally Operate in Political Rather than Legal Capacity, and in violation of the Separation of Powers

This section concerns itself with techniques that franchise judges use to deceive, enslave, and STEAL from those outside their territorial jurisdiction by entertaining political questions in violation of the separation of powers doctrine. We will give examples to illustrate how the process works so that those litigating in corrupted courts will recognize and be able to expose and combat each technique illustrated.

If you would like more information about how all branches of the government, including the judiciary, exceed their Constitutional bounds in violation of the Separation of Powers Doctrine, see:

| |
|---|
| *Government Conspiracy to Destroy the Separation of Powers*, Form #05.023<br>http://sedm.org/Forms/FormIndex.htm |

### 12.1   Judges who advantage the government by OMITTING to rule on issues before them or by substituting PRESUMPTIONS for evidence are acting in a POLITICAL capacity rather than LEGAL capacity

It is helpful to compare and contrast courts acting in a CONSTITUTIONAL/COMMON LAW capacity with those acting in the capacity of a LEGISLATIVE/STATUTORY franchise court. Here is a table comparing the two:

**Table 3: Comparison of CONSTITUTIONAL court with LEGISLATIVE FRANCHISE court**

| # | Characteristic | CONSTITUTIONAL/COMMON LAW COURT | LEGISLATIVE/STATUTORY FRANCHISE COURT |
|---|---|---|---|
| 1 | Branch of government court and judge are in | Judicial branch | Executive branch |
| 2 | Court created by | Constitution or PURSUANT to a specific constitutional provision in the act that created it | Act of Congress ONLY. Expressly invokes NO constitutional authority in the act creating the court. |
| 3 | Name of court | Appears in the Constitution | Does NOT appear in the Constitution. Compare "District Court of the United States" (in constitution) with "United States District Court" (current) |
| 4 | Right being enforced | PRIVATE right | PUBLIC right/franchise |
| 5 | Name of court corresponds with | Name in the Constitution such as "district Court of the United States" | Name given by Congress, such as "United States District Court", which DOES NOT appear in the Constitution. |
| 6 | Capacity in which judge acts | CONSTITUTIONAL/LEGAL capacity | POLITICAL capacity within a POLITICAL branch of the government (Executive Branch) |
| 7 | Origin of court's jurisdiction | 1. Domicile or residence within the exclusive jurisdiction of the court OR<br>2. Physical presence on land protected by the Constitution at the time of the injury. | Consent to participate in the franchise. |
| 8 | Presumptions as evidence violate due process? | Yes | No |
| 9 | Court may lawfully decline to act when Plaintiff properly invokes its jurisdiction? | No | Yes |

An important method to distinguish whether a corrupt judge is acting in a POLITICAL capacity are any of the following behaviors evidenced by him or her:

1. Makes conclusive presumptions about facts related to the case for the benefit of the Government or defends the government prosecutor from having to prove presumptions he/she is substituting in place of evidence. All such presumptions invariably are made to the BENEFIT of the government and at the EXPENSE of the private party to the proceeding.

> *"It is apparent,' this court said in the Bailey Case ( 219 U.S. 239 , 31 S. Ct. 145, 151) 'that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions.'*
> *[Heiner v. Donnan, 285 U.S. 312 (1932)]*

> *A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to which the presumption relates. A statute creating a presumption that is arbitrary, or that operates to deny a fair opportunity to repel it, violates the due process clause of the Fourteenth Amendment.*
> *[Western and Atlantic Railroad v. Henderson, 279 U.S. 639 (1929)]*

2. Declines to hear or rule on issues AGAINST the government's interest, and thereby ABUSING OMISSION to protect crime or injuries unlawfully inflicted by the government. This could occur by dismissing cases raising such issues or by making their ruling unpublished.



> *"In another, not unrelated context, Chief Justice Marshall's exposition in Cohens v. Virginia, 6 Wheat, 264 (1821), could well have been the explanation of __the Rule of Necessity; he wrote that a court "must take jurisdiction if it should. The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the constitution. We cannot pass it by, because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution.__ Questions may occur which we would gladly avoid; but we cannot avoid them." Id., at 404 (emphasis added)*
> *[U.S. v. Will, 449 U.S. 200 (1980)]*

The fact that franchise courts are Executive Branch and NOT Judicial Branch agencies was confirmed by the opinion of Justice Antonin Scalia.  The Executive Branch is a POLITICAL branch, and therefore ALL judges in franchise courts are POLITICAL rather than JUDICIAL officers.  Franchise courts act as the equivalent of binding arbitration boards that resolve disputes between FELLOW public officers in the SAME branch of the government as the court is in:

> *I have already explained that __the Tax Court, like its predecessors, exercises the executive power of the United States.__ This does not, of course, suffice to market a "Department[t]" for purposes of the Appointments Clause. __If, for instance, the Tax Court were a subdivision of the Department of the Treasury – as the Board of Tax Appeals used to be – it would not qualify.  In fact, however, the Tax Court is a freestanding, self-contained entity in the Executive Branch, whose Chief Judge is removable by the President (and, save impeachment, no one else).  Nevertheless, the Court holds that the Chief Judge is not the head of a department."__*
> *[Freytag v. Commissioner, 501 U.S. 868, 914-915 (1991)]*

Anyone who appears before a Legislative franchise court within the Executive Branch, and who does not lawfully occupy a public office in that same branch as a litigant:

1. Is impersonating a public office in the U.S. government in criminal violation of 18 U.S.C. §912.
2. CANNOT lawfully be declared by any federal court to be a FRANCHISEE called a "taxpayer".  The court MUST accept whatever status they assign to themselves because CITIZENS are the customers for government protection and the customer is ALWAYS right.

> *Specifically, Rowen seeks a declaratory judgment against the United States of America with respect to "whether or not the plaintiff is a taxpayer pursuant to, and/or under 26 U.S.C. § 7701(a)(14)." (See Compl. at 2.) __This Court lacks jurisdiction to issue a declaratory judgment "with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1986," a code section that is not at issue in the instant action. See 28 U.S.C. § 2201; see also Hughes v. United States, 953 F.2d. 531, 536-537 (9th Cir. 1991)__ (affirming dismissal of claim for declaratory relief under § 2201 where claim concerned question of tax liability). Accordingly, defendant's motion to dismiss is hereby GRANTED, and the instant action is hereby DISMISSED.*
> *[Rowen v. U.S., 05-3766MMC. (N.D.Cal. 11/02/2005)]*

> *"__The revenue laws are a code or system in regulation of tax assessment and collection. They relate to taxpayers, and not to nontaxpayers. The latter are without their scope.__ No procedure is prescribed for nontaxpayers, and no attempt is made to annul any of their rights and remedies in due course of law. With them Congress does not assume to deal, and they are neither of the subject nor of the object of the revenue laws..."*
> *[Long v. Rasmussen, 281 F. 236 (1922) ]*

3. Is a victim of a criminal conflict of interest in violation of 18 U.S.C. §208 if either the judge OR anyone in government declares an otherwise PRIVATE person to be a statutory franchisee, including a "taxpayer."  It has long been a rule since the founding of this country that no man, or GOVERNMENT may rule on an issue that they have a pecuniary of financial interest in.  Only DISINTERESTED competent fact finders can do so and even then, the statute at 28 U.S.C. §2201(a) forbids such a determination either DIRECTLY or INDIRECTLY using a presumption.

> *In Calder v. Bull, which was here in 1798, Mr. Justice Chase said, that there were acts which the Federal and State legislatures could not do without exceeding their authority, and among them he mentioned a law which punished a citizen for an innocent act; a law that destroyed or impaired the lawful private contracts of citizens; a law that __made a man judge in his own case; and a law that took the property from A [a "taxpayer"], and gave it to B [a PRIVATE citizen].__ 'It is against all reason and justice,' he added, 'for a people to intrust a legislature with such powers, and therefore it cannot be presumed that they have done it. They may command what is right and prohibit what is wrong; but they cannot change innocence into guilt, or punish innocence as a crime, or violate the right of an antecedent lawful private contract, or the right of private property. To maintain that a Federal or State legislature possesses such powers if they had not been expressly restrained, would, in my opinion, be a political heresy altogether inadmissible in all free republican governments.' 3 Dall. 388.*
> *[Sinking Fund Cases, 99 U.S. 700 (1878) ]*



*"It is left... to the juries, if they think the permanent judges are under any bias whatever in any cause, to take on themselves to judge the law as well as the fact. They never exercise this power but when they suspect partiality in the judges; and by the exercise of this power they have been the firmest bulwarks of English liberty."*
*[Thomas Jefferson to Abbe Arnoux, 1789. ME 7:423, Papers 15:283]*

4. Cannot lawfully ELECT themselves into public office by CONSENTING TO THE JURISDICTION OF or APPEARING in said court or even PETITIONING such an administrative franchise court. The ONLY THING the franchise judge can lawfully do is DISMISS the case for lack of jurisdiction. If he accepts it knowing that the litigant is NOT an Executive Branch public officer, he is both criminally impersonating a public officer AND violating the separation of powers doctrine that is the foundation of the Constitution.

5. Cannot lawfully confer POLITICAL jurisdiction to the Executive Branch Administrative tribunal even IF they consent to its jurisdiction.

6. If the non-franchisee is penalized by said LEGISLATIVE FRANCHISE court, he/she is the subject of an unconstitutional "Bill of Attainder", which is any kind of penalty administered by EITHER the LEGISLATIVE or EXECUTIVE branches of the government or by any branch OTHER than a TRUE judicial branch.

*United States Constitution*
*Article 1, Section. 10*

*No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility.*
_____

*Bill of attainder. Legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial. United States v. Brown, 381 U.S. 437, 448-49, 85 S.Ct. 1707, 1715, 14 L.Ed. 484, 492; United States v. Lovett, 328 U.S. 303, 315, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252. An act is a "bill of attainder" when the punishment is death and a "bill of pains and penalties" when the punishment is less severe; both kinds of punishment fall within the scope of the constitutional prohibition. U.S.Const. Art. I, Sect 9, Cl. 3 (as to Congress);' Art. I, Sec, 10 (as to state legislatures).*
*[Black's Law Dictionary, Sixth Edition, p. 165]*

For further details on the important subject of this section, see:

> *Government Instituted Slavery Using Franchises*, Form #05.030, Sections 16-17
> FORMS PAGE: http://sedm.org/Forms/FormIndex.htm
> DIRECT LINK: http://sedm.org/Forms/05-MemLaw/Franchises.pdf

## 12.2  Judges interfering with choice of domicile or citizenship are terrorists, according to the Federal Regulations

Interfering with people's free exercise of political rights by trying to compel them to associate with a domicile or citizenship or political group they do not want to associate with is TERRORISM. Below is the proof:

*Title 28: Judicial Administration*
*PART 0—ORGANIZATION OF THE DEPARTMENT OF JUSTICE*
*§0.85  General functions.*

*(I) Exercise Lead Agency*

*responsibility in investigating all crimes for which it has primary or concurrent jurisdiction and which involve terrorist activities or acts in preparation of terrorist activities within the statutory jurisdiction of the United States. Within the United States, this would include the collection, coordination, analysis, management and dissemination of intelligence and criminal information as appropriate. If another Federal agency identifies an individual who is engaged in terrorist activities or in acts in preparation of terrorist activities, that agency is requested to promptly notify the FBI. Terrorism includes the unlawful use of [judicial] force and violence [through incarcerations, contempt citations, etc] against persons or property to intimidate or coerce a government, the*

*civilian population, or any segment thereof, in furtherance of political or social [rather than lawful] objectives.*

Therefore, judges that interfere with a person's choice of domicile or citizenship are TERRORISTS. The most enlightening and eloquent of the cases which describes this illegal activity by judges was the U.S. Supreme Court case of *Luther v. Borden*, which stated:

> *"But, fortunately for our freedom from political excitements in judicial duties, this court [the U.S. Supreme Court] can never with propriety be called on officially to be the umpire in questions merely political. The adjustment of these questions belongs to the people and their political representatives, either in the State or general government. These questions relate to matters not to be settled on strict legal principles. They are adjusted rather by inclination, or prejudice or compromise, often.*
>
> *[. . .]*
>
> *Another evil, alarming and little foreseen, involved in regarding these as questions for the final arbitrament of judges would be that, in such an event, all political privileges and rights would, in a dispute among the people, depend on our decision finally. We would possess the power to decide against, as well as for, them, and, under a prejudiced or arbitrary judiciary, the public liberties and popular privileges might thus be much perverted, if not entirely prostrated. But, allowing the people to make constitutions and unmake them, allowing their representatives to make laws and unmake them, and without our interference as to their principles or policy in doing it, yet, when constitutions and laws are made and put in force by others, then the courts, as empowered by the State or the Union, commence their functions and may decide on the rights which conflicting parties can legally set up under them, rather than about their formation itself. Our power begins after theirs [the Sovereign People] ends. Constitutions and laws precede the judiciary, and we act only under and after them, and as to disputed rights beneath them, rather than disputed points in making them. We speak what is the law, jus dicere, we speak or construe what is the constitution, after both are made, but we make, or revise, or control neither. The disputed rights beneath constitutions already made are to be governed by precedents, by sound legal principles, by positive legislation [e.g. "positive law"], clear contracts, moral duties, and fixed rules; they are per se questions of law, and are well suited to the education and habits of the bench. But the other disputed points in making constitutions, depending often, as before shown, on policy, inclination, popular resolves and popular will and arising not in respect to private rights, not what is meum and tuum, but in relation to politics, they belong to politics, and they are settled by political tribunals, and are too dear to a people bred in the school of Sydney and Russel for them ever to intrust their final decision, when disputed, to a class of men who are so far removed from them as the judiciary, a class also who might decide them erroneously, as well as right, and if in the former way, the consequences might not be able to be averted except by a revolution, while a wrong decision by a political forum can often be peacefully corrected by new elections or instructions in a single month; and if the people, in the distribution of powers under the constitution, should ever think of making judges supreme arbiters in political controversies when not selected by nor, frequently, amenable to them nor at liberty to follow such various considerations in their judgments as [48 U.S. 53] belong to mere political questions, they will dethrone themselves and lose one of their own invaluable birthrights; building up in this way -- slowly, but surely -- a new sovereign power in the republic, in most respects irresponsible and unchangeable for life, and one more dangerous, in theory at least, than the worst elective oligarchy in the worst of times. Again, instead of controlling the people in political affairs, the judiciary in our system was designed rather to control individuals, on the one hand, when encroaching, or to defend them, on the other, under the Constitution and the laws, when they are encroached upon. And if the judiciary at times seems to fill the important station of a check in the government, it is rather a check on the legislature, who may attempt to pass laws contrary to the Constitution, or on the executive, who may violate both the laws and Constitution, than on the people themselves in their primary capacity as makers and amenders of constitutions."*
> [Luther v. Borden, 48 U.S. 1 (1849)]

Most of the corruption of American courts on the tax matter is described in the scenario above, in which activist judges have unilaterally involved themselves in such "political questions" by interfering with the political affiliations, domicile, and citizenship choices of the litigants. This has:

1. Made the United States into a federal slave plantation, whereby the "rent" for living on the plantation is an illegally enforced, feudal tribute paid for "protection" that is not wanted or needed. Hence, what is mistakenly called "government" is really nothing more than a "protection racket".
2. Made the federal judiciary into an imperial monarchy who enforce their will rather than what the law actually says.
3. Replaced the political sovereignty of the people with the whims of judges. Below is how the Bible describes this corruption:

> *The Book of Judges stands in stark contrast to Joshua. In Joshua, an obedient [to God] people conquered the land through trust in the power of God. In Judges, however, a disobedient and idolatrous [towards judges and government] people are defeated time and time again because of their rebellion against God.*

*In seven distinct cycles of sin to salvation, Judges shows how Israel had set aside God's law and in its place substituted "what was right in his [or the Judge's] own eyes" (21:25). The recurring result of abandonment from God's law is corruption from within and oppression from without. During the nearly four centuries spanned by this book, God raises up military champions to throw off the yoke of bondage and to restore the nation to pure worship [of God]. But all too soon the "sin cycle" begins again as the nations spiritual temperature grows steadily colder.*

*The Hebrew title is "Shophetim, meaning "judges," "rulers," "delivering." First the judges deliver the people; then they rule and administer justice. The Septuagint used the Greek equivalent of this word, Krtai ("Judges"). The Latin Vulgate called it Liber Judicum, the "Book of Judges." This book could also appropriately be titled "The Book of Failure."*
*[The Open Bible, New King James Version, Thomas Nelson Publishers, 1997, p. 340]*

4. Corrupted the legal process and created conflict of interest of judges and jurors, who because of judicial fiat or tyranny, are either "taxpayers" or federal benefit recipients, in violation of 18 U.S.C. §208, 18 U.S.C. §597, 28 U.S.C. §455, etc.

*"And you shall take no bribe, for a bribe blinds the discerning and perverts the words of the righteous."*
*[Exodus 23:8, Bible, NKJV]*

We would therefore certainly hope that it is not the intention of any Court to institute tyranny by substituting its "political will" for that of the litigants before them in their choice of citizenship, domicile, or political affiliation, all of which are synonymous. This would be a supreme injustice and the essence of slavery itself, according to the U.S. Supreme Court.

*"For the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself."*
*[Yick Wo v. Hopkins, 118 U.S. 356 (1885)]*

*"Justice is the end of government. It is the end of civil society. It ever has been, and ever will be pursued, until it be obtained, or until liberty be lost in the pursuit."*
*[Federalist Paper #51, James Madison]*

## 12.3  <u>Presumptions about the status of the parties</u>

A common technique for judges to act in a political rather than legal or judicial capacity is to make presumptions about the status of the parties that there is no evidence on the record to support and to treat those presumptions as substantive fact. The affect of making such unsubstantiated presumptions is to:

1. Injure your rights and liberties.
2. Violate the separation of powers by allowing otherwise constitutional courts to unlawfully entertain "political questions".
3. Cause a violation of due process of law because decisions are not based on legally admissible evidence. Instead, presumptions unlawfully and prejudicially turn beliefs into evidence in violation of Federal Rule of Evidence 610 and the Hearsay Rule, Federal Rule of Evidence 802.
4. Turn judges into "priests" of a civil religion.
5. Turn legal process into an act of religion.
6. Transform "attorneys" into deacons of a state-sponsored religion.
7. Turn the courtroom into a church building.
8. Turn court proceedings into a "worship service" akin to that of a church.
9. Turn statutes into a state-sponsored bible upon which "worship services" are based.
10. Turn "taxes" into tithes to a state-sponsored church, if the controversy before the court involves taxation.

Examples of the abuse of presumption towards the parties include the following absolutely false presumptions in the case of a human being domiciled within a state of the Union:

1. That:
   1.1. All the available statuses a person can have appear on federal government forms.
   1.2. The status of "Exempt" is the only way to lawfully avoid the liability described.
   1.3. You MUST choose at least one of the statuses indicated.
   In fact, the most important ones don't, such as the status of "None of the Above" or "transient foreigner" or "nonresident". See:

> *Flawed Tax Arguments To Avoid*, Form #08.004, Section 6.10
> http://sedm.org/Forms/FormIndex.htm

2. That you are a franchisee called a "taxpayer".

3. That because you are a "taxpayer", you are subject to the Internal Revenue Code.

4. That the government can impose duties on private parties without their consent and without violating the Thirteenth Amendment prohibition against involuntary servitude. In fact, they can't, and they must presume that you are a "public officer" BEFORE they can even involve you in an action involving federal statutes. See:

   4.1. *Proof That There is a "Straw Man"*, Form #05.042
        http://sedm.org/Forms/FormIndex.htm

   4.2. *Why Your Government is Either a Thief or You are a "Public Officer" for Income Tax Purposes*, Form #05.008
        http://sedm.org/Forms/FormIndex.htm

   4.3. *Why Statutory Civil Law is Law for Government and Not Private Persons*, Form #05.037
        http://sedm.org/Forms/FormIndex.htm

5. That the offense occurred in a statutory "State", which is a federal territory and not a state of the Union. This is a false presumption in nearly all cases involving those domiciled within a state of the Union.

6. That the offense occurred in the federal judicial district, which includes federal territory and property within the district and excludes private property not connected with any franchise.

7. That you consented to the jurisdiction of the court by making an "appearance" in court, such as showing up physically or filing a pleading in an action.

8. That those serving on the jury and domiciled within the exclusive jurisdiction of a state of the Union are qualified to serve in a federal trial. In fact, they cannot lawfully qualify to serve unless they are domiciled on federal territory within the exterior limits of the judicial district. See:

   > *What Happened to Justice?*, Form #06.012
   > http://sedm.org/Forms/FormIndex.htm

9. That there is no separation of civil jurisdiction between the State and Federal governments, including

   9.1. That there is no difference between a Constitutional Citizen and a statutory citizen under federal law. In fact, you can't be both at the same time.

   9.2. That there is no difference between a Constitutional State and a statutory "State" under federal law.

   9.3. That you are a statutory "U.S. citizen" as defined in 8 U.S.C. §1401 as a human being domiciled within a state of the Union.

   9.4. That you are domiciled in the "United States" as statutorily defined, which includes federal territory and excludes states of the Union.

For further information on the subjects of this section, see:

> *Presumption: Chief Weapon for Unlawfully Enlarging Federal Jurisdiction*, Form #05.017
> http://sedm.org/Forms/FormIndex.htm

## 12.4  **Abusing the word "frivolous"**

A common technique for involving an otherwise constitutional court in "political matters" is to call the arguments of either party "frivolous". This technique is also very commonly used by the IRS against those who resist their efforts to unlawfully enforce the Internal Revenue Code. Black's Law Dictionary defines "frivolous" as follows:

> *"Frivolous.* [2]

> *[1] Of little weight or importance.*

> *[2] A pleading is 'frivolous' when it is clearly insufficient on its face, and does not controvert the material points of the opposite pleading, and is presumably interposed for mere purpose of delay or*

> *[3] to embarrass the opponent.*

> *[4] A claim or defense is frivolous if a proponent can present no rational argument based upon the evidence or law in support of that claim or defense. Liebowitz v. Aimexco, Inc., Colo.App. 701 P.2d. 140, 142. [5] Frivolous pleadings may be amended to proper form, or ordered stricken, under federal and state Rules of Civil Procedure."*

---

[2] The definition of "frivolous" has been broken up into clauses for the purpose of a more complete analysis and breakdown its meaning.

*[Black's Law Dictionary, Sixth Edition, p. 668]*

Judges or government prosecutors or even the IRS, when they abuse the word "frivolous", abuse the following tactics that violate due process of law and the rights of the parties adversely affected:

1. They cite case law from a foreign jurisdiction within which the party is not domiciled, which is therefore irrelevant.
2. They use provisions of a franchise agreement, such as the I.R.C. Subtitle A "trade or business" franchise, against those who are not subject to it because not statutory "taxpayers", and which are therefore irrelevant.
3. They refuse to provide legally admissible evidence signed under penalty of perjury as required by 26 U.S.C. §6065 proving that the thing they describe as frivolous is erroneous in any way.
4. They provide that which is not legally admissible evidence as justification for why something is "frivolous". For instance, all of the following resources are in fact not admissible as legal evidence of anything:
   4.1. All IRS publications and forms.
   4.2. The advice or statements of anyone in the government.
   4.3. The Internal Revenue Code, which 1 U.S.C. §204 says is "prima facie evidence", meaning nothing but a presumption that is NOT legal evidence of anything.
   4.4. Court rulings below the U.S. Supreme Court, which the IRS says don't obligate them, and therefore which don't obligate anyone else either under the concept of equal protection and equal treatment.

For details on why none of the above are legal evidence of an obligation and therefore cannot be used as justification for calling something "frivolous", see:

> *Reasonable Belief About Income Tax Liability*, Form #05.007
> http://sedm.org/Forms/FormIndex.htm

For further details on the subject of this section, see:

> *Meaning of the Word "Frivolous"*, Form #05.027
> http://sedm.org/Forms/FormIndex.htm

## 12.5  Adding things to the statutory meaning of words

The purpose of providing statutory definitions for terms is to SUPERSEDE, not ENLARGE, the meaning of ordinary words, according to the U.S. Supreme Court:

> *"When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning. Meese v. Keene, 481 U.S. 465, 484-485 (1987) ("It is axiomatic that the statutory definition of the term excludes unstated meanings of that term"); Colautti v. Franklin, 439 U.S. at 392-393, n. 10 ("As a rule, 'a definition which declares what a term "means" . . . excludes any meaning that is not stated'"); Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 502 (1945) ; Fox v. Standard Oil Co. of N.J., 294 U.S. 87, 95-96 (1935) (Cardozo, J.); see also 2A N. Singer, Sutherland on Statutes and Statutory Construction § 47.07, p. 152, and n. 10 (5th ed. 1992) (collecting cases). That is to say, the statute, read "as a whole," post at 998 [530 U.S. 943] (THOMAS, J., dissenting), leads the reader to a definition. That definition does not include the Attorney General's restriction -- "the child up to the head." Its words, "substantial portion," indicate the contrary."*
> *[Stenberg v. Carhart, 530 U.S. 914 (2000)]*

Any attempt by a judge or government prosecutor to add or imply things or classes of things to a statutory definition that do not appear SOMEWHERE in the statutes themselves:

1. Violates the separation of powers by delegating legislative authority to a branch of the government OTHER than the legislative branch.  See:
   > *Government Conspiracy to Destroy the Separation of Powers*, Form #05.023
   > http://sedm.org/Forms/FormIndex.htm
2. Violates the Constitutional requirement for reasonable notice of all things that are included, and thereby violates due process of law.  See:
   > *Requirement for Reasonable Notice*, Form #05.022
   > http://sedm.org/Forms/FormIndex.htm
3. Causes those engaging in presumptions about what is included to engage in prejudicial presumptions that violate due process of law.
   > *Presumption: Chief Weapon for Unlawfully Enlarging Federal Jurisdiction*, Form #05.017
   > http://sedm.org/Forms/FormIndex.htm

The ability to "legislate" is reserved only for the legislative branch.  Courts may not legislate by adding things to definitions that are nowhere indicated in the statues themselves.  Neither juries nor judges can lawfully involve themselves in that process and if they do, they:

1.  Substitute their own will for that of the legislature.
2.  Turn a society of law into a society of men.
3.  Become the equivalent of a "constitutional convention" and a policy board.
4.  Make the courtroom into a lynch mob against the defendant.

For further details on the subject of this section, see:

> *Meaning of the Words "includes" and "including"*, Form #05.014
> http://sedm.org/Forms/FormIndex.htm

## 12.6  Citing or enforcing irrelevant case law or statutes in civil cases relating to parties with a foreign domicile

A common method of entertaining political questions is for a court to cite civil statutes that only pertain to, protect, or obligate those who have consented to the jurisdiction they apply to by declaring themselves to be or lawfully becoming "citizens" or "residents" under the laws of that jurisdiction.  This is the method by which they become "customers" of the civil protection offered by said government, who owe allegiance to said government, and who then have a duty to pay for the protection it affords.  All those who do not do so become nonresidents or "transient foreigners" under said jurisdiction.

No surprisingly, courts and government prosecutors will frequently turn courts into political forums instead of legal forums by citeing case law or civil statutes against nonresident parties who are not subject to them and for which said authorities are irrelevant.

There are only three ways to become subject to the civil jurisdiction of a specific government or venue.  These ways are:

1.  Choosing domicile within a specific jurisdiction.
2.  Representing an entity that has a domicile within a specific jurisdiction even though not domiciled oneself in said jurisdiction.  For instance, representing a federal corporation as a public officer of said corporation, even though domiciled outside the federal zone.  The authority for this type of jurisdiction is, for instance, Federal Rule of Civil Procedure 17(b).
3.  Engaging in commerce within the civil legislative jurisdiction of a specific government and thereby waiving sovereign immunity under:
    3.1.  The Foreign Sovereign Immunities Act, 28 U.S.C. §1605.
    3.2.  The Minimum Contacts Doctrine, which implements the Fourteenth Amendment.  See International Shoe Co. v. Washington, 326 U.S. 310 (1945).
    3.3.  The Longarm Statutes of the state jurisdiction where you are physically situated at the time.  For a list of such state statutes, see:
        3.3.1.  *SEDM Jurisdictions Database*, Litigation Tool #09.003
                http://sedm.org/Litigation/LitIndex.htm
        3.3.2.  *SEDM Jurisdictions Database Online*, Litigation Tool #09.004
                http://sedm.org/Litigation/LitIndex.htm

We allege that if the above rules are violated then the following consequences are inevitable:

1.  A crime has been committed.  That crime is identity theft against a nonresident party and it involves using a person's legal identity as a "person" for the commercial benefit of someone else without their express consent.  Identity theft is a crime in every jurisdiction within the USA.  The *SEDM Jurisdictions Database*, Litigation Tool #09.003 indicated above lists identity theft statutes for every jurisdiction in the USA.
2.  If the entity disregarding the above rules claims to be a "government" then it is acting instead as a private corporation and must waive sovereign immunity and approach the other party to the dispute in EQUITY rather than law, and do so in OTHER than a franchise court.  Franchise courts include U.S. District Court, U.S. Circuit Court, U.S. Tax Court, Traffic Court, and Family Court.  Equity is impossible in a franchise court.

*See also Clearfield Trust Co. v. United States, 318 U.S. 363, 369 (1943) ("**The United States does business on business terms**") (quoting United States v. National Exchange Bank of Baltimore, 270 U.S. 527, 534 (1926)); Perry v. United States, supra at 352 (1935) ("**When the United States, with constitutional authority, makes contracts [or franchises], it has rights and incurs responsibilities similar to those of individuals who are parties to such instruments. There is no difference . . . except that the United States cannot be sued without its consent**") (citation omitted); United States v. Bostwick, 94 U.S. 53, 66 (1877) ("**The United States, when they contract with their citizens, are controlled by the same laws that govern the citizen in that behalf**"); Cooke v. United States, 91 U.S. 389, 398 (1875) (**explaining that when the United States "comes down from its position of sovereignty, and enters the domain of commerce, it submits itself to the same laws that govern individuals there**").*

*See Jones, 1 Cl.Ct. at 85 ("**Wherever the public and private acts of the government seem to commingle, a citizen or corporate body must by supposition be substituted in its place, and then the question be determined whether the action will lie against the supposed defendant**"); O'Neill v. United States, 231 Ct.Cl. 823, 826 (1982) (sovereign acts doctrine applies where, "[w]ere [the] contracts exclusively between private parties, the party hurt by such governing action could not claim compensation from the other party for the governing action"). The dissent ignores these statements (including the statement from Jones, from which case Horowitz drew its reasoning literally verbatim), when it says, post at 931, that the sovereign acts cases do not emphasize the need to treat the government-as-contractor the same as a private party.*
*[United States v. Winstar Corp. 518 U.S. 839 (1996)]*

All civil litigation and all civil law, in fact, attaches to the domicile or residence of the parties. That domicile or residence must be voluntarily associated with the forum or venue in which a case is being litigated before the court can lawfully claim civil jurisdiction over a party. This type of civil jurisdiction is called "in personam" jurisdiction. A civil case that proceeds absent "in personam" jurisdiction over the Respondent is a violation of due process of law under the Fourteenth Amendment. This concept was explained in the following case:

*In International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme Court held that a court may exercise personal jurisdiction over a defendant consistent with due process only if he or she has "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Id. at 316 (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be "present" in that forum for all purposes, a forum may exercise only "specific" jurisdiction - that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim. The parties agree that only specific jurisdiction is at issue in this case.*

*In this circuit, we analyze specific jurisdiction according to a three-prong test:*

*(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;*

*(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and*

*(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.*

*Schwarzenegger v. Fred Martin Motor Co., 374 F.3d. 797, 802 (9th Cir. 2004) (quoting Lake v. Lake, 817 F.2d. 1416, 1421 (9th Cir. 1987)). The first prong is determinative in this case. We have sometimes referred to it, in shorthand fashion, as the "purposeful availment" prong. Schwarzenegger, 374 F.3d. at 802. Despite its label, this prong includes both purposeful availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof.*

*We have typically treated "purposeful availment" somewhat differently in tort and contract cases. In tort cases, we typically inquire whether a defendant "purposefully direct[s] his activities" at the forum state, applying an "effects" test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum. See Schwarzenegger, 374 F.3d. at 803 (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984)). By contrast, in contract cases, we typically inquire whether a defendant "purposefully avails itself of the privilege of conducting activities" or "consummate[s] [a] transaction" in the forum, focusing on activities such as delivering goods or executing a contract. See Schwarzenegger, 374 F.3d. at 802. However, this case is neither a tort nor a contract case. Rather, it is a case in which Yahoo! argues, based on the First Amendment, that the French court's interim orders are unenforceable by an American court.*
*[Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d. 1199 (9th Cir. 01/12/2006)]*

1  We also establish in the following document that almost all civil statutory law is, in fact, law for government because it
2  regulates public conduct of public officers. The ability to regulate private conduct is repugnant to the Constitution, as held
3  by the U.S. Supreme Court, and therefore, the enactment and enforcement of statutes is really just the enforcement of the
4  equivalent of the employment agreement for public officers of the government:

> *Why Statutory Civil Law is Law for Government and Not Private Persons*, Form #05.037
> http://sedm.org/Forms/FormIndex.htm

5  ## 12.7  Refusal of franchise courts to dismiss cases involving those who are not franchisees

6  We thoroughly discuss the differences between franchise courts and constitutional courts in the following resource on our
7  website:

> *Government Instituted Slavery Using Franchises*, Form #05.030, Section 21
> http://sedm.org/Forms/FormIndex.htm

8   All franchise courts have in common that they cannot take jurisdiction over any case not involving those who consent to be
9   franchisees and if they do, a tort is committed. Examples of franchisees include "spouses" under the family code in your
10  state, "taxpayers" under the Internal Revenue Code, "drivers" under the vehicle code, etc. Below are some examples proving
11  this:

12  1.  Tax Court Rule 13(a) says that only franchisees called statutory "taxpayer" may petition the court. Keep in mind that
13      26 U.S.C. §7441 admits that the Tax Court is an Article I legislative franchise court, and therefore NOT a
14      constitutional court:

15      *United States Tax Court*
16      *RULE 13. JURISDICTION*

17      *(a) Notice of Deficiency or of Transferee or Fiduciary Liability Required: Except in actions for declaratory*
18      *judgment, for disclosure, for readjustment or adjustment of partnership items, for administrative costs, or for*
19      *review of failure to abate interest (see Titles XXI, XXII, XXIV,XXVI, and XXVII), the jurisdiction of the Court*
20      *depends (1) in a case commenced in the Court by a taxpayer, upon the issuance by the Commissioner of a notice*
21      *of deficiency in in-come, gift, or estate tax or, in the taxes under Code chapter41, 42, 43, or 44 (relating to the*
22      *excise taxes on certain organizations and persons dealing with them), or in the tax under Code chapter 45*
23      *(relating to the windfall profit tax),or in any other taxes which are the subject of the issuance of a notice of*
24      *deficiency by the Commissioner; and (2) in a case commenced in the Court by a transferee or fiduciary, upon the*
25      *issuance by the Commissioner of a notice of liability to the transferee or fiduciary. See Code secs. 6212, 6213,*
26      *and 6901.*

27  2.  Federal courts have admitted that the Internal Revenue Code does not apply to those who are not statutory "taxpayers"
28      as defined in 26 U.S.C. §7701(a)(14).

29      *"The revenue laws are a code or system in regulation of tax assessment and collection. They relate to taxpayers,*
30      *and not to nontaxpayers. The latter are without their scope. No procedure is prescribed for nontaxpayers, and no*
31      *attempt is made to annul any of their rights and remedies in due course of law. With them Congress does not*
32      *assume to deal, and they are neither of the subject nor of the object of the revenue laws..."*
33      *[Long v. Rasmussen, 281 F. 236 (1922)]*

34      *"Revenue Laws relate to taxpayers [instrumentalities, officers, employees, and elected officials of the Federal*
35      *Government] and not to non-taxpayers [American Citizens/American Nationals not subject to the exclusive*
36      *jurisdiction of the Federal Government]. The latter are without their scope. No procedures are prescribed for*
37      *non-taxpayers and no attempt is made to annul any of their Rights or Remedies in due course of law. With*
38      *them[non-taxpayers] Congress does not assume to deal and they are neither of the subject nor of the object of*
39      *federal revenue laws."*
40      *[Economy Plumbing & Heating v. U.S., 470 F.2d. 585 (1972)]*

41  3.  The U.S. Supreme Court has held that Congress may only delegate authority to hear cases to franchise courts in the
42      case of what it called "public rights", which means voluntary franchises that you must consent to participate in:

> *"The distinction between public rights and private rights has not been definitively explained in our precedents.[3] Nor is it necessary to do so in the present cases, for it suffices to observe that a matter of public rights must at a minimum arise "between the government and others." Ex parte Bakelite Corp., supra, at 451, 49 S.Ct., at 413.[4] In contrast, "the liability of one individual to another under the law as defined," Crowell v. Benson, supra, at 51, 52 S.Ct., at 292, is a matter of private rights. Our precedents clearly establish that only controversies in the former category may be removed from Art. III courts and delegated to legislative courts or administrative agencies for their determination. See Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n, 430 U.S. 442, 450, n. 7, 97 S.Ct. 1261, 1266, n. 7, 51 L.Ed.2d 464 (1977); Crowell v. Benson, supra, 285 U.S. at 50-51, 52 S.Ct., at 292. See also Katz, Federal Legislative Courts, 43 Harv.L.Rev. 894, 917-918 (1930).FN24 Private-rights disputes, on the other hand, lie at the core of the historically recognized judicial power."*

> *[. . .]*

> *Although Crowell and Raddatz do not explicitly distinguish between rights created by Congress and other rights, such a distinction underlies in part Crowell's and Raddatz' recognition of a critical difference between rights created by federal statute and rights recognized by the Constitution.   Moreover, such a distinction seems to us to be necessary in light of the delicate accommodations required by the principle of separation of powers reflected in Art. III. The constitutional system of checks and balances is designed to guard against "encroachment or aggrandizement" by Congress at the expense of the other branches of government. Buckley v. Valeo, 424 U.S. at 122, 96 S.Ct., at 683. But when Congress creates a statutory right [a "privilege" in this case, such as a "trade or business"], it clearly has the discretion, in defining that right, to create presumptions, or assign burdens of proof, or prescribe remedies; it may also provide that persons seeking to vindicate that right must do so before particularizing tribunals created to perform the specialized adjudicative tasks related to that right.FN35 Such provisions do, in a sense, affect the exercise of judicial power, but they are also incidental to Congress' power to define the right that it has created. No comparable justification exists, however, when the right being adjudicated is not of congressional creation. In such a situation, substantial inroads into functions that have traditionally been performed by the Judiciary cannot be characterized merely as incidental extensions of Congress' power to define rights that it has created. Rather, such inroads suggest unwarranted encroachments upon the judicial power of the United States, which our Constitution reserves for Art. III courts.*
> *[Northern Pipeline Const. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858 (1983)]*

Federal Judges administering Article 4, Section 3, Clause 2 "franchise courts" such as U.S. District Court and U.S. Tax Court and state judges administering family court and traffic court are well known for usurping jurisdiction they in fact do not have for cases NOT involving public rights and franchises such as the income tax, Social Security, Medicare, vehicle code, family code, etc.

All those who participate in government franchises and "public rights" as described above are public officers and instrumentalities of the government under the terms of the franchise contract.  That is extensively proven in the *Government Instituted Slavery Using Franchises*, Form #05.030 document cited earlier.  Hence, any franchise judge serving in a franchise court who takes jurisdiction over a case not involving a franchisee is, in fact, causing the non-governmental litigant before him to criminally impersonate a public officer of the government in violation of 18 U.S.C. §912 and are instituting involuntary servitude against the litigant in violation of the Thirteenth Amendment.

Examples of this phenomenon include the following:

1.   A traffic court judge, who is a commissioner in the executive branch rather than a true constitutional judge in the judicial branch:
  1.1.   Refuses to dismiss the case before him for lack of jurisdiction.
  1.2.   Hears a case involving someone who is either a nonresident in the state or has not consented to become a franchisee called a "driver" by making application to procure a "driver license".

---

[3] *Crowell v. Benson*, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932), attempted to catalog some of the matters that fall within the public-rights doctrine:

"Familiar illustrations of administrative agencies created for the determination of such matters are found in connection with the exercise of the congressional power as to interstate and foreign commerce, taxation, immigration, the public lands, public health, the facilities of the post office, pensions and payments to veterans." *Id.*, at 51, 52 S.Ct., at 292 (footnote omitted).

[4] Congress cannot "withdraw from [Art. III] judicial cognizance *any* matter which, *from its nature*, is the subject of a suit at the common law, or in equity, or admiralty." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 18 How. 272, 284 (1856) (emphasis added). It is thus clear that the presence of the United States as a proper party to the proceeding is a necessary but not sufficient means of distinguishing "private rights" from "public rights." And it is also clear that even with respect to matters that arguably fall within the scope of the "public rights" doctrine, the presumption is in favor of Art. III courts. See *Glidden Co. v. Zdanok*, 370 U.S. at 548-549, and n. 21, 82 S.Ct., at 1471-1472, and n. 21 (opinion of Harlan, J.). See also Currie, The Federal Courts and the American Law Institute, Part 1, 36 U.Chi.L.Rev. 1, 13-14, n. 67 (1968). Moreover, when Congress assigns these matters to administrative agencies, or to legislative courts, it has generally provided, and we have suggested that it may be required to provide, for Art. III judicial review. See *Atlas Roofing Co. v. Occupational Safety and Health Review Comm'n*, 430 U.S., at 455, n. 13, 97 S.Ct., at 1269, n. 13.

1.3. Tries to fine a nonresident not subject to the civil laws.

1.4. Enforces any provision of the vehicle code franchise contract against the non-governmental litigant before him.

2. A family court judge:

2.1. Attempts to dissolve a marriage not created with a state marriage license or against those not domiciled on federal territory. For instance, a couple got married but has a private marriage contract instead of a license.

2.2. Refuses to dismiss the case before him for lack of jurisdiction.

2.3. Enforces any provision of the family code franchise contract against the non-governmental litigant before him.

3. The U.S. Tax Court:

3.1. Hears a case not involving a "taxpayer", and who was the victim of a false or fraudulent information return that made him "look" like a statutory "taxpayer" but in fact did not MAKE him one for the tax period in question. See:

> *Correcting Erroneous Information Returns*, Form #04.001
> http://sedm.org/Forms/FormIndex.htm

3.2. Refuses to dismiss the case before him for lack of jurisdiction.

3.3. Enforces any provision of the Internal Revenue Code against a "nontaxpayer".

3.4. Attempts to declare the litigant before him as a "taxpayer" in spite of the wishes of the litigant. The Declaratory Judgments Act, 28 U.S.C. §2201(a) forbids any federal judge from making such determinations in cases involving federal taxes.

## 13 Questions that Readers, Grand Jurors, and Petit Jurors Should be Asking the Government

These questions are provided for readers, Grand Jurors, and Petit Jurors to present to the government or anyone else who would challenge the facts and law appearing in this pamphlet, most of whom work for the government or stand to gain financially from perpetuating the fraud. If you find yourself in receipt of this pamphlet, you are demanded to answer the questions within 10 days. Pursuant to Federal Rule of Civil Procedure 8(b)(6), failure to deny within 10 days constitutes an admission to each question. Pursuant to 26 U.S.C. §6065, all of your answers must be signed under penalty of perjury. We are not interested in agency policy, but only sources of reasonable belief identified in the pamphlet below:

> *Reasonable Belief About Income Tax Liability*, Form #05.007
> http://sedm.org/Forms/FormIndex.htm

Your answers will become evidence in future litigation, should that be necessary in order to protect the rights of the person against whom you are attempting to unlawfully enforce federal law.

1. Admit that a "state" is a political group.

> *"State. A people permanently occupying a fixed territory bound together by common-law habits and custom into one body politic exercising, through the medium of an organized government, independent sovereignty and control over all persons and things within its boundaries, capable of making war and peace and of entering into international relations with other communities of the globe. United States v. Kusche, D.C.Cal., 56 F.Supp. 201, 207, 208. The organization of social life which exercises sovereign power in behalf of the people. Delany v. Moralitis, C.C.A.Md., 136 F.2d 129, 130. In its largest sense, a "state" is a body politic or a society of men. Beagle v. Motor Vehicle Acc. Indemnification Corp., 44 Misc.2d 636, 254 N.Y.S.2d 763, 765. A body of people occupying a definite territory and politically organized under one government. State ex re. Maisano v. Mitchell, 155 Conn. 256, 231 A.2d 539, 542. A territorial unit with a distinct general body of law. Restatement, Second, Conflicts, §3. Term may refer either to body politic of a nation (e.g. United States) or to an individual government unit of such nation (e.g. California).*
>
> [...]
>
> *The people of a state, in their collective capacity, considered as the party wronged by a criminal deed; the public; as in the title of a cause, "The State vs. A.B."*
> *[Black's Law Dictionary, Sixth Edition, p. 1407]*

YOUR ANSWER: _____ Admit _____ Deny

CLARIFICATION: _____

2. Admit that one's choice of citizenship is a type of political affiliation.

*"Allegiance and citizenship, differ, indeed, in almost every characteristic. Citizenship is the effect of compact [contract]; allegiance is the offspring of power and necessity. Citizenship is a political tie; allegiance is a territorial tenure. [. . .] The doctrine is, that allegiance cannot be due to two sovereigns; and taking an oath of allegiance to a new, is the strongest evidence of withdrawing allegiance from a previous, sovereign....."*
*[Talbot v. Janson, 3 U.S. 133 (1795)]*

YOUR ANSWER: ____Admit ____Deny

CLARIFICATION:_____

3.   Admit that being a "citizen" implies a political affiliation with a group of people called a "state".

*"There cannot be a nation without a people. The very idea of a political community, such as a nation is, implies an [88 U.S. 162, 166] association of persons for the promotion of their general welfare. Each one of the persons associated becomes a member of the nation formed by the association. He owes it allegiance and is entitled to its protection. Allegiance and protection are, in this connection, reciprocal obligations. The one is a compensation for the other; allegiance for protection and protection for allegiance.*

*"For convenience it has been found necessary to give a name to this membership. The object is to designate by a title the person and the relation he bears to the nation. For this purpose the words 'subject,' 'inhabitant,' and 'citizen' have been used, and the choice between them is sometimes made to depend upon the form of the government. Citizen is now more commonly employed, however, and as it has been considered better suited to the description of one living under a republican government, it was adopted by nearly all of the States upon their separation from Great Britain, and was afterwards adopted in the Articles of Confederation and in the Constitution of the United States. When used in this sense it is understood as conveying the idea of membership of a nation, and nothing more."*
*[Minor v. Happersett, 88 U.S. 162 (1874)]*

YOUR ANSWER: ____Admit ____Deny

CLARIFICATION:_____

4.   Admit that one's choice of "domicile" is also a type of political affiliation.

See article about domicile at:
http://sedm.org/Forms/05-MemLaw/Domicile.pdf

YOUR ANSWER: ____Admit ____Deny

CLARIFICATION:_____

5.   Admit that there are two legal prerequisites in determining one's "domicile", which are physical presence within the state and consent to be subject to the laws of that place, which Black's Law Dictionary calls "intent".

*"domicile. A person's legal home. That place where a man has his true, fixed, and permanent home and principal establishment, and to which whenever he is absent he has the intention of returning. Smith v. Smith, 206 Pa.Super. 310, 213 A.2d. 94. Generally, physical presence within a state and the intention to make it one's home are the requisites of establishing a "domicile" therein. The permanent residence of a person or the place to which he intends to return even though he may actually reside elsewhere. A person may have more than one residence but only one domicile. The legal domicile of a person is important since it, rather than the actual residence, often controls the jurisdiction of the taxing authorities and determines where a person may exercise the privilege of voting and other legal rights and privileges."*
*[Black's Law Dictionary, Sixth Edition, p. 485]*

YOUR ANSWER: ____Admit ____Deny

CLARIFICATION:_____

6.   Admit that according to the Declaration of Independence, all just powers of government derive from the consent of the governed.

*"We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness.--That to secure*

*these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed. --That whenever any Form of Government becomes destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness."*
*[Declaration of Independence]*

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

7. Admit that the enforcement of all civil laws requires the "consent of the governed" while criminal laws do not require consent in the case of the Defendant.

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

8. Admit that a person may not have a legal "domicile" in a place without voluntarily consenting to be subject to the civil laws of that place.

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

9. Admit that the <u>First Amendment</u> Assembly Clause protects our right to freely associate with any political group we choose.

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

10. Admit that the right to freely associate under the <u>First Amendment</u> also implies the right to be free from compelled association with any particular group.

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

11. Admit that freedom from compelled association implies the ability to avoid choosing any earthly domicile, and thereby avoid association with the local citizens of a political community called a county or a city.

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

12. Admit that the freedom from compelled association implies the ability to be a "national" but not a "citizen" under <u>8 U.S.C. §1101</u>(a)(22)(B) or 8 U.S.C. §1101(a)(21).

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

13. Admit that the freedom from compelled association implies the ability to not have a domicile in the place where one physically inhabits.

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

14. Admit that a person who is compelled to maintain a domicile against his will is not legally responsible for the consequences of maintaining such a domicile.

> *"Similarly, when a person is prevented from leaving his domicile by circumstances not of his doing and beyond his control, he may be relieved of the consequences attendant on domicile at that place.  In Roboz (USDC D.C. 1963) [Roboz v. Kennedy, 219 F.Supp. 892 (D.D.C. 1963), p. 24], a federal statute was involved which precluded the return of an alien's property if he was found to be domiciled in Hungary prior to a certain date.  It was found that Hungary was Nazi-controlled at the time in question and that the persons involved would have left Hungary (and lost domicile there) had they been able to.  Since they had been precluded from leaving because of the political privations imposed by the very government they wanted to escape (the father was in prison there), the court would not hold them to have lost their property based on a domicile that circumstances beyond their control forced them to retain."*
> [Conflicts in a Nutshell, David D. Siegel and Patrick J. Borchers, West Publishing, p. 24]

YOUR ANSWER:  ____Admit  ____Deny

CLARIFICATION:_____

15. Admit that one may not legally have more than one domicile at a time.

> *"A person may have more than one residence but only one domicile."*
> [Black's Law Dictionary, Sixth Edition, p. 485]

YOUR ANSWER:  ____Admit  ____Deny

CLARIFICATION:_____

16. Admit that the coincidence of citizenship and domicile establish one's "political rights" in a community.

> *CALIFORNIA CONSTITUTION*
> *ARTICLE 2  VOTING, INITIATIVE AND REFERENDUM, AND RECALL*
>
> *SEC. 2.  A United States citizen 18 years of age and __resident__ in this State may vote.*
> *[SOURCE:  http://www.leginfo.ca.gov/.const/.article_2]*
>
> _____
>
> *California Elections Code*
> *349. (a) "Residence" for voting purposes means a person's domicile.*
>
> *(b) The domicile of a person is that place in which his or her habitation is fixed, wherein the person has the intention of remaining, and to which, whenever he or she is absent, the person has the intention of returning.  At a given time, a person may have only one domicile.*
>
> *(c) The residence of a person is that place in which the person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining.  At a given time, a person may have more than one residence.*
> *[SOURCE:  http://www.leginfo.ca.gov/cgi-bin/displaycode?section=elec&group=00001-01000&file=300-362]*

YOUR ANSWER:  ____Admit  ____Deny

CLARIFICATION:_____

17. Admit that when one does not have a domicile in the place they inhabit, they become nationals if they are naturalized or natural born citizens of the country which has jurisdiction over that that place.

See Section 2 of: *Why You are a "national", "state national", and Constitutional but not Statutory Citizen*, Form #05.006:
http://sedm.org/Forms/FormIndex.htm

YOUR ANSWER:  ____Admit  ____Deny

CLARIFICATION:_____

18. Admit that courts may _not_ interfere with the free exercise of political rights, but have a constitutional obligation to intervene to _protect_ them.

> "In holding that the subject matter of this suit was not justiciable, the District Court relied on Colegrove v. Green, supra, and subsequent per curiam cases. 29 The [369 U.S. 186, 209] court stated: "From a review of these decisions there can be no doubt that the federal rule . . . is that the federal courts . . . will not intervene in cases of this type to compel legislative reapportionment." 179 F. Supp., at 826. We understand the District Court to have read the cited cases as compelling the conclusion that since the appellants sought to have a legislative apportionment held unconstitutional, their suit presented a "political question" and was therefore nonjusticiable. We hold that this challenge to an apportionment presents no nonjusticiable "political question." The cited cases do not hold the contrary.
>
> _Of course the mere fact that the suit seeks protection of a political right does not mean it presents a political question. Such an objection "is little more than a play upon words."_ Nixon v. Herndon, 273 U.S. 536, 540 . Rather, it is argued that apportionment cases, whatever the actual wording of the complaint, can involve no federal constitutional right except one resting on the guaranty of a republican form of government, 30 and that complaints based on that clause have been held to present political questions which are nonjusticiable.
>
> _We hold that the claim pleaded here neither rests upon nor implicates the Guaranty Clause and that its justiciability is therefore not foreclosed by our decisions of cases involving that clause._ The District Court misinterpreted Colegrove v. Green and other decisions of this Court on which it relied. Appellants' claim that they are being denied equal protection is justiciable, and if [369 U.S. 186, 210] "discrimination is sufficiently shown, the right to relief under the equal protection clause is not diminished by the fact that the discrimination relates to political rights." Snowden v. Hughes, 321 U.S. 1, 11 . To show why we reject the argument based on the Guaranty Clause, we must examine the authorities under it. But because there appears to be some uncertainty as to why those cases did present political questions, and specifically as to whether this apportionment case is like those cases, we deem it necessary first to consider the contours of the "political question" doctrine. "
> [Baker v. Carr, 369 U.S. 186 (1962)]

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

19. Admit that in cases where there are no contracts or agency with the government which might interfere with or impair private Constitutional rights, courts may not interfere with one's choice of citizenship or domicile without violating the First Amendment right of free association.

> "The restrictions that the Constitution places upon the government in its capacity as lawmaker, i.e., as the regulator of private conduct, are not the same as the restrictions that it places upon the government in its capacity as employer. We have recognized this in many contexts, with respect to many different constitutional guarantees. Private citizens perhaps cannot be prevented from wearing long hair, but policemen can. Kelley v. Johnson, 425 U.S. 238, 247 (1976). Private citizens cannot have their property searched without probable cause, but in many circumstances government employees can. O'Connor v. Ortega, 480 U.S. 709, 723 (1987) (plurality opinion); id., at 732 (SCALIA, J., concurring in judgment). Private citizens cannot be punished for refusing to provide the government information that may incriminate them, but government employees can be dismissed when the incriminating information that they refuse to provide relates to the performance of their job. Gardner v. Broderick, [497 U.S. 62, 95] 392 U.S. 273, 277 -278 (1968). With regard to freedom of speech in particular: Private citizens cannot be punished for speech of merely private concern, but government employees can be fired for that reason. Connick v. Myers, 461 U.S. 138, 147 (1983). Private citizens cannot be punished for partisan political activity, but federal and state employees can be dismissed and otherwise punished for that reason. Public Workers v. Mitchell, 330 U.S. 75, 101 (1947); Civil Service Comm'n v. Letter Carriers, 413 U.S. 548, 556 (1973); Broadrick v. Oklahoma, 413 U.S. 601, 616 -617 (1973). "
> [Rutan v. Republican Party of Illinois, 497 U.S. 62 (1990)]

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

20. Admit that courts which interfere with one's choice of citizenship or domicile are engaging in "political questions" that are beyond the jurisdiction of any court and which are reserved for coordinate branches of the government.

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

21. Admit that the consequence of courts involving themselves in the forbidden area of "political questions" was described by the Supreme Court as follows:

> *"Another evil, alarming and little foreseen, involved in regarding these as questions for the final arbitrament of judges would be that, in such an event, all political privileges and rights would, in a dispute among the people, depend on our decision finally. We would possess the power to decide against, as well as for, them, and, under a prejudiced or arbitrary judiciary, the public liberties and popular privileges might thus be much perverted, if not entirely prostrated. But, allowing the people to make constitutions and unmake them, allowing their representatives to make laws and unmake them, and without our interference as to their principles or policy in doing it, yet, when constitutions and laws are made and put in force by others, then the courts, as empowered by the State or the Union, commence their functions and may decide on the rights which conflicting parties can legally set up under them, rather than about their formation itself. Our power begins after theirs [the Sovereign People] ends. Constitutions and laws precede the judiciary, and we act only under and after them, and as to disputed rights beneath them, rather than disputed points in making them. We speak what is the law, jus dicere, we speak or construe what is the constitution, after both are made, but we make, or revise, or control neither. The disputed rights beneath constitutions already made are to be governed by precedents, by sound legal principles, by positive legislation [e.g. "positive law"], clear contracts, moral duties, and fixed rules; they are per se questions of law, and are well suited to the education and habits of the bench. But the other disputed points in making constitutions, depending often, as before shown, on policy, inclination, popular resolves and popular will and arising not in respect to private rights, but what is meum and tuum, but in relation to politics, they belong to politics, and they are settled by political tribunals, and are too dear to a people bred in the school of Sydney and Russel for them ever to intrust their final decision, when disputed, to a class of men who are so far removed from them as the judiciary, a class also who might decide them erroneously, as well as right, and if in the former way, the consequences might not be able to be averted except by a revolution, while a wrong decision by a political forum can often be peacefully corrected by new elections or instructions in a single month; and if the people, in the distribution of powers under the constitution, should ever think of making judges supreme arbiters in political controversies when not selected by nor, frequently, amenable to them nor at liberty to follow such various considerations in their judgments as [48 U.S. 53] belong to mere political questions, they will dethrone themselves and lose one of their own invaluable birthrights; building up in this way -- slowly, but surely -- a new sovereign power in the republic, in most respects irresponsible and unchangeable for life, and one more dangerous, in theory at least, than the worst elective oligarchy in the worst of times. Again, instead of controlling the people in political affairs, the judiciary in our system was designed rather to control individuals, on the one hand, when encroaching, or to defend them, on the other, under the Constitution and the laws, when they are encroached upon. And if the judiciary at times seems to fill the important station of a check in the government, it is rather a check on the legislature, who may attempt to pass laws contrary to the Constitution, or on the executive, who may violate both the laws and Constitution, than on the people themselves in their primary capacity as makers and amenders of constitutions."*
> *[Luther v. Borden, 48 U.S. ] (1849)]*

YOUR ANSWER:   ____Admit   ____Deny

CLARIFICATION:_____

22. Admit that a government agency which fails to recognize your choice of citizenship or domicile is interfering with your First Amendment right of free association.

YOUR ANSWER:   ____Admit   ____Deny

CLARIFICATION:_____

23. Admit that the main motivation for a court to change the declared domicile or citizenship of a litigant is to extend the jurisdiction of the court and make the litigant into a "taxpayer" so his property and liberty can be plundered illegally.

YOUR ANSWER:   ____Admit   ____Deny

CLARIFICATION:_____

24. Admit that a court failing to recognize one's voluntary, consensual choice of legal "domicile" within a state of the Union and moves that domicile to the "United States", which is defined in 26 U.S.C. §7701(a)(9) and (a)(10) is implementing the equivalent of kidnapping and identity theft, by transporting the legal "res" or "identity" of the litigant to a foreign jurisdiction.

> *United States Code*
> *TITLE 18 - CRIMES AND CRIMINAL PROCEDURE*
> *PART I - CRIMES*

*CHAPTER 55 - KIDNAPPING*
*Section 1201. Kidnapping*

 *(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when -*

 *(1) the person is willfully transported in interstate or foreign commerce, regardless of whether the person was alive when transported across a State boundary if the person was alive when the transportation began;*

 *(2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States;*

 *(3) any such act against the person is done within the special aircraft jurisdiction of the United States as defined in section 46501 of title 49;*

 *(4) the person is a foreign official, an internationally protected person, or an official guest as those terms are defined in section 1116(b) of this title; or*

 *(5) the person is among those officers and employees described in section 1114 of this title and any such act against the person is done while the person is engaged in, or on account of, the performance of official duties, shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.*

YOUR ANSWER: ____Admit ____Deny

CLARIFICATION:_____

25. Admit that the above statute refers to kidnapping of a "person", and that such a legal person includes the "res" and legal identity of any litigant in any federal court.

YOUR ANSWER: ____Admit ____Deny

CLARIFICATION:_____

26. Admit that a judge who falsifies or changes the declared domicile of a litigant against his will essentially is therefore instituting involuntary servitude in violation of the Thirteenth Amendment, and thereby abusing the taxing powers of government to plunder assets of the litigant and make him essentially into a compelled government subcontractor and "Kelly Girl", where the "contract" is the compelled choice of domicile.

 *"The constitutionality and scope of sections 1990 and 5526 present the first questions for our consideration. They prohibit peonage. __What is peonage? It may be defined as a state or condition of compulsory service, based upon the indebtedness of the peon to the master. The basal fact is indebtedness.__ As said by Judge Benedict, delivering the opinion in Jaramillo v. Romero, 1 NMex. 190, 194: 'One fact existed universally; all were indebted to their masters. __This was the cord by which they seemed bound to their masters' service.__' Upon this is based a condition of compulsory service. __Peonage is sometimes classified as voluntary or involuntary, but this implies simply a difference in the mode of origin, but not in the character of the servitude.__ The one exists where the debtor voluntarily contracts to enter the service of his creditor. The other is forced upon the debtor by some provision of law. But __peonage, however created, is compulsory service, involuntary servitude. The peon can release himself therefrom, it is true, by the payment of the [public/government] debt, but otherwise the service is enforced.__ A clear distinction exists between peonage and the __voluntary performance of labor or rendering of services in payment of a debt.__ In the latter case the debtor, though contracting to pay his indebtedness by labor or service, and subject like any other contractor to an action for damages for breach of that contract, can elect at any time to break it, and __no law or force compels performance or continuance of service.__"*
 *[Clyatt v. U.S., 197 U.S. 207 (1905)]*

 *"Slavery implies involuntary servitude—a state of bondage; the ownership of mankind as a chattel, __or at least the control of the labor and services of one man for the benefit of another, and the absence of a legal right to the disposal of his own person, property, and services [in their entirety].__ This amendment [the Thirteenth Amendment] was said in the Slaughter House Cases, 16 Wall, 36, to have been intended primarily to abolish slavery, as it had been previously known in this country, and that it equally forbade Mexican peonage or the Chinese coolie trade, when they amounted to slavery or involuntary servitude and that the use of the word 'servitude' was intended to prohibit the use of all forms of involuntary slavery, of whatever class or name."*
 *[Plessy v. Ferguson, 163 U.S. 537, 542 (1896)]*

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

27. Admit that the above type of abuse is described in the statutes as "racketeering". To wit:

> *TITLE 18 > PART I > CHAPTER 95 > § 1951*
> *1951. Interference with commerce by threats or violence*
>
> ***(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce [including one's labor and services], by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.***
>
> *(b) As used in this section—*
>
> *(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.*
>
> *(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.*
>
> *(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.*
>
> *(c) This section shall not be construed to repeal, modify or affect section 17 of Title 15, sections 52, 101–115, 151–166 of Title 29 or sections 151–188 of Title 45.*

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

28. Admit that a threat of contempt of court resulting from challenging a judge's determination of domicile satisfies the criteria above of "extortion" and that a threat of prison time for contempt is every bit as strong a motivating factor as actual "physical violence" described above.

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

29. Admit that the above type of abuse by government employees may explain why the Bible identifies kings and rulers and imperial monarchs called judges as "the Beast" in Revelations 19:19:

> *"And I saw the beast, the kings of the earth, and their armies, gathered together to make war against Him who sat on the horse and against His army."*
> *[Rev. 19:19, Bible, NKJV]*

YOUR ANSWER: _____Admit _____Deny

CLARIFICATION:_____

## Affirmation:

I declare under penalty of perjury as required under 26 U.S.C. §6065 that the answers provided by me to the foregoing questions are true, correct, and complete to the best of my knowledge and ability, so help me God. I also declare that these answers are completely consistent with each other and with my understanding of both the Constitution of the United States,

Internal Revenue Code, Treasury Regulations, the Internal Revenue Manual, and the rulings of the Supreme Court but not necessarily lower federal courts.

Name (print):_____

Signature:_____

Date:_____

Witness name (print):_____

Witness Signature:_____

Witness Date:_____

28      AMENDMENTS TO THE CONSTITUTION.

ber of senators, and a majority of the whole number shall be necessary to a choice.

3. But no person constitutionally ineligible to the office of president, shall be eligible to that of vice-president of the United States.

## ARTICLE XIII.

*In what cases persons forfeit their citizenship.*

1. If any citizen of the United States shall accept, claim, receive, or retain any title of nobility or honor, or shall, without the consent of congress, accept and retain any present, pension, office or emolument of any kind whatever, from any emperor, king, prince, or foreign power, such person shall cease to be a citizen of the United States, and shall be incapable of holding any office of trust or profit under them, or either of them.

[NOTE.—The 11th article of the amendments to the constitution was proposed at the second session of the third congress; the 12th article, at the first session of the eighth congress; and the 13th article, at the second session of the eleventh congress.]

## ARTICLE XIV.

*Slavery abolished and prohibited.*

1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

2. Congress shall have power to enforce this article by appropriate legislation.

Exhibit C1

B

# GENERAL LAWS,

## JOINT RESOLUTIONS, MEMORIALS, AND PRIVATE ACTS,

PASSED AT THE

### SIXTH SESSION

OF THE

# LEGISLATIVE ASSEMBLY

OF THE

## TERRITORY OF COLORADO.

CONVENED AT GOLDEN CITY, ON THE THIRD DAY OF DECEMBER, 1866.

TOGETHER WITH THE DECLARATION OF INDEPENDENCE, THE
CONSTITUTION OF THE UNITED STATES,

AND THE

## ORGANIC ACT OF THE TERRITORY,

WITH THE AMENDMENTS THERETO.

PUBLISHED BY AUTHORITY.

### CENTRAL CITY:

DAVID C. COLLIER, PRINTER, MINERS' REGISTER OFFICE.

1867.

Exhibit C1



**TERRITORY**
**1861**

**STATE**
**1876**

### DEPARTMENT OF PERSONNEL & ADMINISTRATION

## DIVISION OF
## INFORMATION TECHNOLOGIES

# STATE ARCHIVES
# AND
# PUBLIC RECORDS

*I Hereby Certify that the annexed copy (or each of the annexed copies) is a true copy of a record in the legal custody of the State Archivist of Colorado, and is filed among the records of*

THE LEGISLATIVE ASSEMBLY, TERRITORY OF COLORADO
deposited therein

GENERAL LAWS, JOINT RESOLUTION, MEMORIALS, AND PRIVATE ACTS PASSED AT THE SIXTH SESSION
CONVENED AT GOLDEN CITY, ON THE THIRD DAY OF DECEMBER, 1866, TOGETHER WITH THE DECLARATION
OF INDEPENDENCE, THE CONSTITUTION OF THE UNITED STATES AND THE ORGANIC ACT OF THE TERRITORY
WITH THE AMENDMENTS THERETO.
PRINTED 1867.

EXCERPT.
AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, ARTICLES XIII AND XIV.
COVER PAGE AND PAGE 28.
TOTAL 2 PAGES.



_____
TERRY KETELSEN
STATE ARCHIVIST OF COLORADO

April 15, 2009
DATE

Exhibit C1

deemed guilty of perjury, and upon conviction shall be punished accordingly.

**Quorum of legislative assembly.**
**Members.**
**Rules.**

SEC. 10. *And be it further enacted,* That a majority of the legislative assembly appointed or elected to each house shall constitute a quorum. The house of delegates shall be the judge of the election returns and qualifications of its members. Each house shall determine the rules of its proceedings, and shall choose its own officers. The governor shall call the council to order at the opening of each new assembly; and the secretary of the District shall call the house of delegates to order at the opening of each new legislative assembly, and shall preside over it until a temporary presiding officer shall have been chosen and shall have taken his seat. No member shall be expelled by either house except by a vote of two thirds of all the members appointed or elected to that house. Each house may punish by imprisonment any person not a member who shall be guilty of disrespect to the house by disorderly or contemptuous behavior in its presence; but no such imprisonment shall extend beyond twenty-four hours at one time. Neither house shall, without the consent of the other, adjourn for more than two days, or to any other place than that in which such house shall be sitting. At the request of any member the yeas and nays shall be taken upon any question and entered upon the journal.

**Organization of each new assembly.**

**Expulsion of members.**
**Punishment for contempt.**

**Adjournment.**

**Yeas and nays.**

**Bills, where to originate.**
**Vote on final passage.**

SEC. 11. *And be it further enacted,* That bills may originate in either house, but may be altered, amended, or rejected by the other; and on the final passage of all bills the vote shall be by yeas and nays upon each bill separately, and shall be entered upon the journal, and no bill shall become a law without the concurrence of a majority of the members elected to each house.

**Reading of bills.**
**Acts to embrace but one subject;**

**when to take effect.**

SEC. 12. *And be it further enacted,* That every bill shall be read at large on three different days in each house. No act shall embrace more than one subject, and that shall be expressed in its title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed in the title; and no act of the legislative assembly shall take effect until thirty days after its passage, unless, in case of emergency, (which emergency shall be expressed in the preamble or body of the act,) the legislative assembly shall by a vote of two thirds of all the members appointed or elected to each house otherwise direct.

**Money not to be drawn from treasury, except, &c.**
**Appropriation bills.**

SEC. 13. *And be it further enacted,* That no money shall be drawn from the treasury of the District, except in pursuance of an appropriation made by law, and no bill making appropriations for the pay or salaries of the officers of the District government shall contain any provisions on any other subject.

**Appropriations, how to be provided for;**

SEC. 14. *And be it further enacted,* That each legislative assembly shall provide for all the appropriations necessary for the ordinary and contingent expenses of the government of the District until the expiration of the first fiscal quarter after the adjournment of the next regular session, the aggregate amount of which shall not be increased without a vote of two thirds of the members elected or appointed to each house as herein provided, nor exceed the amount of revenue authorized by law to be raised in such time, and all appropriations, general or special, requiring money to be paid out of the District treasury, from funds belonging to the District, shall end with such fiscal quarter; and no debt, by which the aggregate debt of the District shall exceed five per cent. of the assessed property of the District, shall be contracted, unless the law authorizing the same shall at a general election have been submitted to the people and have received a majority of the votes cast for members of the legislative assembly at such election. The legislative assembly shall provide for the publication of said law in at least two newspapers in the District for three months, at least, before the vote of

**when to end.**

**No debt by which, &c. to be contracted unless, &c.**
**See § 20.**
*Post,* p. 424.

FORTY–FIRST CONGRESS. Sess. III. Ch. 62. 1871.        421

the election and the returns thereof, prescribe the time, places, and manner of conducting such election, and make all needful rules and regulations for carrying into effect the provisions of this act not otherwise herein provided for: *Provided,* That the first election shall be held within sixty days from the passage of this act. In the first and all subsequent elections the persons having the highest number of legal votes for the house of delegates, respectively, shall be declared by the governor duly elected members of said house. In case two or more persons voted for shall have an equal number of votes for the same office, or if a vacancy shall occur in the house of delegates, the governor shall order a new election. And the persons thus appointed and elected to the legislative assembly shall meet at such time and at such place within the District as the governor shall appoint; but thereafter the time, place, and manner of holding and conducting all elections by the people, and the formation of the districts for members of the council and house of delegates, shall be prescribed by law, as well as the day of the commencement of the regular sessions of the legislative assembly: *Provided,* That no session in any one year shall exceed the term of sixty days, except the first session, which may continue one hundred days.

*Elections of delegates;*

*when to be held.*

*Plurality to elect.*

*New election, if vote is equal, or in case of vacancy.*

*Time and place of meeting.*

*Sessions not to exceed sixty days, except the first.*

Sec. 6. *And be it further enacted,* That the legislative assembly shall have power to divide that portion of the District not included in the corporate limits of Washington or Georgetown into townships, not exceeding three, and create township officers, and prescribe the duties thereof; but all township officers shall be elected by the people of the townships respectively.

*Part of district may be divided into townships.*

*Township officers.*

Sec. 7. *And be it further enacted,* That all male citizens of the United States, above the age of twenty-one years, who shall have been actual residents of said District for three months prior to the passage of this act, except such as are non compos mentis and persons convicted of infamous crimes, shall be entitled to vote at said election, in the election district or precinct in which he shall then reside, and shall have so resided for thirty days immediately preceding said election, and shall be eligible to any office within the said District, and for all subsequent elections twelve months' prior residence shall be required to constitute a voter; but the legislative assembly shall have no right to abridge or limit the right of suffrage.

*Voters, their qualifications, &c.*

*Right of suffrage not to be abridged.*

Sec. 8. *And be it further enacted,* That no person who has been or hereafter shall be convicted of bribery, perjury, or other infamous crime, nor any person who has been or may be a collector or holder of public moneys who shall not have accounted for and paid over, upon final judgment duly recovered according to law, all such moneys due from him, shall be eligible to the legislative assembly or to any office of profit or trust in said District.

*Certain persons disqualified from membership in the assembly or holding office.*

Sec. 9. *And be it further enacted,* That members of the legislative assembly, before they enter upon their official duties, shall take and subscribe the following oath or affirmation: "I do solemnly swear (or affirm) that I will support the Constitution of the United States, and will faithfully discharge the duties of the office upon which I am about to enter; and that I have not knowingly or intentionally paid or contributed anything, or made any promise in the nature of a bribe, to directly or indirectly influence any vote at the election at which I was chosen to fill the said office, and have not accepted, nor will I accept, or receive, directly or indirectly, any money or other valuable thing for any vote or influence that I may give or withhold on any bill, resolution, or appropriation, or for any other official act." Any member who shall refuse to take the oath herein prescribed shall forfeit his office, and every person who shall be convicted of having sworn falsely to or of violating his said oath shall forfeit his office and be disqualified thereafter from holding any office of profit or trust in said District, and shall be

*Oath of members of the legislative assembly.*

*Refusal to take oath to forfeit office.*

*False oath, &c. to disqualify and to be perjury.*

2      Exhibit 1G

420                 FORTY-FIRST CONGRESS.  Sess. III.  Ch. 62.  1871.

**Veto power of governor.**

large on their journal, and proceed to reconsider it.  If, after such reconsideration, two thirds of all the members appointed or elected to the house shall agree to pass the bill, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two thirds of all the members appointed or elected to that house, it shall become a law.  But in all such cases the votes of both houses shall be determined by yeas and nays, and the names of the persons voting for and against the bill shall be entered on the journal of each house respectively.  If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the legislative assembly by their adjournment prevent its return, in which case it shall not be a law.

**Bills not returned within ten days, &c.**

**Secretary of the District.**

**Residence, term of office, duties.**

Sec. 4. *And be it further enacted,* That there shall be appointed by the President, by and with the advice and consent of the Senate, a secretary of said District, who shall reside therein and possess the qualification of an elector, and shall hold his office for four years, and until his successor shall be appointed and qualified; he shall record and preserve all laws and proceedings of the legislative assembly hereinafter constituted, and all the acts and proceedings of the governor in his executive department; he shall transmit one copy of the laws and journals of the legislative assembly within thirty days after the end of each session, and one copy of the executive proceedings and official correspondence semiannually, on the first days of January and July in each year, to the President of the United States, and four copies of the laws to the President of the Senate and to the Speaker of the House of Representatives, for the use of Congress; and in case of the death, removal, resignation, disability, or absence, of the governor from the District, the secretary shall be, and he is hereby, authorized and required to execute and perform all the powers and duties of the governor during such vacancy, disability, or absence, or until another governor shall be duly appointed and qualified to fill such vacancy.  And in case the offices of governor and secretary shall both become vacant, the powers, duties, and emoluments of the office of governor shall devolve upon the presiding officer of the council, and in case that office shall also be vacant, upon the presiding officer of the house of delegates, until the office shall be filled by a new appointment.

**When to act as governor.**

**Provision if offices of governor and secretary are vacant, &c.**

**Legislative assembly.**

**Council; number, residence, appointment, term of office, &c.**

Sec. 5. *And be it further enacted,* That legislative power and authority in said District shall be vested in a legislative assembly as hereinafter provided.  The assembly shall consist of a council and house of delegates.  The council shall consist of eleven members, of whom two shall be residents of the city of Georgetown, and two residents of the county outside of the cities of Washington and Georgetown, who shall be appointed by the President, by and with the advice and consent of the Senate, who shall have the qualification of voters as hereinafter prescribed, five of whom shall be first appointed for the term of one year, and six for the period of two years, provided that all subsequent appointments shall be for the term of two years.  The house of delegates shall consist of twenty-two members, possessing the same qualifications as prescribed for the members of the council, whose term of service shall continue one year.  An apportionment shall be made, as nearly equal as practicable, into eleven districts for the appointment of the council, and into twenty-two districts for the election of delegates, giving to each section of the District representation in the ratio of its population as nearly as may be.  And the members of the council and of the house of delegates shall reside in and be inhabitants of the districts from which they are appointed or elected, respectively.  For the purposes of the first election to be held under this act, the governor and judges of the supreme court of the District of Columbia shall designate the districts for members of the house of delegates, appoint a board of registration and persons to superintend

**House of delegates; number, term of office, &c.**

**Districts.**

**Residence.**

**First election.**

D

Exhibit 1G

For expenses under the neutrality act, twenty thousand dollars.

For expenses incurred under instructions of the Secretary of State, of bringing home from foreign countries persons charged with crimes, and expenses incident thereto, including loss by exchange, five thousand dollars.

Neutrality. 1818, ch. 88. Vol. iii. p. 447. Persons charged with crime.

For relief and protection of American seamen in foreign countries, one hundred thousand dollars.

American seamen.

For expenses which may be incurred in acknowledging the services of masters and crews of foreign vessels in rescuing American citizens from shipwreck, five thousand dollars.

Rescuing seamen.

For payment of the seventh annual instalment of the proportion contributed by the United States toward the capitalization of the Scheldt dues, fifty-five thousand five hundred and eighty-four dollars; and for such further sum, not exceeding five thousand dollars, as may be necessary to carry out the stipulations of the treaty between the United States and Belgium.

Scheldt dues. Vol. xiii. p. 649.

To pay to the government of Great Britain and Ireland, the second and last instalment of the amount awarded by the commissioners under the treaty of July one, eighteen hundred and sixty-three, in satisfaction of the claims of the Hudson's Bay and of the Puget Sound Agricultural Company, three hundred and twenty-five thousand dollars in gold coin: *Provided*, That before payment shall be made of that portion of the above sum awarded to the Puget Sound Agricultural Company, all taxes legally assessed upon any of the property of said company covered by said award, before the same was made, and still unpaid, shall be extinguished by said Puget Sound Agricultural Company ; or the amount of such taxes shall be withheld by the government of the United States from the sum hereby appropriated.

Award to Hudson's Bay and Puget Sound Agricultural Companies. Vol. xiii. p. 651. Certain taxes to be settled before payment of award; or amount withheld.

APPROVED, February 21, 1871.

---

CHAP. LXII. — *An Act to provide a Government for the District of Columbia.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all that part of the territory of the United States included within the limits of the District of Columbia be, and the same is hereby, created into a government by the name of the District of Columbia, by which name it is hereby constituted a body corporate for municipal purposes, and may contract and be contracted with, sue and be sued, plead and be impleaded, have a seal, and exercise all other powers of a municipal corporation not inconsistent with the Constitution and laws of the United States and the provisions of this act.

Feb. 21, 1871. Vol. xvii. p. 16. District of Columbia constituted a body corporate for municipal purposes. Powers, &c.

SEC. 2. *And be it further enacted,* That the executive power and authority in and over said District of Columbia shall be vested in a governor, who shall be appointed by the President, by and with the advice and consent of the Senate, and who shall hold his office for four years, and until his successor shall be appointed and qualified. The governor shall be a citizen of and shall have resided within said District twelve months before his appointment, and have the qualifications of an elector. He may grant pardons and respites for offenses against the laws of said District enacted by the legislative assembly thereof ; he shall commission all officers who shall be elected or appointed to office under the laws of the said District enacted as aforesaid, and shall take care that the laws be faithfully executed.

Governor, appointment, and term of office; qualifications; powers and duties.

SEC. 3. *And be it further enacted,* That every bill which shall have passed the council and house of delegates shall, before it becomes a law, be presented to the governor of the District of Columbia ; if he approve, he shall sign it, but if not, he shall return it, with his objections, to the house in which it shall have originated, who shall enter the objections at

Veto power.

Exhibit 1G

exceed the sum of one thousand two hundred dollars per annum each; and the salary of the clerks and other assistants of the health-officer shall not exceed in the aggregate the amount of seven thousand dollars, to be apportioned as the Commissioners of the District of Columbia may deem best.

**Reports to Congress.** SEC. 12. That it shall be the duty of the said Commissioners to report to Congress at the next session succeeding their appointment a draft of such additional laws or amendments to existing laws as in their opinion are necessary for the harmonious working of the system hereby adopted, and for the effectual and proper government of the District of Columbia; and said Commissioners shall annually report their official doings in detail to Congress on or before the first Monday of December.

**Increase of District debt.** SEC. 13. That there shall be no increase of the present amount of the total indebtedness of the District of Columbia; and any officer or person who shall knowingly increase, or aid or abet in increasing, such total indebtedness, except to the amount of the two hundred thousand dollars, as authorized by this act, shall be deemed guilty of a high misdemeanor, and, on conviction thereof, shall be punished by imprisonment not exceeding ten years, and by fine not exceeding ten thousand dollars.

**"School houses;" taxes on refunded. 1870, cb. 131, 16 Stat., 153.** SEC. 14. That the term "school houses" in the act of June seventeenth, eighteen hundred and seventy, chapter thirty, was intended to embrace all collegiate establishments actually used for educational purposes, and not for private gain; and that all taxes heretofore imposed upon such establishments, in the District of Columbia, since the date of said act are hereby remitted, and where the same or any part thereof has been paid, the sum so paid shall be refunded. But if any portion of any said building, house, or grounds in terms excepted is used to secure a rent or income, or for any business purpose, such portion of the same, or a sum equal in value to such portion, shall be taxed.

**Repeals.** SEC. 15. That all laws inconsistent with the provisions of this act be, and the same are hereby, repealed.

Approved, June 11, 1878.

———

**June 11, 1878.** **CHAP. 181.**—An act making appropriations for the support of the Military Academy for the fiscal year ending June thirtieth, eighteen hundred and seventy-nine, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United* **Appropriations. Military Academy.** *States of America in Congress assembled,* That the following sums be, and the same are hereby, appropriated, out of any money in the Treasury not otherwise appropriated, for the support of the Military Academy for the fiscal year ending June thirtieth, eighteen hundred and seventy-nine:

**Pay of professors and others.** For pay of three professors, at three thousand five hundred dollars per annum each, ten thousand five hundred dollars.

For pay of six professors, at three thousand dollars per annum each, eighteen thousand dollars.

For additional pay of professors for length of service, seven thousand dollars.

For pay of one instructor of practical military engineering in addition to pay as first lieutenant, nine hundred dollars.

For pay of one instructor of ordnance and science of gunnery, in addition to pay as first lieutenant, nine hundred dollars.

For pay of eight assistant professors, in addition to pay as first lieutenants, four thousand dollars.

For pay of three instructors of cavalry, artillery, and infantry tactics, in addition to pay as first lieutenants, one thousand five hundred dollars.

For pay of four assistant instructors of tactics, commanding companies, in addition to pay as second lieutenants, two thousand four hundred dollars.

Case 4:14-cr-00023-A   Document 287   Filed 11/17/14   Page 131 of 137   PageID 2206

intersecting railroads shall pay for such pavements in the same manner and proportion as required of other railway companies under the provisions of this section. It shall be the duty of the Commissioners of the District of Columbia to see that all water and gas mains, service pipes, and sewer connections are laid upon any street or avenue proposed to be paved or otherwise improved before any such pavement or other permanent works are put down; and the Washington Gas Light Company, under the direction of said Commissioners, shall at its own expense take up, lay, and replace all gas mains on any street or avenue to be paved, at such time and place as said Commissioners shall direct. The President of the United States may detail from the Engineer Corps of the Army not more than two officers, of rank subordinate to that of the engineer officer belonging to the Board of Commissioners of said District to act as assistants to said Engineer Commissioner, in the discharge of the special duties imposed upon him by the provisions of this act. *Water and gas mains.* *Assistants to Engineer Commissioner.*

SEC. 6. That from and after the first day of July, eighteen hundred and seventy-eight, the board of metropolitan police and the board of school trustees shall be abolished; and all the powers and duties now exercised by them shall be transferred to the said Commissioners of the District of Columbia, who shall have authority to employ such officers and agents and to adopt such provisions as may be necessary to carry into execution the powers and duties devolved upon them by this act. And the Commissioners of the District of Columbia shall from time to time appoint nineteen persons, actual residents of said District of Columbia, to constitute the trustees of public schools of said District, who shall serve without compensation and for such terms as said Commissioners shall fix. Said trustees shall have the powers and perform the duties in relation to the care and management of the public schools which are now authorized by law. *Police and school boards. Transfer of duties.* *School trustees.*

SEC. 7. That the offices of sinking-fund commissioners are hereby abolished; and all duties and powers possessed by said commissioners are transferred to, and shall be exercised by, the Treasurer of the United States, who shall perform the same in accordance with the provisions of existing laws. *Sinking-fund commissioners.*

SEC. 8. That in lieu of the board of health now authorized by law, the Commissioners of the District of Columbia shall appoint a physician as health-officer, whose duty it shall be, under the direction of the said Commissioners, to execute and enforce all laws and regulations relating to the public health and vital statistics, and to perform all such duties as may be assigned to him by said Commissioners; and the board of health now existing shall, from the date of the appointment of said health-officer, be abolished. *Health-officer.*

SEC. 9. That there may be appointed by the Commissioners of the District of Columbia, on the recommendation of the health-officer, a reasonable number of sanitary inspectors for said District; not exceeding six, to hold such appointment at any one time, of whom two may be physicians, and one shall be a person skilled in the matters of drainage and ventilation; and said Commissioners may remove any of the subordinates, and from time to time may prescribe the duties of each; and said inspectors shall be respectively required to make, at least once in two weeks, a report to said health-officer, in writing, of their inspections, which shall be preserved on file; and said health-officer shall report in writing annually to said Commissioners of the District of Columbia, and so much oftener as they shall require. *Sanitary inspectors.*

SEC. 10. That the Commissioners may appoint, on the like recommendation of the health-officer, a reasonable number of clerks, but no greater number shall be appointed, and no more persons shall be employed under said health-officer, than the public interests demand and the appropriation shall justify. *Clerks.*

SEC. 11. That the salary of the health-officer shall be three thousand dollars per annum; and the salary of the sanitary inspectors shall not *Salaries of health office.*

C

Exhibit 1F

**Contracts.** reduce the sum of money to be paid therefor to less than one thousand dollars. All contracts for the construction, improvement, alteration, or repairs of the streets, avenues, highways, alleys, gutters, sewers, and all work of like nature shall be made and entered into only by and with the official unanimous consent of the Commissioners of the District, and all contracts shall be copied in a book kept for that purpose and be signed by the said Commissioners, and no contract involving an expenditure of more than one hundred dollars shall be valid until recorded and signed as aforesaid.

**Pavements.** No pavement shall be accepted nor any pavement laid except that of the best material of its kind known for that purpose, laid in the most substantial manner; and good and sufficient bonds to the United States, in a penal sum not less than the amount of the contract, with sureties to be approved by the Commissioners of the District of Columbia, shall be required from all contractors, guaranteeing that the terms of their contracts shall be strictly and faithfully performed to the satisfaction of and acceptance by said Commissioners; and that the contractors shall keep new pavements or other new works in repair for a term of five years from the date of the completion of their contracts; and ten per centum of the cost of all new works shall be retained as an additional security and a guarantee fund to keep the same in repair for said term, which said per centum shall be invested in registered bonds of the United States or of the District of Columbia and the interest thereon paid to said contractors.

**Payments for paving.** The cost of laying down said pavement, sewers, and other works, or of repairing the same, shall be paid for in the following proportions and manner, to wit: When any street or avenue through which a street-railway runs shall be paved, such railway company shall bear all of the expense for that portion of the work lying between the exterior rails of the tracks of such roads, and for a distance of two feet from and exterior to such track or tracks on each side thereof, and of keeping the same in repair; but the said railway companies, having conformed to the grades established by the Commissioners, may use such cobblestone or Belgian blocks for paving their tracks, or the space between their tracks, as the Commissioners may direct; the United States shall pay one-half of the cost of all work done under the provisions of this section, except that done by the railway companies, which payment shall be credited as part of the fifty per centum which the United States contributes toward the expenses of the District of Columbia for that year; and all payments shall be made by the Secretary of the Treasury on the warrant or order of the Commissioners of the District of Columbia or a majority thereof, in such amounts and at such times as they may deem safe and proper in view of the progress of the work:

**Railways refusing to pave.** That if any street railway company shall neglect or refuse to perform the work required by this act, said pavement shall be laid between the tracks and exterior thereto of such railway by the District of Columbia; and if such company shall fail or refuse to pay the sum due from them in respect of the work done by or under the orders of the proper officials of said District in such case of the neglect or refusal of such railway company to perform the work required as aforesaid, the Commissioners of the District of Columbia shall issue certificates of indebtedness against the property, real or personal, of such railway company, which certificates shall bear interest at the rate of ten per centum per annum until paid, and which, until they are paid, shall remain and be a lien upon the property on or against which they are issued together with the franchise of said company; and if the said certificates are not paid within one year, the said Commissioners of the District of Columbia may proceed to sell the property against which they are issued, or so much thereof as may be necessary to pay the amount due, such sale to be first duly advertised daily for one week in some newspaper published in the city of Washington, and to be at public auction to the highest bidder.

**Railways crossing streets.** When street railways cross any street or avenue, the pavement between the tracks of such railway shall conform to the pavement used upon such street or avenue, and the companies owning these

sale of property for delinquent taxes, the redemption thereof, the proceedings to enforce the lien upon unredeemed property, and every other act and thing now required to be done in the premises, shall be done and performed at the times and in the manner now provided by law, except in so far as is otherwise provided by this act: *Provided*, That the rate of taxation in any one year shall not exceed one dollar and fifty cents on every one hundred dollars of real estate not exempted by law; and on personal property not taxable elsewhere, one dollar and fifty cents on every one hundred dollars, according to the cash valuation thereof: *And provided further*, Upon real property held and used exclusively for agricultural purposes, without the limits of the cities of Washington and Georgetown, and to be so designated by the assessors in their annual returns, the rate for any one year shall not exceed one dollar on every one hundred dollars. The collector of taxes, upon the receipt of the duplicate of assessment, shall give notice for one week, in one newspaper published in the city of Washington, that he is ready to receive taxes; and any person who shall, within thirty days after such notice given, pay the taxes assessed against him, shall be allowed by the collector a deduction of five per centum on the amount of his tax; all penalties imposed by the act approved March third, eighteen hundred and seventy-seven, chapter one hundred and seventeen, upon delinquents for default in the payment of taxes levied under said act, at the times specified therein, shall, upon payment of the said taxes assessed against such delinquents within three months from the passage of this act, with interest at the rate of six per cent thereon, be remitted.

Sec. 4. That the said Commissioners may, by general regulations consistent with the act of Congress of March third, eighteen hundred and seventy-seven, entitled "An act for the support of the government of the District of Columbia for the fiscal year ending June thirtieth, eighteen hundred and seventy-eight, and for other purposes", or with other existing laws, prescribe the time or times for the payment of all taxes and the duties of assessors and collectors in relation thereto. All taxes collected shall be paid into the Treasury of the United States, and the same, as well as the appropriations to be made by Congress as aforesaid, shall be disbursed for the expenses of said District, on itemized vouchers, which shall have been audited and approved by the auditor of the District of Columbia, certified by said Commissioners, or a majority of them; and the accounts of said Commissioners, and the tax-collectors, and all other officers required to account, shall be settled and adjusted by the accounting-officers of the Treasury Department of the United States. Hereafter the Secretary of the Treasury shall pay the interest on the three-sixty-five bonds of the District of Columbia issued in pursuance of the act of Congress approved June twentieth, eighteen hundred and seventy-four, when the same shall become due and payable; and all amounts so paid shall be credited as a part of the appropriation for the year by the United States toward the expenses of the District of Columbia, as hereinbefore provided:

Sec. 5. That hereafter when any repairs of streets, avenues, alleys, or sewers within the District of Columbia are to be made, or when new pavements are to be substituted in place of those worn out, new ones laid, or new streets opened, sewers built, or any works the total cost of which shall exceed the sum of one thousand dollars, notice shall be given in one newspaper in Washington and if the total cost shall exceed five thousand dollars, then in one newspaper in each of the cities of New York, Philadelphia, and Baltimore also for one week, for proposals, with full specifications as to materials for the whole or any portion of the works proposed to be done; and the lowest responsible proposal for the kind and character of pavement or other work which the Commissioners shall determine upon shall in all cases be accepted: *Provided, however*, That the Commissioners shall have the right, in their discretion, to reject all of such proposals: *Provided*, That work capable of being executed under a single contract shall not be subdivided so as to

*Sidenotes:*
- Limit of taxation.
- Agricultural lands.
- Tax notice.
- Deduction, etc. for prompt payment. 1877, ch. 117, 19 Stat., 396.
- Regulations of payment of taxes, etc. 1877, ch. 117, 19 Stat., 396. 1879, ch. 183, *Post*, 410.
- Disbursements.
- Settlement of accounts.
- Interest on 3.65 bonds. 1874, ch. 337, 18 Stat., 116.
- Repairs, etc.
- Advertisement.
- Proposals.
- Proviso.

C

Exhibit 1F

**104**      FORTY-FIFTH CONGRESS.  Sess. II.  Ch. 180.  1878.

Hacks.
approved by Congress.  The Commissioners shall have power to locate the places where hacks shall stand and change them as often as the public interests require.  Any person violating any orders lawfully made in pursuance of this power shall be subject to a fine of not less than ten nor more than one hundred dollars, to be recovered before any justice of the peace in an action in the name of the Commissioners.  All taxes heretofore lawfully assessed and due, or to become due, shall be

Taxes not to be hypothecated.
collected pursuant to law, except as herein otherwise provided; but said Commissioners shall have no power to anticipate taxes by a sale or

Loan.
hypothecation of any such taxes or evidences thereof, but they may borrow, for the first fiscal year after this act takes effect, in anticipation of collection of revenues, not to exceed two hundred thousand dollars, at a rate of interest not exceeding five per centum per annum, which shall be repaid out of the revenues of that year.  And said Commis-

Offices.
sioners are hereby authorized to abolish any office, to consolidate two or more offices, reduce the number of employees, remove from office, and make appointments to any office under them authorized by law;

Lights.
said Commissioners shall have power to erect light, and maintain lamp-posts, with lamps, outside of the city limits, when, in their judgment,

Pending suits.
it shall be deemed proper or necessary: *Provided,* That nothing in this act contained shall be construed to abate in any wise or interfere with any suit pending in favor of or against the District of Columbia or the

Existing rights, etc.
Commissioners thereof, or affect any right, penalty, forfeiture, or cause of action existing in favor of said District or Commissioners, or any citizen of the District of Columbia, or any other person, but the same may be commenced, proceeded for, or prosecuted to final judgment, and the corporation shall be bound thereby as if the suit had been originally

Annual estimates.
commenced for or against said corporation.  The said Commissioners shall submit to the Secretary of the Treasury for the fiscal year ending June thirtieth, eighteen hundred and seventy-nine, and annually thereafter, for his examination and approval, a statement showing in detail the work proposed to be undertaken by them during the fiscal year next ensuing, and the estimated cost thereof; also the cost of constructing, repairing, and maintaining all bridges authorized by law across the Potomac River within the District of Columbia, and also all other streams in said District; the cost of maintaining all public institutions of charity, reformatories, and prisons belonging to or controlled wholly or in part by the District of Columbia, and which are now by law supported wholly or in part by the United States or District of Columbia; and also the expenses of the Washington Aqueduct and its appurtenances; and also an itemized statement and estimate of the amount necessary to defray the expenses of the government of the District of Columbia for the next

Proviso.
fiscal year: *Provided,* That nothing herein contained shall be construed as transferring from the United States authorities any of the public works within the District of Columbia now in the control or supervision of said authorities.

Approval of.
The Secretary of the Treasury shall carefully consider all estimates submitted to him as above provided, and shall approve, disapprove, or suggest such changes in the same, or any item thereof, as he may think the public interest demands; and after he shall have considered and passed upon such estimates submitted to him, he shall cause to be made a statement of the amount approved by him and the fund or purpose to which each item belongs, which statement shall be certified by him, and delivered, together with the estimates as originally submitted, to the Commissioners of the District of Columbia, who shall transmit the same to Congress.  To the extent to which Congress shall approve

Appropriation of fifty per cent.
of said estimates, Congress shall appropriate the amount of fifty per centum thereof; and the remaining fifty per centum of such approved

Taxation.
estimates shall be levied and assessed upon the taxable property and privileges in said District other than the property of the United States and of the District of Columbia; and all proceedings in the assessing, equalizing, and levying of said taxes, the collection thereof, the listing return and penalty for taxes in arrears, the advertising for sale and the

2      Exhibit 1F

**102**                    FORTY-FIFTH CONGRESS. Sess. II. Ch. 169, 170, 180      1878.

*Northern district divided.*     SEC. 2. Said northern district shall be, and hereby is, divided into two divisions, to be known as the eastern and the western division of the northern district of Ohio.  The western division shall consist of twenty-four counties, to wit: Williams, Defiance, Paulding, Van Wert, Mercer, Auglaize, Allen, Putnam, Henry, Fulton, Lucas, Wood, Hancock, Hardin, Logan, Union, Delaware, Marion, Wyandot, Seneca, Sandusky, Ottawa, Erie, and Huron; and the eastern division shall consist of the remaining counties in said district.  But no additional clerk or marshal shall be appointed in said district.

*Suits, where to be brought.*     SEC. 3. All suits not of a local nature in the circuit and district courts, against a single defendant, inhabitant of such State, must be brought in the division of the district where he resides; but if there are two or more defendants, residing in different divisions of the district, such suits may be brought in either division.  All issues of fact

*Place of trial.*     in such suits shall be tried at a term of the court held in the division where the suit is so brought.

*Offences, where to be tried.*     SEC. 4. All offenses committed in either of the subdivisions shall be cognizable and indictable within said division.

*Transfer of pending causes.*     SEC. 5. Actions or proceedings now pending at Cleveland, in said district, which would under this act be brought in the western division of said district, may be transferred, by consent of all the parties, to said western division; and in case of such transfer, all papers and files therein, with copies of all journal entries, shall be transferred to the deputy clerk's office at Toledo; and the same shall be proceeded with in all respects as though it originally commenced in the western division.

*Jurors' residence.*     SEC. 6. All grand and petit jurors summoned for service in each division shall be residents of such division.  All mesne and final process,
*Service of process.*     subject to the provisions hereinbefore contained, issued in either of said divisions, may be served and executed in either or both of the divisions.

*Taking effect of act.*     SEC. 7. This act shall be in force from and after the first day of September, anno Domini eighteen hundred and seventy-eight.  And all acts and parts of acts inconsistent herewith are hereby repealed.

Approved, June 8, 1878.

---

*June 8, 1878.*     CHAP. 170.—An act to authorize the Secretary of the Treasury to constitute Superintendents of Mints or Assayers in Assay-offices, Assistant Treasurers of the United States.

*Superintendents of mints, etc. May be assistant treasurers.*     Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Secretary of the Treasury be and he is hereby authorized to constitute any superintendent of a mint or assayer of any assay-office, an assistant treasurer of the United States without additional compensation, to receive gold coin and bullion on deposit for the purposes provided for in section two hundred and fifty-four of the Revised Statutes.

Approved, June 8, 1878.

---

*June 11, 1878.*     CHAP. 180.—An act providing a permanent form of government for the District of Columbia.

*District of Columbia a corporation.*     Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That all the territory which was ceded by the State of Maryland to the Congress of the United States for the permanent seat of the government of the United States shall continue to be designated as the District of Columbia.  Said District and the property and persons that may be therein shall be subject to the fol-
*Existing laws.*     lowing provisions for the government of the same, and also to any existing laws applicable thereto not hereby repealed or inconsistent with the provisions of this act.  The District of Columbia shall remain and continue a municipal corporation, as provided in section two of the Revised

1          Exhibit 1F

FORTY-FIFTH CONGRESS. Sess. II. Ch. 180. 1878.          103

Statutes relating to said District, and the Commissioners herein provided for shall be deemed and taken as officers of such corporation; and all laws now in force relating to the District of Columbia not inconsistent with the provisions of this act shall remain in full force and effect.

SEC. 2. That within twenty days after the approval of this act the President of the United States, by and with the advice and consent of the Senate, is hereby authorized to appoint two persons, who, with an officer of the Corps of Engineers of the United States Army, whose lineal rank shall be above that of captain, shall be Commissioners of the District of Columbia, and who, from and after July first, eighteen hundred and seventy-eight, shall exercise all the powers and authority now vested in the Commissioners of said District, except as are hereinafter limited or provided, and shall be subject to all restrictions and limitations and duties which are now imposed upon said Commissioners. The Commissioner who shall be an officer detailed, from time to time, from the Corps of Engineers, by the President, for this duty, shall not be required to perform any other, nor shall he receive any other compensation than his regular pay and allowances as an officer of the Army. The two persons appointed from civil life shall, at the time of their appointment, be citizens of the United States, and shall have been actual residents of the District of Columbia for three years next before their appointment, and have, during that period, claimed residence nowhere else, and one of said three Commissioners shall be chosen president of the Board of Commissioners at their first meeting, and annually and whenever a vacancy shall occur, thereafter; and said Commissioners shall each of them, before entering upon the discharge of his duties, take an oath or affirmation to support the Constitution of the United States, and to faithfully discharge the duties imposed upon him by law; and said Commissioners appointed from civil life, shall each receive for his services a compensation at the rate of five thousand dollars per annum, and shall, before entering upon the duties of the office, each give bond in the sum of fifty thousand dollars, with surety as is required by existing law. The official term of said Commissioners appointed from civil life shall be three years, and until their successors are appointed and qualified; but the first appointment shall be one Commissioner for one year and one for two years, and at the expiration of their respective terms their successors shall be appointed for three years. Neither of said Commissioners, nor any officer whatsoever of the District of Columbia, shall be accepted as surety upon any bond required to be given to the District of Columbia; nor shall any contractor be accepted as surety for any officer or other contractor in said District

SEC. 3. That as soon as the Commissioners appointed and detailed as aforesaid shall have taken and subscribed the oath or affirmation hereinbefore required, all the powers, rights, duties, and privileges lawfully exercised by, and all property, estate, and effects now vested by law in the Commissioners appointed under the provisions of the act of Congress approved June twentieth, eighteen hundred and seventy-four, shall be transferred to, and vested in and imposed upon said Commissioners; and the functions of the Commissioners so appointed under the act of June twentieth, eighteen hundred and seventy-four, shall cease and determine. And the Commissioners of the District of Columbia shall have power, subject to the limitations and provisions herein contained, to apply the taxes or other revenues of said District to the payment of the current expenses thereof, to the support of the public schools, the fire department, and the police, and for that purpose shall take possession and supervision of all the offices, books, papers, records, moneys, credits, securities, assets, and accounts belonging or appertaining to the business or interests of the government of the District of Columbia, and exercise the duties, powers, and authority aforesaid; but said Commissioners, in the exercise of such duties, powers, and authority, shall make no contract, nor incur any obligation other than such contracts and obligations as are hereinafter provided for and shall be

*Marginal notes:*

Commissioners. Appointment.

Powers.

Engineer Commissioner.

Civil Commissioners.

President.

Oath.

Salary. Bond.

Term.

Sureties on bonds.

Powers and property vested in Commissioners.

1874, ch. 337, 18 Stat., 116.

Application of taxes.


Exhibit 1F

FRANK FINK

ZIP. 76102
11/15/14 Dallas N
Dallas TX 75398

≈4797-177≈
Eldon B Mahon
Judge Mcbryde
501 W 10TH ST
Room 310
FORT Worth, TX
Texas state
USA
Non Domestic, Non Federal

RECEIVED

NOV 17 2014
12:02pm

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

House of
Menst Dgmtnm Member
Estate Dgmtnm Member

4797177
Federal Corrections Institute
P.O Box 15330
Fort Worth
Tex. state
USA
Non Domestic (Non Federal)

$ 00.00

U.S. POSTAGE PAID