```
 1                  IN THE UNITED STATES DISTRICT COURT
                       NORTHERN DISTRICT OF TEXAS
 2                           DALLAS DIVISION

 3   THE UNITED STATES OF AMERICA,  )
                                    )
 4               Plaintiff,         )
                                    )  No. 4:14-CR-0023-A
 5                                  )
     CHRISTOPHER ROBERT WEAST,      )
 6                                  )
                 Defendant.         )
 7
                            VOLUME 6 OF 16
 8           TRANSCRIPT OF TELEPHONE CONFERENCE CALL
              BEFORE THE HONORABLE JOHN H. McBRYDE
 9                    MONDAY, JULY 21, 2014

10   APPEARANCES:

11   FOR THE GOVERNMENT:    MS. AISHA SALEEM
                            ASSISTANT UNITED STATES ATTORNEY
12                          UNITED STATES ATTORNEY'S OFFICE
                            801 CHERRY STREET, UNIT 4
13                          FORT WORTH, TEXAS   76102
                            (817) 252-5200
14                          aisha.saleem@usdoj.gov

15   FOR THE DEFENDANT:     MS. ANGELA SAAD
                            FEDERAL PUBLIC DEFENDER'S OFFICE
16                          819 TAYLOR STREET, ROOM 9A10
                            FORT WORTH, TEXAS   76102
17                          (817) 978-2753
                            angela_saad@fd.org
18
     PROCEEDINGS REPORTED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
19   PRODUCED BY COMPUTER-AIDED TRANSCRIPTION.
     ----------------------------------------------------------
20

21               D. KEITH JOHNSON, RDR, CRR
              FEDERAL OFFICIAL COURT REPORTER
22            FOR THE HON. BARBARA M. G. LYNN
                UNITED STATES DISTRICT COURT
23                NORTHERN DISTRICT OF TEXAS
            1100 COMMERCE STREET, ROOM 1572
24                  DALLAS, TEXAS   75242
                      (214) 753-2325
25
```

```
 1                    P R O C E E D I N G S
 2                       (July 21, 2014)
 3            THE COURT:  We're on the line.  This is a telephone
 4   conference between the Court and the attorneys in number
 5   4:14-CR-023-A, the United States versus Christopher Robert
 6   Weast.
 7            Ms. Saleem, I understand you're on the line for the
 8   Government?
 9            MS. SALEEM:  Yes, Your Honor.
10            THE COURT:  And Ms. Saad, you're on the line for
11   the defendant?
12            MS. SAAD:  Yes, Your Honor.
13            THE COURT:  Is Mr. Curtis or someone else joining
14   you today?
15            MS. SAAD:  Just me, Your Honor.
16            THE COURT:  Okay.  I take it no one else is on the
17   line except the court reporter.
18            Okay.  Keith Johnson, who is -- I think you're
19   Judge Lynn's regular court reporter.
20            THE COURT REPORTER:  Yes, sir.
21            THE COURT:  He's taking this down remotely, and I
22   have my law clerk working with me on this case.
23            One of the things I wanted to discuss today is our
24   trial procedures.  I have the notice the defendant filed
25   regarding the trial procedures, and it appears that the only
```

1  potential difference between the Government and the defendant
2  is that those procedures have to do with the -- how the
3  witnesses will be able to identify the defendant, and I gather
4  that the Government is leaning toward agreeing to the use of a
5  photograph.
6            Have you reached a decision on that, Ms. Saleem?
7            MS. SALEEM:  Yes, Your Honor.  I guess our first
8  preference, of course, was if the defendant's presence could
9  be observed by all witnesses.  But we understand that there's
10 some technological issues with that.  And we are amenable to
11 using the exhibit with the driver's license photo as well.
12 And so we will defer to the Court as to which -- which route
13 to take in light of the technological issues involved here.
14           THE COURT:  Of course the ideal situation is the
15 defendant would agree to cooperate and would be in the
16 courtroom, but so far that hasn't happened.
17           If you feel like you can accomplish what you need
18 to accomplish by the photograph, that would be my preference
19 as to how we should go, Ms. Saleem.  If you want to make a --
20 to make it more work, I'll leave that up to you.
21           Do you have any reason to think you can't do what
22 you want to accomplish by use of the photograph?
23           MS. SALEEM:  No, Your Honor.  I believe we can.
24 It's my understanding that the defense is amenable to it, so
25 we can definitely go that route.

```
 1              THE COURT:  Okay.  The problem that I see with the
 2   procedure that is outlined in -- by the way, the clerk's
 3   office and the other members of the Court's staff are working
 4   on doing whatever is necessary to do what Ms. Saad outlines in
 5   her motion, and I think it will be accomplishing those things.
 6              But the thought occurred that we're going to have a
 7   problem if at the end of the questioning of each witness we
 8   have to devote any significant amount of time to seeing --
 9   determining whether the defendant wants the lawyers to ask
10   questions of the witness and so on.  I don't think we can have
11   a five or ten-minute recess after each witness.
12              Do you have any -- Ms. Saad, do you have any
13   suggestion as to how we might deal with that to avoid that
14   problem?
15              MS. SAAD:  Yes, Your Honor.  It's my
16   understanding -- and I'm waiting on confirmation from the IT
17   personnel that are going to test the system the beginning of
18   this week -- is that we should be able to simultaneously
19   receive notes from -- or any type of questions from the
20   defendant to where either Mr. Curtis or I, whoever is not
21   doing -- not the one asking questions, can briefly confer
22   before passing the witness, if there are additional questions.
23   I don't anticipate needing a five or ten-minute, you know,
24   recess after each witness.
25              THE COURT:  Well, even a two or three-minute lapse
```

1   is going to be a very awkward situation in front of a jury.
2   So let's see how it goes.
3              Now, if it becomes a problem or if you see it's
4   going to be a problem, then maybe we'll need to come up with
5   another solution.  It looks like the Government does have
6   quite a few witnesses, and it occurs to me that one of the
7   possible solutions would be -- if we have a problem, would be
8   not to release the witness and just make known to the jury
9   that the witness might be recalled after the next witness
10  testifies.  And so if there are any further questions to be
11  asked of the witness, they could be asked, and that way we'll
12  have plenty of time to do whatever we need to do to find out
13  what Mr. Weast wants to ask the witness -- ask the witness and
14  do it.
15             Do you see a problem with that alternative if it
16  turns out it doesn't work well the way you proposed doing?
17             MS. SAAD:  No, I don't see an immediate problem
18  with that alternative.  But I will make sure that any delays
19  are -- are to an absolute minimum and that we can try and
20  streamline this process, Your Honor.
21             THE COURT:  Okay.  Well, that's good.  If you'll do
22  that, that may eliminate the problem.  I'm just thinking ahead
23  what we'll do if it becomes a problem.  And that is a possible
24  alternative.
25             Ms. Saleem, if we have a problem because of the

1   time delay after Ms. Saad completes her questioning in
2   determining whether or not the defendant wants to ask some
3   questions, if we run into a problem there, do you see any
4   problem with what I suggested as the alternative?
5            MS. SAAD:  No, Your Honor.  We don't see any
6   problems with that.
7            THE COURT:  All right.  I hope we don't have to use
8   the alternative.
9            The next thing we have to deal with is voir dire.
10  I would like for the defendant to be able to observe the
11  members of the jury panel during voir dire, if not the whole
12  panel at all times, at least those members of the panel who
13  stand up to explain why they're -- they raised their hand.
14  Both of you know how I do that.  I find out who all has an
15  answer to a question and identify them and then go back and
16  ask each one of them why he or she raised a hand, to explain
17  why they -- the answer is.
18           Do you think that's about the best way to handle
19  that, Ms. Saad?
20           MS. SAAD:  Your Honor, with the clear understanding
21  of your ruling on our objection, we would defer to just doing
22  the -- doing a video conference the same way in terms of
23  being -- assuming that the technology would allow for
24  videotaping the jury panel so that the defendant could observe
25  the jury panel.  That's what we would request.

```
 1              THE COURT:  You're assuming that we can get a
 2   set-up where he can see the jury panel.
 3              MS. SAAD:  Yes, Your Honor.
 4              THE COURT:  And then have the same arrangement we
 5   have on the cross-examination.  Well, I inquired of the
 6   clerk's office we can have a set-up where he can see the jury
 7   panel, and in particular where he could see those members of
 8   the panel stand up to give an answer.  And if one party --
 9   if -- my voir dire proceeding is to have each of the jurors
10   stand up and give some biographical information, and I would
11   want each one stand up doing that, if it can be done.
12              Okay.  Do you have any thoughts on that subject,
13   Ms. Saleem?
14              MS. SALEEM:  Your Honor, I don't know if the
15   technology is going to permit that type of interaction with
16   each juror for the defendant to see.  But the other
17   alternative, which I know is unpleasant to everyone, is to --
18   to allow the defendant to be present in the courtroom.  And he
19   can be -- he can be shackled and gagged if he's disruptive.
20   But that would permit him to see all of the proceedings that
21   go on during jury selection.
22              THE COURT:  Well, you've got to weigh the
23   disadvantage to him, one against the other.  Apparently he's
24   not willing to.  It occurs to me it would be more harmful to
25   him for him to be in the courtroom gagged and shackled than it
```

```
 1   would be for him to be out of the jury room (sic) and see the
 2   jury through some remote means.
 3               What is your thought on that, Ms. Saad?
 4               MS. SAAD:  Your Honor, I would agree with you.  I
 5   think that it's just purely more prejudicial than probative to
 6   have him shackled and gagged inside the courtroom, and I think
 7   that this is an alternative means that would allow the
 8   defendant to participate but not -- and still allow the jurors
 9   to hear the evidence and proceed in the criminal process.
10               THE COURT:  I'm still optimistic that somehow or
11   other I'll get word -- particularly through you Ms. Saad, that
12   the defendant has decided to cooperate and not be disruptive.
13               Do you have anything -- any encouragement you can
14   offer me on that subject?
15               MS. SAAD:  At this time, no, Your Honor, because
16   both Mr. Curtis and I attempted to visit with him Thursday of
17   last week.  We can attempt to visit with him again, and we
18   will notify the Court if anything were to change.
19               THE COURT:  I think what I'll do, I think I'll have
20   a hearing tomorrow and have him be present at 10:30 -- and
21   we'll have to do it in the second floor courtroom because they
22   are doing some renovations in the third floor courtroom -- and
23   see if he will let me visit with him a little bit about why it
24   would be to his advantage not to be disruptive and instead to
25   be in the courtroom.
```

1                  Do you see any problem with that, Ms. Saad?
2                  MS. SAAD:  No, Your Honor.
3                  THE COURT:  Do you, Ms. Saleem?
4                  MS. SALEEM:  No, Your Honor.
5                  THE COURT:  You know, the thought occurs to me that
6    for the most part his disruptions are when he's asked to
7    respond to something.  But that's not the way it worked out.
8    The last time they were in the courtroom, he started
9    disrupting the minute we walked into the courtroom, or the
10   minute I walked into the courtroom.
11                 But I'm optimistic that he may -- if he is not
12   called upon to respond to anything -- that perhaps he would
13   just sit there.  But that may be too optimistic.  We'll see.
14                 Now, if we start letting him be in the courtroom
15   during the voir dire, based on some assurance from him that he
16   would -- or me deciding that I'm going to give him the chance,
17   and then if he were to act up and have to be removed from the
18   courtroom, that would be more harmful to him than if we hadn't
19   done it to start with.
20                 So Ms. Saad, that may be something that you'll have
21   to help me on, which is the best way to go after we have our
22   hearing tomorrow and see what his attitude is.  I suspect it
23   has not changed, but we got two filings yesterday from him
24   that were of a nature similar to what we've been receiving
25   before.  The only difference this time is he has signed

1   someone's name to it, and the envelopes they came in showed
2   the name of the sender to be the name he signed.  But
3   apparently the mailroom at wherever he's confined wouldn't
4   send them out unless he marked it out and put his name there.
5   So he marked it out and put his name there.  That's not much
6   encouragement that things are changed.
7              Is there some possibility, Ms. Saad, that you and
8   Mr. Curtis -- or Mr. Curtis can meet with him this afternoon,
9   or try to, or early in the morning and try to reason with him?
10  It's probably too late in the day to do it today, but it may
11  not be.
12             I'll just throw that out as something that I would
13  like for you to do if you can and see if you can reason with
14  him.
15             MS. SAAD:  Yes, Your Honor.
16             THE COURT:  Do you know what time they allow people
17  to start seeing the inmates tomorrow morning?  Have you had
18  that experience, Ms. Saad?
19             MS. SAAD:  I have had the opportunity to visit
20  clients before 10:30 a.m.  So I'm sure I could -- there
21  wouldn't be a problem unless -- if he is in the Marshal's
22  office, Your Honor.
23             THE COURT:  Okay.  That's -- maybe we can get the
24  Marshal to get him here a little early.  You might talk to
25  them about that, Ms. Saad, if you want to try to visit with

1  him and hold him in the Marshal's office before the hearing
2  starts.
3           MS. SAAD:  Yes, Your Honor.  I'll do that.
4           THE COURT:  Okay.  Now, I want to talk about the --
5  oh, by the way, I went ahead and ruled on that motion to
6  suppress.  I didn't see that there were any issues of fact
7  that appeared to me to be strictly a legal question.  If I've
8  overlooked something and there are issues of fact, I may back
9  up and have a hearing.  But I couldn't see that there were any
10 issues of fact.
11          Do you contend there are, Ms. Saad?
12          MS. SAAD:  No, Your Honor.
13          THE COURT:  Okay.  It raises an interesting legal
14 question, and I read the Supreme Court opinion about the
15 cellphones.  I anticipated that I'd be hearing from somebody
16 in Northern District of Texas of maintaining the -- just as
17 you maintain, Ms. Saad.  I don't think the cellphone case is
18 on point, but it's certainly something worth raising.
19          Let's talk about the charge a minute.  As I
20 understand it -- let me back up.  Included in the charge --
21 and this is the second time I've gotten this in the last month
22 or two -- were some preliminary instructions.
23          Ms. Saleem, why are preliminary instructions
24 included in the agreed charge this time?
25          MS. SALEEM:  Your Honor, actually it had been such

1  a long time since I had -- I had presented a charge to the
2  Court, that it wasn't until after I submitted them that I
3  realized that you have your -- your own preliminary
4  instructions that you provide to the jury.  But that being
5  said, there were -- there were some matters that were in the
6  preliminary charge that I had referenced that -- in discussing
7  with Ms. Saad about an agreed, I guess, preliminary charge, it
8  was agreed that we should submit the entire pattern Fifth
9  Circuit preliminary instruction as opposed to just a portion
10 of which I had originally submitted.  And that's -- that's the
11 only reason that I even tendered it to Ms. Saad.  It was my
12 error, because I had overlooked the Court already having a
13 preliminary instruction.
14             THE COURT:  Okay.  Well, this the second time I've
15 gotten one from the U. S. Attorney's Office in the last month
16 or two and the first two times I've ever gotten them.  I do
17 have a fairly standard preliminary instruction that I give to
18 the jury, and that's what I'm going to use.  I'm not going to
19 spend time discussing your preliminary instruction.  If I
20 leave anything out that you think is real important, when I
21 get through, you can ask your folks and I'll add what you
22 think I left out that I should have put in.
23             The agreed charge indicates that there are two
24 areas that -- of disagreement.  And actually only boils down
25 to one that crops up in three different places, and that is

1  whether the Government has to prove an actual minor.  I think
2  that's the point of contention that is the only thing left.
3  And the defendant now agrees that the Government does have to
4  prove that.
5       So that question crops up on Page 12 of the agreed
6  charge in the definition of the term "minor."  And I'm going
7  to use the statutory definition, which the Government has
8  proposed:  "The term minor means any person under the age of
9  18 years."  I'm not going to use the defendant's requested
10 definition, which is on Page 12 of the proposed charge.
11       Any questions?
12       MS. SALEEM:  Not from the Government.
13       MS. SAAD:  No, Your Honor.
14       THE COURT:  The question presents itself again in
15 Questions 13 and 14.  I'm going to use the defendant's
16 proposed charge there, and not the Government's, on 13 and --
17 and 14, which includes the instruction that the defendant must
18 have had knowledge that the material contains a video
19 depiction of an actual minor engaged in sexually explicit
20 conduct.
21       Okay.  It comes up again on Pages 15 and 16.  And
22 as I see the difference -- this is the unanimity instruction.
23 And as I see the difference between the two of them is, the
24 defendant -- that he has to know that is of an actual minor.
25 I think saying that one time's enough.  And I've already said

1  that on the preceding page, I guess.  I don't think we need to
2  keep saying it.
3              Unless you don't object to it, Ms. Saleem, if --
4  want to object to --
5              MS. SAAD:  No, Your Honor.  I do object to the
6  repeated use of the terminology.
7              THE COURT:  Okay.  So on Pages 15 and 16, using the
8  Government's proposed instruction and not the defendant's.
9              I think that's the only difference between the two,
10 is the difference in the -- yes, I think it's the description
11 of an actual minor.
12             Now, those were the only issues in the charge.
13 Have I overlooked something?
14             Can you think of anything else, Ms. Saad?
15             MS. SAAD:  Yes, Your Honor.  This is -- I should
16 have clarified my filing this morning.  I responded to the
17 Government's response to our objection to the jury charge
18 where I conceded that we should follow the statutory language
19 of a minor, but did request, given the state of, I guess, the
20 definition alleged by the Government and the case law, that
21 the definition of child pornography should be specific --
22             THE COURT:  Okay.  I overlooked that.  And that --
23 you're again wanting to emphasize that the defendant --
24             MS. SAAD:  Well, I apologize, Your Honor.
25             THE COURT:  Go ahead.

1           MS. SAAD:  I was -- I guess I was wanting to
2  clarify for it to be child pornography in this case.  Based on
3  the allegations in the indictment, it should be an actual
4  child, distinguishing the other definitions of 2256(8).  I
5  guess the only one that has been -- that is still valid would
6  be (c) where it's not an actual child.
7           THE COURT:  Let me look again at the instructions.
8           Well, the difference of what is in the agreed
9  charge and what you're proposing is the last sentence.  Is
10 that correct?
11          MS. SAAD:  That's correct, Your Honor.
12          THE COURT:  Your proposals?
13          MS. SAAD:  Yes, Your Honor.
14          THE COURT:  Isn't that already covered by the
15 instruction that will be given on Page 14?
16          MS. SAAD:  Correct me if I'm wrong, Your Honor, in
17 my logic or my thinking about this.  I think the first -- the
18 first definition as to knowledge deals with the defendant's
19 knowledge about the images.  And this would say that it's not
20 even child pornography.  In this specific case, based on the
21 allegations by the Government, if it's not an actual child,
22 it's just -- pursuant to the indictment in this case, it's
23 determining what is the definition of child pornography as
24 alleged.
25          THE COURT:  You haven't responded to their problem,

| | |
|---|---|
| 1 | Ms. Saleem.  Maybe you don't have a problem with it. |
| 2 |       MS. SAAD:  Actually, Your Honor, if I may, I've |
| 3 | been looking at the defense instruction, and I would propose |
| 4 | this.  I think that -- I think it would be confusing to a jury |
| 5 | to hear that last sentence that they're submitting about |
| 6 | images, because then we have to get into, you know, these |
| 7 | definitions that are just not relevant to this particular |
| 8 | case, but it could be resolved by just adding -- adding just |
| 9 | the word -- or the words "an actual minor engaging in sexually |
| 10 | explicit conduct" at the end of -- at the end of their first |
| 11 | sentence so that -- and then deleting that second sentence. |
| 12 | And I think they accomplish the same goal.  But I wouldn't |
| 13 | have any objections to -- to basically it stating where the |
| 14 | production of such visual depiction involves an actual minor |
| 15 | engaged in sexually explicit conduct, period, and then I would |
| 16 | object to that last sentence. |
| 17 |       THE COURT:  Well, I -- I think what you've |
| 18 | suggested solves it, doesn't it, Ms. Saad?  Doesn't it solve |
| 19 | the problem? |
| 20 |       MS. SAAD:  What Ms. Saleem just suggested?  I'm |
| 21 | sorry, Your Honor. |
| 22 |       THE COURT:  How does that not solve the problem? |
| 23 |       MS. SAAD:  Well, Your Honor, I would want to follow |
| 24 | the statutory definition of child pornography, and then based |
| 25 | on the -- you know, the case law that follows, that it does |

```
 1   specifically need to be an actual child.  I just want to
 2   clarify.
 3           I would not object to shortening that to the
 4   statutory definition to -- for an individual depiction to be
 5   child pornography, the Government must prove beyond a
 6   reasonable doubt that the visual depiction is an actual -- and
 7   we could say minor, which is fine -- is an actual minor,
 8   period.
 9           THE COURT:  I don't see anything wrong with that.
10   Do you, Ms. Saleem?
11           MS. SALEEM:  So essentially leaving the first
12   sentence alone and then -- and then ending with -- that last
13   sentence just saying that the visual depiction is --
14           THE COURT:  Well, I don't think we need to put in
15   there that the Government has to prove beyond a reasonable
16   doubt.  We said enough here without having to repeat it there.
17   And I think just adding a sentence, "the visual depiction must
18   be of an actual child."
19           Is that what you want?
20           MS. SAAD:  Yes, Your Honor.  I have no objection to
21   that.
22           THE COURT:  Okay.  We're going to put "actual" in
23   the wording that you've already agreed on.  It's in the charge
24   on Page 12 right in front of the word "minor."  Then we're
25   going to add "Such visual depiction must be of an actual
```

1  child."  Is that what you want?
2          MS. SAAD:  Yes, Your Honor.
3              (Interruption by court reporter to clarify
4              speakers.)
5          THE COURT:  I think that was Ms. Saad the last
6  time.
7          MS. SAAD:  Yes, Your Honor.  That was Ms. Saad, and
8  I will make sure I'm clear for the record.
9          THE COURT:  Okay.  Let us know if you have a
10 problem, Keith.
11         Did we decide on minor or child, must be an actual
12 minor or child?  Minor, I think.
13         MS. SAAD:  Yes, Your Honor.  This is Angela Saad.
14 I think minor would be consistent throughout the charge.
15         THE COURT:  Okay.  Does that take care of the
16 charge?
17         Okay.  Why don't you try to persuade -- if he'll
18 listen to it -- may not listen to it -- persuade Mr. West that
19 he would be better off being in the courtroom than doing what
20 he's been doing.  I guess you need to caution him, if he'll
21 listen to you, that if he does persuade me to let him stay in
22 the courtroom, that if he then does something that is
23 disruptive, then being removed from the courtroom may do more
24 harm than he would want done or that I would want done.
25         MS. SAAD:  Yes, Your Honor.  I will speak with him.

1           THE COURT:  Okay.  Is there anything else we can do
2  today that will help move this along?  If so, tell me.
3           MS. SAAD:  Your Honor, this is Ms. Saad again.
4  There was an additional jury instruction that would be
5  resolved if the defendant was not to be present in the
6  courtroom, that was to propose --
7           THE COURT:  I don't think we need to deal with that
8  now.  I'll come up with -- maybe we can come up with something
9  I'm satisfied with.
10          MS. SAAD:  Yes, Your Honor.
11          THE COURT:  I hope we don't have to do that.
12          Okay.  Anything else we need to deal with?
13          Okay.  Thank y'all for being on the line.
14
15
16              (Proceedings concluded.)
17
18
19
20
21
22
23
24
25

```
 1                    CERTIFICATE OF OFFICIAL REPORTER
 2
 3           I, D. Keith Johnson, RDR, CRR, Federal Official
 4   Realtime Court Reporter, in and for the United States District
 5   Court for the Northern District of Texas, do hereby certify
 6   that pursuant to Sections 753, Title 28, United States Code,
 7   that the foregoing is a true and correct transcript of the
 8   stenographically reported proceedings held in the
 9   above-entitled matter and that the transcript format is in
10   conformance with the regulations of the Judicial Conference of
11   the United States.
12                    Dated this 30th day of December, 2014.
13
14                    /s/ D. KEITH JOHNSON_____
                      D. KEITH JOHNSON, RDR, CRR
15                    TEXAS CSR NO. 3781
                      FEDERAL OFFICIAL COURT REPORTER
16                    1100 COMMERCE STREET, ROOM 1572
                      DALLAS, TEXAS  75242
17                    214.753.2325
18
19
20
21
22
23
24
25
```