Case 4:14-cr-00023-A Document 379 Filed 03/22/16 Page 1 of 14 PageID 3246
Case: 14-11253 Document: 00513432667 Page: 1 Date Filed: 03/22/2016

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-11253

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHRISTOPHER ROBERT WEAST,

Defendant - Appellant



United States Court of Appeals
Fifth Circuit
**FILED**
January 26, 2016
Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, OWEN, and ELROD, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Christopher Weast appeals his conviction for receipt and possession of child pornography, alleging four distinct constitutional violations. We AFFIRM.

I

On June 4, 2012, Fort Worth Police Department officer Randy Watkins used peer-to-peer file sharing software[1] to search for computer users sharing

---

[1] Peer-to-peer networks allow computer users to download files directly from other users' computers. Typically, each network user maintains a "shared folder" on his or her computer containing data accessible to other users. Peer-to-peer software is used to locate files on other users' computers and to transfer files between computers.

No. 14-11253

child pornography. Officer Watkins located an IP address[2] whose corresponding user appeared to be sharing child pornography.[3] He then used the peer-to-peer software to download six files shared by the user. The files had been stored on a computer that the user had nicknamed "Chris," and they contained apparent child pornography.

Officer Watkins used a publicly accessible website to determine the internet service provider (ISP) associated with the IP address from his search. A subsequent subpoena to that ISP revealed that the IP address was registered to Larry Weast. Law enforcement officers executed a search warrant at Weast's residence, where they found his son, Chris. Chris refused to be interviewed. The officers seized computer equipment from Chris's bedroom, including a hard drive that was later found to contain child pornography.

Chris (hereinafter Weast) was indicted in the Northern District of Texas for possession and receipt of child pornography.[4] The court appointed him counsel. Weast then moved to represent himself. After an apparently uneventful hearing, a magistrate judge granted his motion. Weast proceeded to file several garbled motions of the "sovereign citizen" variety.[5] The district court rejected them as "nonsensical and wholly without merit" and ordered a new hearing on the subject of Weast's self-representation.

---

[2] An IP (Internet Protocol) address uniquely identifies a particular network-connected device.

[3] Watkins determined this by using law enforcement software to compare a listing of media files that that user had shared with a law enforcement database of child pornography. The comparison suggested that 1,761 of the user's shared files were known child pornography media files.

[4] See 18 U.S.C. §§ 2252A(a)(5)(B), (a)(2)(A).

[5] The sovereign citizen movement is a loose grouping of litigants, commentators, and tax protesters who often take the position that they are not subject to state or federal statutes and proceedings. See, e.g., United States v. Thody, No. 14-50904, 2016 WL 104369, at *1 (5th Cir. Jan. 8, 2016) ("Thody believed he was a 'sovereign citizen' not subject to federal law. He therefore believed that the Internal Revenue Code did not require him to pay taxes.").

2

No. 14-11253

At the hearing, Weast was repeatedly disruptive, leading the court to order a competency evaluation. He was again disruptive at a subsequent hearing convened to discuss that evaluation's results. The court arranged for him to participate from another room through an audio/video link, which the court could mute in case of further interruption. After hearing evidence from a forensic psychologist and conferring with counsel from both sides, the court concluded that Weast was competent but could not be allowed to represent himself on account of his conduct.[6] It entered a 39-page order justifying its decision. On multiple occasions, the district court told Weast that he would be permitted to rejoin the proceedings in person if he would agree to behave appropriately. However, in subsequent appearances before the court, Weast's behavior remained much the same.

Weast's trial began on July 28, 2014 and lasted two days. The jury found him guilty of possession and receipt of child pornography. After further proceedings in which Weast continued to act disruptively, the court followed the sentencing guidelines and gave him 30 years in prison.

II

On appeal, Weast first claims that Officer Watkins violated his Fourth Amendment rights by using peer-to-peer software, without a warrant, to identify Weast's IP address as possibly linked to child pornography and to download data that Weast had made available for sharing. Citing the Supreme Court's recent decision in *Riley v. California*,[7] Weast moved before trial to suppress all evidence obtained through these activities and the subsequent

---

[6] The court also ruled that Weast would have to participate in his trial from outside the courtroom, again through the audio/video link. At trial, it instructed the jurors not to make inferences from Weast's absence.

[7] 573 U.S. ___, 134 S. Ct. 2473 (2014).

3

No. 14-11253

search of the Weast household.[8] The district court denied the motion, reasoning that Weast had no reasonable expectation of privacy in the information accessed through the software and website. We review this conclusion of law de novo.[9]

We have never explicitly stated whether IP addresses or files shared through peer-to-peer networks are subject to a reasonable expectation of privacy. However, other circuits have concluded that they are not. As the Third Circuit has explained, "[f]ederal courts have uniformly held that 'subscriber information provided to an internet provider,'" including IP addresses, "'is not protected by the Fourth Amendment's privacy expectation' because it is voluntarily conveyed to third parties."[10] Similarly, other courts have consistently held that Fourth Amendment protections do not extend to data shared through peer-to-peer networks.[11]

Weast acknowledges much of this unfavorable precedent, but argues that *Riley* should be understood to have wiped the slate clean. In *Riley*, the Supreme Court held that the Fourth Amendment prohibits warrantless searches of arrestees' cell phones.[12] That case relied on the presumption that the arrestees had a reasonable expectation of privacy in the information on their cell phones. Unlike those arrestees, however, Weast had already voluntarily shared all of the information at issue in this case. He broadcast his

---

[8] The warrant for that search was based on an affidavit by Officer Watkins that relied in turn on evidence obtained through the peer-to-peer software.
[9] *See United States v. Conlan*, 786 F.3d 380, 387 (5th Cir. 2015).
[10] *United States v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010) (quoting *United States v. Perrine*, 518 F.3d 1196, 1204 (10th Cir. 2008)); *see, e.g., United States v. Wheelock*, 772 F.3d 825, 828 (8th Cir. 2014); *United States v. Bynum*, 604 F.3d 161, 164 (4th Cir. 2010).
[11] *See, e.g., United States v. Conner*, 521 F. App'x 493, 497-98 (6th Cir. 2013); *United States v. Borowy*, 595 F.3d 1045, 1047-48 (9th Cir. 2010); *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009).
[12] 134 S. Ct. 2473, 2485 (2014).

4

Case 4:14-cr-00023-A Document 379 Filed 03/22/16 Page 5 of 14 PageID 3250
Case: 14-11253 Document: 00513432667 Page: 5 Date Filed: 03/22/2016

No. 14-11253

IP address far and wide in the course of normal internet use,[13] and he made the child pornography files and related data publicly available by downloading them into a shared folder accessible through a peer-to-peer network.[14] Such behavior eliminates any reasonable expectation of privacy in the information, rendering *Riley* inapposite.[15]

Our recent decision in *Guerrero* reinforces this conclusion. In that case, we held that *Riley* did not overrule our precedent withholding Fourth Amendment protection from cell phone location data passively transmitted to service providers.[16] The reasoning of *Guerrero* easily extends to the facts now before us; IP addresses and peer-to-peer-shared files are widely and voluntarily disseminated in the course of normal use of networked devices and peer-to-peer software, just as cell phone location data are disseminated in the course of normal cell phone use. For this reason, Weast's Fourth Amendment rights were not violated when Officer Watkins accessed his IP address and shared files.[17]

---

[13] *See Christie*, 624 F.3d at 563 ("IP addresses are also conveyed to websites that an internet user visits, and administrators of websites . . . can see the IP addresses of visitors to their sites.").

[14] *See Conner*, 521 F. App'x at 497 ("[P]eer-to-peer file sharing . . . programs . . . are expressly designed to make files on a computer available for download by the public, including law enforcement. Peer-to-peer software users are not mere intermediaries, but the intended recipients of these files. Public exposure of information in this manner defeats an objectively reasonable expectation of privacy under the Fourth Amendment."). In his pre-warrant investigation, Officer Watkins could not and did not access data on Weast's computer other than that stored in the shared folder.

[15] *See United States v. Post*, 997 F. Supp. 2d 602, 606 (S.D. Tex. 2014) (Costa, J.) ("[*Riley* was] not about whether an arrestee has a privacy interest in a cellphone found in his possession. He maintains such an interest in both the phone and its contents. The issue [was] whether the justifications that overcome that privacy interest and allow for warrantless seizure of the phone also support warrantless search of its contents.").

[16] *United States v. Guerrero*, 768 F.3d 351, 358-60 & 60 n.7 (5th Cir. 2014) (Costa, J.) (*Riley* did not overturn Supreme Court precedent finding no reasonable expectation of privacy in "information already in the possession of an identifiable third party"), *cert. denied*, 135 S. Ct. 1548 (2015).

[17] *Accord United States v. Carter*, 2015 WL 5474180, at *1-2 (N.D. Ohio Sept. 16, 2015) (on essentially identical facts, denying motion to suppress and distinguishing *Riley*).

No. 14-11253

## III

Weast next claims that the court denied him his Sixth Amendment rights by refusing to let him represent himself at trial. We review this constitutional challenge de novo, but scrutinize the district court's underlying factual findings for clear error only.[18] "The denial of a defendant's right to represent himself, if established, requires reversal without a harmless error analysis."[19]

As discussed above, after Weast repeatedly disrupted pretrial hearings, the district court entered a lengthy and detailed order detailing his obstreperous conduct up to that point. The court explained that Weast consistently refused to answer basic questions (e.g., what his name was and whether he was pleading guilty or not guilty), interrupted the court *ad nauseam*, and "barraged the court with bizarre filings." His behavior showed no sign of abating over time, and he ignored numerous entreaties from the bench to change tack. The court concluded that Weast was pursuing "a deliberate and calculated defense strategy to so disrupt the proceedings that they cannot go forward in a meaningful way," and determined that absent a change in behavior, he could not be allowed to represent himself.

Unfortunately, no such change occurred between the time the order was entered and the time of trial. Weast filed more nonsensical motions, and was, if anything, more disruptive than before in a pretrial appearance before the court, a remote appearance during the trial (but outside the presence of the jury) to determine whether he would testify, and sentencing proceedings after the trial.

---

[18] *United States v. Joseph*, 333 F.3d 587, 589 (5th Cir. 2003); *Gomez v. Collins*, 993 F.2d 96, 98 (5th Cir. 1993).
[19] *United States v. Majors*, 328 F.3d 791, 794 (5th Cir. 2003).

Case 4:14-cr-00023-A Document 379 Filed 03/22/16 Page 7 of 14 PageID 3252
Case: 14-11253 Document: 00513432607 Page: 7 Date Filed: 03/22/2016

No. 14-11253

These antics justified the district court's decision. "[T]he trial judge may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct."[20] Weast acknowledges this basic principle, but nonetheless claims error on two grounds. First, he argues that the court could not be sure he would disrupt trial without actually letting him represent himself at trial; that is, only if he disrupted his actual trial could the court constitutionally deny him self-representation. This principle is nowhere in our case law. Indeed, in *Vernier*, an unpublished case, we commented that "a defendant's request to represent himself at trial may be rejected if it is intended to cause delay or some tactical advantage" or if pretrial behavior suggests that the defendant intends to disrupt the trial.[21] We also noted that "[o]ther circuits hold that a trial court may deny the right of self-representation when evidence indicates that the defendant intends to use the right to delay or disrupt the trial."[22] The facts in this case closely track those in *Long*, in which we found that the defendant "may well have" waived self-representation through similar pretrial conduct,[23] and *Brock*, in which the Seventh Circuit concluded that similar behavior *did* waive self-representation.[24] And in *Vernier*, we upheld a denial of self-representation based solely on pretrial conduct, although that conduct suggested a strong risk of violence (unlike here).[25] Given this precedent, the district court was not legally required to

---

[20] *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975); *see United States v. Vernier*, 381 F. App'x 325, 328 (5th Cir. 2010) (unpublished) ("The right [to self-representation] is forfeited by . . . disruptive conduct, or by abusing the dignity of the courtroom.") (citing *Indiana v. Edwards*, 554 U.S. 164 (2008), and *Faretta*, 422 U.S. at 834 n. 46).
[21] *Vernier*, 381 F. App'x at 328-29.
[22] *Id.* at 328.
[23] *United States v. Long*, 597 F.3d 720, 726-27 (5th Cir. 2010). We concluded that this behavior, "coupled with [the defendant], just before trial began, having told the district court that he did not wish to represent himself," resulted in waiver. *Id.* at 729.
[24] *United States v. Brock*, 159 F.3d 1077, 1080-81 (7th Cir. 1998).
[25] *Vernier*, 381 F. App'x at 329.

Case 4:14-cr-00023-A Document 379 Filed 03/22/16 Page 8 of 14 PageID 3253
Case: 14-11253 Document: 00513432007 Page: 8 Date Filed: 03/22/2016

No. 14-11253

allow Weast to disrupt the trial itself in order to appoint him counsel against his wishes.

Second, Weast argues that he could have represented himself without causing problems by participating in the trial through the audio/video link, subject to the judge's ability to mute the line. But the district court reasonably concluded that such an arrangement would not prevent undue disruption. Even after being removed from the courtroom, Weast continuously interrupted proceedings, refused to answer questions, and delivered nonsensical rants through the audio/video link, forcing the court to repeatedly mute him.[26] His conduct was no better when he briefly returned to the courtroom during a pretrial hearing.

Even Weast concedes (through counsel) that his behavior was "bizarre and disruptive." The district court did not clearly err in concluding that allowing him to represent himself, even remotely, would severely compromise his trial. Its consequent decision to appoint him counsel against his wishes was constitutionally sound.

## IV

Weast next challenges the district court's decision to limit the testimony of his expert witness, Bill McGregor, a digital forensics specialist. In a bench conference before McGregor testified, the district judge decided to limit McGregor's testimony to a handful of questions. Weast's counsel did not object.

---

[26] The evidence Weast cites in arguing that he could have represented himself remotely – his purportedly "success[ful]" remote cross-examination of the forensic psychologist during his competency hearing – hardly helps his case. After asking a few questions about the depth of the psychologist's evaluation, Weast launched into a speech questioning the court's authority to order a competency hearing, insisting that the judge recuse himself, and concluding: "I'm sorry if it doesn't bode well with all the people that are sitting here from the British government, but that is the way it goes here in the United States. We are sovereign as – as of the Treaty of Paris 1783, so I'm not sure what we're doing here. . . . I'm not your property."

Case 4:14-cr-00023-A   Document 379   Filed 03/22/16   Page 9 of 14   PageID 3254

No. 14-11253

McGregor then took the stand and testified that Weast's computer was susceptible to being hacked and that digital images could be and commonly were altered. The court cut Weast's counsel off when he tried to ask McGregor about whether viruses were present on Weast's computer, commenting that "I think that's already been developed" and "I don't think that's the subject we were dealing with." Again, Weast's counsel did not object.

When a defendant fails to timely object to a disputed evidentiary ruling, we review for plain error only.[27] "Under the plain-error standard, this Court makes three initial determinations: (1) whether the district court committed error; (2) whether the error is 'clear and obvious'; and (3) whether the error affects substantial rights. 'If these three conditions are satisfied, we have discretion to reverse the district court if we conclude that the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'"[28] "The plain error doctrine only permits us to correct egregious errors which result in a miscarriage of justice."[29]

The court below did not plainly err. According to Weast, McGregor's testimony would have shown that the images on Weast's computer had been altered, that it is impossible to tell whether a digital photo depicts a real minor, that Weast's computer could have been hacked, and that virus scans showed

---

[27] *See United States v. Bishop*, 629 F.3d 462, 468 (5th Cir. 2010); *United States v. Duffaut*, 314 F.3d 203, 209 (5th Cir. 2002). It is unclear whether Weast's challenge to the limits on McGregor's testimony is constitutional or statutory in nature. His brief claims those limits violated his Sixth Amendment rights, but appears to apply the abuse of discretion standard (i.e., that applicable to evidentiary, not constitutional, rulings) in its discussion. In either case, however, plain error review applies. And even if it did not, any error in the ruling below would have been harmless for the reasons described in this section. *See United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013) (applying harmless error review in an evidentiary challenge based on statute), *cert. denied*, 134 S. Ct. 1011 (2014); *United States v. Skelton*, 514 F.3d 433, 438 (5th Cir. 2008) (applying the same standard in a challenge based on the Sixth Amendment).

[28] *United States v. Wofford*, 560 F.3d 341, 351 (5th Cir. 2009) (quoting *United States v. Stevens*, 487 F.3d 232, 242 (5th Cir. 2007)).

[29] *United States v. Maceo*, 947 F.2d 1191, 1198 (5th Cir. 1991).

No. 14-11253

that Weast's computer was vulnerable to hacking. But Weast's counsel covered these issues in cross-examining the government's expert. The district court did not "clear[ly] and obvious[ly]" err in excluding McGregor's cumulative testimony on this point.[30] Even if it had, such an error would not have affected Weast's substantial rights, both because the government presented significant incriminating evidence[31] and because Weast was able to develop the points at issue during cross-examination and closing argument.[32]

V

Finally, Weast calls our attention to two allegedly improper prosecutorial comments. First, in examining Officer Watkins, the prosecutor asked whether Weast "was . . . cooperative" during the search of the Weast residence (i.e., before Weast was arrested). Weast's counsel objected and moved for a mistrial. The court denied the motion, but instructed the jury shortly thereafter:

> [T]he defendant has no obligation to be cooperative with law enforcement, and if he chooses not to be, that's not relevant. So to

---

[30] *See, e.g., United States v. Arledge*, 553 F.3d 881, 894 (5th Cir. 2008).

[31] At trial, prosecution witnesses testified that Officer Watkins was able to download apparent child pornography from a peer-to-peer user with an IP address registered to Weast's father; that according to Watkins's software, the illicit files came from a computer nicknamed "Chris"; that Chris had a sub-account within Weast's father's AT&T internet service account; that files on a laptop and external hard drive seized from Chris's bedroom contained metadata linking them to the Weast IP address; that the laptop's primary user account was labeled "Chris" and contained peer-to-peer software; that the peer-to-peer software's shared folder contained child pornography; that the laptop's registry contained numerous filenames suggesting child pornographic content; that the external hard drive contained child pornography files; that the external hard drive had been connected to the laptop in the past; that the peer-to-peer software on the laptop had been used to search for numerous terms related to child pornography; that no other devices seized from the Weast residence contained child pornography; that the malware present on Weast's computer could not have transferred illicit files to the external hard drive; that other members of the family were not in the habit of using Weast's computer equipment; and that a child depicted in several of the files was familiar to FBI personnel from a previous child pornography investigation. Weast does not challenge the sufficiency of the evidence against him.

[32] *See Sanford v. Johns-Manville Sales Corp.*, 923 F.2d 1142, 1148 (5th Cir. 1991) ("The exclusion of cumulative testimony is harmless.").

Case 4:14-cr-00023-A Document 379 Filed 03/22/16 Page 11 of 14 PageID 3256
Case: 14-11253 Document: 00513432667 Page: 11 Date Filed: 03/22/2016

No. 14-11253

whatever extent that had been brought out, the jury is not to consider that for any purpose, the fact that he did not cooperate because he had no obligation to.

Second, during the prosecution's closing argument, the following exchange transpired:

> [Prosecutor:] [...] We can't bring in here every child whose pictures appear because they are not all identified, but I would submit to you, it is -- *there is one person who does know what the contents of that hard drive and what that laptop contain*. It's the person who was entering their own search –
>
> [Defense counsel]: Objection, Your Honor, improper argument as to Mr. Weast's right to remain silent.
>
> THE COURT: I don't interpret it that way, but be careful. Of course, the defendant does have the right to remain silent. Go ahead.
>
> [Prosecutor]: The person who entered in those search terms looking for child pornography, the person who was connected to the internet, the person who downloaded child pornography, the person whose face appears on that Western Digital hard drive.[33]

Weast's counsel moved for a mistrial. The court denied the motion, but instructed the jury immediately after the prosecutor concluded her argument:

> To whatever extent her argument might have implied that the defendant had any responsibility to explain the material in his room, or to testify, or to do anything other than to remain silent, the jury won't consider it for that purpose because he did not have any obligation to cooperate, or to make any statement, and certainly had the right to not testify during this trial. So, if anything she said implied other than that, you'll disregard those statements.

On appeal, Weast claims that these comments violated his Fifth Amendment right not to testify and compelled a mistrial. "Generally, we apply a two-step analysis to claims of prosecutorial misconduct. First, we assess

---

[33] Emphasis added.

11

Case 4:14-cr-00023-A Document 379 Filed 03/22/16 Page 12 of 14 PageID 3257
Case: 14-11253 Document: 00513432667 Page: 12 Date Filed: 03/22/2016

No. 14-11253

whether 'the prosecutor made an improper remark.' If so, then we ask whether the defendant was prejudiced. The prejudice step 'sets a high bar . . . The determinative question is whether the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict.' We generally look to three factors in deciding whether any misconduct casts serious doubt on the verdict: '(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction.'"[34]

The prosecutor's "cooperative" question might plausibly be interpreted to refer to Weast's pre-arrest silence, especially since Officer Watkins had stated shortly before that he had "asked Christopher Weast to speak with me in my car."[35] However, in order for the question to potentially rise to the level of a constitutional violation, this interpretation must be more than plausible. Instead, "[a] prosecutor's or witness's remarks constitute comment on a defendant's silence if the manifest intent was to comment on the defendant's silence, or if the character of the remark was such that the jury would naturally and necessarily so construe the remark."[36] The comment at issue fails to clear these hurdles.[37] More fundamentally, this court has not yet decided whether a prosecutor may comment on a non-testifying defendant's pre-arrest, pre-

---

[34] *United States v. Davis*, 609 F.3d 663, 677 (5th Cir. 2010) (quoting *United States v. Fields*, 483 F.3d, 313, 358 (5th Cir. 2007)).
[35] *See United States v. Shaw*, 701 F.2d 367, 381 (5th Cir. 1983) ("[T]he character of the remarks [is] determined by reviewing the context in which they occur . . . .").
[36] *United States v. Wright*, 777 F.3d 769, 779 (5th Cir.) (quoting *United States v. Andaverde–Tinoco*, 741 F.3d 509, 520 (5th Cir. 2013)), *cert. denied*, 135 S. Ct. 2821 (2015).
[37] *See United States v. Schaffer*, 582 F. App'x 468, 475 (5th Cir. 2014) (unpublished) ("[I]t is difficult to see how the jury could consider the vague remark, 'wasn't being cooperative,' as a comment on [defendant's] silence.").

No. 14-11253

*Miranda* silence.[38] Weast's challenge to the "cooperative" comment is therefore on uncertain footing.[39]

The prosecutor's comments during closing argument are similarly ambiguous. In isolation, they could be plausibly be interpreted to refer to Weast's silence at trial, in violation of his Fifth Amendment and due process rights.[40] But in context, and especially given the sentence immediately after the disputed statement, the thrust of the comments was arguably that the user who had entered search terms related to child pornography (presumably Weast) must have known about the illicit files, not that Weast's silence suggested that he knew of the files.[41] The fact that the prosecutor addressed the defense's "virus argument" (i.e., that the files may have been remotely added to Weast's computer without his knowledge) shortly before and immediately after the disputed comment supports this reading.

Moreover, even assuming that the comments in dispute were improper, Weast cannot show that the impropriety casts serious doubt on the verdict. The prejudicial effect of the comments is uncertain, given that they did not directly reference Weast's silence and are reasonably susceptible to interpretations having nothing to do with that silence. Any possible prejudice would have been further diminished by the district court's prompt, thorough, and unequivocal

---

[38] *See United States v. Ashley*, 664 F.3d 602, 604 (5th Cir. 2011) (discussing the circuit split on this issue). The Fifth Circuit *has* "taken the position that the prosecution can use a non-testifying defendant's pre-arrest silence as long as the silence 'is not induced by, or a response to, the actions of a government agent.'" *Id.* at 604 n.6 (quoting *United States v. Salinas*, 480 F.3d 750, 758 (5th Cir. 2007). However, Weast's lack of cooperation was arguably "induced by, or a response to" Officer Watkins's request.

[39] For the reasons described in this section, the court need not resolve this issue in order to dispose of Weast's appeal.

[40] *See Salinas*, 480 F.3d at 756.

[41] The government's expert testified that someone using Weast's computer had entered search terms related to child pornography into a peer-to-peer program. The government also submitted an exhibit containing these search terms. *See also United States v. Canales*, 744 F.2d 413, 424 (5th Cir. 1984) (allegedly improper closing argument must be "considered in light of the argument to which it responded").

13

Case 4:14-cr-00023-A Document 379 Filed 03/22/16 Page 14 of 14 PageID 3259
Case: 14-11253 Document: 00513432667 Page: 14 Date Filed: 03/22/2016

No. 14-11253

curative instructions.[42] Finally, the prosecution's evidence is robust enough to sustain his conviction in any event. Therefore, the comments in question do not justify reversal.

## VI

Each of Weast's four arguments fails. We find no reversible error in the judgment of the district court, and AFFIRM.

---

[42] *Cf. United States v. Johnston*, 127 F.3d 380, 399 (5th Cir. 1997) (prejudice "was mitigated somewhat . . . . [but] remained" when judge gave brief and somewhat confusing curative instruction one day after improper prosecutorial comment). The district court in this case also gave standard instructions concerning the defendant's right to remain silent at the open and close of evidence.